**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Gregory Boyd, et. al. | Civil No.: 26-cv-1066 (MAJ) |
| Plaintiffs | |
| v. | |
| Banco Popular de Puerto Rico, et. al. | |
| Defendants | |

**SPECIAL APPEARANCE TO OPPOSE PLAINTIFFS' MOTION FOR THEIR ATTORNEYS TO REPRESENT GFC HOLDINGS LIMITED LIABILITY COMPANY AND BIOMASS GREEN FUELS, LLC AND REQUEST FOR SANCTIONS**

**TO THE HON. MARÍA ANTONGIORIGI-JORDÁN, U.S. DISTRICT JUDGE:**

Nominal defendants, GFC Holdings Limited Liability Company ("GFC") and Biomass Green Fuels, LLC ("BGF") (collectively the "Companies"), without submitting to the jurisdiction[1], respectfully move for an order: (i) denying Plaintiffs' motion at ECF No. 41 for their counsel to represent the Companies in this action; and (ii) for the imposition of sanctions against the Plaintiffs. In support thereof, the Companies respectfully state and pray as follows:

**I.    INTRODUCTION**

Plaintiffs seek leave to have their attorneys simultaneously represent the Companies and them in this action. Their request violates the Model Rules of Professional Conduct and constitutes an impermissible attempt to forum-shop and relitigate issues already resolved by two separate judges of this District. See Boyd v. Banco Popular de Puerto Rico, No. CV 24-1569 (PAD), 2025 WL 3705209 (D.P.R. Dec. 22, 2025); Boyd v. López-Vidal, No. CV 22-1190 (GMM), 2025 WL 2322439 (D.P.R. Aug. 12, 2025). Plaintiffs notably failed to disclose either decision to the Court in their motion (ECF No. 41).

---

[1] The Companies have neither been served nor have they received a waiver of summons. As explained below, the Court should authorize Attorney Héctor Pedrosa's withdrawal of the Companies' answer to complaint as well as his appearance in the case. See ECF No. 32, 34. This special appearance is made because of the extraordinary and unusual relief sought by the Plaintiffs at ECF No.41 and to comply with the Court's order at ECF No. 36.

Plaintiffs' conduct demonstrates an improper effort to seize control of the Companies' defense to secure a collusive outcome. This was made evident when they bypassed GFC's Board of Managers and covertly retained Attorney Héctor Pedrosa who, without authority from the Board, voluntarily submitted the Companies to the Court's jurisdiction prior to service of process and filed an unprecedented answer admitting all factual allegations in the complaint. See ECF No. 32. Plaintiffs did so without informing Mr. Pedrosa of the two dispositive federal decisions holding that only the Board of Managers has authority to retain counsel for the Companies. See Exhibit 1, Email from R. Abesada-Agüet to H. Pedrosa. Upon learning about those decisions from the undersigned counsel, Mr. Pedrosa promptly sought leave withdrawing the answer to complaint he filed as well as his appearance on behalf of the Companies. See ECF No. 34.

Plaintiffs subsequently filed a "Notice of Intent to Reply," accusing undersigned counsel of misleading Mr. Pedrosa, impugning a Board member as a "criminal", and suggesting new independent counsel would be retained. See ECF No. 35. [2] Instead of hiring independent counsel, Plaintiffs have now renewed their request, for a third time, for their own counsel to represent the Companies (ECF No. 41). For the reasons stated below, Plaintiffs' motion should be denied and their misconduct addressed through appropriate sanctions.

## II.      RELEVANT PROCEDURAL HISTORY

1.      The Plaintiffs, who are members of GFC (BGF's sole member), filed on April 25, 2022, Civil Action No. 22-1190 (GMM), against most of the same Defendants sued here.

---

[1] The "Notice of Intent to Reply" filed by Plaintiffs' counsel on March 13, 2026 (Docket No. 35) is an illustration of the accusatory rhetoric that has characterized Plaintiffs' repeated attempts to install counsel of their own choosing to represent the nominal defendant companies. In that filing, the Plaintiffs and their counsel, who orchestrated Attorney Héctor Pedrosa's retention on behalf of the Companies without ever disclosing to him the two judicial decisions that foreclosed exactly such a representation, have the audacity to characterize Attorney Pedrosa's withdrawal as having been "based on Mr. Abesada's unauthorized and false statements" when in fact Attorney Héctor Pedrosa withdrew immediately and voluntarily upon being shown, for the first time, the August 12, 2025 Memorandum and Order of Judge Méndez-Miró in Civil No. 22-1190 and the December 22, 2025 Opinion and Order of Judge Delgado-Hernández in Civil No. 24-1569, decisions that Plaintiffs and their counsel possessed and withheld from him. The Notice further announced that "[n]ew counsel hired by the majority of the members of the companies shall appear on the companies' behalf today" which representation never occurred as demonstrated by Plaintiffs' counsel's motion for leave to appear on behalf of the companies. Plaintiffs, undeterred by two adverse rulings and the collapse of their procedural gambit, intend to repeat the same discredited maneuver a third time, in plain defiance of two prior court decisions, conduct that, taken as a whole, reflects a vexatious pattern of bad-faith litigation abuse that this Court has the inherent authority to address and sanction under Chambers v. NASCO, Inc., 501 U.S. 32, 43-44 (1991) and 28 U.S.C. §1927.

2

2.      In that case, they claimed monetary redress under Defend Trade Secrets Act, the Racketeer Influenced and Corrupt Organizations Act, Section 10(b)(5) of the Securities Exchange Act of 1934, and other Puerto Rico laws, including a derivative claim.

3.      The core of the Plaintiffs' claims in Civil No. 22-1190 (GMM) centered on the alleged fraudulent diversion and misuse of funds intended for a Humacao, Puerto Rico biorefinery project. They assert that certain company members allegedly misappropriated federal funds, loan proceeds, and investor contributions for personal gain, while simultaneously funding unrelated projects in the Dominican Republic. Plaintiffs alleged this involved fraudulent drawdown certifications, misrepresentations regarding project status, and the concealment of significant conflicts of interest.

4.      After amending the complaint twice, Hon. Gina Méndez-Miró, U.S. District Judge, dismissed the action.  Boyd v. López-Vidal, No. CV 22-1190 (GMM), 2026 WL 771966, (D.P.R. Mar. 18, 2026).  She also had previously denied Plaintiffs' request to appear on behalf of the Companies and disqualify the undersigned.  Boyd v. López-Vidal, No. CV 22-1190 (GMM), 2025 WL 2322439 (D.P.R. Aug. 12, 2025).

5.      Two years after filing Civil No. 22-1190 (GMM), the Plaintiffs sued Banco Popular de Puerto Rico in Civil No. 24-1569 (PAD) arising out of alleged violations under the Bank Holding Act and other laws.

6.      In that case, the Plaintiffs again purported to appear on behalf of the Companies after attempting to amend their complaint to include a cause of action on the Companies' behalf. Hon. Pedro A. Delgado, U.S. District Judge, also dismissed this action and, in agreement with Judge Méndez-Miró, denied Plaintiffs' request to have their same attorneys represent the Companies.  Boyd v. Banco Popular de Puerto Rico, No. CV 24-1569 (PAD), 2025 WL 3705209 (D.P.R. Dec. 22, 2025).[3]

---

[3] Plaintiffs have recently appealed the judgments entered in Civil No. 22-1190 (GMM) and Civil No. 24-1569 (PAD).

7.    On February 7, 2026, the Plaintiffs filed this new action.

8.    On March 10, 2026, Attorney Héctor Pedrosa appeared on behalf of the Companies, voluntarily submitted them to the Court's jurisdiction without Board approval, and answered the complaint by admitting all of its allegations.  See ECF No. 32.

9.    On March 12, 2026, Attorney Héctor Pedrosa filed a motion to withdraw the answer to the complaint and from the legal representation of the Companies.  See ECF No. 34.

10.    Attorney Pedrosa's filing was made after he was disclosed of the decisions entered in Boyd v. Banco Popular de Puerto Rico, No. CV 24-1569 (PAD), 2025 WL 3705209 (D.P.R. Dec. 22, 2025) and Boyd v. López-Vidal, No. CV 22-1190 (GMM), 2025 WL 2322439 (D.P.R. Aug. 12, 2025), where judges Delgado and Méndez-Miró concluded that Plaintiffs' attorneys could not represent the Companies because GFC's Board had the exclusive authority to decide what attorneys can represent the Companies and the Board had already selected the undersigned. See Exhibit 1, Email to H. Pedrosa from R. Abesada-Agüet.

11.    On March 13, 2026, the Plaintiffs filed a "Notice of Intent to Reply". See ECF No. 35.  In this filing, Plaintiffs' counsel represented that new counsel would appear on behalf of the Companies, accused a Board member of being a "criminal" and accused the undersigned of making "unauthorized and false statements".[4]

---

[4] In ECF No. 35, the Plaintiffs stated:

1. Without consulting the undersigned, who represents the undersigned, Hector Pedrosa, Esq. file a Motion to Withdraw as counsel for the defendants GFC Holdings, LLC and Biomass Green Fuels, LLC (the companies). As was the undersigned, Mr. Pedrosa was contracted by the majority of the members of the companies to represent them in this matter against their co-Defendants, who are all members of the criminal enterprise who destroyed the companies.

2. Roberto Abesada, Esq., on the other hand, who has not appeared in this case, apparently been hired by the criminal Alexander Borshow, who took more than a million dollars in exchange for the final decimation of the companies' assets, as detailed in the Complaint. Mr. Borschow contributed mightily to the companies' destruction by allowing a conflicted construction firm to perform inadequate botched work while never producing basic financial documents, such as annual financial statements.

3. The companies intend to file a complete response to Mr. Pedrosa's withdrawal, which was based on Mr Abesada's unauthorized and false statements to the former, but today we simply inform this Honorable Court of the intent to do so. In addition, we ask this Court not to rule on the Motion for Withdrawal until it has been fully briefed.

4. New counsel hired by the majority of the members of the companies shall appear on the companies' behalf today.

12.     On March 13, 2026, the Court held in abeyance Attorney Pedrosa's motion and ordered the Companies to respond by March 20, 2026.  See ECF No. 36.

13.     After seeking an extension, the Plaintiffs requested the Court to allow their counsel to represent the Companies.  See ECF No. 39-41. The Plaintiffs then moved for an order to hold in abeyance their motion at ECF No. 41 until the Defendants were served and they made an appearance in the case, including the Companies.  See ECF No. 42.

### III.     ARGUMENT

**A. Two Federal Judges in this District have already decided the Precise Legal Question presented and both Ruled against Plaintiffs.**

Plaintiffs' motion at ECF No. 41 presents this Court with a legal question that has already been twice answered by federal judges sitting in this district where they construed the Companies' Operating Agreement (Exhibit 2), and Plaintiffs' so-called Written Consent.  Boyd v. Banco Popular de Puerto Rico, No. CV 24-1569 (PAD), 2025 WL 3705209 (D.P.R. Dec. 22, 2025) and Boyd v. López-Vidal, No. CV 22-1190 (GMM), 2025 WL 2322439 (D.P.R. Aug. 12, 2025). Plaintiffs failed to disclose these decisions to the Honorable Court.

In Civil No. 22-1190, Plaintiffs filed a "Motion to Appear" on behalf of the Companies relying on a Written Consent signed by a majority of common unit members, as they assert here. They argued that Section 3.2 of the GFC Operating Agreement authorizes majority members to override the Board of Managers on questions of legal representation. Judge Méndez-Miró rejected this argument in its entirety. She held that Section 3.2 does not authorize the members to take actions explicitly reserved for the Board of Managers but instead, it outlines particular circumstances in which the majority of members may act by Member Resolution, specifically when protective provisions in favor of Series A Preferred Unit holders are implicated.  She further held that Section 6.1 of the Operating Agreement vests "full, absolute and exclusive right, power and authority to manage the Company" in the Board of Managers, and that the retention of counsel is a managerial decision within that exclusive authority. Because no majority of Series A Preferred

5

Unit holders approved the Written Consent, and no one has done so in this action either, the Written Consent was and remains invalid.

In Civil No. 24-1569, the Plaintiffs presented Judge Delgado with the identical Written Consent and the identical legal argument. Judge Delgado-Hernández reached the same result as Judge Méndez-Miró. He held that the decisions that the Written Consent purports to take are vested on the Board of Managers, not on a majority of common unit members and that Plaintiffs' reliance on the Written Consent to justify representation of the Companies was invalid.

The Plaintiffs have not demonstrated any new reasons for the Court to reach a different decision.  As explained below, the decisions reached by Judge Delgado-Hernández and Judge Méndez-Miró were correct as a matter of law and the cases relied by the Plaintiffs in their motion are simply inapposite.

**B. The Operating Agreement unambiguously vests Authority over Legal Representation on the Board of Managers, not in a Majority of Common Unit Members.**

The GFC Operating Agreement, which controls as a matter of Puerto Rico law, P.R. Laws Ann. tit. 14, § 3967, vests "full, absolute and exclusive right, power and authority to manage the Company" in the Board of Managers. See Exhibit 2, Operating Agreement § 6.1(a). Section 6.2 further provides that the Board "shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes" of the Companies, "including exercising all powers, statutory or otherwise." The retention of legal counsel to represent the Companies in pending litigation is precisely the type of managerial act that falls within this exclusive managerial authority.

Plaintiffs' reliance and interpretation of section 3.2 of GFC's Operating Agreement which allows Members to act by written consent in lieu of meeting, ignores that Series-A members are part of the "Majority Approval of the Members" required to approve any action that deviates from the terms of the Operating Agreement, pursuant to section 11.3 of the Operating Agreement. See Exhibit 2 Operating Agreement § 11.3. Plaintiffs have never obtained the Series A Preferred Unit

6

holder consent required to structurally reallocate managerial authority. To the extent the action purportedly approved by the Written Consent relates to matters that are expressly governed by, or allocated under, the Operating Agreement, such action cannot be validly taken in a manner that is inconsistent with its terms. Any such action is either: (i) invalid and without legal effect; or (ii) if intended to be effective notwithstanding such inconsistency, must satisfy the approval requirements applicable to amendments or waivers of the Operating Agreement, including any required Series A consent pursuant to section 11.3.  Plaintiffs are acutely aware of the necessity of securing the participation and consent of the Series-A holders of membership units to achieve the required majority consent for their intended purpose as courts in prior proceedings have already considered and rejected their reliance on the purported Written Consent, adopting the Companies' position on this issue but still continue to ignore it as revealed in their motion.

Their attempt to accomplish through litigation what they cannot accomplish through the Operating Agreement is precisely the type of end-run that corporate governance law is designed to prevent.

This is not a case where the Companies lack representation. The Board of Managers has at all times maintained and exercised its legitimate authority to appoint counsel.  The undersigned was formally engaged by written consent of the Board of Managers, confirmed in Docket No. 672-1 of Civil No. 22-1190 (GMM), authorizing him to represent the Companies "in all pending litigations." That engagement was ratified by Judge Méndez-Miró and recognized by Judge Delgado-Hernández. The Board of Managers has issued no resolution revoking that engagement. No majority of Series A Preferred Unit holders have voted to amend the Operating Agreement. No court has ordered a change in counsel for the Companies.

More importantly, Plaintiffs' arguments under Section 3.2 have already been considered and rejected by two federal judges. As both Judge Méndez-Miró and Judge Delgado-Hernández held, Section 3.2 does not transfer managerial authority to the members generally.  It merely describes the voting mechanism applicable to matters already within member authority. The

appointment and termination of corporate counsel is not such a matter, but it is a Board function under Section 6.1.

**C. Plaintiffs' Reliance on <u>PHC Shareholder Litigation</u> and <u>Bolger</u> is Misplaced.**

Plaintiffs' motion asserts that the Board's alleged self-dealing disqualifies it from appointing counsel, invoking <u>In re PHC, Inc. Shareholder Litigation</u>, 894 F.3d 419 (1st Cir. 2018). But the fiduciary duty claim against the Board is a state law claim to be litigated on its own terms, not a self-executing mechanism that automatically strips the Board of governance authority and transfers it to the members. Accepting Plaintiffs' argument would mean that any members who allege board misconduct could thereby appoint their own counsel to control corporate litigation strategy, which is a rule with no basis in the Operating Agreement, Puerto Rico law, or any precedent from this Circuit.

On the other hand, <u>PHC</u> deals with the availability of disgorgement as a remedy for self-interested corporate transactions. It has absolutely nothing to do with the authority of members of a limited liability company to appoint counsel for such company in a derivative claim nor does it address the forfeiture of a Board's power to retain its own counsel.  While <u>PHC</u> holds that a board cannot "cleanse" a self-dealing transaction through shareholder ratification, it does not stand for the radical proposition that a board forfeits its authority to appoint counsel in the midst of litigation. Plaintiffs' attempt to stretch a ruling on monetary disgorgement into a rule for legal disqualification of counsel is simply unavailing. The fairness standard discussed in <u>PHC</u> relates to the price and process of a merger, not to the ethical propriety of a lawyer simultaneously representing minority shareholders and the corporation without Board approval. <u>PHC</u> offers no support for Plaintiffs' attempt to bypass ABA Model Rule 1.7's conflict prohibition on direct adversity.

Likewise, Plaintiffs' reliance on <u>Bell Atlantic Corp. v. Bolger</u>, 2 F.3d 1304 (3d Cir. 1993), is a *non sequitur*. Plaintiffs cite <u>Bolger</u> for the broad proposition that dual representation is not *per se* improper.   However, <u>Bolger</u> was a defense-side case where the Third Circuit permitted a single law firm to represent both the corporation and its directors only because the plaintiffs had

8

alleged mere mismanagement.  In contrast to Plaintiffs' position, the <u>Bolger</u> court emphasized that separate counsel *is required* where there are allegations of fraud, intentional misconduct, or self-dealing.

Plaintiffs' own motion characterizes the Defendants' actions as "self-dealing" and "RICO predicate acts." By the very standard articulated in <u>Bolger</u>, Plaintiffs' allegations of intentional wrongdoing would demand the appointment of independent counsel for the Companies. Furthermore, <u>Bolger</u> addressed the passive alignment of defendants in a settlement posture and, thus, it provides no authority for a plaintiff's attorney to simultaneously control the legal strategy of a nominal corporate defendant being sued in a derivative action. Plaintiffs' attempt to use a shield designed for mismanagement defenses as a sword to seize control of the entity's corporate voice is a procedural action <u>Bolger</u> never contemplated.

**D.      Plaintiffs' Counsels have an Irreconcilable Conflict of Interest.**

Judge Méndez-Miró found, as a threshold matter, that there exists a significant risk that Plaintiffs' attorneys' responsibilities to the Plaintiffs may materially limit their representation of the Companies. That finding is amply supported by the fact that the Companies, as nominal defendants and to the extent they have any cognizable interest in this litigation independent of Plaintiffs, have an interest that members who pursue federal and derivative claims have standing to do so, that the derivative claims have not bypassed Board review, that there is compliance with the Operating Agreement, and the protection of their members' rights, including the rights of Series A Preferred Unit holders who have never consented to Plaintiffs' decision to change the Companies' counsel.  Attorneys Becker and Miñana, as counsels for Plaintiffs, Boyd and Lassers individually, have a duty of zealous advocacy for their individual clients that will inevitably color every litigation decision they make on behalf of the Companies. The interests are not, as they claim, perfectly aligned: the Companies include members, including Series A Preferred Unit holders, whose interests are not identical to those of Boyd and Lassers and who have never authorized attorneys Becker and Miñana to speak for them. Furthermore, the record in Civil

No. 22-1190 reflects that Attorneys Becker and Miñana previously moved for entry of default against the Companies (Docket Nos. 631 and 667 of that case), an act Judge Méndez-Miró noted was "inherently antagonistic", demonstrating that Plaintiffs and the Companies have not consistently maintained aligned interests throughout this litigation. A lawyer who has moved for default against an entity cannot credibly claim to be that entity's disinterested advocate. Model Rule 1.7(a)(2) prohibits representation where there is "a significant risk that the representation of one or more clients will be materially limited." That risk has been judicially recognized in this District by two federal judges. The Court should give that recognition its proper weight.

### E.   Plaintiffs' Conduct is Vexatious and Sanctionable.

The conduct in this litigation that preceded Plaintiffs' motion at ECF No. 41 demands the Court's close scrutiny.  Plaintiffs recruited an unsuspecting attorney to appear on behalf of the Companies without disclosing him the decisions of Judge Méndez-Miró and Judge Delgado to the contrary.  When that stratagem collapsed upon disclosure to Attorney Héctor Pedrosa, the Plaintiffs filed their motion at ECF No. 41.  Such tactic constitutes bad faith litigation conduct that this Court has the authority to address. Chambers, 501 U.S. at 43-44.  The same is true following Plaintiffs' failure to disclose to the Honorable Court the two decisions issued by Judge Méndez-Miró and Judge Delgado and their unnecessary accusations against a Board member as well as the undersigned at ECF No. 35.

The repeated filing of motions presenting the same rejected legal theory in successive proceedings, while concealing contrary authority from newly recruited counsel and the Honorable Court, crosses the line from zealous advocacy into abuse of the judicial process which should be sanctioned under the Court's inherent authority and 28 U.S.C. §1927.

### IV.   CONCLUSION

The Court should deny Plaintiffs' motion to have their attorneys simultaneously represent the Companies and them in this action. Two federal judges in this district have already decided that the Board of Managers, not a majority of common unit members, has exclusive authority to

retain counsel for the Companies. That authority has been properly exercised in favor of undersigned counsel. The Written Consent upon which Plaintiffs rely is legally invalid under the Operating Agreement and has been declared by two judges of this District. The attempt to circumvent those rulings by surreptitiously retaining uninformed counsel and then stepping into his place when he decided to withdraw is precisely the kind of conduct that warrants sanctions under the Court's inherent authority and 28 U.S.C. §1927.

WHEREFORE, the Companies and the undersigned counsel respectfully request that this Court deny Plaintiffs' motion at ECF No. 41, allow the withdrawal of Attorney Héctor Pedrosa and the answer to complaint he filed, and allow the Companies to file a responsive pleading once appropriately served pursuant to the Federal Rules of Civil Procedure.

## CERTIFICATE OF SERVICE

I hereby certify that on this same date, a true and exact copy of this motion was electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send a notification thereof to the attorneys and parties registered therewith.

**RESPECTFULLY SUBMITTED.**

Electronically filed this 28th day of April 2026.

**ABESADA LAW OFFICES**
Counsel for GFC Holdings, LLC and
Biomass Green Fuels LLC
1357 Ashford Ave. 2-184
San Juan, Puerto Rico 00907
Tel. (787) 948-5131

*/s/ Roberto Abesada-Agüet*
USDC-PR No. 216706
ra@abesada.com

11