**From:** Pedro A. Hernández Freire
**Sent:** Thursday, May 21, 2026 4:43 PM
**To:** Jane Becker Whitaker; 'janebeckerwhitaker@gmail.com'; Offices PSC Espada Miñana Pedrosa Law
**Cc:** Alfredo Fernández Martínez; Daniel Limés Rodríguez; Ana Pérez Sánchez
**Subject:** Gregory Boyd, et al. v. Banco Popular de Puerto Rico, et al., Civil No. 26-1066

Dear counsel,

Attached please find letter pursuant to Rule 11(c) of the Federal Rules of Civil Procedure, regarding the referenced matter.

Cordially,



**Pedro A. Hernández Freire**

**Member**

**T.** (787) 274-1414   **D.** (787) 523-5642

www.delgadofernandez.com   phernandez@delgadofernandez

T Mobile Center at San Patricio, B7 Tabonuco Street Suite 1000

Guaynabo, Puerto Rico  00968

CONFIDENTIALITY NOTICE: This communication contains information belonging to DELGADO & FERNÁNDEZ, LLC which is confidential and/or legally privileged and its attachment(s) are intended for the named recipients only. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of said information is strictly prohibited. If you have received this communication by error, please notify us immediately by reply e-mail or call at (787) 274-1414.

ü **Please consider the environment before printing this e-mail.**



April 10, 2026

VIA EMAIL

Mrs. Jane A. Becker Whitaker
P.O. Box 9023914
San Juan, PR 00902-3914
Tel: (787) 585-3824
Email: jbw@beckervissepo.com
janebeckerwhitaker@gmail.com

Mr. Luis E. Miñana
ESPADA, MIÑANA, & PEDROSA LAW OFFICES, PSC
123 Calle Manuel Domenech Altos
Urb. Baldrich
San Juan, PR 00918
Tel: (787) 758-1999
Email: minanalaw@yahoo.com

## RE: <u>GREGORY BOYD and JONATHAN LASSERS, et al. V. BANCO POPULAR DE PUERTO RICO et al.,</u> Case 3:26-cv-01066-MAJ

Dear Mrs. Becker Whitaker and Mr. Miñana:

As you are aware, this firm represents Rafael Rojo, Carlos Penzini, Diego Rodríguez, VRM Penzini Capital L.L.C., VRM Penzini Fund I L.L.C., VRM Penzini Fund I, LLC, Renewable Series II, Star Power Systems LLC, Humacao RNG, L.L.C., and Ponce RNG, LLC (collectively, the "Defendants") in the above-referenced lawsuit. I am writing pursuant to Rule 11(c) of the Federal Rules of Civil Procedure to request the dismissal of the Complaint filed on behalf of your clients Gregory S. Boyd and Jonathan Lassers (collectively, "Plaintiffs") on February 7, 2026 (the "Complaint"). This letter sets forth Defendants' position on this issue. If you elect not to dismiss the Complaint, Defendants intend to pursue all appropriate sanctions, including attorneys' fees and costs, provided under Rule 11. Additionally, and in compliance with Rule 11(c)(2), please refer to the attached Motion for Sanctions.

As discussed below, the Complaint advances frivolous and facially deficient claims for the purpose of harassing Defendants, increasing Defendants' overall litigation costs, and is in clear retaliation for Plaintiffs' failed legal attacks on Defendants and other related events. Indeed, you filed the Complaint only two (2) weeks after the Court in <u>Gregory Boyd et al v. Olmar López Vidal, et al</u>, Civil No. 22-CV-01190-GMM ("22-1190"), denied Plaintiffs' request to file a *Third Amended Complaint*, which is almost identical to the Complaint filed in the lawsuit subject of this

letter, among various other failed legal attacks against Defendants. In sum, the Complaint constitutes vexatious litigation and should be dismissed forthwith.

**The Initial Complaint and Subsequent Attempts to Amend the Pleadings.**

On April 25, 2022, at Plaintiffs' behest, you filed a complaint in the United States District Court for the District of Puerto Rico numbered 22-1190. See 22-1190, Dkt. No. 1. The case stems from a failed effort to construct a landfill-gas-to-energy biorefinery in Humacao, Puerto Rico, spearheaded by GFC Holdings, LLC ("GFC") and Biomass Green Fuels, LLC ("BGF") (collectively, the "Companies"). Plaintiffs were alleged equity holders in the Companies.

The complaint in 22-1190 was amended multiple times. The defendants in 22-1190 moved for dismissal, on various grounds, of the operant *Second Amended Complaint*, see 22-1190, Dkt. No. 145-1. Three years after filing the *Second Amended Complaint*, on January 20, 2026, and while the motions to dismiss were still pending, Plaintiffs asked the Court to amend the complaint in 22-1190 for a **third** time, filing another iteration of the same fact pattern. See 22-1190, Dkt. No. 831.

The *Third Amended Complaint* now included Defendants, and built-upon the *Second Amended Complaint*'s legal theories, this time adding alleged damages regarding some future "Environmental Credits and Tax Benefits" related to an alleged breach of an alleged Revenue Sharing Agreement ("RSA"). 22-1190, Dkt. No. 831-1 at ¶¶ 1009-1010. Notably, these allegations represent a conflict of interest for Plaintiffs' counsel, who were not only directly engaged in the negotiation of the RSA, but also a signing-party to the agreement. Particularly telling is that counsel Jean Paul Vissepó-Garriga, who signed the RSA as managing partner of EFB, LLC ("EFB"), withdrew as counsel for Plaintiffs the exact same day the *Third Amended Complaint* was filed. Clearly, the existence of such patent conflict of interests constitute improper purposes for filing the Complaint, in violation of Rule 11 and other ethical tenets.

Despite counsels' ill-advised intentions, on January 21, 2026, the Court denied Plaintiffs' request to amend the complaint in 22-1190 for a third time. The Court reiterated the holding on January 23, 2026, denying Plaintiffs' motion for reconsideration. On February 7, 2026, just fifteen (15) days after the Court denied Plaintiffs motion for reconsideration, and with no other intention than to unduly harass and increase costs of litigation, Plaintiffs' counsel filed yet another version of the same allegations, but this time as a new and separate Complaint in Gregory Boyd et al. v. Banco Popular de Puerto Rico et al., Civil No. 26-cv-01066-MAJ ("26-1066"). The Complaint in 26-1066 essentially copied the *Third Amended Complaint* that Plaintiffs attempted to file in case 22-1190, which in itself was a rehash of the *Second Amended Complaint*, the operative complaint in 22-1190.

**Other related legal proceedings**

Plaintiffs have presented the same, or very similar claims and/or arguments, in a myriad of related legal proceedings. **None have prospered**. For example, out of many, in Boyd, et al v. Banco Popular de Puerto Rico, 24-cv-1569-PAD ("24-1569"), Plaintiffs alleged Banco Popular de Puerto Rico ("BPPR") violated the anti-tying provisions of the *Bank Holding Company Act* ("BHCA"). On December 22, 2025, the Court in 24-1569 dismissed the claims filed on behalf of

T-Mobile Center at San Patricio, B7 Tabonuco St., Suite 1000 Guaynabo, Puerto Rico 00968-3028
Tel. 787-274-1414 | Fax 787-764-8241
www.delgadofernandez.com

the Companies because of counsels'[1] reliance on a Written Consent was invalid. See 24-1569, Dkt. No. 131.[2] Furthermore, on December 22, 2025, the Court in 24-1569 also dismissed Plaintiffs' claims under the BHCA for lack of standing. See 24-1569, Dkt. No. 131. "To summarize, at the end of the day, the SAC does not allege any direct injury to Boyd or Lassers; and fails to adequately plead a derivative action. In that regard, Boyd and Lassers lack standing to assert anti-tying claims under the BHCA. Correspondingly, their claims must be dismissed." 24-1569, Dkt. No. 131 at 22. Having all federal claims dismissed with prejudice, Judgment was issued accordingly. See 24-1569, Dkt. No. 133. Subsequently, the Motion for Reconsideration was denied on March 10, 2026. See 24-1569, Dkt. No. 140.

**The Court Dismisses Case No. 22-1190 in its entirety.**

On March 18, 2026, the Court in 22-1190 issued an *Opinion and Order* granting several motions to dismiss and, accordingly, dismissed all federal claims with prejudice and dismissed the remaining state law claims without prejudice. See 22-1190, Dkt. No. 874. The *Opinion and Order* is fatal to Plaintiffs' asserted claims in 26-1066. In short, and after sifting through Plaintiffs' allegations for well-plead averments, the Court concluded that Plaintiffs' federal claims fail as a matter of fact because the *Second Amended Complaint* "fails to bridge the gap between alleged misconduct and legally cognizable federal claims." Id. at 35. Specifically, the *Opinion and Order* dismissed the declaratory judgment claim for lack of a justiciable controversy regarding trade secrets, dismissed the securities violations claims for failure to state a plausible claim, and dismissed the RICO claims for lack of standing.

As the Court noted in the *Opinion and Order* dismissing all claims, the *Second Amended Complaint* is replete with contradictory and insufficient pleadings. For example, the *Opinion and Order* emphasized that "Plaintiffs' theory of the alleged purpose is internally inconsistent, alternately asserting that Defendants sought to profit from the project's success and from its failure." Id. at 17. Accordingly, "[s]uch contradictory allegations further undermine the plausibility of a coherent RICO enterprise or common unlawful purpose." Id. at 17-18. More importantly, the *Opinion and Order* concludes that Plaintiffs lack standing to assert claims under RICO. Id. at 23-34. In sum, the Court held that "[l]abeling a series of business disputes or alleged contractual breaches as 'racketeering' does not transform them into RICO violations. Courts must be cautious not to allow ordinary commercial disagreements to be recast as federal racketeering claims." Id. at 27.

The *Opinion and Order* and accompanying Judgment in 22-1190 are a clear refutation and rejection of Plaintiffs' legal theories. As explained in greater detail below, the Court's reasoning in the *Opinion and Order* is equally applicable to the Complaint in 26-1066.

### DISCUSSION

The Complaint in case number 26-1066 runs afoul of Rule 11(b). Fed. R. Civ. P. 11(b)(1)-(2). The Complaint presents frivolous claims against Defendants for the purpose of harassing them

---

[1] Jane A. Becker-Whitaker, Jean Paul Vissepo-Garriga and Luis E. Miñana.
[2] The Court further noted that the Court in 22-1190 had reached a similar conclusion on August 12, 2025. See 22-1190, Dkt. No. 800.

and increasing Defendants' litigation costs in related proceedings, among other improper purposes. Rule 11 further provides that sanctions may be imposed on the violating party. Id. at 11(c)(1).

## A.  Plaintiffs' Claims are Frivolous

The Complaint in 26-1066 is a house of cards built on legally insufficient averments. The Complaint fails as a matter of law because the underlying factual assertions and legal theory have been dismissed through final Judgments in parallel cases. Thus, issue preclusion and/or claim preclusion applies to the majority of allegations and legal theories proffered by Plaintiffs.

Rule 11(b)(2) prohibits legally unwarranted "claims ... and other legal contentions." A filing subject to Rule 11 also must be the result of a reasonable "pre filing inquiry," one that must be more rigorous "when an attorney has months to prepare a complaint." Cooter & Gell v. Harmwrx Corp., 496 U.S. 384, 401 (1990). Here, there were multiple attorneys involved in the various complaints, including the Complaint in 26-1066, and you also had many months to conduct a fulsome prefiling inquiry prior to requesting waiver of service of the Complaint in 26-1066, including the several months the Court noted in 22-1190 that Plaintiffs had before filing the *Third Amended Complaint*. The same *Third Amended Complaint* which was denied just weeks before filing the Complaint in 26-1066.

A cursory review of the Complaint confirms that this prefiling inquiry did not occur. Every single cause of action is legally invalid and barred by *res judicata* and/or collateral estoppel. As the Court noted in 22-1190, the pleadings' core theory is nonsensical, with the Enterprise operating in "opposing and competing directions". This is further obfuscated in the Complaint in 26-1066, wherein Plaintiffs allege "two distinct but related schemes" that still, somehow, share a "common purpose". 26-1066, Dkt. No. 1, *Complaint* at ¶ 991. The inconsistencies are insurmountable. Moreover, not only is the core theory nonsensical and legally insufficient, this and other issues have been subject to a final judgment and, accordingly, issue and claim preclusion apply. Additionally, the claims asserted fail as a matter of law on several other grounds. Lastly, the Complaint in 26-1066 was clearly filed for improper purposes, that is, to harass and augment legal costs on Defendants in retaliation because of Plaintiffs' lack of return on their investment in the Companies. Just as the Court in 22-1190 concluded: "Labeling a series of business disputes or alleged contractual breaches as 'racketeering' does not transform them into RICO violations. Courts must be cautious not to allow ordinary commercial disagreements to be recast as federal racketeering claims." 22-1190, Dkt. No. 874 at 27.

### 1.  *The Complaint in 26-1066 is precluded by previous Judgments.*

The following is a consolidated summary of the final judgments that preclude the claims asserted in the Complaint: (1) On December 22, 2025, the Court in case number 24-1569 dismissed all BHCA claims with prejudice for lack of standing and entered Judgment accordingly (Dkt. Nos. 131, 133), with the Motion for Reconsideration denied on March 10, 2026 (Dkt. No. 140); (2) On January 21, 2026, the Court in case number 22-1190 denied Plaintiffs' request to file a *Third Amended Complaint* on grounds of undue delay and prejudice (Dkt. No. 847), and reaffirmed that denial on January 23, 2026 (Dkt. No. 855); (3) On March 18, 2026, the Court in case number 22-1190 issued an *Opinion and Order* dismissing all federal claims with prejudice, including all RICO

T-Mobile Center at San Patricio, B7 Tabonuco St., Suite 1000 Guaynabo, Puerto Rico 00968-3028
Tel. 787-274-1414 | Fax 787-764-8241
www.delgadofernandez.com

claims for lack of standing and all securities claims for failure to state a plausible claim (Dkt. No. 874); and (4) Two separate federal Courts have ruled that the "Written Consent" purporting to grant Plaintiffs authority to act on behalf of the Companies is invalid (22-1190, Dkt. No. 800; 24-1569, Dkt. No. 131). Each of these rulings constitutes a final Judgment for purposes of issue preclusion and/or claim preclusion.

        i.        Anti-Tying allegations under the BHCA.

Plaintiffs' Complaint in 26-1066 is replete with references to BPPR alleged violations of the BHCA, and based on these allegations, bootstraps its entire theory of damages. See *Complaint* at ¶ 9 ("This tying, in violation of 12 U.S.C. § 1972, enabled BPPR's illegal gains and ESG credits while destroying BGF's value through ongoing fraud and inability to recover the project because of that fraud and subsequent failure to enable a valid claim on the pay and performance bond.") These are not mere references, these allegations seem central to Plaintiffs factual assertions[3] and legal theory for recovery.[4] More significantly, despite predating Plaintiffs contact with Defendants, those allegations of BHCA violations serve as the basis to assert RICO violations regarding Defendants' alleged involvement in the assignment of a Credit Agreement. See *Complaint* at ¶¶ 27, 30-31 That is, the alleged release of anti-tying claims of the Credit Agreement constitute, according to Plaintiffs, predicate acts by Defendants. See id.; see also *Complaint* at page 235. Therefore, the alleged violations of the BHCA have a central role in Plaintiffs legal theory of Defendants' wrongdoing.

Plaintiffs anti-tying claims under the BHCA are, however, legally invalid and facially insufficient. More specifically, the Court in case number 24-1569 has issued a final Judgment dismissing all of Plaintiffs' claims under the BHCA. The Court held that Plaintiffs lack standing to assert claims under the BHCA, and dismissed the claims with prejudice. These constitute final Judgments for purposes of issue preclusion and/or claim preclusion. That is, Plaintiffs lack standing to assert the underlying allegation, an anti-tying claim against BPPR, that allegedly gives rise to Defendants' supposed RICO violation, a release of anti-tying claims. Accordingly, the Complaint is premised on a legally invalid theory. As such, the same must be dismissed forthwith.

        ii.      Plaintiffs' derivative claims.

In its *Opinion and Order*, the Court in case number 24-1569 also dismissed any and all derivative claims filed by Plaintiffs and specifically held that Plaintiffs cannot act on behalf of the Companies because "the Written Consent on which Attorneys Becker and Vissepó rely to justify their purported representation of GFC and BGF is invalid." 24-1569, Dkt. No. 131 at 14. Similarly, the Court in 22-1190, as early as August 12, 2025, had already issued a *Memorandum and Order* denying Plaintiffs' counsels from representing the Companies and filing derivative claims. See 22-1190, Dkt. No. 800 at 19. Accordingly, two separate federal Courts have already ruled that the "Written Consent" that allegedly attributes majority control of the Companies to Plaintiffs is invalid pursuant to the relevant Operating Agreement.

---

[3] 26-1066, Dkt. No. 1, *Complaint* at ¶¶ 9-11, 27, 30-31, 39, 45, 177, 189, 195, 664-666, 763, 765, 865, 877, 949, 984-987

[4] Id. ¶¶ 1002, 1006, 1045, 1048, 1059.

T-Mobile Center at San Patricio, B7 Tabonuco St., Suite 1000 Guaynabo, Puerto Rico 00968-3028
Tel. 787-274-1414 | Fax 787-764-8241
www.delgadofernandez.com

However, the Complaint in 26-1066 purports to use the same invalid "Written Consent" to establish Plaintiffs alleged authority to act on behalf of the Companies. See *Complaint* at ¶¶ 121, 975, 1090-1100. Moreover, the Complaint in 26-1066 asserts the same alleged injuries stemming from the Companies business dealings that were asserted in the *Second Amended Complaint* in 22-1190 and that were deemed legally insufficient for lack of standing. See *Complaint* at ¶¶ 1009, 1012-1013. In sum, not only do Plaintiffs lack standing to assert the underlying BHCA claims used to prop up the alleged RICO violations, but they also further lack standing to assert the RICO claims against Defendants. Accordingly, the Complaint is premised on a legally invalid theory. As such, the same must be dismissed forthwith.

iii.    Plaintiffs' individual claims.

The *Opinion and Order* in 22-1190 also addressed the various alleged injuries sustained by Plaintiffs and the predicate acts allegedly perpetrated by defendants in 22-1190. The result of the Court's analysis, as discussed above, was dismissal of all claims. In the *Opinion and Order* in 22-1190, the Court concluded that the following injuries were legally insufficient to establish RICO standing: the alleged loss of Lassers' SAFE Note; Boyd's exposure as Guarantor; alleged loss of ownership interest in the Companies; and Boyd's alleged loss of a Board seat. Additionally, the Court denied the proposed amendments that intended to include allegations regarding "Environmental Credits and Tax Benefits." These constitute final Judgments for purposes of issue preclusion and/or claim preclusion.

Nevertheless, the same and already-deemed-invalid alleged injuries are re-asserted in the Complaint in 26-1066. Moreover, the alleged predicate acts that occurred between 2023 and 2025 were already rejected by the Court in 22-1190. In sum, the injuries asserted in the Complaint have already been adjudicated as legally deficient elsewhere. Nothing has changed, and Plaintiffs continue to rely on the same legal theories. Accordingly, the Complaint is premised on a legally invalid theory. As such, the same must be dismissed forthwith.

2.  *The Complaint should be dismissed under the Colorado River doctrine.*

Federal Courts may abstain from exercising jurisdiction by providing deference to local forums who have before them the same or similar issues as the federal court. The Complaint in 26-1066 asserts several legal theories and causes of action already asserted by Plaintiffs in State Court, specifically, in SJ2024CV04616. Accordingly, all relevant factors for applying the Colorado River doctrine weigh heavily in favor of abstention. As such, this is yet another reason to dismiss the Complaint in 26-1066.

3.  *Failure to allege a pattern of racketeering activity and Enterprise.*

The only basis for exercising federal jurisdiction over the Complaint in 26-1066 are the alleged RICO claims.[5]  The Complaint, however, fails to state a plausible RICO claim on various grounds. That is, in addition to a lack of standing espoused above, the Complaint's allegations lack

---

[5] Because the Complaint is yet another iteration of the *Second Amended Complaint* in 22-1190, it includes references and allegations pertaining to violations of the *Securities Exchange Act*, but those allegations were already addressed by the Court in 22-1190 and dismissed though its *Opinion and Order*.

T-Mobile Center at San Patricio, B7 Tabonuco St., Suite 1000 Guaynabo, Puerto Rico 00968-3028
Tel. 787-274-1414 | Fax 787-764-8241
www.delgadofernandez.com

other essential components of a valid RICO claim. For example, the Complaint fails to properly allege a pattern of racketeering activity and also fails to properly allege a RICO Enterprise. These are just some of the most salient deficiencies of the Complaint. Accordingly, the Complaint is premised on a legally invalid theory. As such, the same must be dismissed forthwith.

### 4. *The alleged breaches to the NDA and RSA are legally implausible.*

The *Third Amended Complaint*, that was rejected by the Court in 22-1190, already included allegations of breaches to the NDA and RSA. Under claim preclusion grounds, and as discussed above, this is enough to warrant the voluntary dismissal of those claims and the Complaint in 26-1066. However, there are additional reasons for dismissing the Complaint and any claims pertaining to alleged breaches of the NDA and RSA including but not limited to the fact that the legal theory underlying them is non-sensical and contradictory.

As to the NDA, Plaintiffs allege that Defendants "used confidential information obtained under the NDA to plan and execute the acquisition of BGF's assets" in violation of the NDA's "Business Purpose" because it was done for Defendants own benefit "without Boyd and Lassers' participation." *Complaint* at ¶ 168. But the "Business Purpose" of the NDA is, precisely, for the possible acquisition of the Companies and related entities. See *Complaint*, Exhibit 13 page 3. Therefore, under Plaintiffs' theory, Defendants' achievement of completing the "Business Purpose," the *raison d'etre* of the NDA, constitutes a violation of the NDA itself. Further, Plaintiffs' logic is flawed because the "Business Purpose" does not preclude Defendants benefitting from the transaction, nor does it require Boyd and/or Lassers' participation in the transaction, nor does it bar the acquisition of the Companies. Arguing otherwise runs afoul of Rule 11 principals.

The RSA, on the other hand, was not included as an exhibit to the Complaint, and no excerpts were incorporated into the allegations. This is no surprise. Plaintiffs' counsel, Vissepó-Garriga, executed the RSA as Managing Member of the signing entity EFB, and Becker-Whitaker was listed as EFB's legal counsel. On the same exact day that the *Third Amended Complaint* was filed in 22-1190, asserting breaches to the RSA, counsel Vissepó-Garriga withdrew as Plaintiffs' counsel. Becker-Whitaker remained. Moreover, the RSA's benefits accrue in favor of EFB only if Plaintiffs' case in 22-1190 were resolved through a settlement agreement, further evidence of (1) a clear conflict of interest for Plaintiffs' counsel and (2) the flawed logic behind Plaintiffs' theory. That is, the condition precedent for the alleged RSA benefits never occurred, further damning Plaintiffs' theory.

Yet another example of the flawed logic underscoring the Complaint is that, therein, Plaintiffs allege the Companies were destroyed, see *Complaint* at ¶¶ 9, 651, 743, but then claim a percentage of potential future gains for the Companies' production, see *Complaint* at ¶¶ 1008-1009, 1012-1013. At the very least, this alleged claim is not ripe but, more importantly, the legal theory is implausible. In sum, the flaws are numerous and impact the soundness of the Complaint in a myriad of ways. As such, the Complaint must be dismissed.

T-Mobile Center at San Patricio, B7 Tabonuco St., Suite 1000 Guaynabo, Puerto Rico 00968-3028
Tel. 787-274-1414 | Fax 787-764-8241
www.delgadofernandez.com

5.  *Plaintiffs lack standing to assert RSA claims because the alleged injury belongs to a non-party.*

Beyond the implausibility of the RSA claims discussed above, there is a fundamental standing defect that independently warrants dismissal. The Complaint itself acknowledges that the alleged future revenues under the RSA, and the alleged environmental credits and tax benefits, pertain to a non-party entity called "EFB." <u>See</u> *Complaint* at ¶ 79. EFB is not a plaintiff in this action. Accordingly, Plaintiffs lack standing to assert any claims for damages arising from the RSA because the direct loss, if any, belongs to EFB, not to Plaintiffs. This constitutes an independent and dispositive jurisdictional defect that requires dismissal of the RSA-related claims. As the Court in 22-1190 repeatedly held, derivative injuries cannot be repackaged as individual harms to circumvent standing requirements. The same principle applies here with equal force.

## B.  The Complaint was Filed for Improper Purposes

The frivolous nature of the claims asserted in the Complaint in 26-1066 warrant dismissal, as discussed above, but Rule 11 also bars a complaint "being presented for any improper purpose." Fed. R. Civ. P. 11(b)(1). As an initial matter, the frivolous nature of Plaintiffs' claims help demonstrate their improper purpose. The timing of this litigation further demonstrates the improper purpose of the Complaint. The timeline is telling: on January 21, 2026, the Court denied Plaintiffs' request to file the *Third Amended Complaint* in case 22-1190; just fifteen (15) days later, on February 7, 2026, Plaintiffs filed the Complaint in 26-1066.

Notably, the *Third Amended Complaint* intended to add Defendants as defendants to the case in 22-1190. Instead of filing an appeal of the denial to amend, Plaintiffs filed the unmeritorious Complaint in 26-1066 with essentially the same allegations that were already rejected by the Court on various grounds. Therefore, the act of filing the Complaint, instead of filing an appeal, further demonstrates Plaintiffs' intent to harass Defendants.

The Complaint in 26-1066 also includes alleged breaches to the RSA which, as discussed herein, are claims that constitute a conflict of interest for Plaintiffs' counsel. This is further evidence that the Complaint was filed for improper purposes.

Moreover, Plaintiffs' litigation activity demonstrates, first, Plaintiffs' shotgun approach of asserting same or similar claims/arguments in multiple forums and, second, the numerous deficiencies with Plaintiffs' claims/arguments. The several litigation fronts manned by Plaintiffs evidences a disposition for vexatious litigation. Further, the multiple dismissals undercut Plaintiffs' legal theories. As such, it is clear that the Complaint was filed for improper purposes, such as harassing Defendants, delaying related litigation and increasing Defendants' litigation costs. Accordingly, the Complaint must be dismissed.

## C.  Counsels' Conduct Raises Serious Ethical Concerns.

As discussed above, filing the Complaint in 26-1066 violates the Rule 11 mandate that bars frivolous claims and prohibits using the legal process for improper purposes. But serious additional ethical concerns are also present. The ABA's Model Rules and the Puerto Rico Canons of

Professional Ethics prohibit direct communications with other parties without their counsel and also prohibit counsel's conflicts of interest, among other prohibitions. Yet Plaintiffs' counsels' conduct in the above-referenced case and other related proceedings has also run afoul of these central tenets of the legal profession.

Particularly, ABA Model Rule 1.7(a)(2) and Canons 21 and 23 prohibit situations where counsel may have a personal stake in the litigation. Defendants are aware that Plaintiffs' counsel have a significant personal interest in the breach of the RSA claims because, not only were they involved in the negotiation of the RSA, but provisions of that same agreement inure in their favor through EFB, such as the environmental attributes alleged in the Complaint. Therefore, counsel is in violation of the aforementioned ethical rules.

Similarly, Plaintiffs' counsels have violated ABA Model Rule 4.2 and Canon 28 which prohibit communications with parties who are represented by counsel without their counsel's presence or acquiescence. We have obtained documentary evidence of numerous *ex parte* written communications between Plaintiffs' counsel and Defendants, as well as evidence of in-person *ex parte* meetings concerning the subject matter of this litigation. For example, counsel Becker-Whitaker texted one of Defendants after a conversation that, "**Btw, you and I never spoke**." These undisclosed communications, undertaken outside the presence of and without notice to opposing counsel, raise serious concerns regarding counsel's compliance with their duties of candor and fairness. Compounding these violations, the evidence further demonstrates that Plaintiffs' counsel holds a direct financial interest in the outcome of the litigation, creating an impermissible conflict that calls into question the integrity of their conduct and the proceedings as a whole. Therefore, counsel is in violation of the aforementioned ethical rules.

By prosecuting Case No. 26-1066, Plaintiffs' counsel has continued and further compounded these ethical violations. Accordingly, Defendants are prepared to pursue all appropriate remedies, including the filing of formal ethical complaints against Plaintiffs' counsel before the relevant disciplinary authorities.

In sum, the claims asserted in the Complaint are not warranted by existing law or any nonfrivolous argument for its extension, modification, or reversal, and instead appear calculated to harass Defendants and needlessly increase the costs of litigation. Such conduct violates Rule 11(b)(1) and (b)(2). Defendants therefore demand that Plaintiffs dismiss the Complaint within twenty-one (21) days of this letter. Should Plaintiffs decline to do so, Defendants will seek all relief available under Rule 11, including the imposition of appropriate sanctions. Please refer to the attached Motion for Sanctions.

Sincerely,

s/Alfredo Fernández Martínez
afernandez@delgadofernandez.com

s/Pedro Hernández Freire
phernandez@delgadofernandez.com

T-Mobile Center at San Patricio, B7 Tabonuco St., Suite 1000 Guaynabo, Puerto Rico 00968-3028
Tel. 787-274-1414  |  Fax 787-764-8241
www.delgadofernandez.com

s/Daniel Limés Rodríguez
dlimes@delgadofernandez.com

Enclosures

T-Mobile Center at San Patricio, B7 Tabonuco St., Suite 1000 Guaynabo, Puerto Rico 00968-3028
Tel. 787-274-1414 | Fax 787-764-8241
www.delgadofernandez.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**GREGORY BOYD and JONATHAN LASSERS, et al.,**

      **Plaintiffs,**

v.

**BANCO POPULAR DE PUERTO RICO., et al.**

      **Defendants.**

Civil Action No.: 3:26-cv-01066-MAJ

---

**DEFENDANTS' MOTION FOR RULE 11 SANCTIONS
AND MEMORANDUM IN SUPPORT THEREOF**

---

**TO THE HONORABLE COURT:**

**COME NOW**, codefendants, Rafael Rojo, Carlos Penzini, Diego Rodríguez, VRM Penzini Capital L.L.C., VRM Penzini Fund I L.L.C., VRM Penzini Fund I, LLC, Renewable Series II, Humacao RNG, L.L.C., and Ponce RNG, LLC (collectively, the "Defendants") by and through their undersigned counsel and respectfully move for the imposition of sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure with regard to the Complaint filed by Plaintiffs Gregory S. Boyd ("Boyd") and Jonathan Lassers ("Lassers") (collectively, the "Plaintiffs") at docket number 1.

## I.     INTRODUCTION

1. The Complaint advances frivolous and facially deficient claims. Two separate federal Courts in this district have already ruled that the allegations of the Complaint are legally insufficient. Moreover, Plaintiffs filed the Complaint for the purpose of harassing Defendants, increasing Defendants' overall litigation costs, and in clear retaliation for Plaintiffs' failed legal attacks on Defendants and other events, all related to a years-long business dispute involving GFC

Holdings, LLC ("GFC") and Biomass Green Fuels, LLC ("BGF") (collectively, the "Companies").

Indeed, and as a glaring example of improper purpose, Plaintiffs filed the instant Complaint only

two (2) weeks after an almost identical *Third Amended Complaint* was rejected by a Court in this

District. In sum, Plaintiffs claims are precluded by previous judgments, that they now try to attack

collaterally, and, more importantly, the same flaws that led to the Judgments in dismissal subsist

in the Complaint at docket number 1. That is, despite having ample opportunity to do so, years in

fact, Plaintiffs failed to "cure" the multiple deficiencies with their pleadings. The reason is simple.

Plaintiffs' legal theories are uncurable. They are business disputes masquerading as a purported

RICO enterprise and must be dismissed forthwith.

2.      On April 10, 2026, and pursuant to Federal Rule of Civil Procedure 11(c)(2),

Defendants served a copy of this Motion for Sanctions alongside an explicative letter. See **Exhibit**

**1**. As explained in further detail below, Plaintiffs claims are frivolous and were filed for improper

purposes. Plaintiffs, however, failed to dismiss and/or withdraw the instant Complaint.

Accordingly, and pursuant to Rule 11(c), the Honorable Court should impose sanctions, as well as

attorneys' fees and costs, on Plaintiffs.

## II.     PROCEDURAL BACKGROUND

### A.  The initial complaint and subsequent attempts to amend the pleadings.

3.      On April 25, 2022, Plaintiffs filed a complaint in the United States District Court

for the District of Puerto Rico titled Gregory Boyd et al v. Olmar López Vidal et al., Civil No. 22-

cv-01190-GMM ("22-1190"), alleging eight (8) causes of action against more than twenty-five

(25) defendants. See 22-1190, Dkt. No. 1. The case stems from the Companies' failed effort to

construct a landfill-gas-to-energy biorefinery in Humacao, Puerto Rico. Plaintiffs were alleged

equity holders in the Companies.

4.      After several iterations of the complaint, on January 23, 2023, Plaintiffs filed a

*Second Amended Complaint*, this time asserting ten (10) causes of action, including violations of

the *Racketeer Influenced and Corrupt Organization* (RICO) Act, violations of the *Securities*

*Exchange Act*, breaches to several agreements, breach of fiduciary duty, declaratory judgment, and

even defamation, among other causes of action. See 22-1190, Dkt. No. 145-1. The defendants in

22-1190 moved for dismissal on various grounds.

5.      On January 20, 2026, while the motions to dismiss were still pending, Plaintiffs

asked the Court to amend the complaint in 22-1190 for a third time, filing another iteration of the

same fact pattern. See 22-1190, Dkt. No. 831. The proposed amendments included new defendants,

such as: Ernesto Villarini from Puerto Rico Fund for Growth and Community Development

Venture Capital Alliance; Ignacio Álvarez and Javier Ferrer from Banco Popular de Puerto Rico;

and Defendants. The proposed amendments also intended to include more "illegal" acts from these

new defendants and reframed the allegations against the defendants who had settled (Olmar López

Vidal and Olmar López Gómez (the "Lopezes"), and related entities). Additionally, the proposed

amendments expanded on the *Second Amended Complaint*'s legal theories, this time adding

alleged damages regarding some future "Environmental Credits and Tax Benefits" related to an

alleged breach of an alleged Revenue Sharing Agreement ("RSA").  22-1190, Dkt. No. 831-1 at

¶¶ 1009-1010.

6.      On January 21, 2026, the Court denied Plaintiffs' request to amend the complaint

in 22-1190 for a third time. The Court detailed various reasons for the denial, including excessive

delay and being unduly prejudicial to the defendants. Specifically, the Court explained that

> It is well settled that a court may deny leave to amend for various reasons, including
> "undue delay in filing the motion, bad faith or dilatory motive, repeated failure to
> cure deficiencies, undue prejudice to the opposing party, and futility of
> amendment." United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st
> Cir. 2009) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Here, "[w]e find that
> [nearly] any of these reasons are enough to deny Plaintiff a fourth chance at the
> batter's box." Ortiz v. Nat'l Superior Basketball, No. 10-CV-1985-JAG, 2012 WL

112982, at *1 (D.P.R. Jan. 12, 2012). Nearly four years have passed since Plaintiffs filed their original Complaint. Docket No. [1]. The Second Amended Complaint the operative complaint was filed on January 31, 2023. Docket No. [147]. In other words, **Plaintiffs have had three years to cure deficiencies identified in the current complaint and did not do so.** Instead, Plaintiffs engaged in numerous replies and surreplies against all Defendants who moved to dismiss the Second Amended Complaint, and the case was stayed pending review of these documents. See Docket No. [641]. Indeed, Plaintiffs as early as June 2025 mentioned working on a proposed Third Amended Complaint, but did not submit anything to this Court for an additional seven months. See Docket No. [715] at 11. **Though Plaintiffs suggest that the pleadings could not have been updated at any earlier point, their summary of proposed amendments – describing the edits as demonstrating "ongoing" violations, "additional" consistent conduct, "[e]nhanc[ing]" specificity, and "[u]pdating" damage amounts all belie that assertion.** See Docket No. [831] at 7-8. Moreover, as the parties have fully briefed responses to the Second Amended Complaint, **a new complaint three years later would certainly be unduly prejudicial to Defendants.** See generally Docket Nos. [651], [652], [654], [655], [657], [659], [710], [711], [715], [717], [718], [777], [780], [782], [784], [796], [797], [798], [803], [813]. As such, the Court hereby denies Plaintiffs leave to submit a fourth complaint.

22-1190, Dkt. No. 847 (emphasis added).

7.      The Plaintiffs asked the Court to reconsider the denial to amend, and on January 23, 2026, the Court again denied the amendments and expanded on the Court's previous reasons for denying the request. The Court reasoned as follows:

Under Fed. R. Civ. P. 59(e), a court may alter or amend a judgment to correct "manifest error of law or fact" or to prevent "manifest injustice." Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005). The First Circuit "note[s]," however, "that it is very difficult to prevail on a Rule 59(e) motion." Id. Here, Plaintiffs fail to demonstrate any clear error of law or fact or manifest injustice. Pursuant to Federal Rule of Civil Procedure 15(a)(2), court "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). This "does not mean... that a trial court must mindlessly grant every request for leave to amend." Calderon-Sierra v. Wilmington Trust Co., 715 F.3d 14, 19 (1st Cir. 2013) (citation omitted). "As a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting." Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004). When, as here, "considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some 'valid reason for [their] neglect and delay.'" Grant v. News Group Boston, Inc., 55 F.3d 1, 6 (1st Cir. 1995) (citation omitted). Moreover, "[o]nce a scheduling order is in place," as is the case here at Docket No. [593], before discovery was stayed for the review of the myriad current motions pending - "the liberal default rule is replaced by the more demanding 'good cause'

4

standard of Fed. R. Civ. P. 16(b)." Steir, 383 F.3d at 12; O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 15455 (1st Cir. 2004). **While Plaintiff alleges, conclusively, that there is no undue delay to Defendants, and reasons that new claims relate to conduct after the filing of the Second Amended Complaint on January 31, 2023, there is no justification, other than ubiquitous aspects of litigation such as settlement negotiations, for why the request is three years belated.** "Regardless of the context, the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." Steir, 383 F.3d at 12 (emphasis added). As such, the Court reiterates its ruling at Docket No. 847.

22-1190, Dkt. No. 855 (emphasis added).

8.    On February 7, 2026, just fifteen (15) days after the Court denied their request to file a *Third Amended Complaint* in 22-1190, and with no other intention than to unduly harass and increase costs of litigation, Plaintiffs filed yet another version of the same allegations, but this time as a new and separate Complaint in the above-captioned case Gregory Boyd et al. v. Banco Popular de Puerto Rico et al., Civil No. 26-cv-01066-MAJ ("26-1066"). The Complaint in 26-1066 essentially copied the *Third Amended Complaint* that Plaintiffs attempted to file in case 22-1190, which in itself was a rehash of the *Second Amended Complaint*, the operative complaint in 22-1190 with motions to dismiss still pending.

**B.  The Court dismissed the *Second Amended Complaint* in its entirety.**

9.    On March 18, 2026, the Court in 22-1190 issued an *Opinion and Order* granting several motions to dismiss and, accordingly, dismissed all federal claims with prejudice and dismissed the remaining state law claims without prejudice. See 22-1190,  Dkt. No. 874. [1]

10.   The Court concluded that Plaintiffs' federal claims fail as a matter of fact and law because the *Second Amended Complaint* "fails to bridge the gap between alleged misconduct and

---

[1] Although the Complaint was filed prior to the issuance of the *Opinion and Order* in 22-1190, this Motion for Sanctions and accompanying letter were served upon Plaintiffs' counsel on April 10, 2026. Therefore, Plaintiffs' counsel were aware of the issues discussed herein, yet failed to dismiss the invalid Complaint, thus constituting sanctionable conduct.

legally cognizable federal claims." Id. at 35. Specifically, the *Opinion and Order* dismissed the declaratory judgment claim for lack of a justiciable controversy regarding trade secrets, dismissed the securities violations claims for failure to state a plausible claim, and dismissed the RICO claims for lack of standing.

11.     As the Court noted in the Opinion and Order dismissing all claims, the Second Amended Complaint was "Plaintiffs' third iteration of their complaint, filed with the benefit of prior judicial guidance regarding pleading deficiencies." Id. at 3-4. Moreover, as the standard requires, "[t]he Court notes that these allegations reflect Plaintiffs' characterization of a complex and heavily disputed business relationship and are recited solely and accepted as true solely for purposes of resolving the Motions to Dismiss." Id. at 5.  Even with this lenient standard, the *Opinion and Order* is replete with findings of contradictory and insufficient pleadings. For example, the *Opinion and Order* reiterates that Plaintiffs fail to plea fraud with particularity:

> As Magistrate Judge McGiverin identified early on, Plaintiffs' allegations 'make sweeping statements about fraud but fail to plea fraud with particularity.' (Docket No. 74 at 10-11). This remains true when it comes to the Second Amended Complaint: Plaintiffs often make nominal, vague, and conclusory statements about the involvement of each RICO Defendant, their connection to a predicate act, and the time, place, and manner of such actions. *See generally* (Docket No. 174).

Id. at 18.

12.     Furthermore, the Opinion and Order notes that

> At different times in the *Second Amended Complaint*, Plaintiffs describe the purpose of this RICO pursuit in opposing and competing directions: either for the Defendants to enrich themselves from the revenue that would come from the success of the biorefinery and obtaining gas rights agreement, (Docket No. 147 at 20, 84), or to profit from the demise of the biorefinery. (Id. at 144 ¶¶ 96, 555, 693).

Id. at 16 n. 11. As such, "Plaintiffs' theory of the alleged purpose is internally inconsistent, alternately asserting that Defendants sought to profit from the project's success and from its failure." Id. at 17. Accordingly, "**[s]uch contradictory allegations further undermine the**

6

**plausibility of a coherent RICO enterprise or common unlawful purpose**.” Id. at 17-18 (emphasis added).

13.    More importantly, the *Opinion and Order* concludes that Plaintiffs lack standing to assert claims under RICO. Id. at 23-34. First, Plaintiffs lack derivative standing for harm caused to the Companies. Id. at 26 (“Thus, BGF/GFC’s diminished value cannot be cognizable as an injury either derivatively or individually for either Boyd or Lassers.”). Second, Plaintiffs lack standing regarding the alleged loss of Lassers’ SAFE Note because Plaintiffs fail to “demonstrate that the remaining Defendants have sufficient ties to the action to satisfy causation. Only the Lópezes are directly tethered to the alleged negation of Lassers’ SAFE note and ownership.” Id. at 29. Third, Plaintiffs lack standing regarding Boyd’s Guarantor Status because “[t]his too is a derivative injury marionetting as an individual harm.” Id. at 30. Fourth, Plaintiffs lack standing regarding the alleged loss of ownership interest in the Companies because it also constitutes “another derivative harm, which would fail for the same reasons stated *supra*.” Id. at 32. Fifth, Plaintiffs lack standing to assert claims regarding Boyd’s alleged loss of a Board seat. Id. at 34 (“Thus, Boyd’s lost Board seat is only directly related to the Lópezes and cannot rise above pure contingency as to the remaining Defendants to meet RICO’s strict causality requirements.”). In sum, the Court held that “[l]abeling a series of business disputes or alleged contractual breaches as ‘racketeering’ does not transform them into RICO violations. Courts must be cautious not to allow ordinary commercial disagreements to be recast as federal racketeering claims.” Id. at 27.

14.    The Opinion and Order and accompanying Judgment are a clear refutation and rejection of Plaintiffs’ legal theories. As explained in greater detail below, the Court’s reasoning in the *Opinion and Order* is equally applicable to the Complaint in 26-1066.

**C.  Plaintiffs’ multiple related legal proceedings.**

15.    Plaintiffs have presented the same, or very similar claims and/or arguments, in a

7

myriad of related legal proceedings. None have prospered. For example, in Boyd et al v. Banco Popular De Puerto Rico, 24-cv-1569-PAD ("24-1569"), Plaintiffs alleged Banco Popular de Puerto Rico ("BPPR") violated the anti-tying provisions of the *Bank Holding Company Act* ("BHCA").

16.    On December 22, 2025, the Court in 24-1569 dismissed the claims filed on behalf of the Companies because of counsels' reliance on a Written Consent was invalid and further noted that **the Court in 22-1190 had reached a similar conclusion on August 12, 2025**. See 24-1569, Dkt. No. 131; 22-1190, Dkt. No. 800. The Court in 22-1190 further reiterated its conclusion regarding Plaintiffs' lack of standing to assert derivative claims in the March 18, 2026 *Opinion and Order*.

17.    Additionally, on December 22, 2025, the Court in 24-1569 also dismissed Plaintiffs' claims under the BHCA for lack of standing. See 24-1569, Dkt. No. 131. "To summarize, at the end of the day, the SAC does not allege any direct injury to Boyd or Lassers; and fails to adequately plead a derivative action.  In that regard, Boyd and Lassers lack standing to assert anti-tying claims under the BHCA. Correspondingly, their claims must be dismissed." 24-1569, Dkt. No. 131 at 22. Having all federal claims dismissed with prejudice, Judgment was issued accordingly. See 24-1569, Dkt. No. 133. Subsequently, Plaintiffs' Motion for Reconsideration was denied on March 10, 2026. See 24-1569, Dkt. No. 140.[2]

18.    As anticipated, these are not the only cases where Plaintiffs and Plaintiffs' counsel have asserted similar claims. In Banco Popular de Puerto Rico et al v. GFC Holdings LLC et al, filed in the Court of First Instance, San Juan Superior Court, numbered SJ2024CV04616, Boyd has also raised identical arguments regarding the purported representation of the Companies,

---

[2] Although the Complaint was filed prior to the denial of Plaintiffs' motion for reconsideration in 24-1569, this Motion for Sanctions and accompanying letter were served upon Plaintiffs' counsel on April 10, 2026. Therefore, Plaintiffs' counsel were aware of the issues discussed herein, yet failed to dismiss the invalid Complaint, thus constituting sanctionable conduct.

allegations of violations under the BHCA, and other alleged breaches and/or fraudulent conduct by BPPR and Defendants. See SJ2024CV04616. The State Court dismissed the BHCA claims, while the other arguments are still pending resolution. Plaintiffs have also taken the arguments regarding the purported representation of the Companies to the Puerto Rico Court of Appeals. See TA2025AP00277.

19.    In State Court, Boyd has also sued the Companies, and officers thereof, seeking injunctive relief to obtain several internal documents from the Companies. See SJ2024CV00058; SJ2024CV00117; SJ2022CV06509. All three cases were dismissed.

20.    Additionally, the past Chief Financial Officer of the Companies filed suit against Boyd for various State law claims. See HU2023CV00820. Boyd attempted to remove the action to Federal Court and consolidate the matter with case number 22-1190; the consolidation was denied, and the case was remanded to State Court. See 23-cv-1360-RAM.

**D.  The Complaint in 26-1066.**

21.    The allegations of the Complaint in case number 26-1066 traces the same allegations asserted in the *Second Amended Complaint* in 22-1190, that was dismissed in its entirety, as well as the same allegations asserted in the *Third Amended Complaint* of 22-1190, which was rejected by the Court on various grounds. Moreover, the Complaint in 26-1066 also incorporates legal theories that have been similarly rejected by another Court in this district. See 24-1569. As such, and for other reasons discussed below, the Complaint presents frivolous claims for improper purposes.

22.    At first glance, it is worth noting that several central figures in the alleged RICO Enterprise and/or illegal schemes alleged by Plaintiffs are not parties to the Complaint in case 26-1066. This is similar to what eventually occurred in case number 22-1190 by Plaintiffs settlement with multiple defendants, including the Lopezes, whereby central figures in the alleged unlawful

conduct were no longer parties to the action, leading to dismissal of those claims. See, *e.g.*, 22-1190, Dkt. No. 874 at 34.

23.    Furthermore, most of the "Factual Allegations" of the Complaint in 26-1066 pertain to events occurring before Defendants allegedly came into contact with Plaintiffs. That is, of the close to 800 "Factual Allegations", more than 650 predate Defendants alleged involvement and/or participation in the Enterprise. See 26-1066, Dkt. No. 1 at 69-245. Those allegations that predate Defendants' alleged involvement are, in fact, word for word the same as those allegations contained in the *Second Amended Complaint* in case number 22-1190. That is, the vast majority of "Factual Allegations" of the Complaint in case number 26-1066 are the same allegations of the *Second Amended Complaint* that were dismissed for multiple deficiencies in case number 22-1190.

24.    Moreover, the gist of the allegations that were added in the Complaint for case number 26-1066 were already asserted in the *Third Amended Complaint* that was rejected by the Court in case number 22-1190. Accordingly, and as a product of the reliance of previous allegations, the Complaint in case no. 26-1066 fails as a matter of law.

25.    What little is added by the Complaint in case number 26-1066 to the allegations already asserted through the *Second Amended Complaint* in case number 22-1190, those additions also fail as a matter of law, not only because they are precluded by previous rulings, but also on various other grounds. Specifically, the Complaint in case number 26-1066 introduces allegations regarding Defendants supposed breach to a Non-Disclosure Agreement ("NDA") and a Revenue Sharing Agreement (RSA), see, e.g., Complaint at ¶¶ 920, 922, 951-952, and the alleged invalidity of an Asset Acquisition Agreement, see, e.g., Complaint at ¶¶ 920, 947, 964, 984. These purportedly "novel" allegations do not survive the plausibility muster under RICO as explained below, nor do they serve as a basis for valid stand-alone causes of action.

26.    Moreover, these "novel" allegations represent a conflict of interest for Plaintiffs'

10

counsel, who were not only directly engaged in the negotiation of the RSA, but also a signing-party to the agreement. Particularly telling is that counsel Jean Paul Vissepó-Garriga, who signed the RSA as managing partner of EFB, LLC ("EFB"), one of the parties to the RSA, withdrew as counsel for Plaintiffs the exact same day the *Third Amended Complaint*, which asserted claims under the RSA, was filed in 22-1190. Of importance, Plaintiffs are represented in this case by the law firm of **Becker-Vissepó**; therefore, the withdrawal of one of the two attorneys in the firm does not resolve this conflict of interest. Clearly, the existence of such patent conflict of interests constitutes improper purposes for filing the Complaint, in violation of Rule 11 and other ethical tenets.

**E.  Compliance with Rule 11(c).**

27.    On April 10, 2026, and pursuant to Federal Rule of Civil Procedure 11(c)(2), Defendants served a copy of this Motion for Sanctions alongside an explicative letter. See **Exhibit 1**. Defendants requested that Plaintiffs dismiss the Complaint within twenty-one (21) days of service of the Motion for Sanctions and explicative letter. Plaintiffs failed to dismiss the Complaint. Accordingly, Defendants move for sanctions, attorneys' fees and costs.

## III.    DISCUSSION

28.    As relevant here, Rule 11(b) of the Federal Rules of Civil Procedure provides that by presenting a pleading to the Court, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances [that] (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(1)-(2). Rule 11 further provides that "[i]f … the court determines that Rule 11(b) has been violated, the court may impose an

appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Id. at 11(c)(1).

29.    The Complaint in case number 26-1066 runs afoul of Rule 11(b). It presents frivolous claims against Defendants for the purpose of harassing them and increasing Defendants litigation costs in related proceedings in retaliation because of Plaintiffs' lack of return on their investment in the Companies. Just as the Court in 22-1190 concluded: "Labeling a series of business disputes or alleged contractual breaches as 'racketeering' does not transform them into RICO violations. **Courts must be cautious not to allow ordinary commercial disagreements to be recast as federal racketeering claims**." 22-1190, Dkt. No. 874 at 27 (emphasis added).

**A.  Plaintiffs' claims are frivolous.**

30.    Rule 11(b)(2) prohibits legally unwarranted "claims ... and other legal contentions." Fed. R. Civ. P. 11(b)(2). A filing subject to Rule 11 also must be the result of a reasonable "pre filing inquiry," one that must be more rigorous "when an attorney has months to prepare a complaint." Cooter & Gell v. Harmwrx Corp., 496 U.S. 384, 401 (1990). Here, there were multiple attorneys involved in the various complaints, including the Complaint in 26-1066, and counsel also had many months to conduct a fulsome prefiling inquiry prior to requesting waiver of service of the Complaint in 26-1066, including the several months the Court noted in 22-1190 that Plaintiffs had before filing the *Third Amended Complaint*. The same *Third Amended Complaint* which was denied just weeks before filing the Complaint in 26-1066.

31.    A cursory review of the Complaint confirms that this prefiling inquiry did not occur. Every single cause of action is legally invalid and/or barred by *res judicata* or collateral estoppel. As the Court noted in 22-1190, the pleadings' core theory is nonsensical, with the RICO Enterprise operating in "opposing and competing directions". The RICO Enterprise's operations are further

12

obfuscated in the Complaint in 26-1066, wherein Plaintiffs allege "two distinct but related schemes" that still, somehow, share a "common purpose". 26-1066, Dkt. No. 1, Complaint at ¶ 991. The inconsistencies are insurmountable.

32.    Moreover, not only is the core theory nonsensical and legally insufficient, this and other issues have already been subject to a final judgment and, accordingly, issue and claim preclusion apply. Additionally, the claims asserted fail as a matter of law on several other grounds, further explained below.

*1.    The Legal Standard for Res Judicata and Collateral Estoppel*

33.    If a Judgment was entered by a Federal Court exercising federal question jurisdiction, then "the applicability of res judicata and collateral estoppel is a matter of federal law." Ramallo Bros. Printing, Inc. v. El Dia, Inc., 490 F.3d 86, 89 (1st Cir. 2007) (citing Maher v. GSI Lumonics, Inc., 433 F.3d 123, 126 (1st Cir. 2005)). "Ordinarily, a dismissal for failure to state a claim is treated as a dismissal on the merits, and there is abundant case law to this effect." AVX Corp. v. Cabot Corp., 424 F.3d 28, 30 (1st Cir. 2005). Moreover, a denial to amend a pleading may constitute a final judgment on the merits of the claims in the proposed amendments, even if the basis for the denial was based on procedural grounds such as timeliness. See Hatch v. Trail King Indus., 699 F.3d 38, 45-46 (1st Cir. 2012); Satanic Temple v. City of Belle Plaine, 80 F.4th 864, 870-71 (8th Cir. 2023).

34.    "'Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action,' while '[u]nder collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" Mala v. Palmer, 755 F. Supp. 2d 386, 390-91 (D.P.R. 2010) (quoting San Remo Hotel, L.P. v. City & County of San Francisco, 545 U.S. 323, 336 (2005)).

13

"Both doctrines seek to 'prevent[] plaintiffs from splitting their claims by providing a strong incentive for them to plead all factually related allegations and attendant legal theories for recovery the first time they bring suit.'" Id. at 391 (quoting Apparel Art Int'l v. Amertex Enters., 48 F.3d 576, 583 (1st Cir. 1995)).

35.    *Res Judicata*, also known as claim preclusion, is triggered when "(1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits." Id. at 391 (quotations omitted). Collateral estoppel, also known as issue preclusion, requires "that (1) the issue sought to be precluded in the later action is the same as that involved in the earlier action; (2) the issue was actually litigated; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was essential to the judgment." Ramallo Bros. Printing, Inc. v. El Dia, Inc., 490 F.3d 86, 89 (1st Cir. 2007)  (citing Keystone Shipping Co. v. New England Power Co., 109 F.3d 46, 51 (1st Cir. 1997))). Furthermore, in the Court of Appeals for the First Circuit recognizes the application of "nonmutual collateral estoppel" whereby a party may use it offensively, and "seek[] to foreclose the [plaintiff] from litigating an issue the [plaintiff] has previously litigated unsuccessfully in an action with another party." Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 770 (1st Cir. 2010)(quoted in Mala, 755 F. Supp. 2d. at 391).

   *2.  The Complaint in 26-1066 is precluded by previous final Judgments.*

36.    The Complaint in 26-1066 is a house of cards built on legally insufficient averments. The Complaint fails as a matter of law because the underlying factual assertions and legal theory have been dismissed through final Judgments in parallel cases. Thus, issue preclusion and/or claim preclusion applies to the majority of allegations and legal theories proffered by Plaintiffs.

14

i.    Anti-Tying allegations under the BHCA.

37.    Plaintiffs' Complaint in 26-1066 is replete with references to BPPR's alleged violations of the BHCA, and based on these allegations, bootstraps Plaintiffs' entire theory of damages. See Dkt. No. 1, *Complaint* at ¶ 9 ("This tying, in violation of 12 U.S.C. § 1972, enabled BPPR's illegal gains and ESG credits while destroying BGF's value through ongoing fraud and inability to recover the project because of that fraud and subsequent failure to enable a valid claim on the pay and performance bond.") These are not mere references to business disputes; these allegations seem central to Plaintiffs factual assertions[3] and legal theory for recovery.[4]

38.    More significantly, despite predating Plaintiffs contact with Defendants, those allegations of BHCA violations serve as the basis to assert RICO violations regarding Defendants' alleged involvement in the assignment of a Credit Agreement. See *Complaint* at ¶¶ 27, 30-31. That is, the alleged release of anti-tying claims of the Credit Agreement constitute, according to Plaintiffs, predicate acts by Defendants. See id.; see also *Complaint* at page 235. Therefore, the alleged violations of the BHCA have a central role in Plaintiffs legal theory of Defendants' wrongdoing.

39.    Plaintiffs' anti-tying claims under the BHCA are, however, legally invalid and facially insufficient. More specifically, the Court in case number 24-1569 has issued a final Judgment dismissing all of Plaintiffs' claims under the BHCA. The Court held that Plaintiffs lack standing to assert claims under the BHCA, and dismissed the claims with prejudice. These holdings constitute final Judgments for purposes of issue preclusion and/or claim preclusion. That is, Plaintiffs lack standing to assert the underlying allegation, an anti-tying claim against BPPR, that allegedly gives rise to Defendants' supposed RICO violation, a release of anti-tying claims.

---

[3] Dkt. No. 1, *Complaint* at ¶¶ 9-11, 27, 30-31, 39, 45, 177, 189, 195, 664-666, 763, 765, 865, 877, 949, 984-987.
[4] Id. ¶¶ 1002, 1006, 1045, 1048, 1059.

15

Accordingly, the Complaint is premised on a legally invalid theory and counsel had ample opportunity to acknowledge this fact and dismiss the Complaint, but refused to do so.

    ii.   Plaintiffs' derivative claims.

40.  In its *Opinion and Order*, the Court in case number 24-1569 also dismissed any and all derivative claims filed by Plaintiffs and specifically held that Plaintiffs cannot act on behalf of the Companies because "the Written Consent on which Attorneys Becker and Vissepó rely to justify their purported representation of GFC and BGF is invalid." 24-1569, Dkt. No. 131 at 14. Similarly, the Court in 22-1190, as early as August 12, 2025, had already issued a *Memorandum and Order* denying Plaintiffs' counsels from representing the Companies and filing derivative claims. See 22-1190, Dkt. No. 800 at 19 ("**Because Plaintiffs' Counsel has not presented a proper Written Consent from the GFC Board of Managers**, as required by the Operating Agreement, nor do majority of Members in GFC have the authority to amend the Operating Agreement without the majority approval of the Series A Preferred interest holders, **the Written Consent presented with the Motion to Appear cannot be considered proper informed consent for Plaintiffs' Counsel to simultaneously represent the Companies in this litigation**.")(emphasis added).

41.  Accordingly, two separate federal Courts have already ruled that the "Written Consent" that allegedly attributes majority control of the Companies to Plaintiffs is invalid pursuant to the relevant Operating Agreement. Subsequently, the Court in 22-1190 reaffirmed its holding and dismissed with prejudice any and all derivative claims brought under RICO. 22-1190, Dkt. No. 874 at 26 ("Thus, BGF/GFC's diminished value cannot be cognizable as an injury either derivatively or individually for either Boyd or Lassers."). These constitute final Judgments for purposes of issue preclusion and/or claim preclusion.

42.  However, the Complaint in 26-1066 purports to use the same invalid "Written

Consent" to establish Plaintiffs alleged authority to act on behalf of the Companies. See *Complaint* at ¶¶ 121, 975, 1090-1100. Moreover, the Complaint in 26-1066 asserts the same alleged injuries stemming from the Companies business dealings that were asserted in the *Second Amended Complaint* in 22-1190 and that were deemed legally insufficient. See *Complaint* at ¶¶ 1009, 1012-1013. In sum, not only do Plaintiffs lack standing to assert the underlying BHCA claims used to prop up the alleged RICO violations, but they also further lack standing to assert the RICO claims against Defendants. Accordingly, the Complaint is premised on a legally invalid theory and counsel had ample opportunity to acknowledge this fact and dismiss the Complaint, but refused to do so.

                iii.      Plaintiffs' individual claims.

43. The *Opinion and Order* in 22-1190 also addressed the various alleged injuries sustained by Plaintiffs and the predicate acts allegedly perpetrated by defendants in 22-1190. Particularly, the Court attempted to "sift Plaintiffs' well-pled allegations from the chaff and, where applicable, connect each cognizable injury to a purported perpetrator and RICO predicate act." 22-1190, Dkt. No. 874 at 28. The result of the Court's analysis, as discussed above, was dismissal of all claims.

44. In the *Opinion and Order* in 22-1190, the Court concluded that the following injuries were legally insufficient to establish RICO standing: the alleged loss of Lassers' SAFE Note; Boyd's exposure as Guarantor; alleged loss of ownership interest in the Companies; and Boyd's alleged loss of a Board seat. Additionally, the Court in 22-1190 had also denied the proposed amendments that intended to include allegations regarding "Environmental Credits and Tax Benefits." These constitute final Judgments for purposes of issue preclusion and/or claim preclusion.

45. Nevertheless, the same and already-deemed-invalid alleged injuries are re-asserted in the Complaint in 26-1066. More specifically, the Complaint in 26-1066 lists "Boyd's Direct

17

Injuries" and "Lassers' Direct Injuries,"[5] and they correspond with the Court's analysis of the injuries asserted in the dismissed *Second Amended Complaint* in 22-1190. Boyd's alleged injuries are: (1) dilution/destruction of ownership interest in Companies (**addressed and dismissed by Courts in 22-1190 and 24-1569**); (2) RSA breach related to Environmental Credits and Tax Benefits (**amendment denied by the Court in 22-1190**); (3) personal guarantee exposure (**addressed and dismissed by Court in 22-1190**); (4) lost employment/board seat (**addressed and dismissed by Court in 22-1190**), and (5) lost Cambrian offer (**amendment denied by the Court in 22-1190**). See *Complaint* at 250, ¶ 1012. Lassers' alleged injuries are: (1) loss of SAFE note conversion (**addressed and dismissed by Court in 22-1190**); (2) dilution/destruction of ownership interest in Companies (**addressed and dismissed by Courts in 22-1190 and 24-1569**), and (3) RSA breach related to Environmental Credits and Tax Benefits (**amendment denied by the Court in 22-1190**). See *Complaint* at 251, ¶ 1013. Moreover, the alleged predicate acts that occurred between 2023 and 2025 were already rejected by the Court in 22-1190 through the denial of the proposed *Third Amended Complaint*, and Plaintiffs did not appeal said denial.

46.    In sum, the injuries asserted in the Complaint have already been adjudicated as legally deficient elsewhere. Nothing has changed, and Plaintiffs continue to rely on the same legal theories. Accordingly, the Complaint is premised on a legally invalid theory and counsel had ample opportunity to acknowledge this fact and dismiss the Complaint, but refused to do so.

   3.    *The Colorado River doctrine mandates abstention.*

47.    Federal Courts may abstain from exercising jurisdiction by providing deference to local forums who have before them the same or similar issues as the federal court. "The crux of

---

[5] Clearly, these do not constitute well-pled facts surviving the first step of the analysis under Federal Rule 12(b)(6). However, they do serve as the outer bounds of Plaintiffs claims and, therefore, represent the failed pleadings in its entirety. Moreover, they are identical to the injuries asserted in the failed *Third Amended Complaint* in 22-1190.

18

the <u>Colorado River</u> doctrine is the presence of 'exceptional' circumstances displaying 'the clearest of justifications' for federal deference to the local forum in the interest of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" <u>Nazario-Lugo v. Caribevisión Holdings, Inc.</u>, 670 F.3d 109, 115 (1st Cir. 2012) (<u>quoting</u> <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817-19 (1976)). The Complaint in 26-1066 asserts several legal theories and causes of action already asserted by Plaintiffs in State Court, specifically, in SJ2024CV04616 discussed above. Accordingly, all relevant factors for applying the <u>Colorado River</u> doctrine weigh heavily in favor of abstention. As such, this is yet another reason to dismiss the Complaint in 26-1066 and counsel had ample opportunity to acknowledge this fact and dismiss the Complaint, but refused to do so.

4.  *The Complaint fails to allege a pattern of racketeering activity and Enterprise.*

48.    The only basis for exercising federal jurisdiction over the Complaint in 26-1066 are the alleged RICO claims. The Complaint, however, fails to state a plausible RICO claim on various grounds. That is, in addition to a lack of standing espoused above, the Complaint's allegations lack other essential components of a valid RICO claim. For example, the Complaint fails to properly allege all of the underlying elements of the predicate acts, such as materiality, how Plaintiffs were misled and what Defendants gained through the alleged fraud. As such, the alleged predicate acts are unactionable.

49.    Additionally, the Complaint fails to allege sufficient predicate acts for each of the Defendants and, more importantly, fails to successfully allege a pattern of racketeering activities. A list of business disputes does not establish a pattern simply because they relate in some way to the same Companies. The alleged predicate acts simply do not share a similar purpose, results, participants, victims, methods of commission, or distinguishing characteristics; they are isolated events in a years-long business dispute among multiple parties. Therefore, the Complaint fails to

19

establish a pattern of racketeering activities.

50.    The Complaint is also wholly deficient when it comes to establishing a valid Enterprise. The Enterprise is supposed to act as a single entity, with a common purpose and continuity. Yet the Enterprise described in the Complaint is poly-headed amalgamation of legal entities and individual persons, each with competing interests and intentions, that allegedly transformed significantly over time. The alleged Enterprise has no clear purpose and does not display any semblance of continuity. Nor does it distinguish itself from its members, nor from the alleged pattern of racketeering activities. In sum, the Complaint fails to state a plausible Enterprise and thus fails to state a plausible claim under RICO.

51.    These are just some of the most salient deficiencies of the Complaint. Again, the Complaint is premised on a legally invalid theory and counsel had ample opportunity to acknowledge this fact and dismiss the Complaint, but refused to do so.

*5.  The alleged breaches to the NDA and RSA are legally implausible.*

52.    The *Third Amended Complaint*, that was rejected by the Court in 22-1190, already included allegations of breaches to the NDA and RSA. Under claim preclusion grounds, and as discussed above, this is enough to warrant the dismissal of those claims and the Complaint in 26-1066, although Plaintiffs have refused to do so.

53.    However, there are additional reasons for dismissing the Complaint and any claims pertaining to alleged breaches of the NDA and RSA including but not limited to the fact that the legal theory underlying them is non-sensical and contradictory.

54.    As to the NDA, Plaintiffs allege that Defendants "used confidential information obtained under the NDA to plan and execute the acquisition of BGF's assets" in violation of the NDA's "Business Purpose" because it was done for Defendants own benefit "without Boyd and Lassers' participation." *Complaint* at ¶ 168. But the "Business Purpose" of the NDA is, precisely,

20

for the possible acquisition of the Companies and related entities. See *Complaint*, Exhibit 13 at page 3. Therefore, under Plaintiffs' theory, Defendants' achievement of completing the "Business Purpose," the *raison d'etre* of the NDA, constitutes a violation of the NDA itself. Further, Plaintiffs' logic is flawed because the "Business Purpose" does not preclude Defendants benefitting from the transaction, nor does it require Boyd and/or Lassers' participation in the transaction, nor does it bar the acquisition of the Companies. Arguing otherwise runs afoul of Rule 11 principals.

55.    The RSA, on the other hand, was not included as an exhibit to the Complaint, and no excerpts were incorporated into the allegations. This is no surprise. Plaintiffs' counsel, Vissepó-Garriga, executed the RSA as Managing Member of the signing entity EFB, and Becker-Whitaker was listed as EFB's legal counsel. On the same exact day that the Third Amended Complaint was filed in 22-1190, asserting breaches to the RSA, counsel Vissepó-Garriga withdrew as Plaintiffs' counsel. Becker-Whitaker remained. Moreover, the RSA's benefits accrue in favor of EFB only if Plaintiffs' case in 22-1190 were resolved through a settlement agreement, further evidence of (1) a clear conflict of interest for Plaintiffs' counsel and (2) the flawed logic behind Plaintiffs' theory. That is, the condition precedent for the alleged RSA benefits never occurred, further damning Plaintiffs' theory.

56.    Yet another example of the flawed logic underscoring the Complaint is that, therein, Plaintiffs allege the Companies were destroyed, see *Complaint* at ¶¶ 9, 651, 743, but then claim a percentage of potential future gains for the Companies' production, see *Complaint* at ¶¶ 1008-1009, 1012-1013. At the very least, this alleged claim is not ripe but, more importantly, the legal theory is implausible. In sum, the flaws are numerous and impact the soundness of the Complaint in a myriad of ways and counsel had ample opportunity to acknowledge this fact and dismiss the Complaint, but refused to do so.

6. *Plaintiffs lack standing to assert RSA claims because the alleged injury belongs to a non-party.*

57.     Beyond the implausibility of the RSA claims discussed above, there is a fundamental standing defect that independently warrants dismissal. The Complaint itself acknowledges that the alleged future revenues under the RSA, and the alleged environmental credits and tax benefits, pertain to a non-party entity called "EFB." See *Complaint* at ¶ 79. EFB is not a plaintiff in this action. Accordingly, Plaintiffs lack standing to assert any claims for damages arising from the RSA because the direct loss, if any, belongs to EFB, not to Plaintiffs. This constitutes an independent and dispositive jurisdictional defect that requires dismissal of the RSA-related claims. As the Court in 22-1190 repeatedly held, derivative injuries cannot be repackaged as individual harms to circumvent standing requirements. The same principle applies here with equal force. Accordingly, the Complaint is premised on a legally invalid theory and counsel had ample opportunity to acknowledge this fact and dismiss the Complaint, but refused to do so.

**B.  The Complaint was Filed for Improper Purposes**

58.     The frivolous nature of the claims asserted in the Complaint in 26-1066 warrant dismissal, as discussed above, but Rule 11 also bars a complaint "being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). To determine whether a filing was made with an improper purpose, courts consider both the claims themselves and "the context of a persistent pattern of clearly abusive litigation activity." C.W. v. Capistrano Unified Sch. Dist., 784 F.3d 1237, l249 (9th Cir. 2015)(quotations omitted); see In re Kunstler, 914 F.2d 505, 519 (4th Cir. 1990). Courts have found that a pleading may have the improper purpose of harassing an opponent when it repeats previously unsuccessful claims against the same defendant. See G.C. & K.B. lnvs. Inc. v. Wilson, 326 F.3d 1096, 1110 (9th Cir. 2003); Coats v. Pierre, 890 F.2d 728, 734 (5th Cir. 1989). Likewise, a litigant's

22

history of filing groundless or multiplicative claims may establish an improper purpose. See Sheshtawy v. Gray, 697 F. App'x 380, 383 (5th Cir. 2017) (per curiam)(unpublished); United States ex rel Tingley v. PNC Fin. Serv's Grp., Inc., 705 F. App'x 342, 344 (6th Cir. 2017)(unpublished); Tarkowski v. Cty. Of Lake, 775 F.2d 173, 176 (7th Cir. 1985).

59.     As an initial matter, the frivolous nature of Plaintiffs' claims help demonstrate their improper purpose. As discussed above, the Complaint (1) improperly attempts to collaterally challenge the result of Plaintiffs' frivolous claims already asserted in case number 22-1190 and 24-1569; (2) improperly attempts to negate State Court jurisdiction over identical matters; and (3) fails to allege even the most fundamental aspects of its purported civil RICO claims.

60.     The timing of this litigation further demonstrates the improper purpose of the Complaint. The timeline is telling: on January 21, 2026, the Court denied Plaintiffs' request to file the *Third Amended Complaint* in case 22-1190; just fifteen (15) days later, on February 7, 2026, Plaintiffs filed the Complaint in 26-1066. As mentioned above, the Complaint is nothing more than an iteration of the *Second Amended Complaint* in 22-1190 and, more importantly, contains allegations already presented to the Court in 22-1190 through the proposed *Third Amended Complaint* that was rejected by the Court. Just fifteen (15) days after the *Third Amended Complaint* was rejected by the Court, Plaintiffs filed the Complaint in 26-1066.

61.     Notably, the *Third Amended Complaint* intended to add Defendants as defendants to the case in 22-1190. Instead of filing an appeal of the denial to amend, see Hatch v. Trail King Indus., 699 F.3d 38, 45-46 (1st Cir. 2012)(failure to appeal denial to amend precludes filing similar allegations in a pleading at a separate case), Plaintiffs filed the unmeritorious Complaint in 26-1066 with essentially the same allegations that were already rejected by the Court on various grounds. An appeal of the denial to amend for a third time would not have impacted Defendants, because they were not parties to the action in 22-1190, but filing a separate case forces Defendants

23

to incur costs and make an appearance **before** any potential appeal is resolved. Therefore, the act of filing the Complaint, instead of filing an appeal, further demonstrates Plaintiffs' intent to harass Defendants. The fact that Plaintiffs did not timely appeal the denial to amend further compounds the intent to harass Defendants.

62.    Moreover, Plaintiffs' litigation activity demonstrates, first, Plaintiffs' shotgun approach of asserting same or similar claims/arguments in multiple forums and, second, the numerous deficiencies with Plaintiffs' claims/arguments. The several litigation fronts manned by Plaintiffs evidences a disposition for vexatious litigation. Further, the multiple dismissals undercut Plaintiffs' legal theories. As such, it is clear that the Complaint was filed for improper purposes, such as harassing Defendants, delaying related litigation and increasing Defendants' litigation costs. Counsel had ample opportunity to acknowledge this fact and dismiss the Complaint, but refused to do so.

## C.  Counsels' Conduct Raises Serious Ethical Concerns.

63.    As discussed above, filing the Complaint in 26-1066 violates the Rule 11 mandate that bars frivolous claims and prohibits using the legal process for improper purposes. But serious additional ethical concerns are also present. The ABA's Model Rules and the Puerto Rico Canons of Professional Ethics prohibit direct communications with other parties without their counsel and also prohibit conflicts of interest, among other prohibitions. Yet Plaintiffs' counsels' conduct in the captioned case and other related proceedings has also run afoul of these central tenets of the legal profession. By prosecuting case No. 26-1066, Plaintiffs' counsel has continued and further compounded these ethical violations.

## IV.    CONCLUSION

64.    In sum, the claims asserted in the Complaint are not warranted by existing law or any nonfrivolous argument for its extension, modification, or reversal, and instead appear

24

calculated to harass Defendants and needlessly increase the costs of litigation. Such conduct violates Rule 11(b)(1) and (b)(2). Defendants timely demanded that Plaintiffs dismiss the Complaint within twenty-one (21) days of receipt of a Rule 11 letter and draft Motion for Sanctions. Plaintiffs' counsel have refused to dismiss the Complaint. Therefore, sanctions are warranted.

65.     Defendants therefore request that this Court grant Defendants their reasonable attorney's fees necessarily incurred in responding to Plaintiffs' Complaint and in preparing this Motion for Sanctions, and order such other relief that, in the Court's view, "suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

**WHEREFORE**, Defendants respectfully request that this Honorable Court issue an order imposing sanctions on Plaintiffs, as well as reasonable attorney's fees necessarily incurred in responding to Plaintiffs' Complaint and in preparing this Motion for Sanctions, and order such other relief that the Court may deem necessary.

Dated: May 2, 2026.

**RESPECTFULLY SUBMITTED.**

**DELGADO & FERNÁNDEZ, LLC**
T Mobile Center at San Patricio
B7 Tabonuco St., Suite 1000
Guaynabo, PR 00968
Tel. (787) 274-1414
Fax: (787) 764-8241

/s/*Alfredo Fernández-Martínez*
**Alfredo Fernández-Martínez**
USDC-PR #210511
afernandez@delgadofernandez.com

/s/*Pedro A. Hernández Freire*
**Pedro A. Hernández Freire**
USDC-PR No. 231702

25

phernandez@delgadofernandez.com

/s/ *Daniel Limés-Rodríguez*
**Daniel Limés-Rodríguez**
USDC-PR #307505
dlimes@delgadofernandez.com

## CERTIFICATE OF SERVICE

I hereby certify that on the date stated above, a copy of the foregoing was filed with the Clerk of the Court via the Court's CM/ECF System which will send notice of filing to all counsel of record.

**DELGADO & FERNÁNDEZ, LLC**
T Mobile Center at San Patricio
B7 Tabonuco St., Suite 1000
Guaynabo, PR 00968
Tel. (787) 274-1414
Fax: (787) 764-8241

/s/*Alfredo Fernández-Martínez*
**Alfredo Fernández-Martínez**
USDC-PR #210511
afernandez@delgadofernandez.com

/s/*Pedro A. Hernández Freire*
**Pedro A. Hernández Freire**
USDC-PR No. 231702
phernandez@delgadofernandez.com

/s/ *Daniel Limés-Rodríguez*
**Daniel Limés-Rodríguez**
USDC-PR #307505
dlimes@delgadofernandez.com