**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **GREGORY BOYD and JONATHAN LASSERS,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**BANCO POPULAR DE PUERTO RICO,**<br><br>**et al.,**<br><br>**Defendants.** | **Civil No. 3:26-cv-01066-MAJ** |

**PLAINTIFFS' MOTION TO DISQUALIFY ROBERTO ABESADA-AGÜET**

**AS COUNSEL FOR GFC HOLDINGS, LLC AND BIOMASS GREEN FUELS, LLC DUE**

**HIS DECADES LONG REPRESENTATION OF BANCO POPULAR**

*(Companion to Plaintiffs' Opposition to ECF No. 49, filed concurrently)*

**TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................... 5

II.  RELEVANT BACKGROUND .......................................................................... 6

   A.  Atty. Abesada's Purported Engagement Is Defective on the Face of the Engaging Instrument ................................................................................................................. 7

   B.  Atty. Abesada's Concurrent Representation of BPPR — Two Active Matters .................... 8

III.  LEGAL STANDARD ...................................................................................... 10

   A.  The Court's Inherent Authority Over the Bar ................................................................ 10

   B.  The Local Standard of Professional Conduct ................................................................ 10

   C.  The Substantive Standard for Concurrent-Representation Conflicts ................................ 11

   D.  Imputation Across the Firm Under Rule 1.10(a) ........................................................... 11

IV.  ARGUMENT ................................................................................................... 12

   A.  Rule 1.7(a)(1) and (b)(3): Concurrent Representation of BPPR and the Companies Is Per Se Non-Waivable ....................................................................................................... 12

     1.  The Lawyer-Client Triangle on Its Face Violates Rule 1.7(a)(1) and Rule 1.7(b)(3) ..... 12

     2.  The AAA Independently Triggers Rule 1.7(a)(2) Material Limitation ........................... 13

   B.  Rule 1.9: Successive Representation of BPPR in Substantially Related Matters .............. 14

   C.  Rule 1.10(a): The Conflict Is Imputed to the Entire Firm .............................................. 15

   D.  Rule 1.13(a): The Engagement Was Never Authorized by a "Duly Authorized Constituent" of the Companies ........................................................................................................ 15

   E.  Rule 1.8(f) and the Source-of-Compensation Doctrine .................................................. 18

   F.  Rule 3.3 (Candor) and Rule 8.4 (Misconduct) ............................................................. 20

   G.  The Bolger Trap — Atty. Abesada's Own Admission Defeats His Own Representation.. 21

   H.  The Pattern of Inaction — Atty. Abesada Has Defended Nothing on the Companies' Behalf ................................................................................................................................ 22

   I.  The Picó June 19, 2025 Letter — Threats of Criminal Prosecution Against the Members Atty. Abesada Purports to Represent ................................................................................ 23

   J.  The "Special Appearance" Framing Cannot Insulate Atty. Abesada From Disqualification ................................................................................................................................ 25

V.  REMEDY REQUESTED .................................................................................. 28

VI.  CONCLUSION ................................................................................................ 29

## TABLE OF AUTHORITIES

**Cases**

*Akagi v. Turin Hous. Dev. Fund Co.*, No. 13-CV-5258 (KPF), 2017 U.S. Dist. LEXIS 41321 (S.D.N.Y. Mar. 22, 2017) ..................................................................................................... 11

*Balcones al Castillo, S.E. v. Banco Popular de P.R.*, No. KLCE201301132 (T.A. P.R. Oct. 29, 2013) ............................................................................................................................... 5

*Bell Atl. Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993) .................................................................. 17

*Boyd v. Banco Popular de P.R.*, No. 3:24-cv-01569-PAD (D.P.R.) ............................................ 23

*Boyd v. López-Vidal*, Civil No. 3:22-cv-01190-GMM (D.P.R.) ................................................... 7

*Catala-Del Valle v. NSSK San Juan, LLC*, No. 3:26-cv-01205-JAG (D.P.R.) ........................... 5

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ........................................................................... 6

*Clark v. United States*, 289 U.S. 1 (1933) ................................................................................. 29

*Estrada v. Cabrera*, 632 F. Supp. 1174 (D.P.R. 1986) ............................................................... 14

*In re Cordova-Gonzalez*, 996 F.2d 1334 (1st Cir. 1993) ............................................................. 6

*In re Flores-Ayffán*, 116 F. Supp. 2d 258 (D.P.R. 2000) ........................................................... 10

*In re Grand Jury Subpoena (Reyes-Requena)*, 913 F.2d 1118 (5th Cir. 1990) .......................... 5

*In re Lyman-Cutler, LLC*, 632 B.R. 355 (Bankr. D. Mass. 2021) .............................................. 17

*In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d 53 (Tex. 2019) ....................................................... 17

*In re PHC, Inc. S'holder Litig.*, 894 F.3d 419 (1st Cir. 2018) .................................................... 17

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) ........ 25

*Kevlik v. Goldstein*, 724 F.2d 844 (1st Cir. 1984) ....................................................................... 6

*Popular Auto, Inc. v. Reyes-Colón*, 922 F.3d 13 (1st Cir. 2019) ................................................ 9

*Reyes-Colón v. Banco Popular de P.R.*, 110 F.4th 54 (1st Cir. 2024) ......................................... 9

*Rosman v. Shapiro*, 653 F. Supp. 1441 (S.D.N.Y. 1987) ........................................................... 17

*Salinas v. United States*, 522 U.S. 52 (1997) ............................................................................ 20

*Unified Sewerage Agency v. Jelco Inc.*, 646 F.2d 1339 (9th Cir. 1981) .................................... 11

*United States v. Zolin*, 491 U.S. 554 (1989) ............................................................................... 29

*VRM Penzini Fund I, LLC v. López-Vidal*, Civil No. SJ2024CV07694 (T.P.I. P.R.) ............... 5

**Rules, Statutes, and Local Rules**

12 U.S.C. § 1972 ............................................................................................................................ 5

14 L.P.R.A. § 3502(a)(13)(D) ...................................................................................................... 15

18 U.S.C. § 2(a) ........................................................................................................................... 24

18 U.S.C. § 1503 .......................................................................................................................... 25

18 U.S.C. § 1512(b)(1) ................................................................................................................. 25

28 U.S.C. § 1746 .......................................................................................................................... 32

28 U.S.C. § 1927 .......................................................................................................................... 25

ABA Model Rule of Prof'l Conduct 1.7 ...................................................................................... 11

ABA Model Rule of Prof'l Conduct 1.7(b)(3) ............................................................................. 5

ABA Model Rule of Prof'l Conduct 1.8(f) .................................................................................... 5

ABA Model Rule of Prof'l Conduct 1.9 ...................................................................................... 11

ABA Model Rule of Prof'l Conduct 1.10(a) ................................................................................. 5

ABA Model Rule of Prof'l Conduct 1.13 .................................................................................... 15

ABA Model Rule of Prof'l Conduct 1.13(g) ............................................................................... 24

ABA Model Rule of Prof'l Conduct 3.3 ..................................................................20
ABA Model Rule of Prof'l Conduct 4.4(a) ...........................................................24
ABA Model Rule of Prof'l Conduct 8.4(c) ...........................................................20
ABA Model Code of Prof'l Resp. DR 7-105(A) ....................................................24
D.P.R. Loc. Civ. R. 83.1 ......................................................................................29
D.P.R. Loc. Civ. R. 83.5 ........................................................................................5
Fed. R. Civ. P. 11(b)(2).........................................................................................20
Fed. R. Civ. P. 12(a) ............................................................................................25
P.R. Code of Prof'l Ethics Canon 35 (1970) .......................................................24
P.R. Rule of Prof'l Conduct 1.7 (eff. Jan. 1, 2026) .............................................11
P.R. Rule of Prof'l Conduct 1.8(f) (eff. Jan. 1, 2026) ...........................................5
P.R. Rule of Prof'l Conduct 1.9 (eff. Jan. 1, 2026) .............................................14
P.R. Rule of Prof'l Conduct 1.10(a) (eff. Jan. 1, 2026) .........................................5
P.R. Rule of Prof'l Conduct 1.13 (eff. Jan. 1, 2026) ...........................................15
P.R. Rule of Prof'l Conduct 3.3 (eff. Jan. 1, 2026) .............................................20
P.R. Rule of Prof'l Conduct 8.4 (eff. Jan. 1, 2026) .............................................20

**Other Authorities**

ABA Model Rule of Prof'l Conduct 1.13 cmt. [14] (Am. Bar Ass'n 2023) ...........17
In re: Reglas de Conducta Profesional, 2025 TSPR 64 (June 17, 2025) ...............10
Restatement (Third) of the Law Governing Lawyers § 96 cmt. d (Am. L. Inst. 2000)...........24
Restatement (Third) of the Law Governing Lawyers § 128(2) & cmt. e (Am. L. Inst. 2000) 11
Restatement (Third) of the Law Governing Lawyers § 134(2) (Am. L. Inst. 2000) ...............18
Supreme Court of Puerto Rico Res. ER-2025-02 (June 17, 2025) .........................10

**TO THE HONORABLE COURT:**

Plaintiffs Gregory Boyd and Jonathan Lassers, by and through undersigned counsel, very respectfully state and pray:

## I.  INTRODUCTION

Three facts, each independently verifiable on a public docket, together require disqualification under any application of the governing professional-responsibility rules.

**First**, Atty. Abesada represents both sides of a directly-adverse triangle pending before this Court. He purports to represent GFC and BGF—the borrower-entities prosecuting RICO, bank-fraud, BHCA anti-tying, and lender-liability claims against Banco Popular de Puerto Rico ("BPPR") in this action—while at the same time representing BPPR itself in *Catala-Del Valle v. NSSK San Juan, LLC*, No. 3:26-cv-01205-JAG (D.P.R.) (García-Gregory, J.), where he entered his Notice of Appearance for BPPR at ECF No. 9 on April 24, 2026, four days before he signed and filed ECF No. 49 against BPPR in this action. Rule 1.7(b)(3) categorically forbids this configuration: no informed consent—even if obtained, and none has been—can cure the assertion of a claim by one client against another client of the same lawyer in the same litigation.

**Second**, Atty. Abesada has defended nothing on the Companies' behalf in fourteen months of purported representation. He has filed no answer to the operative Complaint, asserted no counterclaim against BPPR, , and made no substantive filing against the December 27, 2024 partial summary judgment of $13,418,352.07 entered against the Companies in SJ2024CV04616 or against the approximately $223 million sought against the Companies in SJ2024CV07694. In *AMRC, LLC v. López-Vidal*, No. SJ2024CV10727 (T.P.I. P.R., San Juan, Sala 603), the July 16, 2025 Initial Conference Minute records his own express representation that the Companies "will not be conducting discovery" because they are not operating and have no assets—a representation

that triggers the source-of-compensation doctrine under P.R. Rule 1.8(f) and *In re Grand Jury Subpoena (Reyes-Requena)*, 913 F.2d 1118 (5th Cir. 1990); *Cf. Whitehouse v. United States District Ct. for the District of Rhode Island,* 53 F.3d 1349, note (1st Cir. 1995)(Noting that new federal laws, including RICO, have implications for the attorney-client relationship and that prosecutors use subpoenas to discovery fee arrangements of defendants, *citing, inter alia, Reyes-Requena*). His one substantive federal filing purportedly on behalf of the Companies has been ECF No. 49—a sanctions motion against the Members of the Companies who are actually prosecuting the Companies' federal claims against BPPR.

That is not, on any application of Rule 1.7, the representation of the Companies. It is the representation of BPPR and its co-defendants—through the litigation vehicle of two entities whose only remaining assets are their federal claims against BPPR.

Disqualification is committed to the sound discretion of the district court under its inherent authority. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991); *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir. 1984). The procedural-due-process predicate is satisfied by the briefing of this Motion. *In re Cordova-Gonzalez*, 996 F.2d 1334, 1335 (1st Cir. 1993).

## II.  RELEVANT BACKGROUND

Roberto Abesada-Agüet is Banco Popular de Puerto Rico's longstanding litigation lawyer — twenty-six federal-court appearances since 2006 and fifteen Puerto Rico local-court appearances since 2013, including two presently-active representations: a federal Notice of Appearance for BPPR in *Catala-Del Valle v. NSSK San Juan, LLC*, No. 3:26-cv-01205-JAG (D.P.R.), ECF No. 9 (Apr. 24, 2026) (Opposition Ex. 1), entered four days before he signed and filed ECF No. 49 against BPPR in this action; and a Tribunal de Primera Instancia mortgage-foreclosure matter, *Banco Popular de P.R. v. [Defendant]*, No. SJ2025CV07110 (T.P.I. San Juan),

with three public auctions noticed for April 20, April 27, and May 4, 2026. On April 28, 2026, Atty. Abesada signed and filed ECF No. 49 in this action on behalf of GFC Holdings, LLC and Biomass Green Fuels, LLC — entities prosecuting RICO, bank-fraud, BHCA anti-tying, and lender-liability claims against BPPR. Rule 1.7(b)(3) categorically forbids such conduct, and disqualification follows.

The record supporting this Motion — the operative Complaint's RICO and BHCA anti-tying allegations; the January 31, 2025 Asset Acquisition Agreement and its § 2.10 litigation-forfeiture, § 6.8 selective-indemnification, and § 3.6(c) BPPR-release provisions; the Series A-aligned Board's structural conflicts; the March 21, 2025 Board Resolution's facial defects; Atty. Abesada's pattern of non-defense across SJ2024CV04616, SJ2024CV07694, and this action; the June 19, 2025 Picó letter and its deployment into the federal record; and BPPR's eight supporting filings in related federal cases — is set forth in Plaintiffs' contemporaneously-filed Opposition to ECF No. 49 at Section II ¶¶ 1–19 and Section X, with supporting documentation at Opposition Exhibits 2 through 7 and the López-Vidal Declaration (Opposition Ex. 5, with sub-exhibits 5-A through 5-I). Plaintiffs incorporate that record here by reference pursuant to Fed. R. Civ. P. 10(c). The two paragraphs that follow are confined to the facts unique to the disqualification analysis: the facial defects in the engaging instrument (Section II.A) and the documented concurrent representations of BPPR (Section II.B).

## A.  Atty. Abesada's Purported Engagement Is Defective on the Face of the Engaging Instrument

Atty. Abesada entered a Notice of Appearance in *Boyd v. López-Vidal*, Civil No. 3:22-cv-01190-GMM (D.P.R.), at ECF No. 644 on March 24, 2025, on behalf of the Companies. His engagement was purportedly authorized by a March 21, 2025 Board Resolution that suffers from

three facial defects: (a) only one of the two then-sitting Managers signed the Resolution—Mr. Alexander Borschow. The Founding-Members'-Manager Mr. López-Vidal was neither noticed nor signed. (b) A third "signature" was affixed by Atty. Javier Feliciano, who has notarized multiple VRM Penzini real-estate transactions, on a date when he held no Board authority at all: his Manager designation was not announced until March 31, 2025—ten days after the Resolution and seven days after Atty. Abesada's Notice of Appearance. (c) Post-hoc transmittal from Ms. Carla S. Pérez of Picó Advisors LLC to Mr. López-Vidal on April 1, 2025 sought Mr. López-Vidal's retroactive signature, which Mr. López-Vidal declined to provide. *See* López-Vidal Decl. ¶¶ 2–3, 7–12 (Opposition Ex. 5).

Independently, the Resolution's "FURTHER RESOLVED" paragraph provides on its face that "any and all actions heretofore taken by the Authorized Signatory in connection with the matters contemplated by the foregoing resolutions … be, and they hereby are, in all respects ratified, approved and confirmed"—suggesting that Atty. Abesada's engagement and Mr. Borschow's pre-March 21, 2025 conduct purportedly on behalf of the Companies predated any purported formal Board authorization.

## B. Atty. Abesada's Concurrent Representation of BPPR — Two Active Matters

Two presently-active BPPR representations frame Atty. Abesada's concurrent-conflict posture. First, on April 24, 2026, Atty. Abesada entered a Notice of Appearance on behalf of BPPR in *Catala-Del Valle v. NSSK San Juan, LLC*, No. 3:26-cv-01205-JAG (D.P.R.) (García-Gregory, J.). The Notice was filed on the federal AO 458 form (Appearance of Counsel), signed under Bar No. 216706, and entered as ECF No. 9. *See* Opposition Ex. 1. Four days later, on April 28, 2026, Atty. Abesada signed and filed ECF No. 49 in this action against BPPR. Second, Atty. Abesada is concurrently representing BPPR in *Banco Popular de P.R. v. [Defendant]*, No. SJ2025CV07110

(T.P.I. San Juan), an active mortgage-foreclosure proceeding in which three public auctions were contemporaneous with this case and with ECF No. 49. *See* Opposition Ex. 2, Table 2, Row 1. Either representation alone violates Rule 1.7(a)(1); together they confirm that Atty. Abesada was carrying BPPR's active litigation portfolio in this District at the very moment he was filing a sanctions motion against BPPR's adversaries on behalf of nominal corporate clients whose principal remaining assets are federal claims against BPPR.

That appearance is not isolated. The public dockets of this Court, the First Circuit, the Puerto Rico Court of Appeals and of First Instance establish that Atty. Abesada and the Firm have served as counsel for BPPR or its affiliate Popular Auto, Inc., across at least:

- Twenty-six federal-court matters spanning twenty years (2006 through 2026), catalogued at Opposition Ex. 2, Table 1;

- Six First Circuit appellate appearances, including *Popular Auto, Inc. v. Reyes-Colón*, 922 F.3d 13 (1st Cir. 2019), and *Reyes-Colón v. Banco Popular de P.R.*, 110 F.4th 54 (1st Cir. 2024), catalogued at Opposition Ex. 2, Table 3;

- The October 29, 2013 Tribunal de Apelaciones disqualification ruling in *Balcones al Castillo, S.E. v. Banco Popular de P.R.*, No. KLCE201301132 (T.A. P.R. Oct. 29, 2013);

- Fifteen Puerto Rico local-court matters since 2013 (Opposition Ex. 2, Table 2), including the active T.P.I. mortgage foreclosure *Banco Popular de P.R. v. [Defendant]*, No. SJ2025CV07110 (subastas noticed Apr. 20, Apr. 27, and May 4, 2026); and

- Multiple bankruptcy-related proceedings.

No public record reflects any written informed consent from either GFC, BGF, or BPPR to the concurrent representation. López-Vidal Decl. ¶¶ 16, 17, 19 (Opposition Ex. 5).

## III.  LEGAL STANDARD

### A.  The Court's Inherent Authority Over the Bar

A federal court possesses inherent authority—independent of any statute or rule—to supervise the conduct of attorneys appearing before it and to disqualify counsel whose continued participation would offend the integrity of the proceedings. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991); *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir. 1984) ("the district court has the duty and responsibility of supervising the conduct of attorneys who appear before it"). Disqualification orders are reviewed for abuse of discretion. *Kevlik*, 724 F.2d at 847; *In re Cordova-Gonzalez*, 996 F.2d 1334, 1335 (1st Cir. 1993). The procedural-due-process predicate for attorney discipline—notice and an opportunity to be heard—is satisfied by the briefing of a disqualification motion. *Id.*

### B.  The Local Standard of Professional Conduct

This Court has adopted the Puerto Rico Rules of Professional Conduct as the standard governing the conduct of attorneys admitted to practice in this District. D.P.R. Loc. Civ. R. 83.5; *In re Flores-Ayffán*, 116 F. Supp. 2d 258, 261 n.2 (D.P.R. 2000). On June 17, 2025, the Supreme Court of Puerto Rico issued Order ER-2025-02, *In re: Reglas de Conducta Profesional*, 2025 TSPR 64 (June 17, 2025), adopting the new Puerto Rico Rules of Professional Conduct—modeled on the ABA Model Rules—effective **January 1, 2026**, superseding the 1970 Puerto Rico Code of Professional Ethics. Every event relevant to this Motion that post-dates Atty. Abesada's March 24, 2025 Notice of Appearance—including his April 24, 2026 appearance for BPPR in *Catala-Del Valle* and his April 28, 2026 filing of ECF No. 49 in this action—occurred after January 1, 2026, and is therefore governed by the new P.R. Rules of Professional Conduct.

## C.  The Substantive Standard for Concurrent-Representation Conflicts

P.R. Rule of Professional Conduct 1.7(a)(1) (mirroring ABA Model Rule 1.7(a)(1)) provides that a lawyer shall not represent a client if the representation involves a concurrent conflict of interest, defined to include representation that is "directly adverse to another client." A concurrent conflict cannot be cured by consent in the categorical situations enumerated in P.R. Rule 1.7(b) (mirroring Model Rule 1.7(b)). Subsection (b)(3) is dispositive here: where "the representation involves the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal," consent cannot cure the conflict. P.R. Rule 1.7(b)(3); *accord* ABA Model Rule 1.7(b)(3). That is a non-waivable bar.

A lawyer may not concurrently represent two clients whose interests are directly adverse, even where the matters are unrelated and even with consent if Rule 1.7(b) is unsatisfied. *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976); *Kevlik*, 724 F.2d at 850–51; *Akagi v. Turin Hous. Dev. Fund Co.*, No. 13-CV-5258 (KPF), 2017 U.S. Dist. LEXIS 41321, at *54–55 (S.D.N.Y. Mar. 22, 2017) (Rule 1.7 forbids a single firm from concurrently representing two groups of defendants even where one group asserts claims against the other in a different forum)(Plaintiffs note that the *Akagi* held it was bound by Second Circuit precedent) ;; *accord* Restatement (Third) of the Law Governing Lawyers § 128(2) & cmt. e (Am. L. Inst. 2000).

## D.  Imputation Across the Firm Under Rule 1.10(a)

P.R. Rule 1.10(a)  imputes any one lawyer's conflict to every other lawyer in the same firm: "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so" by Rule 1.7 or Rule 1.9. The imputation rule applies with full force to Correa-Acevedo & Abesada Law Offices, P.S.C., as a whole. The  Puerto Rico Court of Appeals applied that principle to this very Firm in 2013 in

*Balcones*, holding that senior-partner control over the Firm required disqualification of the entire Firm where conflict facts attached to any of its members.

## IV. ARGUMENT

The disqualification grounds proceed from the most decisive (Rule 1.7(b)(3) *per se* non-waivable) to the structurally reinforcing (Rules 1.9, 1.10, 1.13(a), 1.8(f)), and finally to the candor- and pattern-based grounds (Rules 3.3 and 8.4, and the Court's inherent authority). Each is independently sufficient. Cumulatively, they require disqualification.

### A. Rule 1.7(a)(1) and (b)(3): Concurrent Representation of BPPR and the Companies Is Per Se Non-Waivable

#### 1. The Lawyer-Client Triangle on Its Face Violates Rule 1.7(a)(1) and Rule 1.7(b)(3)

Atty. Abesada represents two clients whose interests are diametrically opposed. The Companies' interests are vindicated by prosecuting their federal RICO, bank-fraud, BHCA anti-tying, and lender-liability claims against BPPR, and by defending against BPPR's $13,418,352.07 collection judgment in SJ2024CV04616. BPPR's interests are vindicated by defeating those federal claims, sustaining the December 27, 2024 partial summary judgment in SJ2024CV04616, and sustaining the August 12, 2025 representation ruling at ECF No. 800 in 22-1190—a ruling Atty. Abesada procured in part by submitting the Picó June 19, 2025 letter (see § IV.G *infra*). The Companies' best-case outcome is BPPR's worst-case outcome, and vice versa.

The configuration falls squarely within the *per se* non-waivable bar of Rule 1.7(b)(3): Atty. Abesada represents both the Companies (the claimants) and BPPR (the defendant) in litigation before this very Court, where the Companies are asserting RICO and BHCA claims directly against BPPR. The temporal sequencing is dispositive. *Catala-Del Valle* was filed on April 6, 2026. Atty.

Abesada entered Notice of Appearance for BPPR at ECF No. 9 on April 24, 2026. Four days later, on April 28, 2026, he signed and filed ECF No. 49 in this action against BPPR. The same lawyer, the same federal District Court, the same defendant (BPPR), and the operative posture in *this* action is precisely the assertion of claims by the Companies against BPPR—the conduct Rule 1.7(b)(3) forbids. No lawyer applying Rule 1.7 in good faith files ECF No. 49 four days after entering an appearance for BPPR.

The Southern District of New York applied this principle in an analytically identical posture in *Akagi*, holding that Rule 1.7 forbids a single firm from concurrently representing two groups of defendants where one group asserts claims against the other in the same federal action. *Akagi*, 2017 U.S. Dist. LEXIS 41321, at *54–55. The conflict here is materially worse than in *Akagi*: Plaintiffs' operative Complaint pleads RICO predicates directly against BPPR while Atty. Abesada simultaneously holds an active Notice of Appearance for BPPR in *Catala-Del Valle*. The separateness of the *Catala-Del Valle* matter does not save the configuration; Here, the second matter involves the same client  whose interests are directly adverse to the first clients, while the first matter places the lawyer in the posture of asserting the first client's claims against the second—the four-corners scenario of Rule 1.7(b)(3).

### 2. *The AAA Independently Triggers Rule 1.7(a)(2) Material Limitation*

Independent of the *Catala-Del Valle* / Rule 1.7(b)(3) ground, three features of the January 31, 2025 Asset Acquisition Agreement (AAA) establish a Rule 1.7(a)(2) "material limitation" disqualification—a lawyer cannot represent a client when the lawyer's responsibilities to a third person or third-party payor create a significant risk of materially limiting the representation.

*AAA § 2.10*—the five-year litigation-forfeiture clause—operates against the Companies if they prosecute the very claims Atty. Abesada is supposed to vindicate. A lawyer operating under

an instrument that punishes his nominal client for filing the lawsuit cannot supply independent professional judgment. P.R. Rule 1.7(a)(2).

*AAA § 6.8*—Selective Special Indemnification—extends to the López-Vidal side and pointedly excludes Mr. Boyd. The structural beneficiaries of Atty. Abesada's representation are not his nominal clients (the Companies) but the indemnified insiders.

*AAA § 3.6(c)*—the BPPR release as contracted-for benefit—establishes that the AAA was, on its face, a vehicle for delivering benefits to BPPR. Atty. Abesada's post-March 24, 2025 litigation conduct has been to defend, not unwind, the AAA. The structural alignment runs to the AAA beneficiaries, not the Companies.

No consent has been produced from the Founding-Members'-Manager Mr. López-Vidal to any of these material limitations. López-Vidal Decl. ¶¶ 16–17, 19 (Opposition Ex. 5). No consent could be effective in any event because Rule 1.7(b)(3) categorically bars consent to the same-litigation configuration also present here.

## B. Rule 1.9: Successive Representation of BPPR in Substantially Related Matters

P.R. Rule 1.9 prohibits a lawyer who has formerly represented a client from representing a new client in a substantially related matter where the new client's interests are materially adverse to the former client, absent informed written consent. The Firm's twenty-year, twenty-six-action portfolio of representing BPPR—including six First Circuit appellate appearances; the 2013 Balcones matter; the continuing SUMAC foreclosure portfolio; and multiple bankruptcy-related proceedings—establishes a successive-representation relationship of the most substantial character. The substantial-relationship test of *Kevlik*, 724 F.2d at 850–51, is satisfied many times over..

The substantial relationship is not merely temporal or volumetric. It is substantive. The Firm's BPPR matters include consumer-finance, mortgage-foreclosure, and credit-collection actions—precisely the lender-side conduct that the Companies' BHCA anti-tying and lender-liability claims seek to challenge in a particularized commercial-credit context. The *Kevlik* presumption of imparted confidences operates fully.

No public record reflects BPPR's informed written consent to the Firm's representation of the Companies against BPPR. The Rule 1.9 violation stands.

## C.  Rule 1.10(a): The Conflict Is Imputed to the Entire Firm

P.R. Rule 1.10(a) imputes Atty. Abesada's Rule 1.7 and Rule 1.9 conflicts to every other lawyer in Correa-Acevedo & Abesada Law Offices, P.S.C. The Tribunal de Apelaciones already applied that principle to this very Firm in 2013 in *Balcones*, holding that senior-partner control required disqualification of the entire Firm. The same principle, same firm, same analytical posture, governs here. The remedy is disqualification of the entire Firm, not merely Atty. Abesada individually.

## D.  Rule 1.13(a): The Engagement Was Never Authorized by a "Duly Authorized Constituent" of the Companies

ABA Model Rule 1.13(a)—adopted into the P.R. Rules effective January 1, 2026— provides that "[a] lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents." Both elements fail.

***The constituents are not duly authorized.*** The Series A-aligned managers who purportedly engaged Atty. Abesada are disqualified by their own conflicts under 14 L.P.R.A. 3565 (Those managers had a conflict and the manager without a conflict did not approve the AAA; selling all

the company&#x2019;s assets for the benefit of the conflict managers and the buyer was not done in good faith; and the contract is not just and reasonable for the company.) See 14 L.P.R.A. § 3565 (Art. 4.05 PR Gen. Corps. Act of 2009, interested-manager safe harbor; "justo y razonable" entire-fairness fallback); 14 L.P.R.A. § 3564 (Art. 4.04, duty of loyalty); 14 L.P.R.A. § 3994 (PR LLC managers owe these duties by statutory extension).   and are themselves named defendants in the operative Complaint. They cannot bind the Companies to representation by counsel whose function is to defend their own challenged conduct and to defeat the Companies&#x2019; federal claims against BPPR.

The authorization is deficient. The March 21, 2025 Board Resolution suffers from three facial defects already developed at § II.A *supra*. Most fatal is that the second signature—Atty. Javier Feliciano—was affixed on a date when he held no Board authority at all; his Manager designation was not announced until March 31, 2025, ten days after the Resolution. A signature on a date the signatory had no power to sign is no signature at all. Independently, the Resolution lists only three printed names—Borschow, López-Vidal, and Feliciano—with no Manager, Director, Member, or Authorized Signatory designation on the face of the operative copy filed at ECF No. 672-1 in 22-1190. Under the Operating Agreement § 6.1, only Managers can adopt a Board Written Consent. A Resolution that on its face does not establish that any signer was acting as a Manager is procedurally defective under Operating Agreement §§ 4.2 and 6.4. Independently still, the Resolution's "FURTHER RESOLVED" clause ratifies pre-existing engagement and pre-March 21, 2025 Borschow conduct purportedly on behalf of the Companies—an  admission that Atty. Abesada was acting for the Companies before any formal authorization existed. See Opposition § XI.B (analyzing OA §§ 6.1(a), 6.2, 4.2(j), and 4.3 — Board authority is subordinate on its face to Member-reserved provisions and Series A protective provisions).

Comment [14] to Model Rule 1.13 confirms the analysis: where "the claim involves serious charges of wrongdoing by those in control of the organization, a conflict may arise between the lawyer's duty to the organization and the lawyer's relationship with the board. In those circumstances, Rule 1.7 governs who should represent the directors and the organization." That is exactly the configuration here.

The *In re PHC* principle reinforces this conclusion. The First Circuit in *In re PHC, Inc. S'holder Litig.*, 894 F.3d 419, 435 (1st Cir. 2018), held that conflicted board action cannot be cleansed by ratification by the same conflicted body, and that "[t]he hallmark of equitable relief is its protean nature." District courts in this Circuit have applied that principle to conflicted-board action in the closely-held LLC posture. *In re Lyman-Cutler, LLC*, 632 B.R. 355, 388 (Bankr. D. Mass. 2021). Applied here, the Series A managers' purported engagement of Atty. Abesada is precisely the kind of conflicted action that cannot be ratified by the same conflicted body. *Cf. Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1316–17 (3d Cir. 1993); *Rosman v. Shapiro*, 653 F. Supp. 1441, 1445 (S.D.N.Y. 1987); *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d 53, 58 (Tex. 2019).

The Rule 1.13(a) authorization defect is independently and contemporaneously documented by the Founding-Members'-Manager himself, in writing, on the same day Atty. Abesada filed his Notice of Appearance for the Companies. On March 24, 2025, at 5:12 p.m. — and within hours of Atty. Abesada's Notice of Appearance in *Boyd v. López-Vidal*, No. 3:22-cv-01190-GMM, ECF No. 644 (D.P.R. Mar. 24, 2025) — Mr. Olmar López Vidal emailed Mr. Alexander Borschow asking, among other things, who had authorized Atty. Abesada's engagement and through what process. Opposition Ex. 5-F. Mr. López Vidal wrote: "I was neither invited to any meetings, notified, nor consulted about this decision [to engage Atty. Abesada]. There was no vote or board meeting held to discuss or approve this legal engagement of the companies. As you

communicated, since Ernesto's resignation, we are the only two (2) board members out of (7) seven. You even stated in this communication that, in your perspective, you and I are the only ones making decisions right now." Ex. 5-F. The admission is binding on the Companies under Federal Rule of Evidence 801(d)(2)(D) (statement by Mr. López Vidal as the Companies' President/CEO acting within the scope of his agency), and binding on Mr. Borschow under Rule 801(d)(2)(A) to the extent it recounts and is not contradicted by Mr. Borschow's prior statements. The constituent-authorization failure analyzed above is therefore confirmed by the Companies' own Manager, in a contemporaneous writing, on the very day Atty. Abesada appeared.

**E.  Rule 1.8(f) and the Source-of-Compensation Doctrine**

P.R. Rule 1.8(f) (mirroring ABA Model Rule 1.8(f)) prohibits a lawyer from accepting compensation for representing a client from a third party unless (a) the client gives informed consent, (b) there is no interference with the lawyer's independence of professional judgment, and (c) information relating to the representation is protected. *See also* Restatement (Third) of the Law Governing Lawyers § 134(2) (Am. L. Inst. 2000).

In *AMRC, LLC v. López-Vidal*, No. SJ2024CV10727 (T.P.I. P.R., San Juan, Sala 603, Hon. Brian Burgos Hernández, J.), the July 16, 2025 Initial Conference Minute records Atty. Abesada's on-the-record representation that the Companies he represents are not operating and have no assets, expressly stating in the Minute that "He will not be conducting discovery". AMRC Initial Conference Minute at 1 (Opposition Ex. 3). That representation is consistent with the operative Complaint, which pleads that all material assets were transferred under the void January 31, 2025 AAA. Compl. ¶¶ 943–948.

Where a lawyer represents an entity with no assets, the lawyer's fees are necessarily paid by a non-client third party. The identity of that third-party payor is not protected by attorney-client

privilege because the clients are not paying the bill. "Generally speaking, neither the identity of a client nor information about fee arrangements is protected by the attorney-client privilege." *U.S. v. Saccoccia,* 898 F.Supp. 53, 58 (D.R.I. 1995), (Citations omitted.) The realistic candidates for Atty. Abesada's compensation source are: (i) BPPR; (ii) VRM-Penzini, Humacao RNG (a wholly-owned VRM subsidiary, AAA Recital C), or their principals; (iii) Mr. Borschow, Semillero Partners LLC, or Semillero Investment Fund I, LLC; or (iv) some combination of the foregoing. **Each is a defendant in this action.** The structural alignment is reinforced by AAA § 6.8, which selectively indemnifies the López-Vidal side and excludes Mr. Boyd—the AAA itself was reverse-engineered to fund the defense of indemnified insiders while leaving the Companies and the Boyd-aligned Members exposed. No Founding-Members'-Manager-disclosed consent has been obtained. None of the Rule 1.8(f) conditions is satisfied. The presumption from this record—rebuttable, but unrebutted—is that Atty. Abesada's loyalty runs to the third-party payor and not to the Companies.

The presumption is further reinforced by the Demanda VRM's admission, by VRM's own counsel of record, that GFC funds have been diverted to pay individual defense counsel for the López defendants rather than honor the Companies' indemnification obligations. Demanda VRM ¶¶ 56, 170 (Opposition Ex. 5-H).

The AMRC and VRM admissions are reinforced by a second, independent, party-opponent admission of illiquidity by Mr. Borschow himself — a named RICO defendant and the Series A principal who purportedly engaged Atty. Abesada. On March 24, 2025 at 5:12 p.m., Mr. López-Vidal sent Mr. Borschow an email asking, in Question 3: "Who specifically is responsible for covering the costs associated with this new legal representation? Given that, **as you stated**, the companies have not been able to find legal representation due to the illiquidity." Opposition Ex.

5-F (emphasis added). The phrase "*as you stated*" identifies Mr. Borschow himself as the source of the illiquidity admission. The admission is a party-opponent admission under Federal Rule of Evidence 801(d)(2)(A), and a statement attributable to the Series A constituency under Rule 801(d)(2)(D). On the documentary record, *both* the lawyer claiming to represent the Companies (Atty. Abesada, in AMRC) and the Series A principal who arranged that representation (Mr. Borschow, in the Ex. 5-F email) have admitted that the Companies cannot pay for legal representation. The source-of-compensation presumption developed above is doubly established.

## F. Rule 3.3 (Candor) and Rule 8.4 (Misconduct)

ECF No. 49 contains material misstatements and material omissions that violate Atty. Abesada's duty of candor to the Court under P.R. Rule 3.3 and the prohibition on dishonesty in P.R. Rule 8.4(c). The three most decisive defects are:

- **The selective quotation of Operating Agreement Section 6.2.** ECF No. 49 at 12 quotes Sections 6.2(c) and (d) of the GFC Operating Agreement while omitting the introductory limiting clause—"[e]xcept as otherwise expressly required under this Agreement (including, without limitation, section 4.2(j))"—that subordinates Board powers to Member-reserved authority. The omission is the linchpin of ECF No. 49's authority theory.

- **The mischaracterization of In re PHC.** ECF No. 49 at 8 represents that *PHC* "has absolutely nothing to do with the authority of members of a limited liability company to appoint counsel for such company in a derivative claim." That representation strips *PHC* of its controlling principle: conflicted board action cannot be cleansed by ratification by the same conflicted body. *PHC*, 894 F.3d at 435; *Lyman-Cutler*, 632 B.R. at 388.

Each candor defect would independently support disqualification under the Court's inherent authority. *Chambers*, 501 U.S. at 43–46. The defects are also not isolated. ECF No. 49 is

the fourth in a 58-day, two-forum, three-firm sequence (Delgado & Fernández, Pietrantoni Méndez & Álvarez, and Correa-Acevedo & Abesada) of five substantively parallel filings (March 24 – May 21, 2026) advancing the same seven false statements concerning preclusion, undisclosed appeals, Operating Agreement § 6.2, and standing. The coordinated cross-forum repetition supports a coordinated-conduct inference under *Salinas v. United States*, 522 U.S. 52, 63–66 (1997), and confirms that ECF No. 49 is not the independent act of counsel for the Companies but the captured-counsel network's fourth of five installments. The candor defects compound the Rule 1.7 problem: a lawyer in a *per se* non-waivable conflict who simultaneously misstates the record to the tribunal in defense of that conflict has placed himself in the position the Rules were designed to prevent.

### G.  The Bolger Trap — Atty. Abesada's Own Admission Defeats His Own Representation

Atty. Abesada has filed, signed, and served on this Court his own express admission that his representation fails the *Bolger* test. ECF No. 49 at 8–9 correctly states the joint-representation standard from *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993): joint representation of a corporation and its directors is permitted where the plaintiffs have alleged mere mismanagement, but separate counsel is required where there are allegations of fraud, intentional misconduct, or self-dealing. Atty. Abesada then writes, in his own words at ECF No. 49 at 9:

> *Plaintiffs' own motion characterizes the Defendants' actions as "self-dealing" and "RICO predicate acts." By the very standard articulated in Bolger, Plaintiffs' allegations of intentional wrongdoing would demand the appointment of independent counsel for the Companies.*

That sentence is dispositive. He represents the Borschow-led Board that approved the AAA; Mr. Borschow is a named RICO defendant; the Series A representatives on the seven-seat

Board (Semillero/Borschow, PRFG/Villarini, CDVCA/Villarini, VRM/Penzini, and the Preferred Manager) are each alleged to have participated in or benefited from the racketeering predicates the Complaint pleads. The operative Complaint pleads precisely the conditions Atty. Abesada concedes are disqualifying: fraud, intentional misconduct, and self-dealing (Compl. ¶¶ 47–51, 80–87, 950–951, 972–979), with Complaint ¶ 230 quantifying the self-dealing in specific dollar amounts directly tied to named Board members and their affiliates: Mr. Borschow $1,468,071.36; PRFG (Mr. Villarini) $528,526; CDVCA (Mr. Villarini) $208,576; ITS (Mr. López-Gómez) $230,804; and VRM-Penzini $761,221, with VRM-Penzini additionally identified as the parent of wholly-owned loan-purchaser Humacao RNG. By his own filed standard, separate, independent counsel for the Companies is required.

The argument is self-defeating on its face.

## H.  The Pattern of Inaction — Atty. Abesada Has Defended Nothing on the Companies' Behalf

A lawyer engaged to represent the entity who does not represent the entity is not the entity's lawyer. The four most decisive points:

- **BPPR collection action (SJ2024CV04616).** Atty. Trelles of Pietrantoni Méndez & Álvarez filed in May 2024. Atty. Abesada filed no notice of appeal, no motion for reconsideration, and no substantive opposition to the December 27, 2024 Partial Summary Judgment of **$13,418,352.07** entered against the Companies.

- **Demanda VRM-Penzini (SJ2024CV07694).** Pending nearly two years; seeks approximately **$223 million** from GFC and BGF across ten causes of action. Atty. Abesada has filed no motion to dismiss, and no counterclaim,.

- **Affirmative federal claims (this action).** Atty. Abesada has filed no answer to the operative Complaint. He has pursued no affirmative claim on the Companies' behalf against BPPR, VRM-Penzini, Humacao RNG, Mr. Borschow, Semillero, or any other defendant.

- **Engagement letter carve-out.** Atty. Abesada's engagement letter "explicitly carves out 'certain ongoing labor litigation' for separate counsel, confirming his role is limited to shielding the defendants from the RICO and Anti-Tying claims." Proposed Third Am. Compl. ¶ 269, *Boyd v. Banco Popular de P.R.*, No. 3:24-cv-01569-PAD, ECF No. 134-1.

The pattern is uniform: in every instance where Atty. Abesada has had an opportunity to act on the Companies' behalf, he has acted (or refrained from acting) to shield other defendants from the Companies' claims. That pattern is documentary evidence of representation in the interest of the third-party payor rather than the nominal client—the very condition Rules 1.8(f) and 1.7(a)(2) are designed to identify and prohibit.

## I.  The Picó June 19, 2025 Letter — Threats of Criminal Prosecution Against the Members Atty. Abesada Purports to Represent

The captured-counsel pattern reaches its most aggravated form in Atty. Abesada's procurement and deployment of the June 19, 2025 letter from Mr. Guillermo R. Picó of Picó Advisors LLC. The letter, issued "pursuant to a request from Attorney Roberto Abesada, Esq." by its own opening sentence and copied to Atty. Abesada on its cc line, contains two passages that on their face threaten criminal prosecution against Plaintiff Boyd and the other Common Unit Members for the act of exercising their Operating Agreement § 3.2 written-consent rights. At page 1, the letter warns of "civil and criminal law" consequences for assertions characterized as fraudulent misrepresentations. At page 2, it warns that "contrary assertions by individual members

. . . may expose any members making such assertions to civil and criminal liability." The conduct so labelled was Mr. Boyd's execution and circulation of the June 13, 2025 Member Written Consent—undertaken while Mr. Boyd was an active plaintiff in *Boyd v. López-Vidal*, No. 3:22-cv-01190-GMM, a federal RICO action against the BPPR-affiliated network whose litigation counsel (Atty. Abesada) had requested the letter and was its cc recipient.

**Atty. Abesada thereafter ratified the threats by deploying the letter into the federal record** as exhibit to ECF No. 751-1 in *Boyd v. López-Vidal*, 3:22-cv-01190-GMM, adopting its content as the Companies' litigation position.

The conduct supports independent professional-responsibility violations sufficient to require disqualification under the Court's inherent authority on four independent grounds:

- **Rule 4.4(a)** prohibits the use of means having no substantial purpose other than to embarrass, delay, or burden a third person, including threats of criminal prosecution unconnected to any prosecutable predicate.

- **The historical and continuing prohibition against threatening criminal prosecution to obtain advantage in a civil matter**—formerly ABA Model Code DR 7-105(A), retained in Puerto Rico practice under P.R. Code of Prof'l Ethics Canon 35 and analogous-rule applications under Restatement (Third) of the Law Governing Lawyers § 96 cmt. d (Am. L. Inst. 2000)—categorically forbids the conduct deployed here.

- **Model Rule 1.13(g)** prohibits a lawyer for an organization from representing the organization's interests in a manner that prejudices a constituent's personal interests without prior compliance with subsections (a) and (f); Mr. Picó's threat of personal criminal liability against constituent-Manager Mr. López-Vidal (himself a cc-recipient of

the letter), without prior subsection compliance, is an independent Rule 1.13(g) violation, ratified by Atty. Abesada through its use in litigation.

- **Federal-criminal predicates under 18 U.S.C. § 1512(b)(1)** (intimidation with intent to influence the conduct of a person in an official proceeding—here, the active federal RICO action in which Mr. Boyd was a named plaintiff) **and 18 U.S.C. § 1503** (corrupt endeavor to obstruct, influence, or impede the due administration of justice).

A lawyer who procures, ratifies, and deploys into a federal record threats of criminal prosecution against the very members he purports to represent has placed himself irretrievably outside the boundaries Rule 1.13 establishes for the representation of an organization through its constituents.

## J. The "Special Appearance" Framing Cannot Insulate Atty. Abesada From Disqualification

Atty. Abesada filed ECF No. 49 as a "Special Appearance," presumably in anticipation of the disqualification question this Motion presents. The framing fails. By seeking affirmative merits relief—sanctions against Plaintiffs Boyd and Lassers under 28 U.S.C. § 1927 and *Chambers*, 501 U.S. 32; an order vacating Atty. Pedrosa's answer at ECF No. 32; and an order conditioning the Companies' responsive pleading on the resolution of the representation question—Atty. Abesada has appeared for the Companies for purposes consistent with *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) (a party seeking affirmative relief is generally treated as having appeared for those purposes). The Companies are now before the Court for ordinary Rule 12(a) purposes, and the "Special Appearance" label cannot insulate Atty. Abesada from the consequences.

**K.** *The Commonwealth Contestaciones in SJ2024CV07694 Establish a Distinct Documentary Disqualification Ground — Atty. Abesada Has Pleaded in Writing That the Companies' Interests Are Aligned With the Plaintiffs Suing Them.*

A distinct and independently sufficient ground for disqualification appears not in this federal action but in the parallel Commonwealth proceeding — *VRM Penzini Fund I, LLC – Renewable Series II v. López-Vidal*, Civil No. SJ2024CV07694 (P.R. T.P.I., Sala Sup. San Juan) — where Atty. Abesada has filed two successive answers on behalf of GFC and BGF. *See* Opposition Ex. 5-H (Demanda). The plaintiffs in that Commonwealth action are VRM-Penzini, Semillero Partners, Semillero Investment Fund I, and Mr. Borschow — the same constituents who are RICO defendants here. The Companies are sued directly for approximately $223 million on ten causes of action, including four direct money claims: the First Cause against GFC (Convertible Note Purchase Agreement); the Eighth Cause against GFC (Pre-Organization Non-Transferable Warrant); the Ninth Cause against BGF for $110,000 (Advisory Services Agreement); and the Tenth Cause against GFC for $280,937 (the Indemnification Agreement and Undertaking to Repay Advancement of Legal Expenses that, on plaintiffs' own pleading, funds Mr. Borschow's defense in this RICO matter). Demanda ¶¶ 107-72, ¶ 168.

Until December 2024, the Companies were represented in SJ2024CV07694 by Atty. Guillermo Ramos Luiña (R.U.A. 8394). On December 2, 2024, Atty. Ramos Luiña filed a Moción para que se Eliminen Partes Indebidamente Acumuladas, SUMAC #30, taking the posture a non-conflicted lawyer takes for clients facing this exposure: he framed the Companies as *victims* of the López defendants — "**las Comparecientes fueron víctimas adicionales de la conducta engañosa y fraudulenta que los Demandantes le imputan a los señores López**" — and sought severance under P.R. R. Civ. P. 17.1, 18, 32 L.P.R.A. Ap. V, preserving every defense and counterclaim. Ramos Luiña Severance Mot. ¶¶ 3.2-3.3. He withdrew because the Companies stopped paying his fees.

Atty. Abesada then appeared and replaced Atty. Ramos Luiña. His Amended Answer of June 10, 2025 — Defs.' Contestación Enmendada a Demanda, Entrada Núm. 78, SJ2024CV07694 (P.R. T.P.I.) [hereinafter Am. Answer] — inverts every meaningful position Atty. Ramos Luiña had taken on the same complaint. Atty. Abesada admits in whole or material part ¶¶ 1-9, 14, 16, 20, 22-27, 29-31, 37-40, 42, 63-69, and 72 of the Demanda, Am. Answer ¶¶ 1-9, 14, 16, 20, 22-27, 29-31, 37-40, 42, 63-69, 72; pleads no affirmative defense to the four direct money causes of action against the Companies, *id.*, Defensas Afirmativas Nos. 1-5; and asserts no counterclaim notwithstanding P.R. R. Civ. P. 11.1's compulsory-counterclaim regime, 32 L.P.R.A. Ap. V, r. 11.1.

Most decisively, in Affirmative Defense No. 1, Atty. Abesada pleaded in writing — on the Companies' behalf — that the Companies' litigation interests are common with those of the very plaintiffs suing them. The full text of Defensa Afirmativa No. 1 reads: "La concentración de las alegaciones y remedios en la demanda está enfocada en aquellos demandados individuales que se alega no actuaron en los mejores intereses de las compañías comparecientes **y los demandantes**." Am. Answer, Defensa Afirmativa No. 1 (emphasis added). The English translation: "The focus of the allegations and remedies in the complaint is directed at those individual defendants who are alleged to have failed to act in the best interests of the appearing companies **and the plaintiffs**." That sentence does not require interpretation. It is an alignment expressly pleaded by the very lawyer against whom disqualification is sought, on behalf of the very clients he claims to represent. *On the documentary record before this Court, Atty. Abesada has placed his signature on a pleading equating his clients' interests with the interests of the parties suing them.*

The Amended Answer is also internally inconsistent on the threshold question whether the Demanda seeks any relief against the Companies. Affirmative Defense No. 3 asserts that *no* relief

is sought, quoting a 1940 student note for the proposition that "[f]ailure to answer ordinarily cannot harm the corporation, since no relief is asked against it in the complaint and no judgment by default can be taken." Am. Answer, Defensa Afirmativa No. 3 (quoting George T. Washington, *Stockholders' Derivative Suits: The Company's Role and a Suggestion*, 25 Cornell L.Q. 361, 362 n.5 (1940)). The very next paragraph, Defensa Afirmativa No. 4, incorporates by reference the Ramos Luiña Severance Motion — whose entire premise is that four direct causes of action *do* seek relief against the Companies. Ramos Luiña Severance Mot. ¶ 3.3(a)-(d). *Compare* Am. Answer, Defensa Afirmativa No. 3, *with id.*, Defensa Afirmativa No. 4. A non-conflicted lawyer would have to pick one of those two positions. Atty. Abesada did not.

This documentary inversion supplies a disqualification ground that no concurrent-conflict analysis, no fee-source analysis, and no Rule 1.13(a) authorization analysis can supply on its own: it is the lawyer's *own admission, in pleading form*, that he is representing two opposing sides as if they were on the same side. That is the textbook definition of concurrent adverse representation under P.R. R. Prof'l Conduct r. 1.7(a)(1) and Model Rule 1.7(a)(1), and it is per se non-consentable under Rule 1.7(b)(3) where, as here, the same lawyer is simultaneously prosecuting an indemnification claim against GFC, Demanda ¶¶ 163-72, and drawing on that indemnity to fund his appearance here, *see* supra § IV.E. The Commonwealth contestaciones inversion is independently sufficient to require disqualification.

## V.  REMEDY REQUESTED

Plaintiffs respectfully request that the Court enter an Order:

- **(a) Disqualifying** Roberto Abesada-Agüet, Esq. (Bar No. 216706), and Correa-Acevedo & Abesada Law Offices, P.S.C., from any further role as counsel of record for GFC Holdings, LLC and Biomass Green Fuels, LLC in this action and in any related matter

affecting the representation of GFC and BGF, under P.R. Rules of Professional Conduct 1.7(a)(1), 1.7(a)(2), 1.7(b)(3), 1.8(f), 1.9, 1.10(a), and 1.13(a); D.P.R. Loc. Civ. R. 83.5; and the Court's inherent authority under *Chambers*, 501 U.S. at 43–46, *Kevlik*, 724 F.2d at 847, and *In re Cordova-Gonzalez*, 996 F.2d at 1335;

- **(b) Striking** ECF No. 49 as the act of disqualified counsel, without prejudice to any party properly authorized to represent the Companies refiling any proper motion;

- **(c) Granting** Plaintiffs' motion at ECF No. 41 and authorizing Becker-Whitaker and Miñana to represent GFC Holdings, LLC and Biomass Green Fuels, LLC in this action through the Companies' majority-Member constituents under Model Rule 1.13(a), the June 2, 2025 Irrevocable Proxy, and the conflicted-board cleansing principle of *In re PHC, Inc. S'holder Litig.*, 894 F.3d 419 (1st Cir. 2018). The Companies are already represented by Attys. Becker-Whitaker and Miñana of record through the June 2, 2025 Irrevocable Proxy; disqualification of Atty. Abesada therefore creates no counsel vacuum;

- **(d)** Authorizing the limited discovery and targeted subpoenas identified in Plaintiffs' contemporaneously-filed Motion for Limited Pre-Conference Discovery into (i) the engagement letter and fee agreement between Atty. Abesada and the Companies; (ii) the source of compensation funding the representation; and (iii) contemporaneous communications between Atty. Abesada and BPPR, VRM-Penzini, Humacao RNG LLC, Pietrantoni Méndez & Álvarez LLC, Picó Advisors LLC, and Semillero Investment Fund I, LLC concerning the GFC/BGF engagement;

and

- **(f) Granting** such other and further relief as the Court deems just and proper.

## VI. CONCLUSION

A lawyer cannot serve two clients whose interests are diametrically opposed, in matters pending before the same federal District Court, four days apart, with no informed consent from either, in a configuration that Rule 1.7(b)(3) categorically forbids. A lawyer cannot represent the borrower-entities in a federal action against the lender while concurrently representing that same lender across twenty-six federal actions, six First Circuit appeals, and a Tribunal de Apelaciones disqualification ruling that already removed his Firm from BPPR's representation more than a decade ago for the kind of transaction-participation grounds present here. A lawyer cannot defend nothing on the Companies' behalf, refuse to disclose the source of his compensation, expressly admit by the very Bolger standard he invokes that separate counsel is required, and then ask the Court to sanction the Members who are actually pursuing the Companies' federal claims.

Disqualification follows as a matter of law under P.R. Rules 1.7, 1.8(f), 1.9, 1.10, and 1.13, and as a matter of equity under the Court's inherent authority. Plaintiffs respectfully request that the Court enter the Order requested above.

Respectfully submitted.

In San Juan, Puerto Rico, this 25th day of May 2026.

| | |
|---|---|
| /s/ Jane A. Becker Whitaker<br>**Jane A. Becker Whitaker**<br>USDC-PR No. 205110<br>P.O. Box 9023914<br>San Juan, Puerto Rico 00902-3914<br>Tel.: (787) 754-9191<br>Email: jbw@beckervissepo.com<br>*Counsel for Plaintiffs* | /s/ Luis E. Miñana<br>**Luis E. Miñana**<br>USDC-PR No. 225608<br>ESPADA MIÑANA & PEDROSA LAW OFFICES PSC<br>P.O. Box 9023767<br>San Juan, Puerto Rico 00902-3767<br>Tel.: (787) 402-2226<br>Email: minanalaw@yahoo.com<br>*Counsel for Plaintiffs* |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 26, 2026, the foregoing Plaintiffs' Motion to Disqualify Roberto Abesada-Agüet and Correa-Acevedo & Abesada Law Offices, P.S.C., was filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ Jane A. Becker Whitaker

**Jane A. Becker Whitaker**

**INDEX OF EXHIBITS**

All exhibits referenced in this Motion are incorporated by reference under Fed. R. Civ. P. 10(c) from Plaintiffs' contemporaneously-filed Opposition to ECF No. 49. The exhibit numbers used in this Motion correspond to the consolidated set attached to the Opposition: Opposition Ex. 1 (Notice of Appearance of Counsel filed by Roberto Abesada-Agüet on behalf of BPPR in Catala-Del Valle v. NSSK San Juan, LLC, No. 3:26-cv-01205-JAG, AO 458, ECF No. 9, Apr. 24, 2026); Ex. 2 (Docket-Citation Appendix, four tables); Ex. 3 (AMRC, LLC v. López-Vidal, No. SJ2024CV10727, Initial Conference Minute dated July 16, 2025); Ex. 4 (Asset Acquisition Agreement dated January 31, 2025); Ex. 5 (López-Vidal Declaration under 28 U.S.C. § 1746, with sub-exhibits 5-A through 5-I — including Ex. 5-A (January 31, 2025 BGF Board Resolution refusing to authorize the asset transfer), Ex. 5-B (López-Vidal February 21, 2025 written objection to APA), Ex. 5-C (February 6, 2025 Cease and Desist letter from Mr. Boyd and Mr. Lassers), Ex. 5-D (April 1, 2025 Carla S. Pérez transmittal of March 21, 2025 Board Resolution), Ex. 5-E (Borschow March 31, 2025 communication announcing Feliciano and Goytía designations), Ex. 5-F (March 24, 2025 López-Vidal email to Borschow regarding Abesada engagement and illiquidity), Ex. 5-G (Picó June 19, 2025 letter), Ex. 5-H (Demanda VRM, SJ2024CV07694), and Ex. 5-I (May 6, 2025 email purporting to terminate López-Vidal as CEO)); Ex. 6 (Police Monitor Disbursement Motion, evidencing Atty. Abesada's $16,000-per-month compensation as general counsel for the Office of Police Reform); and Ex. 7 (June 2, 2025 Irrevocable Proxy).