**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **GREGORY BOYD and JONA-THAN LASSERS,** **Plaintiffs,** **v.** **BANCO POPULAR DE PUERTO RICO, et al.,** **Defendants.** | **Civil No. 3:26-cv-01066-MAJ** |

**PLAINTIFFS' MOTION FOR LIMITED PRE-CONFERENCE DISCOVERY**

**AND ISSUANCE OF TARGETED RULE 45 SUBPOENAS IN AID OF**

**THE DISQUALIFICATION AND SANCTIONS PROCEEDINGS**

Civil No. 3:26-cv-01066-MAJ

**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF RELIEF SOUGHT.................................................. **5**

II. PROCEDURAL POSTURE ............................................................................................... **7**

III. THE COURT POSSESSES INDEPENDENT AUTHORITY UNDER RULE 26(d)(1), RULE 45, AND ITS INHERENT SUPERVISORY POWER ......................................................... **8**

IV. THE EQUITABLE PREDICATE — ATTY. ABESADA CANNOT USE HIS OWN CONDUCT AS BOTH SWORD AND SHIELD............................................................................ **10**

V. THE PROPOSED SUBPOENAS ARE NOT BARRED BY THE ATTORNEY-CLIENT PRIVILEGE — FOUR INDEPENDENT GROUNDS ................................................................. **13**

VI. THE COMMON-INTEREST DOCTRINE AFFORDS NO SHELTER ............................. **17**

VII. THE PROPOSED SUBPOENAS ARE NARROWLY TAILORED AND PROPORTIONAL ................................................................................................................... **18**

VIII. DOCUMENT CATEGORIES AND SUBPOENA RECIPIENTS...................................... **19**

IX. PROPOSED PROCEDURAL SAFEGUARDS.................................................................... **19**

X. CONCLUSION................................................................................................................... **22**

CERTIFICATE OF SERVICE ............................................................................................. **24**

SCHEDULE A...................................................................................................................... **25**

SCHEDULE B...................................................................................................................... **32**

# TABLE OF AUTHORITIES

**CASES**

Balcones al Castillo, S.E. v. Banco Popular de P.R., No. KLCE201301132 (P.R. Trib. Apel. Oct. 29, 2013) ................................................................................................................................. 10

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ........................................................................ 9

Cavallaro v. United States, 284 F.3d 236 (1st Cir. 2002) .......................................................... 17

Chambers v. NASCO, Inc., 501 U.S. 32 (1991) ........................................................... 8, 9, 10, 22

Clark v. United States, 289 U.S. 1 (1933) .................................................................................... 9

In re Grand Jury Subpoena (Reyes-Requena), 913 F.2d 1118 (5th Cir. 1990) ........................... 16

In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16 (1st Cir. 2003) ................................................................................................................................. 15

In re PHC, Inc. S'holder Litig., 894 F.3d 419 (1st Cir. 2018) ..................................................... 30

In re Subpoena Issued to Dennis Friedman, 350 F.3d 65 (2d Cir. 2003) .................................... 11

Matter of Grand Jury Subpoena of Stewart, 144 Misc. 2d 1012, 545 N.Y.S.2d 974 (Sup. Ct. N.Y. Co. 1989), aff'd as modified sub nom. In re Stewart, 156 A.D.2d 294, 548 N.Y.S.2d 679 (1st Dep't 1989) ....................................................................................................................... 14

Priest v. Hennessy, 51 N.Y.2d 62, 431 N.Y.S.2d 511, 409 N.E.2d 983 (1980) .......................... 14

Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49 (1993) ............ 17

Salinas v. United States, 522 U.S. 52 (1997) .............................................................................. 16

Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986) ............................................ 11

United States v. Reeder, 170 F.3d 93 (1st Cir. 1999) ................................................................. 16

United States v. Saccoccio, 898 F. Supp. 53 (D.R.I. 1995) ......................................................... 14

United States v. Zolin, 491 U.S. 554 (1989) .......................................................................... 16, 17

Upjohn Co. v. United States, 449 U.S. 383 (1981) ..................................................................... 16

USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Constr. Trades Council, 31 F.3d 800 (9th Cir. 1994) ................................................................................................................................ 17

**STATUTES**

18 U.S.C. § 1512(b)(1) ............................................................................................................... 17

18 U.S.C. §§ 1503 ...................................................................................................................... 17

28 U.S.C. § 1927 ................................................................................................ 8, 22

## RULES

ABA Model R. Prof'l Conduct 4.4(a) .......................................................................... 17

Fed. R. Civ. P. 10(c) ................................................................................................. 6

Fed. R. Civ. P. 26(d)(1) ............................................................................................ 8

Fed. R. Civ. P. 45 ................................................................................................ 9, 20

Local Rule 83.1 ...................................................................................................... 10

P.R. R. Prof'l Conduct 1.13 ...................................................................................... 8

P.R. R. Prof'l Conduct 1.7(a)(1) ............................................................................... 8

P.R. R. Prof'l Conduct 1.8(f) .................................................................................... 8

P.R. R. Prof'l Conduct 1.9 ........................................................................................ 8

## OTHER AUTHORITIES

ABA Model Code of Prof'l Resp. DR 7-105(A) .......................................................... 18

P.R. Code of Prof'l Ethics Canon 35 ........................................................................ 18

Restatement (Third) of the Law Governing Lawyers § 134(2) .................................... 15

Restatement (Third) of the Law Governing Lawyers § 68 cmt. c ................................. 17

Restatement (Third) of the Law Governing Lawyers § 96 cmt. d (Am. L. Inst. 2000) ............... 18

Civil No. 3:26-cv-01066-MAJ

**TO THE HONORABLE COURT:**

COME NOW Plaintiffs Gregory Boyd and Jonathan Lassers, by and through their under-signed counsel, and very respectfully state and pray:

## I. INTRODUCTION AND SUMMARY OF RELIEF SOUGHT

This Motion is filed contemporaneously with Plaintiffs' Opposition to the "Special Appearance to Oppose Plaintiffs' Motion for Their Attorneys to Represent GFC Holdings, LLC and Biomass Green Fuels, LLC and Request for Sanctions" (ECF No. 49) and with Plaintiffs' contemporaneously-filed Motion to Disqualify Roberto Abesada-Agüet and Correa-Acevedo & Abesada Law Offices, P.S.C. Atty. Abesada currently represents Banco Popular in two cases: (i) Atty. Abesada entered a Notice of Appearance on behalf of BPPR in *Catala-Del Valle v. NSSK San Juan, LLC*, No. 3:26-cv-01205-JAG (D.P.R.), ECF No. 9 (Apr. 24, 2026) (Opposition Ex. 1), four days before he signed and filed ECF No. 49 against BPPR in this action; and (ii) Atty. Abesada is concurrently representing BPPR in *Banco Popular de P.R. v. [Defendant]*, No. SJ2025CV07110 (T.P.I. San Juan), an active mortgage-foreclosure proceeding with three public auctions noticed for April 20, April 27, and May 4, 2026. Either representation alone violates P.R. Rule 1.7(a)(1). Together with the Operating Agreement, the engagement-financing chain, the AAA, the June 19, 2025 Picó letter, and the coordinated cross-forum filings, they supply the documentary record on which disqualification and threshold sanctions adjudication turn.

The full factual record supporting this Motion — the operative Complaint's RICO and BHCA anti-tying allegations against BPPR; Atty. Abesada's twenty-six federal-court and fifteen Puerto Rico local-court appearances for BPPR catalogued at Opposition Ex. 2; the January 31, 2025 Asset Acquisition Agreement and its § 2.10, § 6.8, and § 3.6(c) provisions; the engagement

defects in the March 21, 2025 Board Resolution; Atty. Abesada's pattern of non-defense across SJ2024CV04616, SJ2024CV07694, and this action; the June 19, 2025 Picó letter and its use into the federal record; BPPR's eight supporting filings in related federal cases; and the coordinated cross-forum sequence of five substantively parallel filings by three firms across two forums in 58 days (March 24 – May 21, 2026) — is set forth in Plaintiffs' contemporaneously-filed Opposition to ECF No. 49 at Section II ¶¶ 1–19, Section IX, and Section X, and in the Motion to Disqualify, with supporting documentation at Opposition Exhibits 2 through 7 and the López-Vidal Declaration (Opposition Ex. 5, with sub-exhibits 5-A through 5-I). Plaintiffs incorporate that record here by reference pursuant to Fed. R. Civ. P. 10(c). The discrete relief sought by this Motion — limited pre-conference discovery and issuance of four targeted Rule 45 subpoenas in aid of the disqualification proceedings and the deferred sanctions question reserved in the Opposition — is the procedural vehicle for record development that Chambers and the First Circuit's § 1927 jurisprudence require.

Plaintiffs respectfully request authorization of limited pre-conference discovery, issuance of twelve targeted Rule 45 subpoenas — four for immediate issuance in Phase 1, seven Phase 2 subpoenas reserved for issuance only upon a Phase 1 production showing, and one additional Phase 2 subpoena (Sullivan & Cromwell LLP) reserved for issuance only upon a showing that Sullivan & Cromwell participated in the inter-counsel communications at issue — returnable within thirty days, *in camera* review of any disputed materials under Rule 45(d)(5), and reservation of the sanctions question for re-noticing on the developed evidentiary record.

The relief Plaintiffs seek is narrow. The five document categories identified in Schedule A target the discrete questions central to the disqualification and threshold sanctions inquiries: the engagement letter and fee agreement; the source of compensation; communications between

Atty. Abesada and the BPPR-aligned counsel network concerning the Companies; the scope of authority claimed by the Series A-aligned managers who purportedly engaged him; and the inter-counsel communications underlying the coordinated five-filing, three-firm, two-fora, 58-day cross-forum sequence (March 24 – May 21, 2026) documented at Section IX of the Opposition. Each category is documented as material in the operative Complaint or in the record before this Court. None constitutes general merits exploration.

## II. PROCEDURAL POSTURE

This Court has the following Plaintiffs-initiated motions presently before it: (i) Plaintiffs' motion at ECF No. 41 for an order authorizing the undersigned counsel to represent GFC Holdings, LLC and Biomass Green Fuels, LLC (the "Companies") in this action through the majority-Member constituency identified at Section XI of the Opposition; (ii) Plaintiffs' request, developed at Section X of the Opposition, for disqualification of Atty. Abesada and his firm under PR Rules 1.7(a)(1), 1.8(f), 1.9, and 1.13(a); and (iii) Plaintiffs' Opposition to ECF No. 49 itself, which requests denial in its entirety, refusal of the requested deferral of the Companies' responsive pleading, and the disciplinary referrals identified in the Opposition's Prayer for Relief.

This Motion is filed concurrently with the Opposition and is logically subsidiary to the disqualification and sanctions questions developed there. The affirmative discovery authorization sought here is a request for a court order and accordingly is presented in this discrete motion rather than embedded in opposition briefing.

## III. THE COURT POSSESSES INDEPENDENT AUTHORITY UNDER RULE 26(d)(1), RULE 45, AND ITS INHERENT SUPERVISORY POWER

The Court's authority to authorize the targeted subpoenas rests on three independent and reinforcing sources: Federal Rule of Civil Procedure 26(d)(1); Federal Rule of Civil Procedure 45; and the Court's inherent supervisory power over the conduct of attorneys practicing before it, reinforced by D.P.R. Local Rules 83.1 and 83.5. Each is sufficient standing alone.

### A. Rule 26(d)(1) Authorizes Pre-Conference Discovery for Good Cause, and Disqualification-and-Sanctions Proceedings Are Paradigm Good Cause.

Federal Rule of Civil Procedure 26(d)(1) permits discovery before the Rule 26(f) conference "when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). The rule thus vests this Court with authority to permit pre-conference discovery whenever good cause exists.

Good cause is found where a threshold legal question — such as disqualification of counsel or sanctions based on bad faith — cannot be resolved on the existing pleadings; the critical facts are in the exclusive possession of the respondent or third parties; and the discovery sought is narrowly targeted to the threshold issue rather than constituting general merits exploration. All three conditions are satisfied here. The disqualification analysis under P.R. Rules of Professional Conduct r. 1.7(a)(1), 1.8(f), 1.9, and 1.13 turns on documentary facts — engagement terms, fee source, instructions from the conflicted managers, and inter-counsel communications — that no party other than Atty. Abesada and his funding chain possesses. The threshold sanctions inquiry under § 1927 and *Chambers* requires the same factual development. And the subpoenas Plaintiffs propose target only those threshold materials, not general merits discovery. The verbatim or near-

verbatim convergence of seven arguments across three independent firms permits, under the plus-factor framework of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007), an inference of coordination that can be confirmed or rebutted only by the production of the drafting record — directly justifying the limited Category 5 inquiry.

### B. Rule 45 Supplies the Procedural Vehicle Supplementing Rule 26(d)(1).

Federal Rule of Civil Procedure 45 authorizes subpoenas to non-parties at any stage of a case and contains no provision conditioning issuance on completion of the Rule 26(f) conference. Rule 45 is available whenever a party has a legitimate need for third-party documents in connection with a pending proceeding before the Court — including the pending disqualification and sanctions proceedings before this Court. The Rule 45 framework provides independent textual authority for the discrete production requests Plaintiffs propose, supplementing the Rule 26(d)(1) good-cause framework above. Plaintiffs have prepared proposed subpoena forms and attach them as Schedule B; pursuant to Rule 45(a)(4), service of those forms upon all parties contemporaneously with the filing of this Motion satisfies the pre-issuance notice requirement.

### C. The Court's Inherent Supervisory Power and D.P.R. Local Rules 83.1 and 83.5 Provide a Third Independent Basis.

Federal district courts possess inherent authority — grounded in Article III and in the structural requirements of judicial administration — to supervise the conduct of attorneys practicing before them. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991); *Clark v. United States*, 289 U.S. 1, 15 (1933). This power encompasses developing the factual record necessary to adjudicate a properly raised disqualification motion. Where the factual predicate for disqualification is exclusively in the possession of the challenged counsel and the parties coordinating his representation,

ordering limited documentary production through Rule 45 subpoenas is a measured, proportionate exercise of that inherent authority. *See Chambers*, 501 U.S. at 44-46. Puerto Rico courts have already disqualified the Abesada firm from concurrent BPPR-side representation on transaction-participation grounds. *Balcones al Castillo, S.E. v. Banco Popular de P.R.*, No. KLCE201301132 (P.R. Trib. Apel. Oct. 29, 2013).

D.P.R. Local Rules 83.1 and 83.5 reinforce the Court's supervisory authority. Local Rule 83.5 subjects all attorneys practicing in this District to the Puerto Rico Rules of Professional Conduct; Local Rule 83.1 establishes a Committee on Professional Responsibility to investigate attorney misconduct. These local rules vest the Court with broad supervisory authority over the conduct of counsel, which necessarily encompasses the power to develop the factual record that disqualification and sanctions proceedings require.

## IV. THE EQUITABLE PREDICATE — ATTY. ABESADA CANNOT USE HIS OWN CONDUCT AS BOTH SWORD AND SHIELD

Procedural fairness independently compels limited inquiry into the factual predicates Atty. Abesada himself has tendered. Atty. Abesada has placed his own conduct, communications, and asserted authority directly into the evidentiary record of this case. ECF No. 49 is not a pleading of pure legal argument. It affirmatively relies upon — and tenders as evidentiary support — Atty. Abesada's own communications with Attorney Héctor Pedrosa (including the March 12, 2026 email attached as part of ECF No. 49), purported Board-authority resolutions, factual allegations concerning member authority, prior-litigation coordination, and accusations of bad-faith conduct against Plaintiffs and their counsel. By tendering those materials in support of the affirmative relief he seeks, Atty. Abesada transformed himself from advocate into a central factual witness on

(i) the sequence and content of the relevant communications; (ii) the information allegedly disclosed or withheld; (iii) the source and structure of his retention; (iv) the compensation arrangements for the GFC/BGF representation; (v) the extent of his coordination with BPPR-aligned counsel; and (vi) the factual basis for the sanctions accusations.

A litigant cannot use counsel as both sword and shield. Federal courts permit attorney-directed document and deposition discovery where the information is relevant, not protected by privilege, and unavailable through other means. *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71-72 (2d Cir. 2003) : "the standards set forth in Rule 26 require a flexible approach to lawyer depositions…". The First Circuit has not adopted *Shelton*'s heightened balancing framework, *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986), but even if it had, it would be satisfied: Atty. Abesada has placed his retention, communications, and authority at the center of ECF No. 49, and the requested information is uniquely within his possession.

The good-cause record for Schedule A Categories 1 (Engagement Documentation) and 4 (Authority Chain) is independently established by the documentary inversion of the Companies' litigation posture in the parallel Commonwealth proceeding, *VRM Penzini Fund I, LLC – Renewable Series II v. López Vidal*, Civil No. SJ2024CV07694 (P.R. T.P.I., Sala Sup. San Juan). Until December 2024, the Companies were represented in that action by Atty. Guillermo Ramos Luiña (R.U.A. 8394), who filed a Motion to Delete Improperly Accumulated Parts, SUMAC #30 (Dec. 2, 2024), framing the Companies as "additional victims" of the López defendants' alleged fraud, preserving all defenses and counterclaims for the Companies, and seeking severance under P.R. R. Civ. P. 17.1, 18, 32 L.P.R.A. Ap. V. Atty. Ramos Luiña withdrew because the Companies had stopped paying his fees.

Atty. Abesada then appeared and filed two successive Complaints in that same Commonwealth action. The June 10, 2025 Amended Response, Dkt. 78 — signed by Atty. Abesada on behalf of GFC and BGF — (i) admits in whole or material part ¶¶ 1–9, 14, 16, 20, 22–27, 29–31, 37–40, 42, 63–69, and 72 of the Complaint conceding the plaintiffs' factual narrative; (ii) pleads no affirmative defense to the four direct money causes of action against the Companies, including a $110,000 Ninth Cause against BGF (Advisory Services Agreement) and a $280,937 Tenth Cause against GFC (the Indemnification Agreement that, on plaintiffs' own pleading, funds Mr. Borschow's defense in this RICO matter, *see* Complaint ¶ 168); (iii) asserts no counterclaim notwithstanding P.R. R. Civ. P. 11.1's compulsory-counterclaim regime; and (iv) characterizes the Companies' interests as common with the plaintiffs' interests, writing in the very first affirmative defense: "the focus of the allegations and remedies in the complaint is directed at those individual defendants who are alleged to have failed to act in the best interests of the appearing companies **and the plaintiffs**". Affirmative Defense No. 1 (emphasis added).

The complete inversion of Atty. Ramos Luiña's prior conflict-free posture — including the substantive alignment of the Companies' litigation interests with the very plaintiffs suing them for approximately $223 million — independently establishes good cause for Schedule A Categories 1 (Engagement Documentation) and 4 (Authority Chain). The discovery questions are concrete and narrow: who authorized the change in counsel from Atty. Ramos Luiña to Atty. Abesada in the Commonwealth action; who pays Atty. Abesada in that matter and through what fee mechanism; and what direction (if any) from the Companies' duly authorized constituents under Model Rule 1.13(a) authorized the substantive inversion of the Companies' litigation posture — from additional victims with severance sought, to alignment with the plaintiffs and silence in the face of approximately $390,000 in direct money judgments. Those questions cannot be answered on the

public record alone, and they bear directly on whether Atty. Abesada's appearance in this Court can be attributed to GFC and BGF at all.

**Clarification — relief sought.** Plaintiffs do not request — and have never requested — that the Court appoint replacement counsel for GFC Holdings, LLC or Biomass Green Fuels, LLC. The June 2, 2025 Irrevocable Proxy (Opposition Ex. 5) authorized Attorneys Jane A. Becker Whitaker and Luis E. Miñana to represent the Companies, and those attorneys are already counsel of record in this action and in the related federal and Commonwealth proceedings. Disqualification of Atty. Abesada therefore does not create a counsel vacuum; it removes a conflicted intervenor and leaves the duly authorized counsel in place. The limited discovery sought by this Motion is the procedural vehicle to confirm the source of Atty. Abesada's compensation and the chain of authority for his appearance, not to occasion any further appointment.

## V. THE PROPOSED SUBPOENAS ARE NOT BARRED BY THE ATTORNEY-CLIENT PRIVILEGE — FOUR INDEPENDENT GROUNDS

Plaintiffs anticipate that Atty. Abesada will resist on attorney-client privilege grounds. The four grounds developed below independently defeat that objection, but each is overdetermined: the privilege question can be disposed of on a two-horns framework that requires no *in camera* review. First, if Atty. Abesada represents GFC and BGF, then BPPR, Pietrantoni Méndez & Álvarez LLC, and Humacao RNG's counsel are third parties in that representation; communications about GFC/BGF matters with those persons are not privileged as to GFC/BGF. Second, if those persons are instead Atty. Abesada's co-counsel or clients on matters involving GFC and BGF, then Atty. Abesada has been operating in a *per se* Rule 1.7(a)(1) conflict since the inception of the GFC/BGF representation, and disqualification follows as a matter of law without further discovery. Either way, Plaintiffs are entitled to relief. Independently, communications in furtherance of

the RICO predicates are subject to the crime-fraud exception. *Clark v. United States*, 289 U.S. 1, 15 (1933); *United States v. Zolin*, 491 U.S. 554 (1989). The common-interest doctrine affords no shelter because GFC and BGF are directly adverse to BPPR and Humacao RNG.

### A. Fee arrangements and the identity of third-party payors are not privileged.

The attorney-client privilege protects confidential communications made to obtain legal advice. It does not protect the identity of clients, the terms of fee arrangements, or the source of compensation. *United States v. Saccoccio*, 898 F.Supp. 53, 58 (D.R.I. 1995)(Citations omitted.) A fee payment is a business transaction, not a confidential legal communication; revealing who pays an attorney and on what terms does not disclose the substance of any legal advice. Where, as the record suggests here, the fee payor is a third party rather than the nominal client, the privilege argument is weaker still. Courts have held uniformly that the payment of legal fees by a third party does not, by itself, create an attorney-client relationship between the attorney and the benefactor sufficient to sustain a claim of privilege. *See Priest v. Hennessy*, 51 N.Y.2d 62, 69-70, 431 N.Y.S.2d 511, 514, 409 N.E.2d 983, 987 (1980) (holding that "[f]ee arrangements between attorney and client do not ordinarily constitute a confidential communication and, thus, are not privileged in the usual case," and that payment of fees by a third person does not create an attorney-client relationship with the benefactor). *Matter of Grand Jury Subpoena of Stewart*, 144 Misc. 2d 1012, 1018, 545 N.Y.S.2d 974, 978 (Sup. Ct. N.Y. Co. 1989), *aff'd as modified sub nom. In re Stewart*, 156 A.D.2d 294, 548 N.Y.S.2d 679 (1st Dep't 1989). The disclosure obligation is reinforced by P.R. Rule of Prof'l Conduct r. 1.8(f), which requires that any third-party compensation arrangement be disclosed and not interfere with the attorney's independent professional judgment, and by Restatement (Third) of the Law Governing Lawyers § 134(2) (Am. L. Inst. 2000). Atty. Abesada himself has admitted , in *AMRC, LLC v. López-Vidal*, No. SJ2024CV10727 (P.R.

T.P.I., San Juan, Sala 603), at the July 16, 2025 Initial Conference, that the entity he represented "is not operating and has no assets" — confirming that any fees in the parallel GFC/BGF engagement, if structured identically, must originate from a third-party source whose identity is independently producible under Rule 1.8(f).

### B. Communications between Atty. Abesada and counsel for BPPR, PMA, Sullivan & Cromwell, and Humacao RNG are not privileged as against BGF and GFC.

Atty. Abesada's position is that he represents BGF and GFC. If that is correct, then BPPR, PMA, Sullivan & Cromwell, and Humacao RNG are third parties — indeed, adverse parties — in that representation, and communications among Atty. Abesada and those persons about the client's affairs are not privileged as to the client. BGF and GFC, through Plaintiffs acting as majority members and their authorized counsel of record, may therefore demand production of those communications directly. The alternative analysis is no more favorable to Atty. Abesada: if he treats BPPR, PMA, or Humacao RNG as clients or co-counsel rather than adverse third parties, then he has been operating in a *per se* Rule 1.7(a)(1) direct-conflict representation since the inception of the GFC/BGF engagement, and the communications are producible because they evidence the very conflict that warrants disqualification. *See In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 23 (1st Cir. 2003) (attorney-client privilege does not protect communications disclosed to or made in the presence of third parties);

### C. Any privilege belonging to BGF or GFC belongs to the entities, not to Atty. Abesada or Picó Advisors personally.

Any attorney-client privilege arising from Picó Advisors LLC's engagement as corporate counsel to GFC and BGF belongs to the corporate entities — BGF and GFC — not to Picó or its

principals personally. *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) (attorney-client privilege in the corporate context belongs to the corporation). Communications concerning the procurement and scope of the Picó engagement itself — including all communications preceding and establishing the terms of the engagement — independently fall outside the privilege's core protection because they precede formation of the attorney-client relationship and are the business arrangements that create it. *See* Restatement (Third) of the Law Governing Lawyers § 68 cmt. c (Am. L. Inst. 2000).

### D. The crime-fraud exception independently defeats any remaining privilege claims.

The crime-fraud exception strips the attorney-client privilege from communications made in furtherance of ongoing criminal conduct or fraud. *In re Grand Jury Subpoena (Reyes-Requena)*, 913 F.2d 1118, 1125-26 (5th Cir. 1990). The First Circuit applies the exception where the client "sought the services of the lawyer to enable or aid" the commission of a crime or fraud. *United States v. Reeder*, 170 F.3d 93, 106-07 (1st Cir. 1999). The threshold showing is modest: the Court may review the existing non-privileged record to determine whether there is a colorable factual basis — that the communications were made in furtherance of the scheme. *United States v. Zolin*, 491 U.S. 554, 574-75 (1989). The operative Complaint alleges a RICO pattern that includes coordinated litigation conduct, governance manipulation, and the use of captured counsel to suppress BGF's and GFC's affirmative claims, with predicate acts including mail and wire fraud and obstruction of legal process. *Salinas v. United States*, 522 U.S. 52, 63-65 (1997). The Picó letter of June 19, 2025 is itself an independent 18 U.S.C. § 1512(b)(1) and § 1503 predicate: at pages 1 and 2 the letter twice warns of "civil and criminal liability" against any Member who exercises § 3.2 written-consent rights, and Atty. Abesada is its cc-recipient. The letter on its face acknowledges issuance pursuant to Atty. Abesada's request and identifies him as the Company's litigation

counsel — the structural inversion of legitimate corporate-counsel practice. *See* 18 U.S.C. §§ 1503, 1512(b)(1); ABA Model Rule 4.4(a); ABA Model Code DR 7-105(A); P.R. Code of Prof'l Ethics Canon 35; Restatement (Third) § 96 cmt. d (Am. L. Inst. 2000). That record satisfies *Zolin*'s colorable-basis threshold with substantial room to spare.

The coordinated five-filing sequence is independently actionable as sham litigation. A filing is a sham where it is objectively baseless and conceals an attempt to use the governmental process as a weapon. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993). Where the same parties deploy serial baseless filings as part of a coordinated campaign, the sham-litigation doctrine forecloses any First Amendment defense and supplies an independent RICO predicate. *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Constr. Trades Council*, 31 F.3d 800, 810-11 (9th Cir. 1994).

## VI. THE COMMON-INTEREST DOCTRINE AFFORDS NO SHELTER

The common-interest doctrine requires that the parties claiming the privilege share a common legal interest — meaning they are aligned on the same side of a legal question against a shared adverse party. *Cavallaro v. United States*, 284 F.3d 236, 250 (1st Cir. 2002). BGF and GFC are directly adverse to BPPR, Humacao RNG, the Semillero entities, and the coordinating parties. There is no legally cognizable common interest between BGF/GFC and BPPR when BGF and GFC are the parties pursuing RICO claims against BPPR. Allowing the common-interest doctrine to shield such communications would transform it from a doctrine protecting legitimate joint-defense coordination into a mechanism for concealing the very coordination that constitutes the conflict.

## VII. THE PROPOSED SUBPOENAS ARE NARROWLY TAILORED AND PROPORTIONAL

The subpoenas identified in Schedule B and the document categories identified in Schedule A target a discrete and presumptively finite universe of documents — engagement letters, fee agreements, payment records, retainer instructions, and identified inter-counsel communications regarding a defined set of matters. Production of such records is routine for law firms; the burden is minimal in comparison to the Court's interest in resolving the disqualification and sanctions proceedings on a complete record.

The Rule 26(b)(1) factors — importance of issues at stake, amount in controversy, parties' relative access to information, parties' resources, importance of discovery in resolving the issues, and proportionality of burden — each independently weigh in favor of the limited discovery requested. The Rule 26(b)(1) proportionality factors are independently satisfied. The **issues at stake** — disqualification of counsel for the lead RICO defendant's lender and threshold sanctions against an attorney charged with cross-forum suppression of federal claims — are central to the integrity of the proceeding. The **amount in controversy** — a $19 million guaranty exposure to Plaintiff Boyd alone, plus the $13.4 million Partial Summary Judgment against the Companies in SJ2024CV04616, plus the $40 million in alleged stripped value identified in the operative Complaint — is substantial. The **parties' relative access to information** is sharply asymmetric: Atty. Abesada and the third-party payors possess the documents; Plaintiffs do not. The **importance of the discovery in resolving the issues** is outcome-dispositive: the disqualification and sanctions questions cannot be adjudicated on bad faith without the requested record. And the **burden or expense** of the proposed discovery, weighed against its likely benefit, plainly favors production.

Civil No. 3:26-cv-01066-MAJ

## VIII. DOCUMENT CATEGORIES AND SUBPOENA RECIPIENTS

The document categories Plaintiffs seek are identified in **Schedule A** hereto. The third-party Subpoena Recipients to whom production requests are addressed are identified in **Schedule B** hereto. Each Schedule is incorporated herein by reference.

Each named Subpoena Recipient is identified in the operative Complaint or in the documentary record before this Court as a participant in the conduct alleged or in the engagement-financing chain at issue. Plaintiffs do not seek discovery of unrelated matters. The document categories are similarly limited: they target the engagement, the fee chain, the authority chain, and the inter-counsel communications central to the disqualification and threshold sanctions inquiries. They do not target the underlying merits of the RICO claims or the Bank Holding Company Act anti-tying claims; those issues will be developed in ordinary merits discovery following the Rule 26(f) conference.

## IX. PROPOSED PROCEDURAL SAFEGUARDS

Plaintiffs propose the following operational safeguards to ensure that any limited discovery the Court authorizes is conducted efficiently, with full respect for legitimate privilege concerns, and without imposing undue burden on the Subpoena Recipients:

(1) **Thirty-day response window.** Each subpoena will be returnable within thirty (30) days of service. The Court may shorten this window upon a showing of urgency or extend it for good cause.

(2) **Pre-issuance notice.** Plaintiffs serve a copy of each proposed subpoena upon all parties contemporaneously with the filing of this Motion, in compliance with Fed. R. Civ. P. 45(a)(4). No subpoena will issue until the Court has authorized it.

(3) *In camera* **review of disputed documents.** Where any Subpoena Recipient interposes a colorable privilege objection, that recipient shall produce the disputed document to the Court for *in camera* review under Fed. R. Civ. P. 45(d)(5), accompanied by a privilege log identifying the document, the asserted privilege, and the factual basis for the assertion. The Court will then determine whether the privilege applies and order production or quash as appropriate. The privilege log shall specify, for each withheld document: (a) Bates range; (b) date; (c) sender and all recipients (including cc and bcc); (d) document type; (e) subject matter described without revealing privileged content; (f) the specific privilege asserted; and (g) the factual basis for the assertion. Where the existing non-privileged record suggests that the communication was made in furtherance of the alleged RICO scheme, Plaintiffs may request that the Court conduct threshold review under *United States v. Zolin*, 491 U.S. 554, 574-75 (1989), in which case the operative inquiry is the application of the crime-fraud exception rather than the privilege itself.

(4) **Objections and modification rights.** Any Subpoena Recipient may serve written objections under Fed. R. Civ. P. 45(d)(2)(B) within fourteen (14) days, or move to quash or modify under Rule 45(d)(3) on timely motion, on any ground enumerated in the Rule.

**Cost protection under Rule 45(d)(1).** Plaintiffs will bear reasonable costs of compliance for any non-party Subpoena Recipient that establishes by certification under Fed. R. Civ. P. 45(d)(1) that the costs of compliance materially exceed those ordinarily incurred in similar

productions. The parties will meet and confer in good faith on any disputed cost-shifting before resort to the Court.

**Form of production.** Documents shall be produced as text-searchable PDFs with metadata preserved; native files shall be produced for spreadsheets, presentations, and ESI for which conversion to PDF would degrade content. Bates numbering shall be applied. The parties will meet and confer on any disputed form-of-production issues before resort to the Court.

**Use-limitation covenant.** Plaintiffs covenant that documents produced pursuant to this Motion shall be used solely for the disqualification and threshold sanctions proceedings now pending before this Court. Plaintiffs shall not use, reference, or disclose such documents in (a) general merits discovery of the underlying RICO and BHCA anti-tying claims; (b) any Puerto Rico state-court proceeding to which Plaintiffs are parties; (c) any subsequent action; or (d) any communication outside the litigation, without further order of this Court.

**Volume estimate.** Plaintiffs estimate that the proposed Phase 1 production from the five Subpoena Recipients will not exceed approximately 1,000 documents (estimated 5,000 pages) in the aggregate. The threshold engagement-letter and fee-source records sought from the Abesada Law Offices alone are estimated at fewer than 200 pages.

**Meet-and-confer prior to any motion to compel.** Plaintiffs commit to meet and confer in good faith with any Subpoena Recipient regarding the scope of any document category before bringing any motion to compel production. Disputes about scope shall be resolved in the first instance through good-faith negotiation, escalating to the Court only upon impasse.

(5) **Stipulated confidentiality order.** Plaintiffs propose that any fee-arrangement records, engagement letters, or retainer agreements produced under the subpoenas be governed by a stipulated confidentiality order entered by this Court, limiting use to the disqualification

and sanctions proceedings and providing appropriate protections for any genuinely sensitive commercial terms. A proposed form of confidentiality order is available upon the Court's request.

(6) **Re-noticing of sanctions on developed record.** Plaintiffs propose that, following the completion of the limited discovery authorized herein, the question of § 1927 and *Chambers* sanctions against Atty. Abesada and his firm be re-noticed for briefing on the developed evidentiary record. Plaintiffs do not seek sanctions on the present record; they seek only the procedural authorization to develop the record that *Chambers* and the First Circuit's § 1927 case law require.

## X. CONCLUSION

This Motion is narrow, procedurally clean, and tightly focused on the threshold disqualification and sanctions questions developed in Plaintiffs' contemporaneously-filed Opposition. The relief sought — authorization of limited pre-conference discovery and issuance of twelve targeted Rule 45 subpoenas (four for Phase 1 immediate issuance and eight reserved for Phase 2 deferred issuance) under the safeguards described in Section IX — reflects the procedural posture this Court's case law and the First Circuit's *Chambers* jurisprudence require for any subsequent sanctions adjudication.

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order: (1) directing Atty. Roberto Abesada-Agüet to produce, in camera, his engagement letter, retainer agreement, scope-of-representation memorandum, and source-of-compensation records for the GFC Holdings, LLC and Biomass Green Fuels, LLC representation, within fourteen (14) days of the Order; (2) authorizing pre-conference discovery under Federal Rule of Civil Procedure

Civil No. 3:26-cv-01066-MAJ

26(d)(1); (3) authorizing issuance under Federal Rule of Civil Procedure 45 of the Phase 1 sub-poenas identified in Schedule B, returnable within thirty (30) days, seeking only the document categories identified in Phase 1 of Schedule A; (4) reserving for later motion, on a specific showing of necessity following Phase 1 review, the Phase 2 subpoenas identified in Schedule B and the Phase 2 document categories identified in Schedule A; (5) directing that any document for which a privilege objection is interposed be submitted to the Court for in camera review under Fed. R. Civ. P. 45(d)(5); (6) reserving the question of sanctions under § 1927 and Chambers against Atty. Abesada and his firm for re-noticing on the developed evidentiary record; (7) in the alternative to paragraphs (2) through (4), setting a status conference at which the parties can discuss the scope of any necessary discovery and any procedural safeguards the Court deems appropriate; and (8) granting such other and further relief as the Court deems just and proper.

WHEREFORE, Plaintiffs respectfully pray that this Motion be GRANTED.

Respectfully submitted. In San Juan, Puerto Rico, this 26th day of May 2026.

| | |
|---|---|
| /s/ Jane A. Becker Whitaker | /s/ Luis E. Miñana |
| **Jane A. Becker Whitaker** | **Luis E. Miñana** |
| USDC-PR No. 205110 | USDC-PR No. 225608 |
| P.O. Box 9023914 | ESPADA MIÑANA & PEDROSA LAW OF-FICES PSC |
| San Juan, Puerto Rico 00902-3914 | P.O. Box 9023767 |
| Tel.: (787) 754-9191 | San Juan, Puerto Rico 00902-3767 |
| Email: jbw@beckervissepo.com | Tel.: (787) 402-2226 |
| *Counsel for Plaintiffs* | Email: minanalaw@yahoo.com |
| | *Counsel for Plaintiffs* |

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 25, 2026, the foregoing Plaintiffs' Motion for Limited Pre-Conference Discovery and Issuance of Targeted Rule 45 Subpoenas in Aid of the Disqualification and Sanctions Proceedings, together with Schedules A and B and the proposed subpoena forms attached as exhibits hereto, was filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record. Pursuant to Federal Rule of Civil Procedure 45(a)(4), a copy of each proposed subpoena identified in Schedule B was simultaneously served upon all counsel of record.

/s/ Jane A. Becker Whitaker

**Jane A. Becker Whitaker**

**SCHEDULE A**

**DOCUMENT CATEGORIES**

The categories of documents Plaintiffs request the Court to authorize for discovery under Federal Rule of Civil Procedure 26(d)(1) and to direct production of pursuant to Federal Rule of Civil Procedure 45 are set forth below in two Phases. Phase 1 (Categories 1, 2, 3, and 4) consists of the threshold engagement, fee source, and authority chain documents necessary to resolve the disqualification question; Plaintiffs request immediate authorization for Phase 1. Phase 2 (Categories 5, 6, and 7) consists of broader inter-counsel coordination and transaction documents that Plaintiffs do not request at this time and would seek only upon a specific showing — following Phase 1 review — that the threshold questions remain unresolved. Time periods are recipient-specific and category-specific as noted in each Category below.

**Definitions and Instructions.** As used in this Schedule: (1) "Communication" means any transmission of information of any kind, whether oral or written, including e-mails, text messages, instant messages, voicemails, letters, memoranda, calendar invitations, meeting minutes, telephone records, and any attachments thereto; (2) "Document" has the broadest meaning permitted under Federal Rule of Civil Procedure 34(a) and includes electronically stored information (ESI), drafts, redlines, metadata, and native files; (3) "the Companies" means GFC Holdings, LLC and Biomass Green Fuels, LLC; (4) "Defendants" means the defendants named in the operative Complaint and any of their counsel, affiliates, principals, or representatives; (5) "Series A constituency" means VRM Penzini Fund I, LLC — Renewable Series II; Semillero Partners, LLC; Semillero Investment Fund I, LLC; Mr. Alexander Borschow; The Puerto Rico Fund for Growth, L.P.; and The Community Development Venture Capital Alliance, Inc., together with their counsel, principals, and representatives; (6) "Relevant Period" means December 1, 2024 through the date of

production, unless otherwise specified; (7) Form of production: text-searchable PDFs with pre-served metadata, with native files produced for spreadsheets, presentations, and ESI for which conversion would degrade content; Bates numbering applied; (8) Privilege log: any document withheld on privilege grounds shall be identified on a log specifying (a) Bates range; (b) date; (c) sender and all recipients (including cc and bcc); (d) document type; (e) subject matter described without revealing privileged content; (f) the specific privilege asserted; and (g) the factual basis for the assertion.

**PHASE 1 — Threshold Discovery (Categories 1 through 4).**

**Category 1 — Engagement Documentation.** All engagement letters, retainer agreements, scope-of-representation memoranda, conflict-waiver and informed-consent documents, oral engagements memorialized in writing, and authorization documents (whether signed, drafted, or contemplated) governing or relating to the engagement of Atty. Roberto Abesada-Agüet and/or Correa-Acevedo & Abesada Law Offices, P.S.C., to represent GFC Holdings, LLC and/or Biomass Green Fuels, LLC in this action, in *Boyd v. López-Vidal*, No. 3:22-cv-01190-GMM (D.P.R.), in *Boyd v. Banco Popular de P.R.*, No. 3:24-cv-01569-PAD (D.P.R.), in *AMRC, LLC v. López-Vidal*, No. SJ2024CV10727 (P.R. T.P.I.), in *VRM Penzini Fund I, LLC v. López Vidal*, No. SJ2024CV07694 (P.R. T.P.I.), in *Banco Popular de P.R. v. Biomass Green Fuels, LLC*, No. SJ2024CV04616 (P.R. T.P.I.), or in any related state-court proceeding involving the Companies. The category includes all communications regarding the procurement and scope of any such engagement, including all pre-engagement solicitations, interviews, fee discussions, and any communications regarding the withdrawal or termination of any predecessor counsel for the Companies (including but not limited to Atty. Guillermo Ramos Luiña and Atty. Héctor Pedrosa). Time

period for this Category: December 1, 2024 through the date of production (covering the period during which the Companies were searching for and engaging litigation counsel).

**Category 2 — Source of Compensation.** All documents identifying the source or sources of compensation funding Atty. Abesada's and Correa-Acevedo & Abesada Law Offices, P.S.C.'s representation of the Companies, including without limitation: (a) all invoices, billing records, time entries, and statements; (b) all payment instruments — checks, drafts, ACH transfers, wire-transfer instructions and confirmations, and the source account on which each was drawn; (c) all trust-account (IOLTA) records reflecting funds held on behalf of, or paid for, the GFC/BGF representation; (d) all Form 1099 records issued to or by Abesada Law Offices for legal fees attributable to the Companies' representation, for tax years 2024, 2025, and 2026; (e) all third-party-payor agreements, side letters, and indemnification arrangements; (f) all communications regarding any indemnification arrangement under the GFC Indemnification Agreement, the Undertaking to Repay Advancement of Legal Expenses dated June 7, 2022, or AAA § 6.8; and (g) all funds received from any source that is a Defendant in this action or in *Boyd v. López-Vidal*, No. 3:22-cv-01190-GMM, regardless of whether characterized as fee, retainer, advance, indemnity, reimbursement, draw against indemnity, or otherwise. Time period for this Category: December 1, 2024 through the date of production (covering the period during which the Companies were searching for and engaging litigation counsel).

**Category 3 — Inter-Counsel Communications Concerning the Companies, the Plaintiffs, and Related Litigation.** All communications between Atty. Abesada or any attorney at Correa-Acevedo & Abesada Law Offices, P.S.C., on the one hand, and (i) Banco Popular de Puerto Rico, Banco Popular Holdings, Inc., or any of their representatives or in-house counsel; (ii) Pietrantoni Méndez & Álvarez LLC and any of its attorneys, including Atty. María D. Trelles-

Civil No. 3:26-cv-01066-MAJ

Hernández; (iii) Sullivan & Cromwell LLP and any of its attorneys; (iv) Picó Advisors LLC, Atty. Guillermo R. Picó, and Ms. Carla S. Pérez; and (v) Atty. Alfredo Fernández-Martínez (Delgado & Fernández LLC) and any other counsel representing Humacao RNG, LLC, VRM-Penzini, Semillero, or any Series A constituent, on the other, regarding BGF, GFC, the Plaintiffs, or the Unit Holders of GFC Holdings — including but not limited to communications regarding: the January 31, 2025 Asset Acquisition Agreement; the loan assignment from BPPR to Humacao RNG; the January 31, 2025 BGF Board Resolution refusing the asset transfer (Opposition Ex. 5-A); the February 6, 2025 Cease and Desist letter (Opposition Ex. 5-C); the March 21, 2025 Board Resolution and its preparation, dating, and transmittal (Opposition Ex. 5-D); the Borschow March 31, 2025 designations email (Opposition Ex. 5-E); the López Vidal March 24, 2025 illiquidity email and any response (Opposition Ex. 5-F); the Picó June 19, 2025 letter — including drafting, review, deployment, and the request from Atty. Abesada that prompted issuance (Opposition Ex. 5-G); the May 6, 2025 López Vidal CEO termination email (Opposition Ex. 5-I); the June 2, 2025 Irrevocable Proxy; the orders at ECF No. 800 (22-1190) and ECF No. 131 (24-1569); the dismissal at ECF No. 874 (22-1190) and any dismissal entered in 24-1569; Plaintiffs' Motion for Reconsideration at ECF No. 806 (22-1190); the May 7, 2026 Informative Motion to Correct Inaccuracies in Appellants' Docketing Statement and Case Caption filed by counsel for BPPR in First Circuit Appeal No. 26-1357, Document 00118443427, Entry ID 6808012; and the preparation, filing, and prosecution of ECF No. 49 in the present action. Time period for this Category: December 1, 2024 through the date of production (covering the period during which the Companies were searching for and engaging litigation counsel).

**Category 4 — Authority Chain.** All documents bearing on the actual scope of authority claimed by the Series A-aligned managers of GFC Holdings, LLC in purportedly engaging Atty.

Abesada and Correa-Acevedo & Abesada Law Offices, P.S.C., to represent the Companies, including without limitation: (a) all Board meeting notices, agendas, minutes, attendance records, written consents, and resolutions during the Relevant Period; (b) all drafts of and final versions of the March 21, 2025 Board Resolution (including the version transmitted by Ms. Carla S. Pérez on April 1, 2025, ECF No. 672-1 in 22-1190); (c) all documents and communications regarding the designation of Atty. Javier Feliciano and Atty. Goytía to any Board position, including but not limited to the Borschow March 31, 2025 designations email (Opposition Ex. 5-E); (d) all documents and communications regarding the purported termination of Atty. Olmar López Vidal as Chief Executive Officer of Biomass Green Fuels LLC, including the May 6, 2025 email from Ms. Carla Pérez-Caldera (Opposition Ex. 5-I); (e) all documents and communications between Atty. Abesada and any Series A-aligned Manager regarding the direction, review, or approval of any filing made by Atty. Abesada on behalf of GFC or BGF; and (f) all documents and communications identifying who decides on which cases Atty. Abesada appears for the Companies and which ones he does not. For the avoidance of doubt, Category 4 specifically includes all documents and communications concerning Atty. Juan E. Goytia's transition from Manager, Loss Mitigation — Mortgage Servicing Division of Banco Popular de Puerto Rico (Jan. 2023 – Feb. 2025) to the GFC Holdings Board (Mar. 31, 2025 – present) to Executive Vice President of Sunvida (May 2025 – present). Time period for this Category: December 1, 2024 through the date of production (covering the period during which the Companies were searching for and engaging litigation counsel).

**PHASE 2 — Deferred Discovery (Categories 5 through 7).** Plaintiffs do not at this time request authorization for the Categories that follow. Plaintiffs reserve the right to request authorization upon a specific showing — following Phase 1 review — that the threshold disqualification and source-of-compensation questions remain unresolved.

**Category 5 — Coordinated Cross-Forum Filings.** All drafts, comments, redlines, emails, calendar invitations, and other communications among or between Atty. Abesada, Atty. Fernández-Martínez (Delgado & Fernández LLC), Ms. Trelles-Hernández (Pietrantoni Méndez & Álvarez LLC), and any other counsel for the Defendants concerning the preparation, drafting, content, sequencing, or filing of: (i) the Moción Informativa filed March 24, 2026 in *Banco Popular de P.R. v. López Vidal*, Nos. TA2025AP00276 cons. TA2025AP00277 (P.R. Trib. Apel.); (ii) the Motion for Sanctions filed by Delgado & Fernández at ECF No. 33 in this Court on April 10, 2026; (iii) the Motion for Sanctions filed by Pietrantoni Méndez & Álvarez LLC at ECF No. 38 in this Court on April 16, 2026; (iv) ECF No. 49 itself; (v) the Fernández-Martínez filing of May 21, 2026 in this action, mirroring the April 10, 2026 safe-harbor language; (vi) the May 7, 2026 BPPR Informative Motion in First Circuit Appeal No. 26-1357 (Atty. Trelles-Hernández); and (vii) all communications between Atty. Abesada and Atty. Héctor Pedrosa during the period March 1, 2026 through April 1, 2026. Time period for this Category: December 1, 2024 through the date of production (covering the period during which the Companies were searching for and engaging litigation counsel).

**Category 6 — Governance Documents.** All Board meeting notices, agendas, minutes, written consents, and resolutions of GFC Holdings, LLC and Biomass Green Fuels, LLC; all Member registers and capitalization tables; and all corporate-record filings reflecting the composition of the Board of Managers, the identity of Members, and Member voting power, during the period December 1, 2024 through the date of production. This Category is necessary because Section IV.D of Plaintiffs' contemporaneously-filed Motion to Disqualify rests on the authorization structure under Model Rule 1.13(a) and the entity-acts-through-constituents principle of *In re PHC, Inc. S'holder Litig.,* 894 F.3d 419 (1st Cir. 2018). Time period for this Category: December 1,

2024 through the date of production (covering the period during which the Companies were searching for and engaging litigation counsel).

**Category 7 — BPPR Loan and AAA Closing File.** All documents relating to: (a) the September 15, 2020 Credit Agreement between BPPR and the Companies, including all amendments, modifications, default notices, demand letters, and any assignment to Humacao RNG, LLC or any affiliate of VRM Penzini Fund I, LLC; (b) the January 31, 2025 Asset Acquisition Agreement, including all drafts, redlines, term sheets, side letters, member-consent documents, closing certificates, escrow instructions, and flow-of-funds memoranda; (c) the BPPR release at AAA § 3.6(c) and all communications regarding its negotiation; (d) the litigation-forfeiture clause at AAA § 2.10 and the $7,052,292 Loan Balance forbearance mechanism, including all communications regarding the design, drafting, or invocation of that clause; and (e) the selective Special Indemnification at AAA § 6.8 and all communications regarding its scope and asymmetry. These documents are the predicate transaction records for the captured-counsel arrangement. Time period for this Category: December 1, 2024 through the date of production (covering the period during which the Companies were searching for and engaging litigation counsel).

**SCHEDULE B**

**SUBPOENA RECIPIENTS**

Plaintiffs request the Court to authorize issuance of Rule 45 document subpoenas, returnable within thirty (30) days of service and limited to the document categories identified in Schedule A, to each of the following Subpoena Recipients:

**PHASE 1 — Active Subpoenas (Documents Only):** The following four Subpoena Recipients are the minimum necessary to resolve the threshold question of Atty. Abesada's authorization, fee source, and Board-designation predicates. Plaintiffs request authorization for issuance of these subpoenas at this time. Each is returnable within thirty (30) days, subject to the safeguards in Section IX.

**1. Correa-Acevedo & Abesada Law Offices, P.S.C. ("Abesada Law Offices") — Documents.**

Counsel of record for GFC Holdings, LLC and Biomass Green Fuels, LLC in ECF No. 49 of this action; concurrent counsel of record for Banco Popular de Puerto Rico in Catala-Del Valle v. NSSK San Juan, LLC, No. 3:26-cv-01205-JAG (D.P.R.); concurrent counsel of record for Banco Popular de Puerto Rico in Reyes-Colón v. Banco Popular de P.R., 110 F.4th 54 (1st Cir. 2024) (Nos. 22-1706 and 22-1715).

**2. Banco Popular de Puerto Rico ("BPPR") — Documents only.**

Lead defendant in the Complaint; lender and Administrative Agent under the Credit Agreement; concurrent client of Atty. Abesada and Correa-Acevedo & Abesada Law Offices, P.S.C., in matters directly adverse to the Companies.

**3. Popular, Inc. — Documents only.**

Parent company of BPPR. Indemnification, reimbursement, or fee-sharing arrangements with Abesada Law Offices and Pietrantoni Méndez & Álvarez LLC at the parent-company level would not appear in BPPR's records alone. Discovery is limited to the engagement-financing chain at issue in this Motion.

### 4. Pietrantoni Méndez & Alvarez LLC ("PMA") — Documents.

Counsel of record for BPPR in 22-1190 and 24-1569 and in the present action; movant on the April 16, 2026 Motion for Sanctions at ECF No. 38; identified at Section IX of the Opposition as a member of the coordinated cross-forum filing sequence.

**PHASE 2 — Reserved Subpoenas (Documents Only, Issuance Deferred):** The following eight Subpoena Recipients are necessary only if Phase 1 production reveals specific gaps. Plaintiffs do not at this time request authorization for issuance of these subpoenas. Plaintiffs reserve the right to seek issuance upon a specific showing — to be made in a renewed motion following Phase 1 review — that Phase 1 production was insufficient to resolve the threshold disqualification and source-of-compensation questions.

### 5. Picó Advisors LLC — Documents.

Nominal corporate counsel to GFC Holdings, LLC and Biomass Green Fuels, LLC; author of the June 19, 2025 letter deployed by Atty. Abesada in 22-1190 (Opposition Ex. 5-G) and analyzed at Section X of the Opposition and Motion to Disqualify § IV.I.

### 6. Atty. Alfredo Fernández-Martínez and Delgado & Fernández LLC — Documents only.

Counsel of record for Humacao RNG, LLC, VRM-Penzini, in SJ2024CV07694 and TA2025AP00276 cons. TA2025AP00277; movant on the April 10, 2026 Motion for Sanctions at ECF No. 33; identified at Section IX of the Opposition as the cross-forum same-lawyer anchor.

**7. Atty. Javier Feliciano — Documents only.**

Purported Manager designated to the GFC Board in the March 21, 2025 Board Resolution (Opposition Ex. 5-D). Discovery is limited to all documents and communications concerning his designation, his receipt of any compensation or indemnification in connection with the Board position, and any directions he has given or received regarding the engagement by the GFC Board or supervision of Atty. Abesada.

**8. Atty. Juan E. Goytia — Documents only.**

Manager, Loss Mitigation — Mortgage Servicing Division of Banco Popular de Puerto Rico from January 2023 through February 2025; purported Manager designated to the GFC Holdings Board in the Borschow March 31, 2025 email (Opposition Ex. 5-E); Executive Vice President of Sunvida from May 2025 to present. The chronology — BPPR Loss-Mitigation Manager until February 2025 → GFC Board designee March 31, 2025 → Sunvida Executive Vice President May 2025 — places this Subpoena Recipient directly within BPPR's distressed-credit apparatus until weeks before he was involved with BPPR's longtime litigation lawyer to represent the Companies. Discovery is limited to all documents and communications concerning (a) his designation to the GFC Holdings Board; (b) his role in any authorization, instruction, or supervision of Atty. Abesada or Picó Advisors LLC; (c) his prior involvement at BPPR with the Companies' Credit Agreement, with any default proceedings against the Companies, or with any aspect of the loan-assignment to Humacao RNG; (d) any compensation, indemnification, or consideration received in connection with his GFC Board position or his Sunvida position; and (e) the timing and circumstances of his transition from BPPR to GFC to Sunvida.

**9. VRM-Penzini Fund I, LLC — Renewable Series II — Documents only.**

Named defendant in the operative Complaint; controlling principal of Humacao RNG, LLC; identified in the SJ2024CV07694 Demanda as a participant in the Companies' dispossession.

**10. Humacao RNG, LLC — Documents only.**

Acquiring entity under the January 31, 2025 Asset Acquisition Agreement; assignee of the BPPR loan; identified at Section II of the Opposition as the operational beneficiary of the captured-counsel network.

**11. Semillero Investment Fund I, LLC — Documents only.**

Founding investor entity controlled by Atty. Alexander Borschow; identified at Section II of the Opposition as having received approximately $1.47 million in connection with the Companies' liquidation; identified as participant in the engagement-financing chain.

**12. Sullivan & Cromwell LLP — Records only (business-records affidavit), reserved for conditional issuance.**

Co-counsel for BPPR in matters relating to the Companies, identified in the documentary record as a participant in the inter-counsel communications and filings. Subpoena Recipient 12 (Sullivan & Cromwell LLP) is reserved for Phase 2 issuance only upon a showing — following Phase 1 production — that Sullivan & Cromwell participated in inter-counsel communications concerning the GFC/BGF representation. Discovery, if authorized, is limited to documents responsive to Categories 3 and 5; production by business-records affidavit is sufficient.