**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **GREGORY BOYD and JONATHAN LASSERS, on their own behalf and on behalf of GFC HOLDINGS, LLC and BIOMASS GREEN FUELS, LLC, and EFB, LLC, Plaintiffs, v. BANCO POPULAR DE PUERTO RICO; IGNACIO ALVAREZ; JAVIER FERRER; ALEXANDER BORSCHOW; SEMILLERO PARTNERS, LLC; VRM PENZINI CAPITAL L.L.C.; VRM PENZINI FUND I L.L.C.; STAR POWER SYSTEMS LLC; HUMACAO RNG, L.L.C.; PONCE RNG LLC; et al., Defendants.** | **CIVIL NO. 3:26-cv-01066 (MAJ)** <br><br> **CIVIL RICO; SECURITIES EXCHANGE ACT § 10(b); BANK HOLDING COMPANY ACT (ANTI-TYING)** <br><br> **JURY TRIAL DEMANDED** <br><br> **Hon. María Antongiorgi-Jordán** |

**DRAFT REPLY TO DEFENDANTS SEMILLERO PARTNERS, LLC AND ALEXANDER BORSCHOW'S RESPONSE TO MOTION TO SHOW CAUSE**

**TO THE HONORABLE COURT:**

**CSOME NOW** Plaintiffs Gregory Boyd and Jonathan Lassers on their own behalf and on behalf of GFC Holdings, LLC and Biomass Green Fuels, LLC (the Companies), and EFB, LLC and very respectfully state and pray:

## I.    INTRODUCTION

Defendants Semillero Partners, LLC ("Semillero") and Alexander Borschow ("Borschow") (together, the "Semillero Defendants") argue that a decision entered after Plaintiffs filed the Verified Complaint this case, that is on appeal, is *res judicata* despite that Complaint having different parties, different controversies, and having no verification. They argue that Boyd and Lassers and the Companies have suffered no direct injury despite the Semillero Defendants'

participation in the scheme to strip the Companies of all their value. As for securities fraud, the Complaint does not allege that the Semillero Defendants aided and abetted in that fraud, the Complaint alleges that the Semillero Defendants were *co-authors* of that fraud.

## II.    ARGUMENT

### A. The 22-1190 Opinion Does Not Collaterally Estop Plaintiffs' Claims Herein.

Semillero urges dismissal "for the same reasons" the 22-1190 Opinion rejected the prior complaint, Docket 64 at 1, treating that Opinion as the dispositive bar throughout. But the 22-1190 Court entered its decision six weeks after Plaintiffs filed this Complaint. *Id.*  at 5. A judgment that did not exist at filing cannot render the filing unreasonable, cannot have been "ignored," and cannot preclude an action commenced before it issued. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (reasonableness assessed as of the time of filing). The Opinion is, in any event, an Article III standing dismissal — it addresses "threshold jurisdictional issues." Docket  874 in 22-1190 at 5, 19, 34. Under *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 736 (1st Cir. 2016), a court without jurisdiction cannot enter a merits judgment; the "with prejudice" caption cannot manufacture merits effect from a standing dismissal. *Id.*

Collateral estoppel requires identity of claims; actual litigation of those claims; a final and binding judgment; and that the issue's determination is essential to the judgment. *Manganella v. Evanston Ins. Co.,* 700 F.3d 585, 591 (1ˢᵗ Cir. 2012) (Citations omitted.) Docket 64 at 8–11, Here, the claims are not identical; the judgment is not final and binding; and the issue being essential to the judgment fails. The Docket 874 analysis rested on the unverified January 23, 2023 Second Amended Complaint, the defendants then before the court, and the derivative-injury theories then advanced. The Second Amended Complaint was not verified, and the futility of going to a conflicted Board was not as stark as it is after the utterly besmirched Asset Acquisition Agreement.

The Semillero Defendants' discussion of the identical complaint being filed with the dismissed one is on appeal is inapposite. The Complaint in this case is nowhere near identical to the operative pleading in 22-1190. In addition to the lack of unanimity for the Asset Acquisition Agreement, a transaction that liquidated the Companies; the only members agreeing to the liquidation receiving benefits from the liquidation; and here, Boyd and Lassers representing the Companies and both they and the Companies suffering direct injury. Here, Semillero did not obtain the somewhat intangible benefit of owed consulting fees from a strangled company, as it did in 22-1190, it received $1,468,071.36, Complaint at ¶230. Moreover, a new Plaintiff, EFB, LLC asserts a breach of the August 20, 2023 Revenue Sharing Agreement; the June 2, 2025 Irrevocable Proxy validated by 8 Del. C. § 212(e); and a verified Complaint curing the Rule 23.1 defect Judge Méndez-Miró expressly identified. 22-1190 Decision at 20. Standing is assessed claim-by-claim, plaintiff-by-plaintiff, and defendant-by-defendant. *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); 18A Wright & Miller, Federal Practice & Procedure § 4436.

Semillero relies on *Tripati v. Henman*, 857 F.2d 1366 (9th Cir. 1988), and *SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365 (Fed. Cir. 1983), for the proposition that a pending appeal does not strip preclusive force (ECF No. 64 at 7, 10). Neither binds this Circuit. The controlling First Circuit authority is *Pérez v. Volvo Car Corp.*, 247 F.3d 303, 312–13 (1st Cir. 2001), which Semillero omits — quoting Restatement (Second) of Judgments § 13 cmt. f that a pending direct appeal counsels caution before according preclusive effect. Both prior judgments are on direct appeal (Nos. 26-1424 and 26-1357), and both rest predominantly on Article III standing. Semillero's own citation to *Univ. of Colo. Health at Mem'l Hosp. v. Burwell*, 233 F.

Supp. 3d 69, 87 (D.D.C. 2017), concedes the same framework; recasting it as a stay rather than a denial of preclusion does not change its content.

Semillero cites *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981), for the full preclusive effect of a 12(b)(6) dismissal (ECF No. 64 at 7). *Moitie* addressed pure relitigation of an antitrust judgment on the merits. The 22-1190 Opinion rests on Article III standing — "threshold" and dispositive of merits review (Dkt. 874 at 5, 19, 34). The controlling authority on the preclusive scope of jurisdictional dismissals is *Hochendoner*, 823 F.3d at 736 (an Article III standing dismissal "must operate without prejudice") — which Semillero omits, triggering the Model Rule 3.3(a)(2) duty to disclose adverse controlling authority. Accord *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 501–04 (2001). The "with prejudice" caption does not transform a jurisdictional dismissal into a merits adjudication, and *Moitie* does not apply. A judgment procured through fraud on the court, is, separately, not entitled to preclusive effect – developed in item 13 *supra. Hazel-Atlas Glass Co. v. Hartford Empire Co.,* 322 U.S. 238 (1944).

Semillero further argues the standing ruling was "essential to the judgmeant." Docket 64 at 10–11. Plaintiffs agree. Judge Mendez-Miro dismissed 22-1190 based on the Plaintiffs' lack of standing on the unverified 2023 derivative record — not a categorical bar on all future plaintiffs, transactions, and theories. Wright & Miller § 4436; Restatement (Second) of Judgments § 27 cmt. h; *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015). EFB's standing on the 2023 Revenue Sharing Agreement, Plaintiffs' standing on the void AAA, and the June 2, 2025 Proxy interest were not even pleaded in 22-1190. The ruling adjudicates what was before that court; it cannot reach what was not.

**B.      Semillero's Receipt of $1,468,071.36 Is Direct Conduct, Not Facilitation.**

Semillero says its only connection to the AAA is "that it received a distribution," Docket 64 at 2, 12, too attenuated under *Hemi* and *Anza*. Humacao RNG paid Semillero $1,468,071.36 to participate in the illegal liquidation of the Companies. Compl. ¶ 230. That is the direct receipt of the proceeds of the transaction that extinguished Plaintiffs' Member rights without the unanimous consent § 9.1 requires — not "facilitation." The August 25, 2023 Second Amendment, which Semillero voted to approve, recites that the VRM agreements were entered "to cause the settlement of a federal RICO Act litigation against the Company." Compl. Ex. 17. Semillero's brief omits the Second Amendment entirely. RICO requires not contractual privity but direct injury proximately caused by the predicate. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647–49 (2008); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992); *Medical Marijuana, Inc. v. Horn*, 604 U.S. ___ (2025). The *Hemi*/*Anza* intervening-actor framework does not apply to a defendant who voted for the enabling amendment and then took the cash.

Semillero reads *Stoneridge* to bar the § 10(b) claim (ECF No. 64 at 2–3, 14, 16). *Stoneridge* bars claims by parties that did not base investment decisions on the false information provided; it does not bar primary-violator claims. The "maker" of a statement is a primary violator. *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). And primary liability extends to those who disseminate false statements with scienter as part of a scheme, actionable by private plaintiffs under Rule 10b-5(a) and (c). *Lorenzo v. SEC*, 587 U.S. 71, 79–83 (2019). Semillero cites neither — the two controlling Supreme Court authorities on the primary violator scope of the statute. In all events, whether the conduct is primary or secondary is a Rule 12(b)(6) merits question, not jurisdictional.

Semillero invokes *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 29 (1st Cir. 1987), and *Pagán v. Calderón*, 448 F.3d 16, 28 (1st Cir. 2006), for the rule that diminished-value claims belong to the entity (ECF No. 64 at 12). Here, Boyd and Lassers represent the Companies derivatively, so neither of those case carries any weight.  Moreover, the AAA injury is different in kind: the extinguishment of a contractual consent right held by each Member personally. Section 9.1 requires unanimous Member consent before substantially all assets may be sold; that right is individual, not corporate, and its extinguishment is a direct Member injury. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004) (harm and recovery run to the member). The Puerto Rico LLC Act confirms the directness. 14 L.P.R.A. §§ 3968a, 3973, 3997; Delaware authority is "highly persuasive," id. § 3967; *Marina Indus., Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64 (1983). Because Semillero and Borschow took unique benefits, the AAA is subject to entire-fairness review. *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710–11 (Del. 1983); *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993); *Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110, 1115–17 (Del. 1994); *In re PHC, Inc. S'holder Litig.*, 894 F.3d 419, 425–28 (1st Cir. 2018).

Semillero says the § 10(b) claim against Borschow fails for want of primary-violator allegations (ECF No. 64 at 16). The Complaint pleads Borschow's approval of the August 25, 2023 Second Amendment, with its "settlement of a federal RICO Act litigation" Recital, and his approval of the AAA — scheme conduct actionable under *Lorenzo*, 587 U.S. at 79–83, and *Janus*, 564 U.S. at 142. *SEC v. Tambone*, 597 F.3d 436, 445–46 (1st Cir. 2010), is superseded for scheme-liability purposes by *Lorenzo*. Whether the conduct ultimately states a primary-violator claim is a merits question; jurisdiction rests on the civil-RICO claims.

**C. The Semillero Defendants Violated the RICO Act.**

Semillero argues the Complaint contradicts itself by alleging Defendants sought both to profit from the project's success and from its failure (ECF No. 64 at 16). A RICO enterprise may operate in sequential phases, with different participants benefiting from different phases. *Boyle v. United States*, 556 U.S. 938, 947–48 (2009) (an association-in-fact need only have a structure, relationships, and longevity). The Complaint pleads one scheme in three phases: origination (closing fees and seven Credit Agreement amendments, 2020–2022); manufactured failure (the unauthorized June 22, 2022 tax-credit-account release, continued lending after notice of fraud, and the failure to claim the $5 million Mapfre bond, 2022–2024); and distressed monetization (the January 31, 2025 loan assignment to a Borrower affiliate, the synchronous AAA, and Semillero's $1,468,071.36, 2025). A fourth phase — litigation capture (2025–2026) — comprises the installation of the bank's counsel over the Companies, the back-dated March 21, 2025 resolution, the synchronized cross-forum filings, the June 19, 2025 Picó threats, and the May 6, 2025 retaliatory termination of CEO López Vidal, establishing open-ended continuity and a witness-retaliation predicate. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240–42 (1989); 18 U.S.C. § 1513. The phases interlock; they do not contradict.

**1. Borschow's fiduciary breach is an honest-services-fraud predicate under § 1346.**

Semillero characterizes Borschow's role as mere "failure to oversee" (ECF No. 64 at 15–16). The Complaint pleads affirmative fiduciary breach as a § 1346 honest-services-fraud predicate. *Skilling v. United States*, 561 U.S. 358 (2010); *United States v. Sawyer*, 85 F.3d 713, 723–25 (1st Cir. 1996) (reaching concrete, quantifiable self-dealing). Borschow approved the governance amendments that enabled the AAA, and Semillero received $1,468,071.36; the

fiduciary breach is the predicate act itself, not facilitation, and is outside the *Hemi* intervening-actor frame. His loyalty duties are independently anchored. 14 L.P.R.A. §§ 3564–3565; *Auriga Cap. Corp. v. Gatz Props., LLC*, 40 A.3d 839, 849–53 (Del. Ch.), aff'd, 59 A.3d 1206 (Del. 2012); *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939); *William Penn P'ship v. Saliba*, 13 A.3d 749, 756 (Del. 2011). In all events the wire-fraud (§ 1343) and bank-fraud (§ 1344) predicates sustain the claim regardless of the honest-services theory. Cf. *Percoco v. United States*, 598 U.S. 319, 329–34 (2023).

The conduct below is pleaded with particularity in the Complaint and the May 4, 2026 Motion to Show Cause and independently supports the RICO and § 10(b) claims against Mr. Borschow and Semillero. It is properly before this Court because the prior dismissal was a non-merits, Article III standing dismissal, and because the operative monetization — the January 31, 2025 AAA, under which Semillero received $1,468,071.36 (Compl. ¶ 230) — postdates the January 23, 2023 pleading and was never adjudicated. The Response is silent on each item; that silence concedes that no good-faith defense has been advanced.

**2.  Actual knowledge through the VRM Complaint (Aug. 21, 2024).**

The Semillero Defendants joined the VRM Complaint, Civil No. SJ2024CV07694, in which Mr. Borschow is a named co-plaintiff (Compl. Ex. 12), admitting fraudulent activities by the Lópezes and $40 million swindled. Five months later he voted to approve the AAA and Semillero took $1,468,071.36 (Compl. ¶ 230). That supplies willful-blindness scienter under *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011), converting the fiduciary breach into a § 1346 predicate.

**3.  The manufactured March 21, 2025 Board Resolution.**

Mr. Borschow signed the Resolution purporting to authorize Atty. Roberto Abesada-Agüet for the Companies. It is defective on its face — no stated capacity, an unknown third signatory never designated a Manager, and a retroactive-ratification clause confirming the engagement predated any authorization. Transmitted by Picó Advisors for retroactive signature on April 1, 2025, it is an independent § 1343 and § 1346 predicate.

### 4. The Goytia revolving-door placement (Mar. 31, 2025).

On information and belief, Atty. Juan E. Goytia managed BPPR Loss Mitigation for the Companies' distressed credit (Jan. 2023–Feb. 2025), resigned a month after the AAA closing, and was designated by Mr. Borschow to the GFC Board on March 31, 2025 — a § 1962(c) operation-or-management predicate. *Reves v. Ernst & Young*, 507 U.S. 170, 183–85 (1993).

### 5. The retaliatory termination of CEO López Vidal (May 6, 2025).

Six weeks after Mr. López Vidal objected to the Abesada conflict, the Series A constituency purported to terminate him on an unnoticed vote — an obstruction (§ 1503) and witness-influence (§ 1512(b)) predicate under 18 U.S.C. § 1961(1), and a further § 1346 predicate as to Mr. Borschow.

### 6. The June 19, 2025 Picó letter — threats against Members.

Issued at Atty. Abesada's request and deployed by him into the federal record (ECF No. 751-1 in 22-1190), the letter threatened "civil and criminal liability" against Boyd and Lassers—then active federal plaintiffs — for asserting § 3.2 consent rights, supporting predicates under 18 U.S.C. §§ 1512(b)(1), 1503, and 1962(c) and Model Rule 4.4(a).

### 7. AAA § 6.8 — selective indemnification.

The AAA indemnifies the "Buyer" only against claims by theLopezVidal Branch — not Mr. Boyd, Mr. Lassers, or the López-Gómez branch — documentary proof the transaction was

negotiated with knowledge of anticipated Boyd-side claims. The companion §§ 3.6(b)–(c) releases, approved by the same conflicted Managers who took the payouts, are voidable. 31 L.P.R.A. §§ 3404, 3514; *Citibank, N.A. v. Dependable Ins. Co.*, 121 D.P.R. 503 (1988); *In re Primedia, Inc. S'holders Litig.*, 67 A.3d 455, 477–78 (Del. Ch. 2013).

### 8. RICO conspiracy under § 1962(d).

Independent of direct participation, Mr. Borschow's Second Amendment vote, AAA approval, and Semillero's payout satisfy the agreement element. Salinas v. United States, 522 U.S. 52, 63–66 (1997) (no personal predicate or overt act required); Beck v. Prupis, 529 U.S. 494, 505–07 (2000). The coordinated cross-forum pattern — three separately retained firms advancing the same seven misstatements across four filings, with Semillero filing alongside BPPR — further evidences the agreement. The Response does not engage Salinas.

### 9. Fraudulent consulting invoices over fifteen quarters.

The Complaint pleads more than $150,000 in invoices for services never rendered (Compl. ¶¶ 42, 526–528), including a $20,000 bill on Drawdown Certificate 9 and a $10,000 bill on Certificate 10, each paid by interstate wire — discrete § 1343 predicates whose four-year sequence satisfies continuity. H.J. Inc., 492 U.S. at 240–42; Tabas v. Tabas, 47 F.3d 1280 (3d Cir. 1995) (en banc); Reves, 507 U.S. at 183–85.

### 10. Elimination of accounting controls (Compl. ¶ 529).

Mr. Borschow oversaw the dismantling of internal controls and separation of duties that was the precondition for the Lópezes' diversion of funds — an affirmative aiding-and-abetting predicate under 18 U.S.C. § 2, a § 1346 predicate, and discretionary management under Reves.

### 11. Suppression of audited financials and member meetings (Compl. ¶¶ 522–524).

The Semillero Defendants refused to require audited statements or hold the member meetings the operatingand loan agreements require — affirmative concealment that enabled the predicate acts, in breach of 14 L.P.R.A. §§ 3502, 3963, and qualitatively different from a diminished-value theory.

## 12.  Below-market preferred-share acquisition (Oct. 14, 2021).

Semillero exploited the engineered distress to acquire equity cheaply while rejecting Mr. Lassers' superior offer (Compl. ¶¶ 42, 525) — a § 1962(c) participation predicate confirming the AAA vote was the culmination of a years-long strategy, not an isolated act.

## 13.  Installation of captured counsel.

Mr. Borschow and Semillero nominated BPPR's own counsel, Roberto Abesada-Agüet, to represent the very Companies whose RICO and Bank Holding Company Act § 1972 claims run against BPPR and the AAA beneficiaries, through the defective, back-dated Resolution. Atty. Abesada has represented BPPR in twenty-six federal matters since 2006, two concurrent with this case; the assetless Companies cannot be paying him (López-Vidal Decl. Ex. 5-F), and a defendant funds opposing counsel only to control the representation — conduct P.R. R. Prof'l Conduct 1.8(f) forbids. By a June 13, 2025 Written Consent of Members holding 55.468% of the voting Units (Exhibit 1), the controlling Members ordered Atty. Abesada to withdraw, engaged Becker Vissepó, P.S.C., removed Mr. Borschow as Authorized Signatory under 14 L.P.R.A. § 3965, and appointed Mr. Lassers; a conflicted board cannot ratify its own unauthorized act. In re PHC, 894 F.3d at 435; 14 L.P.R.A. § 3973; Sucesión Santaella v. Srio. de Hacienda, 96 D.P.R. 442 (1968); P.R. R. Prof'l Conduct 1.13(a). The nomination is operation-or-management under Reves, obstruction under 18 U.S.C. §§ 1512(c)(2) and 1503, and an overt act of the § 1962(d) conspiracy under Salinas — affirmative primary conduct that defeats both the Hemi/Anza and Stoneridge framings.

**14.    Fraud on the court and its preclusion consequence.**

The captured-counsel arrangement is, moreover, a fraud on the court: it presents a false adversarial posture in which the lawyer purporting to speak for the Plaintiff-entities is the paid, conflicted agent of their adversary. A judgment so procured is not entitled to preclusive effect and may be set aside at any time. Hazel-Atlas, 322 U.S. at 245–46; Universal Oil Products Co. v. Root Refining Co., 328 U.S. 575, 580 (1946); Fed. R. Civ. P. 60(d)(3); Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989). The proper response is the Court's fraud-on-the-court inquiry — including the limited discovery Plaintiffs have separately requested — not Rule 11 sanctions against Plaintiffs.

**D.    Neither the Stay Nor the Transfer Request Passes Muster.**

Semillero's alternative stay request (ECF No. 64 at 17–18) fails *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936), which requires a "clear case of hardship or inequity." Semillero's stated hardship — having "already defended an essentially identical set of allegations" for four years — is the ordinary cost of defending a substantial commercial action, not *Landis* hardship; the proponent bears a heavy burden. *Clinton v. Jones*, 520 U.S. 681, 706–08 (1997); *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1154 (1st Cir. 1992). Semillero ignores the prejudice to Plaintiffs: the AAA transferred substantially all of the Companies' assets, and every day of delay erodes effective relief. The request should be denied.

Semillero joins BPPR's request to transfer the case to Judge Méndez-Miró under Local Rule 3A (ECF No. 64 at 18–19). Random assignment is the default safeguard; reassignment of a related case is not a party entitlement — it lies in the assigned judge's discretion, requires the receiving judge's consent, and issues by order of the Chief Judge. D.P.R. Loc. Civ. R. 3A; 28 U.S.C. § 137. The request fails on the merits. The cases are not substantially related: this action

names defendants never before Judge Méndez-Miró (the VRM Penzini entities, Star Power Systems LLC, Humacao RNG, Ponce RNG, Borschow, Semillero, Alvarez, and Ferrer individually), pleads transactions postdating the 2022 filing (the August 25, 2023 Second Amendment, the 2023 Revenue Sharing Agreement and Seventh Amendment, the January 31, 2025 AAA and loan assignment, the May 27, 2025 Settlement Agreement, and the June 2, 2025 Proxy), and pleads claims never before her (§ 10(b), post-2023 BHCA anti-tying, RICO predicates against Semillero and the VRM Defendants, and obstruction under 18 U.S.C. §§ 1512(b)(3), (c)(2)). The prior case was dismissed on the pleadings before any discovery, so transfer yields no economy — everything would be briefed and discovered from scratch. Parties have no right to a judge of their choice, and intra-district transfer exists to prevent judge-shopping, not reward it. *McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, 1262 (5th Cir. 1983). BPPR and Semillero filed materially identical transfer requests the same day, May 18, 2026, through separately retained counsel — an overt act in furtherance of the § 1962(d) conspiracy. *Salinas v. United States*, 522 U.S. 52, 63–65 (1997).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Honorable Court enter an Order: (i) finding that Plaintiffs have shown cause as to the Semillero Defendants; (ii) confirming subject-matter jurisdiction over each federal claim pleaded; (iii) denying the alternative stay request for failure to satisfy *Landis*; (iv) denying the transfer request as procedurally improper for lack of receiving-judge consent under Local Civil Rule 3A(a)(2) and as a judge-shopping vehicle; (v) directing the Semillero Defendants to answer or otherwise plead in the ordinary course; and (vi) granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

In San Juan, Puerto Rico, this 5ᵗʰ day of June 2026.

/s/ Jane Becker Whitaker
JANE BECKER WHITAKER
USDC-PR Bar No. 205110
(RUA Núm. 9382)
BECKER & VISSEPÓ, P.S.C.
VIG Tower, 1225 Ave. Ponce de León,
Suite 1102, San Juan, PR 00907
(787) 585-3824
jbw@beckervissepo.com

/s/ Luis E. Miñana Rodríguez-Feo
LUIS E. MIÑANA RODRÍGUEZ-FEO
USDC-PR Bar No. 225608
(RUA Núm. 16,297)
ESPADA, MIÑANA & PEDROSA
LAW OFFICES, PSC
122 Calle Ing. Manuel Domenech, Altos
Urb. Baldrich, San Juan, PR 00918
(787) 758-1999 · minanalaw@yahoo.com

**Counsel for Plaintiffs**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date the foregoing was filed with the Clerk of the Court

using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Jane Becker Whitaker
JANE BECKER WHITAKER
USDC-PR Bar No. 205110