**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **GREGORY BOYD and JONATHAN LASSERS, on their behalf and on behalf of GFC HOLDINGS, LLC and BIOMASS GREEN FUELS, LLC, and GFC and BGF on their own behalf, and EFB, LLC,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**BANCO POPULAR DE PUERTO RICO; IGNACIO ALVAREZ; JAVIER FERRER; ALEXANDER BORSCHOW; SEMILLERO PARTNERS, LLC; VRM PENZINI CAPITAL L.L.C.; VRM PENZINI FUND I L.L.C.; STAR POWER SYSTEMS LLC; HUMACAO RNG, L.L.C.; PONCE RNG LLC; et al.,**<br><br>**Defendants.** | **CIVIL NO. 3:26-cv-01066 (MAJ)**<br><br>**CIVIL RICO; SECURITIES EXCHANGE ACT § 10(b); BANK HOLDING COMPANY ACT (ANTI-TYING)**<br><br>**JURY TRIAL DEMANDED**<br><br>**Honorable María Antongiorgi-Jordán** |

**REPLY TO DEFENDANT BANCO POPULAR DE PUERTO RICO'S AND
JAVIER FERRER'S RESPONSE TO MOTION TO SHOW CAUSE**

**TO THE HONORABLE COURT:**

**COME NOW,** Gregory Boyd and Jonathan Lassers on their own behalf and derivatively on behalf of GFC Holdings, LLC and Biomass Green Fuels, LLC (the Companies) and very respectfully state and pray:

## I.    INTRODUCTION

Banco Popular argues that Plaintiffs' good faith efforts to resolve the multitude of frauds committed by the Lopez Defendants and the current Defendants through mediation and compromise to help the biorefinery should be held against Plaintiffs and justify the dismissal of this case. Despite engineering the liquidation of the Companies by substituting an unqualified

1

party, Humacao RNG, for itself Banco Popular can hide its benefits from the Asset Acquisition Agreement. Banco Popular assigned the $20 million loan to Humacao RNG [allowing the latter to pay off 50% of the loan with accounts receivable] in exchange for what it claims were two frivolous lawsuits. Humacao RNG received an operation with potential of producing tens of millions of dollars for about 4.4 million dollars [$700,000 of which it paid to a related entity]. The non-conflicted owners, who did not agree to the deal that required unanimity, got nothing. Defendants got the gold mine; Plaintiffs got the shaft.

All of this happened three years after Plaintiffs filed their original Complaint. Res judicata cannot apply to facts that have not occurred.  The BPPR Response suffers from another defect that is chronological, and it is dispositive. Plaintiffs filed this Complaint on February 7, 2026. The Dismissal in 22-1190 was not entered until March 18, 2026 — 39 days later. BPPR concedes this sequence twice on page 7 of its brief. A judgment that did not exist when Plaintiffs filed this Complaint cannot retroactively render that filing improper and cannot operate as preclusion of an action that preceded it into existence. The chronological defect is not curable by re-characterization: every "third iteration," "vexatious," and "attrition through repetition" label BPPR deploys (BPPR Resp. at 1) is built on a timeline BPPR itself cannot support. A pleading filed before a judgment cannot be a "relitigation" of that judgment as a matter of simple sequence.

The defects compound from there. Preclusion is not a jurisdictional doctrine. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 293 (2005),  holds that "[p]reclusion … is not a jurisdictional matter." Nonetheless, BPPR builds its entire Rule 12(h)(3) argument on preclusion without ever citing *Exxon Mobil*. The 22-1190DocketOpinion itself is, by its express terms, an Article III standing ruling and not a merits adjudication: it directs that the threshold jurisdictional issues control (Docket 874 at 5, 19) and expressly declines to reach the meritsDocket

2

874 at 34 ("As Plaintiffs have failed to make the threshold showing for standing, the Court needs not delve into the sufficiency of the substantive RICO claims under 1962(a), (b), and (c)."). Under *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 736 (1st Cir. 2016), a "dismissal for lack of Article III standing must operate without prejudice.",'" so the "with prejudice" caption of Docket 874 cannot, as a matter of law, manufacture a merits adjudication out of a standing dismissal. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 501–04 (2001), confirms that the phrase "judgment on the merits" carries no single fixed preclusion meaning across forums; the preclusive effect of a federal dismissal is governed by the law of the rendering court, not by any automatic federal rule.

The Complaint in this action also pleads new plaintiffs, new defendants, new transactions, and new direct-injury theories that were neither presented to, nor could they have been presented to, Judge Méndez-Miró in the  Second Amended Complaint of January 23, 2023. Those claims could not have been presented because they had not happened. The new plaintiff EFB, LLC was not a party to that action; the multiple VRM Penzini entities, Star Power Systems LLC, Humacao RNG LLC, Ponce RNG LLC, and Ignacio Alvarez, and Javier Ferrer in their  individual capacities were not before Judge Méndez-Miró; and the seven post-Second Amended Complaint instruments catalogued in the Motion at page 21 — culminating in the January 31, 2025 Asset Acquisition Agreement; the synchronous loan assignment to a disqualified Affiliate, and the June 2, 2025 Irrevocable Proxy under 8 Del. C. § 212(e) — are post-2023 transactions to which *Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 583–84 (1st Cir. 1995), and *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 327–28 (1955), apply with full force.  In *Lawler,* the Supreme Court wrote as to the prior lawsuit, it  "precludes recovery on claims arising prior to its entry, it

cannot be given the effect of extinguishing claims **which did not even then exist and which could not possibly be sued upon** in the previous case." *Id.* at 328, (Emphasis added.)

Finally, BPPR's representation that "a federal securities violations claim does not appear in the Complaint," BPPR Resp. at 19, is contradicted by the four corners of the pleading. Section 10(b) and Rule 10b-5 are pleaded as Count III at paragraphs 1003–1006 of the Complaint, supported by factual allegations at paragraphs 45, 111, 374, and 453.

Plaintiffs respond to the BPPR Response argument-by-argument, in the order in which BPPR presents its case, so that the Court may measure each BPPR contention against the controlling authority BPPR omitted.

## II. ARGUMENT

### A. Preclusion Is An Affirmative Defense, Not A Rule 12(h)(3) Jurisdictional Doctrine.

Banco Popular argues that Rule 12(h)(3) justifies dismissal of this case. The bank claims that the prior judgment's "preclusive effect" and "res judicata effect" require dismissal at the threshold. BPPR Resp. at 1, 7–8. The same framing reappears throughout the Response, which repeatedly couples "preclusion" with "subject matter jurisdiction" as though the two doctrines were one. *Id.* at 7–9, 21.

But Preclusion is not a jurisdictional doctrine, and characterizing it as one is not a permissible litigation choice — it is an error of law foreclosed by controlling Supreme Court authority. The Supreme Court has held  that "preclusion, of course, is not a jurisdictional matter." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005). The First Circuit applies

the same rule. *Negrón-Fuentes v. UPS Supply Chain Solutions*, 532 F.3d 1, 7 (1st Cir. 2008). The distinction is not a matter of labels. A Rule 12(h)(3) jurisdictional defect — the absence of a federal question, the absence of diversity, or the absence of Article III standing on the face of the pleading — may be raised at any time, may be raised by the Court *sua sponte*, is never waived, and results in a dismissal without prejudice to refiling in a court that does have jurisdiction. A preclusion defense is the complete opposite : it is waivable, it must be pleaded and proven by a party entitled to invoke it, and it requires an adversarial record containing the actual prior pleadings and judgments before the Court so that the substantive elements of identity-of-claim, identity-of-issue, finality, and essentiality can be tested. The BPPR Response does not cite *Exxon Mobil* anywhere. Why? Because Banco Popular knows that the *Exxon Mobile* leaves it with no argument. This Court's Order to Show Cause asked Plaintiffs to demonstrate why the action should not be dismissed for lack of subject matter jurisdiction. Plaintiffs answered that  question by citing federal-question jurisdiction under 28 U.S.C. § 1331 on three independent statutory predicates — civil RICO under 18 U.S.C. §§ 1962(c)–(d) and 1964(c); the Securities Exchange Act § 10(b) and Rule 10b-5; and the Bank Holding Company Act anti-tying provisions of 12 U.S.C. §§ 1972 and 1975 — and by citing Article III standing on five direct-injury theories developed at pages 9–13 of the Motion. Those showings dispose of the only question the Order to Show Cause actually put. BPPR cannot sustain a Rule 12(h)(3) jurisdictional dismissal, and this Court should decline BPPR's invitation to use the Rule 12(h)(3) posture to skip the substantive work the preclusion doctrine requires.

**B. The Docket 874 Opinion Did Not Exist When This Complaint Was Filed; The Chronology BPPR Itself Concedes Is Dispositive.**

BPPR characterizes this action as "the third iteration of the same lawsuit" and asserts that Plaintiffs have "adopted a litigation strategy best described as attrition through repetition — filing successive complaintcted theories under new labels." BPPR Resp. at 1.

The chronology is dispositive — in the opposite direction — and BPPR concedes it twice on page 7 of its own brief. BPPR states: "Plaintiffs filed the Complaint in February 2026, shortly after the Court in the Original RICO Case denied their attempt to amend that complaint for a fourth time." BPPR Resp. at 6. BPPR then states: "dismissal of the Original RICO Case was ordered shortly thereafter and prior to the BPPR Defendants being served in this action." *Id.* at 7. The Complaint preceded the Docket 874 Opinion. Docket

**.** *Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 583–84 (1st Cir. 1995), holds a party can file a case related to a prior one based on new facts without the earlier case precluding the latter — the very posture BPPR itself describes when it concedes that "Plaintiffs were denied leave to amend the Original RICO Complaint yet again with a pleading that is substantially similar to the Complaint in this case" and that "Plaintiffs then recycled that proposed amendment as the Complaint and filed it as a new case." BPPR Resp. at 6–7. *Apparel Art* permits precisely the course BPPR concedes Plaintiffs followed.

On the chronology BPPR itself supplies, this Complaint cannot be "successive" to a judgment that did not exist at filing; it cannot have "ignored" a ruling that postdated it by thirty-nine days; and it cannot be subjected to a "what the litigants should have known" preclusion analysis directed at a Rule 12(h)(3) jurisdictional dismissal. The Court should reject the "third

6

iteration / vexatious / attrition" framing as flatly inconsistent with the timeline BPPR's own brief supplies.

**C.   BPPR's Reliance On *Hochendoner* Inverts That Case's Actual Holding; The Docket 874 Opinion's Own Text Confirms It Is A Jurisdictional, Not A Merits, Ruling.**

BPPR argues that the Docket 874 Opinion "constitutes a final decision on the merits and operates with prejudice, carrying res judicata effect that bars relitigation of the same claim," and cites *Hochendoner v. Genzyme Corp.*, 823 F.3d 724 (1st Cir. 2016), as supporting authority. BPPR Resp. at 7. The Response then leans on *Hochendoner* repeatedly for the proposition that the "with prejudice" caption of the Docket 874 Opinion is dispositive on preclusion. *Id.* at 7–8.

But *Hochendoner* holds the opposite of what BPPR represents. Its actual holding is that "a court that lacks jurisdiction cannot dismiss a claim with prejudice," 823 F.3d at 736, reversing the District Court. The opinion is not a vehicle for converting a standing dismissal into a merits adjudication; it is, to the contrary, the controlling First Circuit authority for the proposition that a "with prejudice" caption is meaningless when the underlying dismissal rests on the absence of subject matter jurisdiction.   The Docket 874 Opinion grounds itself expressly on Article III standing rather than the merits at every turn. It states that "the pending motions raise threshold jurisdictional issues" (Docket 874 at 5); that "[a]s standing is a threshold matter, the Court begins by addressing this issue" (Docket 874 at 19); and — most tellingly for any preclusion analysis — that "As Plaintiffs have failed to make the threshold showing for standing, the Court needs not delve into the sufficiency of the substantive RICO claims under 1962(a), (b), and (c)." Docket 874 at 34. The Opinion does not merely fail to reach the merits; it expressly declines to do so. *Hochendoner* forbids the  use of a  "with prejudice" caption to manufacture a merits adjudication.

*See also Costello v. United States*, 365 U.S. 265, 285 (1961) (a jurisdictional dismissal is not on the merits and does not preclude refiling in a court that has jurisdiction);; and — with special force in this District — the Docket 874 Opinion itself, which recites that the allegations of the Second Amended Complaint were "recited … and accepted as true solely for purposes of resolving the Motions to Dismiss" (Docket 874 at 5), the formulation prescribed by *Twombly* and *Iqbal* for threshold analysis.

Docket 874 Opinion is itself the strongest authority against BPPR's preclusion theory, because it is a ruling of this same District, by Judge Méndez-Miró, on some of the same parties and the same general subject matter — and it characterizes itself, in its own words, as a jurisdictional rather than a merits dismissal. The Opinion states at the outset that "Although the allegations describe serious business disputes, the Court's role at this stage is a limited one. The question before the Court is not whether Plaintiffs have described troubling conduct, but whether the claims as pled, viewed in the most favorable light, provide a viable basis for federal jurisdiction." Docket 874 at 2. That is the language of a threshold jurisdictional ruling, not a merits judgment. *Hochendoner* controls. Separately, and independent of the chronology, even a final merits judgment is not entitled to preclusive effect if it was procured through fraud on the court . *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944).

**D.      A Case With New Parties; New Illicit Transactions; and New Direct Injury Theories is Not "Identical" to the Earlier Case.**

Of course the facts in 22-1190 and this case overlap. The cases are related. The undersigned indicated that in the Civil Cover Sheet. Exhibit 1. Defendants' position that Plaintiffs were "hiding" the prior litigation is ludicrous. Starting with the Notice regarding the settlement of the claims with the Lopez Defendants, every corner of this Complaint is permeated with the prior one.

Judge Mendez Miró ruled that the Third Amended Complaint was tardy; she did not rule that the claims lacked merit.

BPPR argues that "[t]he current Complaint recycles the same factual narrative and legal theories that were adjudicated in the prior cases" and that "[t]he demands for relief are likewise identical." BPPR Resp. at 9. BPPR pairs the framing with a footnote inventory of paragraph references intended to suggest that every allegation in this Complaint also appeared in the prior pleadings. *Id.* at 9–10 nn. 3–4. This is incorrect.

The "identical claims" framing requires BPPR to omit five categories of new content the Complaint pleads, each of which is independently dispositive. First, the Complaint catalogues seven post-Second Amended Complaint transactions (Mot. at 21) — the August 25, 2023 Second Amendment to the GFC Operating Agreement; the August 20, 2023 Revenue Sharing Agreement; the September 27, 2023 Seventh Amendment to the Credit Agreement; the January 31, 2025 loan assignment to a disqualified Affiliate of the Borrower; the January 31, 2025 Asset Acquisition Agreement; the May 27, 2025 Settlement Agreement; and the June 2, 2025 Irrevocable Proxy — none of which was, or could have been, before Judge Méndez-Miró on the operative January 23, 2023 pleading.. Second, the Complaint adds a new plaintiff — EFB, LLC — whose contracting counterparty (VRM Penzini Fund I, LLC — Renewable Series II, on the August 20, 2023 Revenue Sharing Agreement) was never a defendant in the Méndez-Miró RICO Action. Third, the Complaint adds new defendants: multiple VRM Penzini entities, Star Power Systems LLC, Humacao RNG LLC, Ponce RNG LLC, Ignacio Alvarez, and Javier Ferrer each in his individual capacity.  Fourth, the Complaint pleads new direct-injury theories that did not exist on that record: the NDA contractual-privity injury to Boyd and Lassers personally; the post-Second Amended Complaint expansion of Boyd's guarantor exposure through the Seventh Amendment and the

9

January 31, 2025 loan assignment; the void Asset Acquisition Agreement injury to Members under § 9.1 of the GFC Operating Agreement; the EFB privity-based injury on the Revenue Sharing Agreement; and the Irrevocable Proxy property right under 8 Del. C. § 212(e). And fifth, the Complaint is verified, curing the Rule 23.1 verification defect Judge Méndez-Miró expressly identified at Docket 874 at 20.

*Apparel Art*, 48 F.3d at 584, holds that "[o]nly if the actions' factual bases **are the same** will [Plaintiff's] actions be barred by *res judicata.*" *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 327 (1955), holds that "That both suits involved 'essentially the same course of wrongful conduct' is not decisive." Subsequent acts give rise to fresh causes of action unaffected by the disposition of prior litigation. *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008), confirms that non-parties are not bound by judgments in personam, reaffirming the bedrock principle of *Hansberry v. Lee*, 311 U.S. 32, 40 (1940). The BPPR Response cites none of these three controlling First Circuit and Supreme Court authorities, each of which is directly on the questions BPPR puts at issue.

Each omitted authority independently defeats BPPR's claim-identity framing. *Apparel Art* and *Lawlor* foreclose claim preclusion as to the seven  post-Second Amended Complaint transactions, because each is a subsequent act giving rise to a fresh cause of action. *Taylor v. Sturgell* forecloses claim and issue preclusion as to EFB, the multiple VRM Penzini entities, Star Power, Humacao RNG, Ponce RNG, Alvarez, and Ferrer in his individual capacity — none of whom was a party to the Méndez-Miró RICO Action, and none of whom can be bound by a judgment rendered in an action to which it was a stranger. The Complaint's "new conduct, new defendants, and new theories" content is not litigation tactics dressed up as novelty; it is the

10

response to discrete post-2023 illegal acts, each giving rise to a fresh cause of action under *Lawlor*, and each involving at least some defendants who were never before Judge Méndez-Miró.

### D. BPPR's Accusation That Plaintiffs "Materially Misrepresent" *Pérez v. Volvo* Turns That Decision's Actual Holding Upside Down.

BPPR asserts that Plaintiffs' reliance on *Pérez v. Volvo Car Corp.*, 247 F.3d 303 (1st Cir. 2001), "is misplaced and, indeed, a material misrepresentation of that decision." BPPR Resp. at 11. BPPR contends that *Pérez* holds the opposite of what Plaintiffs argue. Banco Popular is wrong. *Pérez* rejected the District Court's grant of summary judgment because the proposed classes of Plaintiffs involved different models of the Volvos sold. *Id.* at 311. Here, there are different parties on both sides of the "v."   *Pérez* further holds that the First Circuit was "bound to follow [the prior case] insofar as the record now before us does no more than replicate the same facts that were before us in [the prior case]." 247 F.3d at 313 (emphasis added). The italicized qualifier — "insofar as the record … does no more than replicate" — is the operative limit, and it cuts directly against BPPR: the *Pérez* court itself disavowed the district court's res judicata rationale and considered new evidence precisely to assess whether the new record exceeded the prior one. *Id.* at 312–13. *Pérez* is therefore the controlling First Circuit authority for the proposition that preclusion does not operate where the second-filed action presents new content that goes beyond the prior record.

### III. CONCLUSION

Banco Popular's arguments do not withstand analysis of the jurisprudence that the bank cites as supporting them. A case decided after this case was filed can not provide *res judicata.* Even if 22-1190 had been decided before, it fails as a barrier because this case present this Court with new parties, new misconduct, and new theories of liability.

**WHEREFORE,**  Plaintiffs very respectfully ask this Honorable Court to grant Plaintiffs' Motion to Show Cause.

Respectfully submitted,

In San Juan, Puerto Rico, this 11ᵗʰ day of June 2026.

| | |
|---|---|
| /s/ Jane Becker Whitaker<br>**JANE BECKER WHITAKER**<br>USDC-PR Bar No. 205110<br>VIG Tower, 1225 Ave. Ponce de León, Suite 1102<br>San Juan, PR 00907<br>(787) 585-3824<br>janebeckerwhitaker@gmail.com | /s/ Luis E. Miñana Rodriguez-Feo<br>**LUIS E. MIÑANA RODRIGUEZ-FEO**<br>USDC-PR Bar No. 225608<br>ESPADA, MIÑANA & PEDROSA LAW OFFICES, PSC<br>122 Calle Ing. Manuel Domenech, Altos<br>Urb. Baldrich, San Juan, PR 00918<br>(787) 758-1999 / (787) 402-2226<br>minanalaw@yahoo.com<br>www.securitiesatty.com |

Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date, the foregoing Plaintiffs' Rebuttal to Defendant Banco Popular de Puerto Rico's and Javier Ferrer's Response to Motion to Show Cause was filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

/s/ Jane Becker Whitaker
**JANE BECKER WHITAKER**
USDC-PR Bar No. 205110

12