### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

GREGORY BOYD, et al

          Plaintiffs,

     v.

BANCO POPULAR DE PUERTO RICO, et al

          Defendants.

Civil Action No.:  3:26-cv-1066

## MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ....................................................................................................1

II.    BACKGROUND ....................................................................................................1

III.    LEGAL STANDARD UNDER RULE 11 ............................................................6

IV.    ARGUMENT.........................................................................................................7

    A.  The Complaint is Barred by Preclusion and Is Duplicative and Harassing.........................7

        1.  Claim and Issue Preclusion Bar the Complaint ..............................................7

        2.  The Complaint Is Duplicative and Vexatious...................................................11

    B.  Plaintiffs Cannot Sue on Behalf of GFC and BGF .............................................12

    C.  The Claims Are Objectively Frivolous as a Matter of Law ...............................14

    D.  The Claims Against Ferrer Are Frivolous and Independently Sanctionable......................15

    E.  The Frivolous and Inflammatory Allegations Against PMA Are Sanctionable.................16

    F.  Sanctions Are Appropriate Under Rule 11 .......................................................17

Index of Exhibits.............................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACA Computer Integrators, Inc. v. Valid America, Inc.,*
608 F. Supp. 3d 1 (D. Mass. 2022) ....................................................................7,18

*Álvarez-Maurás v. Banco Popular of Puerto Rico,*
919 F.3d 617 (1st Cir. 2019) ...........................................................................12,15

*American Surety Co. v. Baldwin,*
287 U.S. 156 (1932)...............................................................................................10

*Anderson v. Beatrice Foods Co.,*
900 F.2d 388 (1st Cir. 1990) .................................................................................18

*CQ Int'l Co. v. Rochem Int'l, Inc., USA,*
659 F.3d 53 (1st Cir. 2011).....................................................................................7

*Cruz v. Savage,*
896 F.2d 626 (1st Cir. 1990). ..................................................................................7

*Efron v. Embassy Suites (P.R.), Inc.,*
223 F.3d 12 (1st Cir. 2000). ..................................................................................14

*Hoult v. Hoult,*
157 F.3d 29 (1st Cir. 1998). ..................................................................................10

*In re Ames,*
993 F.3d 27 (1st Cir. 2021) ................................................................................6,17

*Man Against Xtinction v. Mass. Port Authority,*
2022 WL 344560 (D. Mass., Feb. 4, 2022)...........................................................10

*McCarthy v. Azure,*
22 F.3d 351 (1st Cir., 1994) .............................................................................11, 15

*Montoyo–Rivera v. Pall Life Sciences PR, LLC,*
245 F. Supp. 3d 337 (D.P.R. 2017) .................................................................7,11,17

*Muñiz-Cortés v. Intermedics, Inc.,*
229 F.3d 12 (1st Cir. 2000) .....................................................................................9

ii

*Negrón-Fuentes v. UPS Supply Chain Solutions,*
    532 F.3d 1 (1st Cir. 2008) ...................................................................................9

*Nyer v. Winterthur Int'l,*
    290 F.3d 456 (1st Cir. 2002) ........................................................................ 7,17

*O'Bannon v. Friedman's, Inc.,*
    437 F.Supp.2d 490 (D. Md. 2006) .....................................................................13

*Railway Labor Executives' Ass'n v. Guilford Transp. Industries, Inc.,*
    989 F.2d 9 (1st Cir. 1993) ...................................................................................9

*Rivera–Molina v. Casa La Roca, LLC,*
    2022 WL 18698 (D.P.R., Jan. 3, 2022) ...............................................................7

*Silva v. Witschen,*
    19 F.3d 725 (1st Cir. 1994) .................................................................................7

*Strahan v. Mass. Port Authority,*
    2023 WL 10947175 (1st Cir., Dec. 11, 2023) ...................................................10

*Stuhl v. Tauro,*
    476 F.2d 233 (1st Cir. 1973) .............................................................................10

*Taunton Gardens Co. v. Hills,*
    557 F.2d 877 (1s Cir. 1977)................................................................................9

*Triantos v. Guaetta & Benson,*
    91 F.4th 556 (1st Cir. 2024). ..............................................................................6

*Walsh v. Int'l Longshoremen's Ass'n,*
    630 F.2d 864 (1st Cir. 1980) ...............................................................................9

*Walton v. Eaton Corp.,*
    563 F.2d 66 (3d Cir. 1977) ................................................................................12

*Westcott Const. Corp. v. Firemen's Fund of New Jersey,*
    996 F.2d 14 (1st Cir. 1993). .................................................................................9

*Young v. City of Providence ex rel. Napolitano.,*
    404 F.3d 33 (1st Cir. 2005). .................................................................................6

**Constitutional Provisions and Federal Statutes**

Fed. R. Civ. P. 11.........................................................................................*passim*

Fed. R. Civ. P. 11(b)(1)-(3) ...................................................................1, 6,17,18

Fed. R. Civ. P. 11(c)(2).................................................................................5

Fed. R. Civ. P. 11(c)(4).................................................................................17


**Other Authorities**

18A Fed. Prac. & Proc. Juris. § 4436 (3d ed.) ...............................................10

ABA Model Rule of Professional Conduct .....................................................17

COME NOW Defendants Banco Popular de Puerto Rico ("BPPR") and Javier Ferrer ("Ferrer") (collectively, the "Popular Defendants"), through the undersigned counsel, and respectfully move the Court, pursuant to Federal Rule of Civil Procedure 11, for the imposition of sanctions against Plaintiffs Gregory Boyd ("Boyd"), Jonathan Lassers ("Lassers"), and EFB, LLC (collectively, "Plaintiffs") and their counsel, Jane Becker Whitaker, Esq. and Luis E. Miñana, Esq., for the reasons set forth below.

## I.    INTRODUCTION

The captioned Complaint fails to meet the Rule 11 standard. Plaintiffs and their counsel have run afoul of, among others: (1) Rule 11(b)(1), by filing a Complaint for improper purposes, to harass the Popular Defendants and needlessly increase the cost of litigation; and (2) Rule 11(b)(2), by filing a Complaint with claims and legal contentions that are not warranted by existing law and are frivolous, to the point that the claims and arguments set forth in the Complaint have already been repeatedly rejected by several other courts.

The Complaint is frivolous and sanctionable for three principal reasons: (1) it is barred by preclusion and is duplicative and harassing; (2) it rests on legal theories—including the premise that Plaintiffs can sue on behalf of Biomass Green Fuels LLC ("BGF") and GFC Holdings, LLC ("GFC")—that two separate federal courts have already expressly rejected; and (3) its claims are objectively meritless as a matter of law. In order to properly portray the problematic nature of the Complaint, a brief background is set forth below.

## II.    BACKGROUND

This is at least the fourth action that Boyd and Lassers have filed against BPPR concerning the same nucleus of alleged facts and transactions. The first action was filed in April 2022 under the caption <u>Boyd et al. v. López Vidal et al.</u>, Civil No. 22-1190. Plaintiffs Boyd and Lassers alleged federal claims against BPPR, among others, under the Racketeer Influenced and Corrupt

1

Organizations Act ("RICO") (hereinafter, the "Original RICO Case" or "Original RICO Complaint"). An additional federal claim against BPPR, based on alleged securities violations, was included in a subsequent amendment to the Original RICO Complaint. Furthermore, the operative complaint in the Original RICO Case—the Second Amended Complaint or "SAC" at Docket No. 147 of Civil No. 22-1190, **Ex. 1A**—includes supplemental law claims for breach of contract and nullity of a certain guaranty given by Boyd to guarantee a loan taken by BGF.[1] As will be more fully discussed below, the Original RICO Case has been dismissed in its entirety.

The second action was filed in July 2024 by way of a counterclaim in the state court action filed by BPPR against its debtor, BGF, for breach of the loan agreement between that entity and BPPR and for collection of monies. The state court action is captioned <u>Banco Popular de Puerto Rico v. Biomass Green Fuels, LLC et al.</u>, Civil No. SJ2024CV04616, and includes the guarantors of the loan taken by BGF as codefendants  (hereinafter, the "State Court Action"), which includes Boyd.[2] Boyd filed a counterclaim against BPPR in the State Court Action, based on the same nucleus of operative facts as set forth in the Original RICO Case (hereinafter, the "State Court Counterclaim"). Boyd's State Court Counterclaim includes causes of action (1) under the Bank Holding Company Act ("BHCA"), for supposed unlawful tying by BPPR,  (2) for lender's liability, and (3) asserting a breach of contract and request for nullity of Boyd's guaranty.[3] <u>See</u>, **Ex. 2A.** The BHCA claim in the State Court Counterclaim was dismissed in July 2025. <u>See</u>, **Ex. 2B.** At that

---

[1] For ease of reference, we include as composite Exhibit 1A the following documents from the Original RICO Case: Ex. 1A is the SAC in the Original RICO Case; Ex. 1B is the Memorandum and Order at Docket No. 800, which held that Boyd and Lassers could not take decisions on behalf of BGF and GFC; Ex. 1C is the proposed Third Amended Complaint in that case, which was rejected; Ex. 1D is the Order at Docket No. 847, denying Boyd and Lassers leave to amend the complaint; Ex. 1E is the Opinion and Order on the motions to dismiss, finding Boyd and Lassers lacked standing to assert the RICO claims, among other deficiencies in the case; and Ex. 1F is the Judgment in that case.

[2] Lassers is not a party to the State Court Action, but he is a party to both the Original RICO Case and the Federal BHCA Case. Boyd is a party to all three prior actions. EFB, LLC is not a party to any of the three prior actions, although, as set forth below, it has an obvious relation to Plaintiffs Boyd and Lassers and their counsel.

[3] The breach of contract and nullity of guaranty arguments were also expressly included in the Original RICO Case.

time, Boyd was ordered to file a new counterclaim within ten days. Because he never complied with that order, by the end of July 2025 the State Court Counterclaim no longer existed.[4]

Although Boyd's State Court Counterclaim initially included a BHCA claim, on or about December 2024 he filed a *third* action against BPPR, a new federal case for the alleged BHCA violations, captioned <u>Boyd et al. v. Banco Popular de Puerto Rico</u>, Civil No. 24-1569 (PAD) (hereinafter, the "Federal BHCA Case" or "Federal BHCA Complaint"). <u>See,</u> **Ex. 3A.** The Federal BHCA Case was filed by both Boyd and Lassers, complaining of the same supposed unlawful tying arrangement alleged in the State Court Counterclaim. The factual narrative in the Federal BHCA Case is based on alleged facts and transactions that were already the subject of Plaintiffs' allegations in the SAC in the Original RICO. That case has also been dismissed.[5]

The BHCA claim in the State Court Counterclaim was dismissed in July 2025. <u>See</u> **Ex. 2B.** The Federal BHCA Case, in turn, was dismissed on December 22, 2025. <u>See</u> Civil No. 24-1569, Docket Nos. 131 and 133, **Exhs. 3D & 3E**. The Court in Civil No. 24-1569 found that Boyd and Lassers could not take over BGF's and GFC's decisions and require them to appear as plaintiffs in the Federal BHCA Case, nor could Boyd and Lassers require BGF and GFC to terminate their counsel and, instead, accept Boyd's and Lassers' attorneys (Ms. Becker and Mr. Miñana) as the companies' counsel. <u>See</u> <u>id.</u> at Docket No. 133 at 8-14. In summary, Boyd's and Lassers' claims against BPPR for alleged unlawful tying of credit to the gas offtake agreement (and associated

---

[4] For ease of reference, we include as composite Exhibit 2: (1) the counterclaim in the State Court Action, Ex. 2A; (2) the Partial Judgment and Resolution dismissing the BHCA claim in the counterclaim and ordering Boyd to file a new counterclaim within ten days. For further background, we also include as Ex. 2C the partial summary judgment issued against BGF and GFC and in favor of BPPR, finding BGF and GFC in breach of the loan agreement and ordering them to pay the amounts due thereunder. That partial summary judgment is not yet final pursuant to the Puerto Rico Rules of Civil Procedure, although the intermediate appellate court affirmed it on June 17, 2026.

[5] For ease of reference, we include as composite Exhibit 3 certain key documents from the Federal BHCA Case, including: (1) Ex. 3A, the Second Amended Complaint or SAC in the Federal BHCA Case; (2) Ex. 3B, the Minutes of the hearing in which the Court rejected Plaintiffs' request to takeover litigation for BGF and GFC, Docket No. 101; (3) Ex. 3C, BGF's and GFC's voluntary dismissal with prejudice of BHCA claims against BPPR; (4) Ex. 3D, the Court's Opinion and Order at Docket No. 133, finding Boyd and Lassers lacked standing to assert BHCA claims against BPPR, among other deficiencies in their pleading; and (5) Ex. 3E, the Judgment in the case.

carbon credits) were dismissed for lack of standing, Boyd and Lassers were found not to have authority to control or take over the litigation decisions of BGF and GFC, and the companies' claims for the alleged unlawful tying against BPPR were dismissed with prejudice. See Civil No. 24-1569, Docket No. 131 and Docket No. 133, **Exhs. 3D & 3E**.

As for the Original RICO Case, it was dismissed on March 18, 2026. See Civil No. 22-1190 at Docket Nos. 874 and 876, **Exhs. 1E and 1F**. Prior to the outright dismissal of the case, the Court in the Original RICO Case had also addressed and decided the issue of whether Boyd and Lassers could control the litigation decisions of BGF and GFC, such that they could determine to add the companies as co-plaintiffs and appoint Boyd's and Lassers' attorneys as counsel for BGF and GFC. In short, the answer was a resounding no. See Civil No. 22-1190, Docket No. 800, **Ex. 1B**. Moreover, on January 21, 2026 (shortly before the filing of the Complaint here), the Court denied Plaintiffs' leave to amend the Original RICO Complaint yet again, noting that undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice and futility of amendments were all sufficient reasons to deny leave to amend a pleading. See id. at Docket No. 847, **Ex. 1D**. The proposed amended pleading in the Original RICO Case was then converted into the captioned Complaint and filed as a separate case.

In summary, by the time Plaintiffs filed the present Complaint in February 2026, (1) Boyd's and Lassers' BHCA claims had been dismissed for lack of standing (and Boyd's equivalent BHCA claims in state court had likewise been dismissed); (2) BGF and GFC's purported BHCA claims had been dismissed with prejudice; (3) Boyd and Lassers had twice litigated—unsuccessfully—their supposed authority to control BGF's and GFC's litigation and counsel decisions; (4) Boyd and Lassers had been denied leave to amend the Original RICO Complaint yet again with a pleading that is substantially similar to the Complaint in this case; and (5) the motions to dismiss in the Original RICO Case were fully briefed and dismissal was

4

imminent. In fact, dismissal of the Original RICO Case was ordered prior to the Popular Defendants being served in this action.

Accordingly, when Plaintiffs filed the captioned Complaint they were fully aware that (a) Boyd and Lassers had no authority to control the litigation on behalf of BGF and GFC, nor their attorneys; (b) BGF's and GFC's BHCA claims had been dismissed with prejudice; and (c) Boyd and Lassers lacked standing to assert either RICO or BHCA claims. In fact, the Court in the Federal BHCA Case had already dismissed Boyd's and Lassers' BHCA claims for lack of standing, and the lack of standing had been fully briefed in the Original RICO Case. Despite the foregoing, Plaintiffs filed the Complaint again purporting to act on behalf of BGF and GFC, based on the same core nucleus of facts, and complaining of the same transactions alleged in the Original RICO Case, the Federal BHCA Case, and the counterclaim in the State Court Action. In so doing, Plaintiffs and their counsel not only filed objectively meritless claims, they ran afoul of Rule 11.

The Complaint is barred by preclusion and is duplicative of Plaintiffs' claims and allegations in the extinct Original RICO Case, Federal BHCA Case and counterclaim in the State Court Action. As in those prior cases, moreover, the Complaint is legally unsound and suffers from the same deficiencies that doomed the Original RICO and Federal BHCA cases, including lack of standing and the fact that, as a matter of law, Plaintiffs cannot control BGF's and GFC's litigation and counsel decisions. The filing of this Complaint is textbook vexatious, harassing litigation, which needlessly increases the cost of litigation. It is simply an abuse of the judicial process.

On April 16, 2026, in strict compliance with Rule 11(c)(2)'s safe-harbor requirement, the Popular Defendants served Plaintiffs with a Rule 11 letter and a copy of this Motion, advising them that unless they withdrew the Complaint within twenty-one (21) days, the Popular Defendants would file this Motion with this Court. (**Exhibit 4**). More than twenty-one days have now elapsed. Plaintiffs have refused to take any corrective action. Thus, the Popular Defendants are forced to

5

file this Motion and now move this Court to enter sanctions against Plaintiffs. See Triantos v. Guaetta & Benson, 91 F.4th 556 (1st Cir. 2024).

### III.    LEGAL STANDARD UNDER RULE 11

Rule 11 imposes an affirmative duty on attorneys to conduct a reasonable inquiry into both the facts and the law before presenting a pleading to the court. By signing and filing the Complaint, Plaintiffs' counsel certified that, to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the Complaint "is not being presented for any improper purpose," that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument," and that "the factual contentions have evidentiary support" or will likely have such support after reasonable discovery. Fed. R. Civ. P. 11(b)(1)–(3).

Under Rule 11, a court may impose sanctions on a lawyer "for advocating a frivolous position, pursuing an unfounded claim, or filing a lawsuit for some improper purpose." CQ Int'l Co. v. Rochem Int'l, Inc., USA, 659 F.3d 53, 60 (1st Cir. 2011). A claim is frivolous when it is "either not well-grounded in fact or unwarranted by existing law or a good faith argument for an extension, modification or reversal of existing law." Cruz v. Savage, 896 F.2d 626, 632 (1st Cir. 1990). In determining whether a lawyer has offended Rule 11, a court generally must use an objective standard, asking what is reasonable under the circumstances. Id. at 631. An attorney who makes unsupported factual allegations "must, at the very least, be culpably careless" to violate Rule 11(b). Young v. City of Providence ex rel. Napolitano, 404 F.3d 33, 39 (1st Cir. 2005).

The First Circuit has repeatedly held that sanctions are appropriate where a complaint lacks a reasonable basis in fact or law, **or where counsel persists in pursuing claims that have been squarely rejected by controlling precedent or prior rulings in related proceedings**. See, e.g., In re Ames, 993 F.3d 27, 37-39 (1st Cir. 2021) (affirming Rule 11 sanctions where counsel "stubbornly persisted in rehashing essentially the same claims" without a sufficient factual or legal

6

basis despite explicit warnings from the court); Nyer v. Winterthur Int'l, 290 F.3d 456, 459-63 (1st Cir. 2002) (affirming sanctions against attorney for asserting an unfair trade practices claim that had no support in Massachusetts law and was brought to gain leverage in settlement negotiations); ACA Computer Integrators, Inc. v. Valid Am., Inc., 608 F. Supp. 3d 1, 2-3 (D. Mass. 2022) (imposing Rule 11 sanctions where counsel challenged an arbitration award after state and federal deadlines for doing so had expired and after the award had been confirmed by a state court).

Courts within this Circuit have not hesitated to sanction litigants who present pleadings that ignore controlling rulings or rest on demonstrably false factual assertions. See, e.g., Montoyo–Rivera v. Pall Life Sciences PR, LLC, 245 F. Supp. 3d 337, 346-48 (D.P.R. 2017) (granting Rule 11 sanctions where plaintiff and counsel filed a duplicative complaint for an improper purpose despite the pendency of a prior related action); Rivera Molina v. Casa La Roca, LLC, No. 21-1004 (SCC-GLS), 2022 WL 18698, at *4, *5 (D.P.R. Jan. 3, 2022) (sanctioning counsel who relied on allegations contradicted by the public record and who failed to conduct a reasonable pre-filing investigation); Silva v. Witschen, 19 F.3d 725, 732-33 (1st Cir. 1994) (affirming Rule 11 sanctions where counsel filed groundless civil-rights claims without adequate factual inquiry). These decisions underscore that zealous advocacy does not excuse the filing of complaints that ignore binding precedent or omit dispositive facts known to the pleader.

## IV.    ARGUMENT

### A. The Complaint Is Barred by Preclusion and Is Duplicative and Harassing

#### 1. Claim and Issue Preclusion Bar the Complaint

Plaintiffs filed the Complaint shortly after the Court in the Original RICO Case denied the attempt to again amend that complaint. Undaunted, Plaintiffs re-packaged that proposed amendment and filed it as a new case. Although Plaintiffs attempt to pass it off as relating to events that occurred after the SAC in the Original RICO Case was filed, a mere glance at the allegations

shows otherwise. The Complaint includes the same cast of characters, loan origination story, allegations about BPPR's relationship with the "Olmars,"[6] characterizations of the September 2020 Credit Agreement and the accompanying New Market Tax Credit ("NMTC") financing, claims of BPPR cooperation with fraud by the Lópezes, and narrative concerning unlawful tying as those alleged by Plaintiffs in the Original RICO Case and the Federal BHCA Case.

The demands for relief are also the same. The Complaint requests relief for the alleged RICO violations, a declaration that Plaintiffs hold majority control over GFC and BGF and have authority to act on behalf of those entities, an order to rescind the 2020 Membership Interest Purchase Agreement ("MIPA") by and between Boyd and Olmar López Vidal, relief for the supposed tying violations committed by BPPR in connection with the "offtake agreement," including disgorgement and treble damages pursuant to the BHCA, and a declaration that Boyd's personal guaranty of the September 15, 2020 Credit Agreement, as amended, is void. See Complaint, p. 264-267. The SAC in the Original RICO Case likewise requests relief for purported RICO violations, based on the same alleged predicate acts,[7] an order of rescission of the MIPA, and a declaration that Boyd's personal guaranty is void. See Civil No. 22-1190, Docket No. 147 at p. 156, ¶¶ b, d, and f. As to the allegations that BPPR unlawfully tied the gas offtake agreement to

---

[6] Referring to Olmar López Gómez and his son, Olmar López Vidal, both originally defendants in Civil No. 22-1190.

[7] Compare Complaint at p. 239-240 (referencing a series of alleged predicate acts between 2020 and 2023, including issues with the flow of funds in closing documents, disbursements after Boyd's notice of fraud, improper vetting of guarantors, allegations of denials of defaults and litigation in the Credit Agreement amendments and execution thereof without Boyd's consent, and conditioning/tying of the credit to the gas offtake agreement) with **Exhibit 1A,** Civil No. 22-1190, Docket No. 147 at ¶¶ 138-143 (complaining of supposed alterations to closing documents); ¶¶ 235-236 and 477 (allegations concerning Ms. Carballido, Plaintiffs' counsel, informing BPPR of alleged fraud and disbursements thereafter); ¶¶ 143-144 (disbursements for bond in alleged breach of Credit Agreement); ¶¶ 596, 679 (referring to guarantor López Vidal negative net worth); ¶ 350 (alleging amendments to Credit Agreement falsely stated that there was no pending litigation which would affect the loan if adjudicated against the Lopezes and that the amendments were executed without Boyd's signature); page 2 and ¶¶ 681 and 691 (complaining of offtake agreement and that BPPR approved loan amendments to further its stake in the offtake agreement). The sole "action" referenced as a predicate act in the new Complaint that is not explicitly set forth in the SAC in the Original Rico Case or the Federal BHCA Case is the loan assignment to a purportedly "disqualified Affiliate in breach of the Credit Agreement §1.1," which Plaintiffs contend took place in January 2025. See Complaint at page 240. But even that action took place during the pendency of the Original RICO Case and Federal BHCA Case and was expressly referenced in the motions and documents set forth in those cases. See, e.g., **Exhibit 1C,** Civil No. 22-1190, Docket No. 831-1 at p. 209.

the grant of credit and request for relief therefor, those are also the central allegations of the Federal BHCA Case (which the Court dismissed as to Boyd and Lassers for lack of standing and which were voluntarily dismissed with prejudice by the companies). See Civil No. 24-1569, Docket Nos. 57, 63, 131, 133. Moreover, Plaintiffs' contentions that they are authorized to take over BGF and GFC, including exercise authority over their litigation and hiring-of-counsel decisions, were expressly considered and rejected in *both* the Original RICO Case and the Federal BHCA Case. See Civil No. 22-1190, Docket No. 800 and Civil No. 24-1569 at Docket No. 131.

Plaintiffs' Complaint is barred by preclusion. Federal common law governs preclusion where, as here, the inquiry as to preclusive effect concerns a federal judgment. See Hoult v. Hoult, 157 F.3d 29, 31 (1st Cir. 1998). Claim preclusion or res judicata "operates as an absolute bar to the relitigation of the same cause of action between parties (or their privies);" it also renders a prior judgment on the merits "conclusive not only to the issues which were determined but as to all matters which might have been determined as well." Westcott Const. Corp. v. Firemen's Fund of New Jersey, 996 F.2d 14 (1st Cir. 1993). Issue preclusion or collateral estoppel, in turn, "renders conclusive the determinations reached in a previous lawsuit between the same (and, sometimes, different) parties." Negrón-Fuentes v. UPS Supply Chain Solutions, 532 F.3d 1, 7 (1st Cir. 2008). Notably, a federal judgment may have preclusive effect even if a party appealed it. See Taunton Gardens Co. v. Hills, 557 F.2d 877, 879, n. 2 (1st Cir. 1977).

"Dismissal for lack of subject matter jurisdiction precludes relitigation of the issues determined in ruling on the jurisdictional question." Muñiz-Cortés v. Intermedics, Inc., 229 F.3d 12, 14 (1st Cir. 2000) (citing Wright & Miller treatise). See also Railway Labor Executives' Ass'n v. Guilford Transp. Industries, Inc., 989 F.2d 9, 11 (1st Cir. 1993) (explaining that *res judicata* principles bar re-litigation of a Court's finding that it lacks jurisdiction); Walsh v. Int'l Longshoremen's Ass'n, 630 F.2d 864, 870 (1st Cir. 1980) ("The principles of res judicata apply to

9

questions of jurisdiction as well as to other issues") (quoting Am. Surety Co. v. Baldwin, 287 U.S. 156, 166 (1932)); Stuhl v. Tauro, 476 F.2d 233 (1st Cir. 1973) (affirming dismissal of second complaint filed by plaintiff that was practically identical to prior claim dismissed for want of a substantial federal question, explaining: "Plaintiff-Appellant has thus fully and completely litigated the question of whether his complaint presented a substantial federal question; he may not now relitigate this issue, regardless of whether the prior decision is deemed to be on the merits or merely 'jurisdictional.'") (citations omitted). A federal court's judgment finding it lacks jurisdiction is "effective to preclude relitigation of the precise issue of jurisdiction or venue that led to the initial dismissal. Similar effects attend dismissals that rest on matters closely related to jurisdiction, such as justiciability [.]" 18A Fed. Prac. & Proc. Juris. § 4436 (3d ed.) Indeed, the First Circuit has explained that issue preclusion bars a party from relitigating his lack of standing. Strahan v. Mass. Port Auth., 2023 WL 10947175 (1st Cir., Dec. 11, 2023) (Unpub.). See also, Man Against Xtinction v. Mass. Port Auth., 2022 WL 344560 (D. Mass., Feb. 4, 2022) (finding plaintiff barred from relitigating issue that he lacked standing).

Both the Original RICO Case and the Federal BHCA Case ended with final Judgments finding that Plaintiffs Boyd and Lassers lacked standing to assert either RICO or BHCA claims based on the transactions and facts at issue in the Complaint, which were also the subject of pleadings and allegations in the prior federal cases. Plaintiffs cannot relitigate their lack of standing as to either claim. Nor can Plaintiffs relitigate their lack of authority to control BGF's and GFC's litigation decisions, an issue which was amply litigated and decided in a manner adverse to Plaintiffs in both the Original RICO Case and the Federal BHCA Case. Moreover, BGF and GFC voluntarily dismissed with prejudice their BHCA claims against BPPR—a dismissal the court in the Federal BHCA Case approved—such that claim preclusion operates as a bar to any attempt by or on behalf of those entities to assert any claim that was or could have been asserted against BPPR.

See United States v. Cunan, 156 F.3d 110, 114 (1st Cir. 1998) ("[A] voluntary dismissal with prejudice is ordinarily deemed a final judgment that satisfies the *res judicata* criterion."). Thus, even if counsel for Boyd and Lassers could represent BGF and GFC, which they cannot, as two courts have already ruled, no one on BGF's or GFC's behalf could assert claims that were asserted, or could have been asserted, in the Federal BHCA Complaint. Finally, as the RICO and BHCA claims serve as the jurisdictional hooks of the Complaint, the fact that they are barred by the cited preclusion doctrine dooms the Complaint as a whole.

The inclusion of Ferrer cannot defeat preclusion here. Plaintiffs were well aware of Ferrer's alleged role while they were prosecuting the Original RICO Case and the Federal BHCA Case. In fact, the operative complaints in both the Original RICO Case and the Federal BHCA Case include various allegations concerning Ferrer and the alleged inaction by BPPR after Boyd's counsel supposedly put Ferrer on notice of BGF's and/or the Lopezes' alleged fraud. In any event, Ferrer is BPPR's President and at the time of the facts alleged in the Complaint (and in the prior cases) was its General Counsel, Chief Legal Officer and/or Chief Operating Officer. All allegations against him refer to his actions or omissions in his official capacity, which is the same as making allegations against BPPR itself. See McCarthy v. Azure, 22 F.3d 351, 359 (1st Cir. 1994) ("An official capacity suit is, in essence, another way of pleading an action against an entity of which an officer is an agent. Consequently, such a suit is, in all respects other than name, to be treated as a suit against the entity.") (internal quotation marks and citations omitted).

2. The Complaint Is Duplicative and Vexatious

Even if the Complaint were not barred by preclusion, it would still be improper and subject to dismissal as duplicative and vexatious litigation. Courts have held that a plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." Montoyo-Rivera v. Pall Life Scis. PR, LLC, 245 F. Supp.

3d 337, 342 (D.P.R. 2017) (quoting Walton v. Eaton Corp., 563 F.2d 66, 70 (3d Cir. 1977) (en banc)). A later-filed action is duplicative where the claims, parties, and relief sought do not significantly differ from those in an earlier action. That is precisely what is happening here. This new case involves the same lending relationships, loan transactions, alleged scheme, companies (GFC and BGF), core group of defendants, and purported injuries to Plaintiffs as those that form the core of every single action Plaintiffs have filed previously. Dressing up the same facts in new rhetoric about "post-January 2023" predicate acts does not transform this Complaint into a new, non-duplicative claim.

Any attempt by Plaintiffs to argue that this Complaint is justified by "new" predicate acts occurring after January 31, 2023, and/or by the addition of new defendants such as Ferrer, inevitably fails. The purported injuries alleged in the Complaint—which boil down to alleged harm in connection with the lending relationship and the governance of GFC and BGF—are the same injuries that, per Plaintiffs' allegations, had commenced by 2020. The First Circuit's injury-discovery rule begins the RICO limitations clock when the plaintiff knew or should have known of the injury, not when the last predicate act occurred. Álvarez-Maurás v. Banco Popular, 919 F.3d 617, 625-26 (1st Cir. 2019). And the relabeling of long-known facts as "new" predicates does not restart the clock or transform a duplicative filing into an original one.

**B. Plaintiffs Cannot Sue on Behalf of GFC and BGF**

The Complaint rests on the erroneous and already rejected premise that Plaintiffs "hold" 55.493% of the voting units of GFC through an irrevocable proxy given by Olmar López Vidal, and that this majority control allows them to act by written consent, override the GFC Board of Managers, direct company litigation, and sue on behalf of GFC and BGF directly. The same premise was litigated and rejected in both the Original RICO Case and the Federal BHCA Case.

12

As such, the Complaint is an egregious attempt to relitigate what two federal judges have already, independently, rejected.

Both judges in the Original RICO Case and the Federal BHCA Case held that, contrary to Plaintiffs' assertions, GFC's Operating Agreement does not support Plaintiffs' attempted takeover of litigation decisions that belong solely to the Companies' Board of Managers. Judges Méndez-Miró and Delgado also found that an amendment to the Operating Agreement would be necessary to override the authority vested in the Board of Managers, and that any such amendment requires the majority approval of the Series A Preferred interest holders. There has been no amendment to the Operating Agreement, nor is there any possibility of lawfully amending it simply because Boyd, Lassers, and Olmar López Vidal are acting in concert.

In the Federal BHCA Case, the Court held that Plaintiffs' bad-faith/fiduciary-duty theory—i.e, their argument that the Board's alleged misconduct justifies bypassing it—is rooted in a distinct state-law corporate governance dispute involving the Asset Acquisition Agreement, which has no overlap with the anti-tying claims against BPPR and presents an insurmountable jurisdictional hurdle in this federal question case. See Civil No. 24-1569, Docket No. 131 at 12-13. Accordingly, even if Plaintiffs' governance theory were not already twice rejected, and even if the Complaint were not barred by preclusion, the threshold questions it raises cannot and should not be resolved in this federal action. As the Court in the Federal BHCA Case recognized, questions concerning whether the GFC Board members acted in bad faith or exercised their fiduciary duties, and whether a written consent by a majority of the members can override the Board are not federal claims and are "separately maintainable and determinable" without any reference to the facts alleged with regard to the federal causes of action. Civil No. 24-1569, Docket No. 131 at 13 (quoting O'Bannon v. Friedman's, Inc., 437 F.Supp.2d 490, 493 (D. Md. 2006)).

13

Plaintiffs are using this duplicative Complaint to improperly piggyback deficient state-law contract interpretation and corporate governance issues, in an attempt to obtain a third bite at the apple. That is not a legitimate litigation purpose. It is further evidence of harassment and a needless waste of judicial and party resources.

**C. The Claims Are Objectively Frivolous as a Matter of Law**

The alleged RICO predicate acts in the Complaint are breach of contract claims in RICO clothing. The core of this Complaint—as well as the prior cases—is a commercial and governance dispute. Plaintiffs contend that BPPR failed to honor certain loan commitments or improperly exercised its loan remedies in ways Plaintiffs disagree with, and that GFC's Board of Managers took actions with respect to GFC and BGF adverse to Plaintiffs' interests. These are, at best, breach of contract and breach of fiduciary duty allegations. They are not crimes or predicate acts, nor do they give rise to any plausible federal claim. Ordinary commercial disputes, even if they involve alleged dishonest conduct, do not give rise to civil RICO claims. See Efron v. Embassy Suites (P.R.), Inc., 223 F.3d 12, 20-21 (1st Cir. 2000). The fact that Plaintiffs simultaneously characterize the same conduct as breaches of various agreements and as RICO predicate acts highlights the insurmountable problem: Plaintiffs cannot have it both ways, and the overlap of their contractual allegations with their RICO predicate allegations confirms that this is a commercial dispute cloaked in racketeering language—precisely what civil RICO is not designed to address.

Even if preclusion were inapplicable, Boyd and Lassers lack standing to assert RICO or BHCA claims against BPPR based on the loan and transactions at issue in the Complaint, the Original RICO Case and the Federal BHCA Case. To avoid needless repetition and further expenses, the Popular Defendants incorporate by reference the arguments set forth in BPPR's motions to dismiss and standing memoranda in the previous federal cases. See Civil No. 22-1190, Docket No. 652, 782, and 874; Civil No. 24-1569, Docket No. 31, 42, 113, 127, and 131.

14

Moreover, the RICO claims are time-barred. The First Circuit's injury-discovery rule begins the RICO limitations clock when the plaintiff knew or should have known of the injury, not when the last predicate act occurred. Álvarez-Maurás v. Banco Popular of Puerto Rico, 919 F.3d 617, 625-26 (1st Cir. 2019). Plaintiffs were aware of the core facts underlying their RICO claims since at least 2021, when they complained of fraud and mismanagement of the companies, such that any RICO claims are facially time-barred.

**D. The Claims Against Ferrer Are Frivolous and Independently Sanctionable**

The inclusion of Ferrer as an individual defendant is yet another example of Plaintiffs' abusive litigation tactics. The allegations against him are frivolous and serve no purpose other than to harass an individual who acted solely in his corporate capacity.

The Complaint's allegations against Ferrer are confined to actions taken in his successive roles as General Counsel, COO, and ultimately President and CEO of BPPR. The Complaint alleges that Plaintiffs' counsel delivered evidence of fraud to Ferrer in his capacity as BPPR's COO, and that "Ferrer authorized or permitted BPPR to continue lending an additional $5.5 million or more to BGF over the following 13 months." To the extent Ferrer had any power to authorize or detain bank disbursements, that authority was institutional, not personal; he could exercise it only by virtue of the authority BPPR vested in him as an officer of the bank. Because every act pleaded against Ferrer was performed through his official corporate authority, liability for that conduct runs to BPPR, not to Ferrer individually. Naming Ferrer as individual defendant when the Complaint itself demonstrates that he acted exclusively in his corporate capacity is gratuitous and harassing. See McCarthy, 22 F.3d at 359 (1st Cir. 1994) (An official capacity suit is, in essence, another way of pleading an action against an entity of which an officer is an agent. Consequently, such a suit is, in all respects other than name, to be treated as a suit against the entity.") (internal

15

quotation marks and citations omitted). In any event, there can be no question of Ferrer's privity with BPPR for purposes of preclusion.

Moreover, the claims against Ferrer are independently barred by the four-year statute of limitations applicable to civil RICO actions. Plaintiffs filed a substantially similar complaint in Civil No. 22-1190 in April 2022 without naming Ferrer as a defendant, notwithstanding that the same base allegations concerning his conduct were known to Plaintiffs at that time. To the extent the claims against him are premised on the November 11, 2021 delivery of fraud evidence by Plaintiffs' own counsel, those claims are time-barred. Plaintiffs cannot circumvent the limitations period by the simple expedient of adding long-known defendants to a new complaint years after the relevant conduct occurred and years after the original action was filed.

Finally, the claims against Ferrer suffer from the same pleading deficiencies that pervade the Complaint as a whole, including Plaintiffs' lack of standing, the failure to allege the predicate acts with the particularity required by Rule 9(b), and the failure to plead the elements of the predicate offenses and RICO violations. The addition of Ferrer as an individual defendant does not cure any of the fundamental defects in Plaintiffs' claims against BPPR; it merely multiplies the burden of defense and confirms the harassing and vexatious nature of this litigation.

**E. The Frivolous and Inflammatory Allegations Against PMA Are Sanctionable**

The Complaint purports to attribute to PMA and its attorneys participation in a scheme that Plaintiffs characterize, in inflammatory terms, as the "PMA-BPPR racketeering enterprise."[8] The inclusion of a represented party's litigation counsel and law firm as named participants in, or architects of, an alleged "racketeering enterprise," without a scintilla of factual or legal basis, is not zealous advocacy. It is an abuse of the litigation process. Counsel has a professional and ethical

---

[8] This label is not only inflammatory and baseless, but also internally contradictory. It furthers the showing that the reasonable pre-filing inquiry fell far short of what Rule 11 demands.

obligation, codified in Rule 11(b), to ensure that every factual contention in a pleading has, or upon a reasonable inquiry is likely to have, evidentiary support, and that legal contentions are warranted by existing law. The gratuitous naming of opposing counsel and their firm as participants in a civil RICO enterprise, labeling them in effect as racketeers, even if they are not named as defendants, does not meet that standard by any objective measure.

This conduct is sanctionable on its own terms and is precisely what Rule 11 is designed to deter. It also implicates a broader breach of the professional responsibility obligations of Plaintiffs' counsel. ABA Model Rule of Professional Conduct 3.1 prohibits a lawyer from bringing or asserting a claim unless there is a non-frivolous basis in law and fact for doing so. Similarly, ABA Model Rule 4.4 requires that lawyers respect the rights of third persons, including opposing counsel, and prohibits the use of means that have no substantial purpose other than to embarrass, delay, or burden a third person. The inclusion of PMA and its attorneys in the allegations of the RICO enterprise, without any cognizable legal theory or factual foundation supporting their individual liability, violates both of these principles.

**F. Sanctions Are Appropriate Under Rule 11**

Rule 11 authorizes a wide range of sanctions designed primarily to deter future misconduct and, where appropriate, to compensate parties who have been forced to respond to frivolous pleadings. See Fed. R. Civ. P. 11(c)(4); ACA Computer, 608 F. Supp. 3d at 2-3 (explaining that Rule 11 sanctions serve the twin purposes of deterrence and compensation); Anderson v. Beatrice Foods Co., 900 F.2d 388, 394-395 (1st Cir. 1990). The sanctions imposed in the decisions handed down by the First Circuit or district courts therein have been mainly monetary. See, *e.g.*, In re Ames, 993 F.3d at 37-39 (affirming monetary sanctions arising from counsel's frivolous repleading of claims); Nyer, 290 F.3d at 459-63 (affirming award of attorneys' fees under Rule 11 against counsel who advanced baseless unfair-settlement-practice claim); Montoyo-Rivera, 245 F.

17

Supp. 3d at 346-48 (imposing monetary sanctions for filing a duplicative complaint for improper purposes).

The pattern of conduct by Plaintiffs and their counsel compels the conclusion that this Complaint was filed precisely for the improper purposes contemplated by Rule 11(b)(1)—to harass, cause unnecessary delay, and needlessly increase the cost of litigation. Plaintiffs filed this Complaint not based on new facts, new law, or new theories that have any prospect of success, but because they have continuously received unfavorable court rulings and refuse to accept that result. The inflammatory language used against BPPR and its related professionals, and even undersigned counsel and their law firm, serves no legitimate litigation purpose. Its sole function is to harass BPPR and the individually named defendants, to inflate the cost of defense, and to cast unwarranted reputational shadows as a pressure tactic.

Here, a sanction that both compensates the Popular Defendants for the needless expenses incurred in responding to this frivolous Complaint and deters Plaintiffs and their counsel from similar conduct in the future is warranted. Therefore, the Popular Defendants respectfully request that the Court: (1) order Plaintiffs and their counsel, jointly and severally, to reimburse the Popular Defendants for the attorneys' fees and costs incurred in analyzing and responding to the Complaint, including the preparation of this Motion; (2) dismiss the Complaint; and (3) consider such additional non-monetary sanctions as the Court deems appropriate.

**WHEREFORE**, Defendants respectfully request the Court to GRANT this <u>Motion</u> and dismiss the Complaint, and impose sanctions on Plaintiffs consisting of (i) reimbursement to the Popular Defendants for the attorneys' fees and costs incurred in analyzing and responding to the Complaint, including the preparation of this Motion, which the Popular Defendants will itemize through a motion to be filed within 10 days after entry of Judgment dismissing the Complaint; and (ii) any additional non-monetary sanctions as the Court deems appropriate.

18

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, on June 30, 2026.

**IT IS HEREBY CERTIFIED** that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

**PIETRANTONI MÉNDEZ & ÁLVAREZ LLC**
Popular Center, 19th Floor
208 Ponce de León Ave.
San Juan, Puerto Rico, 00918
Tel: (787) 274-1212
Fax: (787) 274-1470


s/ MARÍA DOLORES TRELLES HERNÁNDEZ
María Dolores Trelles Hernández
USDC-PR Bar No. 225106
mtrelles@pmalaw.com

s/ MARÍA ELENA MARTÍNEZ CASADO
María Elena Martínez Casado
USDC-PR Bar No. 305309
mmartinez@pmalaw.com

| EXHIBIT | DOCUMENT | DOCUMENT DATE | ORIGINAL DOCKET NO. |
|---|---|---|---|
| **Composite Exhibit 1 (Various Dockets from Civil No. 22-1190, Original RICO Case)** | | | |
| **1A** | Second Amended Complaint | January 31, 2023 | 147 |
| **1B** | Memorandum and Order | August 12, 2025 | 800 |
| **1C** | Proposed Third Amended Complaint | January 20, 2026 | 831-1 |
| **1D** | Order denying leave to file Third Amended Complaint | January 21, 2026 | 847 |
| **1E** | Opinion and Order granting Motions to Dismiss | March 18, 2026 | 874 |
| **1F** | Judgment | March 18, 2026 | 876 |
| **Composite Exhibit 2 (Various Dockets from State Court Action)** | | | |
| **2A** | Boyd's Counterclaim | December 7, 2024 | |
| **2B** | Partial Judgment and Resolution | July 15, 2025 | |
| **2C** | Partial Summary Judgment | December 27, 2024 | |
| **Composite Exhibit 3 (Various Dockets from Civil No. 24-1569, Federal BHCA Case)** | | | |
| **3A** | Second Amended Complaint | July 2, 2025 | 57 |
| **3B** | Minutes of Conference before Judge Pedro A. Delgado | August 15, 2025 | 101 |
| **3C** | BGF's and GFC's Notice of Voluntary Dismissal with Prejudice | July 11, 2025 | 63 |
| **3D** | Opinion and Order Dismissing Case | December 22, 2025 | 131 |
| **3E** | Judgment | December 22, 2025 | 133 |
| **Exhibit 4** | | | |
| **4** | Popular Defendants' Rule 11 Letter and Draft Motion | April 16, 2026 | |