**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| GREGORY S. BOYD and JONATHAN LASSERS,<br>Plaintiffs,<br>v.<br>BANCO POPULAR DE PUERTO RICO,<br>et al.,<br>Defendants. | CIVIL NO. 3:26-cv-01066 (MAJ-MBA)<br><br>RE: RICO |

**PLAINTIFFS' OPPOSITION INSTANTER TO BANCO POPULAR DE PUERTO RICO**
**AND**
**JAVIER FERRER'S MOTION FOR RULE 11 SANCTIONS**
**(ECF NO. 108)**

TO THE HONORABLE COURT:

COME NOW Gregory Boyd and Jonathan Lassers on their own behalf and derivatively

on behalf of GFC Holdings, LLC and Biomass Green Fuels, LLC (the "Companies"), and EFB,

LLC, and very respectfully state and pray:

**I. INTRODUCTION**

Rule 11 is a narrow tool. It imposes sanctions for filing a document no reasonable lawyer

would file; it does not punish a party for pleading hard facts, taking an appeal, or losing an

argument. The Motion asks this Court to do the opposite: to decide contested merits questions—

preclusion, standing, and whether a documented racketeering scheme is "really" a contract

dispute—by relabeling such decisions sanctions.

The Court need not reach any of that, because a threshold defect ends the matter: the

Motion Banco Popular filed on June 30, 2026 differs from  the safe harbor letter it sent on April

16, 2026. That breaks Banco Popular's own safe harbor, and the Court may deny the Motion on

that ground alone. Moreover the Motion it never identifies, with particularity, which specific

contention was frivolous when made.

On the merits, the Motion is the fourth iteration of a single script, advanced by aligned parties across two courts—not by four independent voices. Repetition by aligned, conflicted interests is coordination, not corroboration. And every remaining ground it presses—preclusion, authority to sue for the Companies, Boyd's standing, the "contract dispute" label, Mr. Ferrer's role, and the allegations concerning the PMA firm—is a Rule 12 question decided on the face of the Complaint, not a basis for sanctions. The Motion should be denied.

## II. THE RULE 11 MOTION FAILS AT THE THRESHOLD

A. The Motion Filed Is Not the Motion Served—the Safe Harbor Was Never Satisfied.

Rule 11 makes a simple deal: before asking the Court to punish an opponent, the movant must serve the very motion it intends to file and wait twenty-one days; if the challenged paper is withdrawn or corrected in that window, the motion may not be filed. Fed. R. Civ. P. 11(c)(2). These steps are "mandatory rather than suggested," and "informal notice isnot a substitute" for serving the actual motion. *Triantos v. Guaetta & Benson, LLC*, 91 F.4th 556, 561, 564 (1st Cir. 2024). A movant may not send a letter warning of sanctions,  wait out the safe harbor, and file a materially different, strengthened one built on later events.

Banco Popular attached its April 16 served draft as Exhibit 4 to the filed Motion, and the comparison is dispositive. The filed Motion rests in part on material that did not exist when the safe harbor ran—including a June 17, 2026 appellate ruling—so Plaintiffs could not have withdrawn or corrected the challenged paper in response to it. The filed version also runs roughly 460 words longer than the served draft and bears a June 30, 2026 signature block prepared for a May 2026 filing. Side by side, they are not the same paper:

| April 16 served draft (Ex. 4, ECF No. 108-15) | June 30 filed Motion (ECF No. 108) | Why it matters |
|---|---|---|
| States the Commonwealth partial judgment was pending "before the intermediate appellate court." | Adds that the court "affirmed it on June 17, 2026," and uses that ruling | A fact that did not exist when the safe harbor began; Plaintiffs had no 21-day window to consider it. |

| | to argue the case is "already decided." | |
|---|---|---|
| Cites the Federal BHCA dismissal as "Docket Nos. 133 and 63." | Changes the citation to "Docket No. 131 and Docket No. 133." | The record citations the filed motion rests on were altered after service. |
| Does not cite the additional *Alvarez-Mauras* authority in the same place. | Adds an *Alvarez-Mauras* citation to bolster the limitations theme. | New legal argument added after the safe harbor ran. |

Because the motion sent and the motion filed must be the same Motion, the safe harbor was never satisfied, and the Court may deny the Motion under Rule 11(c)(2) without reaching the merits. *Triantos*, 91 F.4th at 561, 564. Banco Popular's own docket conduct underscores the point: one day after filing, it moved to restrict public access to Exhibit 4—the very exhibit showing the served and filed papers differ. (ECF No. 110.)

B. The Motion Fails to Identify Specific Sanctionable Conduct.

A sanctions motion "must describe the specific conduct that allegedly violates Rule 11(b)," Fed. R. Civ. P. 11(c)(2), and explain why that conduct was baseless when it occurred. The Motion does neither. It brands an entire 269-page civil RICO Complaint "frivolous" and, rather than isolate any specific allegation, incorporates by reference whole standing briefs from the earlier cases. Mot. at 14. Wholesale incorporation of prior merits briefing is not the particularized showing Rule 11 demands, and it leaves Plaintiffs without notice of the precise conduct they must defend.

## III. THE MOTION REPEATS MISSTATEMENTS ALREADY MADE— COORDINATION, NOT CORROBORATION

The Motion's central assertions are not unique to Banco Popular and its president. The VRM-Penzini / Humacao RNG defendants advanced them on March 24, 2026, in the Puerto Rico Court of Appeals. Attorney Roberto Abesada—Banco Popular's own long-time lawyer— repeated them on April 28, 2026, while purporting to speak for the Plaintiff Companies (ECF

No. 49). VRM repeated them in its May 21, 2026 Rule 11 motion (ECF No. 68). Banco Popular now repeats them a fourth time (ECF No. 108).

The Motion invites the Court to treat that recurrence as proof. Repetition carries weight only when the voices are independent. Here they are not. The January 31, 2025 Asset Acquisition Agreement releases Banco Popular, § 3.6(c); the VRM-Penzini and Humacao RNG entities are parties to that transaction and hold the vehicle that acquired the Companies' assets; and Attorney Abesada appears for the Plaintiff Companies while representing the Bank, as the public dockets reflect. A lawyer owes each client undivided loyalty and may not permit loyalty to another to color the representation. *Fiandaca v. Cunningham*, 827 F.2d 825, 829–30 (1st Cir. 1987); *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir. 1984) (court's authority over conflicts of counsel appearing before it).

The convergence is specific. Seven statements recur across these filings and three forums—the Puerto Rico Court of Appeals, this Court, and the First Circuit. They include the assertion that the prior rulings "already decided" this case, the assertion that Plaintiffs cannot speak for the Companies, and the "business dispute in RICO clothing" label. The first is answered by the appeals still pending; the second by the fact that the prior orders construed one Written Consent and never reached the June 2, 2025 Irrevocable Proxy (Section VIII); the third is a Rule 12 argument, not a Rule 11 ground (Section IX). All seven statements, the forum and date of each, and the record showing why each is false are catalogued in Exhibit A to this Opposition.

Plaintiffs do not ask the Court to act on that pattern today. They identify it because it is the opposite of the frivolousness the Motion projects onto them. See Section XII (reservation of rights).

**IV. THE RULE 11 STANDARD, AND WHY BANCO POPULAR'S CASES DO NOT FIT**

Rule 11 is measured by an "objective standard of reasonableness," judged as of the day the party filed the document in question. *Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir. 1990). Its central purpose "is to deter baseless filings," and it must not be applied so as to chill vigorous advocacy. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "The mere fact that a claim ultimately proves unavailing, without more, cannot support the imposition of Rule 11 sanctions." *Protective Life Ins. Co. v. Dignity Viatical Settlement Partners, L.P.*, 171 F.3d 52, 58 (1st Cir. 1999)(Citations omitted.). A Rule 11 motion is itself subject to Rule 11: in *Protective Life* the First Circuit reversed a sanctions award because the district court had "wedded its sanctions order to a series of clearly erroneous factual findings." Id. at 57–58. Sanctions lie "for advocating a frivolous position, pursuing an unfounded claim, or filing a lawsuit for some improper purpose," *CQ Int'l Co. v. Rochem Int'l, Inc.*, 659 F.3d 53, 60 (1st Cir. 2011), because, in virtually every case, an appellate court finds one party's arguments unpersuasive, but that is not remotely sufficient to making the losing party's conduct sanctionable." *citing Additive Controls and Measurements Systems, Inc. v Flowdata,* 96 F.3d 1390, 1398 (Fed.App. 1996). . Banco Popular's own authority holds that the signer must "at the very least, be culpably careless" to violate Rule 11(b). *Young v. City of Providence*, 404 F.3d 33, 39 (1st Cir. 2005) (cited in the Motion)—a showing it never attempts to make. Section III catalogues the record-defeating assertions on which this Motion is built.

Banco Popular's cases do not fit this record. This is not *In re Ames*, 993 F.3d 27 (1st Cir. 2021), where counsel repleaded the same deficient claims after explicit judicial warnings, adding nothing new. Here, the court in 22-1190 denied the motion to amend in that  case as untimely, not as futile. It is not *Nyer v. Winterthur Int'l*, 290 F.3d 456 (1st Cir. 2002), where a claim had no

basis in governing law. And it is not *Montoyo-Rivera v. Pall Life Sciences PR, LLC*, 245 F. Supp. 3d 337 (D.P.R. 2017), where a duplicative complaint was filed, for an improper purpose, while the identical action was still pending. Here, Plaintiffs pleaded an 2025 asset transfer, a later loan assignment, a later irrevocable proxy, later captured-counsel conduct, and parties the earlier cases never adjudicated that occurred after the operative complaint in the original RICO case.

## V. PLAINTIFFS CONDUCTED A REASONABLE PRE-FILING INQUIRY

Rule 11(b) requires an inquiry reasonable under the circumstances; it does not require certainty of success. Before filing, Plaintiffs and their counsel reviewed a documented record including *inter alia*: the September 15, 2020 Credit Agreement and its amendments; the drawdown certificates and the Administrative Agent's contractual duty to verify them; the closing flow-of-funds; the January 31, 2025 Asset Acquisition Agreement and its release of Banco Popular; the June 2, 2025 Irrevocable Proxy and the Majority-Member Resolutions; the offtake agreement and its carbon-credit pricing; and the dockets, orders, and judgments in the related actions. Those materials supply a non-frivolous factual and legal basis for each claim pleaded.

## VI. THE COMPLAINT WAS NOT FRIVOLOUS WHEN IT WAS FILED, AND IT IS NOT FRIVOLOUS NOW.

Because Rule 11 is judged as of the day the paper was filed, the calendar is dispositive. Plaintiffs filed the Complaint on February 7, 2026. The March 18, 2026 opinion the Motion leans on most did not yet exist; neither did the June 17, 2026 appellate ruling Banco Popular added to its arguments in its filed Motion. "Imminent" is not a judgment: a Rule 11 "violation . . . is complete when the paper is filed." *Cooter & Gell*, 496 U.S. at 395 (internal quotation marks and

citation omitted). Later rulings may bear on the merits; they cannot prove that an earlier complaint was sanctionable the day it was signed.

Banco Popular's own conduct refutes the "frivolous" label; parties do not pour resources into defeating claims they believe are baseless. It arranged for Attorney Abesada—its lawyer in dozens of matters—to appear for the very Companies whose only remaining assets are their claims against the Bank and its insiders, and to use that appearance to seek dismissal of those claims and sanctions. To defend the related anti-tying case it retained Sullivan & Cromwell LLP, among the world's most expensive law firms: three partners entered that case in February 2025, *Boyd v. Banco Popular de P.R.*, No. 3:24-cv-01569-PAD (D.P.R.) (ECF Nos. 16–18, 22, 26–28)—the same month Banco Popular announced that Ignacio Álvarez, the CEO who signed the offtake agreement at the center of the anti-tying dispute, would retire and that Javier D. Ferrer—a movant here—would succeed him. See Popular, Inc., Press Release (Feb. 27, 2025). The engagement continues on appeal, led by Richard C. Pepperman II, Managing Partner of the firm's litigation practice and counsel to BP in the Deepwater Horizon litigation. See No. 26-1357 (1st Cir.). A bank does not deploy resources at that level, or position  its own longtime counsel to represent two of  its adversaries, to defeat baseless claims. These lengths are evidence the claims are substantial.

## VII. PRECLUSION IS A MERITS QUESTION, NOT A SANCTIONS GROUND

A.  The prior rulings did not decide this case on the merits.

The March 18, 2026 order in Civil No. 22-1190 (ECF No. 874) dismissed the declaratory-judgment claim for want of an Article III controversy and the RICO claims for lack of statutory standing under 18 U.S.C. § 1964(c)—the injuries pleaded were held derivative rather than direct—while reciting that the allegations were "accepted as true solely for purposes of resolving

the Motions to Dismiss." The December 22, 2025 order in Civil No. 24-1569 (ECF No. 131) dismissed Boyd's and Lassers' BHCA claims for lack of Article III standing, taking the well-pleaded facts as true and without specifying prejudice. A standing dismissal is jurisdictional, not a merits ruling: it "normally operates without prejudice," and courts "routinely apply this principle to dismissals for lack of Article III standing." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 736 (1st Cir. 2016). Neither order adjudicated whether the pleaded enterprise existed, whether the January 31, 2025 Asset Acquisition Agreement was valid, whether the June 2, 2025 Irrevocable Proxy changed the governance record, or whether the later conduct of Mr. Ferrer and the PMA firm supports liability. Both rulings are on appeal (Nos. 26-1357, 26-1424). At a minimum, preclusion is non-frivolously disputed, and it belongs in a Rule 12 motion, not a Rule 11 motion.

      B.  Mr. Ferrer was never a party to the prior cases.

A judgment "resolves issues as among" the parties, "but it does not conclude the rights of strangers to those proceedings." *Martin v. Wilks*, 490 U.S. 755, 761–62 (1989), superseded by statute on other grounds. The Supreme Court has confined nonparty preclusion to six narrow categories, *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008), and the Motion analyzes none of them.

      C.  Issue preclusion reaches only the precise issue actually decided—and that issue is not presented here.

A jurisdictional dismissal "precludes relitigation of the issues determined in ruling on the jurisdictional question," *Muñiz Cortés v. Intermedics, Inc.*, 229 F.3d 12, 14 (1st Cir. 2000)—and no more. Binding law likewise holds that such a dismissal "should not bar a subsequent suit in which the defect has been cured." *In re Sonus Networks, Inc.*, 499 F.3d 47, 61 (1st Cir. 2007) (a Rule 23.1 demand dismissal; citing *Costello v. United States*, 365 U.S. 265, 285–88 (1961));

accord *Lebrón-Ríos v. U.S. Marshal Serv.*, 341 F.3d 7, 13 (1st Cir. 2003). In the instant case, Plaintiffs cured the lack of sworn  Claim preclusion generally "does not bar claims that are predicated on events that postdate the filing of the initial complaint." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 414 (2020)(citation omitted.); *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327–28 (1955) (a prior judgment "cannot be given the effect of extinguishing claims which did not even then exist…").

The prior orders decided the effect of one Written Consent, on the record as it then stood. This Complaint presents what was never decided: the June 2, 2025 Irrevocable Proxy (see Section VIII), predicate acts and injuries arising after January 31, 2023—the date of the operative complaint in Civil No. 22-1190 (Mot. Ex. 1A)—and Boyd's direct guaranty injuries. Banco Popular's own authorities confirm the line: *Nichols v. Cadle Co.*, 101 F.3d 1448 (1st Cir. 1996), addresses Rule 54(b) improvidently granted and its effect on appealability, not preclusion; and its lead standing-preclusion case is an unpublished, non-precedential order against a pro se plaintiff who refiled the identical claim, on identical facts, against the identical defendant fourteen years later. *Strahan v. Mass. Port Auth.*, No. 22-1261, 2023 WL 10947175, at *1 (1st Cir. Dec. 11, 2023) (unpublished). Nothing was cured there; everything material is new here.

D.  The Companies' voluntary dismissal cannot supply preclusion.

The Motion treats the July 11, 2025 notice of voluntary dismissal of BGF's and GFC's claims as it were a "final Judgment." Mot. at 15. That notice was filed for the Companies by Attorney Abesada—the same Banco Popular-conflicted counsel whose authority Plaintiffs contested then and contest now. Plaintiffs moved to withdraw it; the order denying that motion, Docket 131 is itself on appeal. No. 26-1357. Whether a dismissal procured by allegedly

conflicted counsel binds the Companies is a contested merits question at the center of this case—not a Rule 11 ground for sanctions.

## VIII. PLAINTIFFS' AUTHORITY TO ACT FOR THE COMPANIES, AND BOYD'S DIRECT STANDING, ARE VALID

The Motion treats the question of who speaks for GFC and Biomass as settled forever. It is not. The prior orders decided only a narrow question—whether one particular Written Consent authorized counsel to appear for the Companies. Docket 131 at 14. That order issued before Plaintiffs learned that Attorney Abesada simultaneously represented Banco Popular, the Companies' adversary. The record confirms the point: neither dismissal order mentions the Proxy or 31 L.P.R.A. § 6291; the August 12, 2025 order, Docket 800, construed only the Written Consent; Plaintiffs' motion for reconsideration, Docket 806, which squarely raised the Board's fiduciary breaches, was never addressed—it was swept into a blanket order mooting "all pending motions" the day the case was dismissed, Docket 875; and the Notice of Appeal expressly designates the ECF No. 800 order. Docket 877. An issue never reached below, and now before the First Circuit, is not settled.[1]

The record validates Plaintiffs' position. The June 2, 2025 Irrevocable Proxy appoints Boyd and Lassers as López Vidal's sole and exclusive proxies for specified GFC voting matters—an irrevocable power recognized under Puerto Rico's 2020 Civil Code, 31 L.P.R.A. § 6291 ("Poder irrevocable")—and no court has ever adjudicated it. The June 13, 2025 Majority-Member Resolution, adopted by members holding 55.468% of the voting units, required Attorney Abesada to withdraw from Civil No. 22-1190, engaged present counsel, and appointed Mr. Lassers as Authorized Signatory; the July 3, 2025 resolution did the same for specified

---

[1] The raise it or waive it doctrine does not apply to an attorney's conflict of interest. *Pueblo of Santa Rosa v. Fall*, 273 U.S. 315, 319 (1927).

Commonwealth cases. A live governance dispute, litigated on a record no court has yet resolved, is not bad faith.

Boyd does not need the Companies to sue at all. He has his own direct injuries—his personal guaranty and the Asset Acquisition Agreement that stripped the collateral behind that guaranty. Economic losses of that kind are injuries to "business or property" under 18 U.S.C. § 1964(c), and the Supreme Court held in 2025 that such losses are recoverable even when they result from a personal injury. *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593 (2025). A fortiori, Boyd's purely economic losses qualify. That confirms his direct-injury theory is warranted by existing law—which is all Rule 11 requires.

## IX. "A CONTRACT DISPUTE IN RICO CLOTHING" IS A RULE 12 ARGUMENT, NOT A RULE 11 GROUND FOR SANCTION

Banco Popular argues that this is really a commercial dispute dressed up as RICO. Mot. at 14. That is a motion-to-dismiss argument, decided on the face of the Complaint; it is not a Rule 11 finding. The Complaint does not allege a mere unpaid loan. It alleges concealed conflicts, fraudulent financing representations, misuse of confidential information, asset stripping, releases of Banco Popular, assignment of the loan to an allegedly ineligible affiliate, and coordinated false court filings. Civil RICO commonly runs through contracts, closings, and wires—that is how fraud is carried out—and "RICO is to be read broadly." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497–98 (1985). An association-in-fact enterprise "must have a structure" but need not be formal or rigid. *Boyle v. United States*, 556 U.S. 938, 945–46 (2009). *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 20–21 (1st Cir. 2000), affirmed dismissal only because a single, finite scheme lacked a continuing "pattern"; it did not hold that a bank, its insiders, and their lawyers can never form an enterprise, or that pleading such a theory on documents is sanctionable.

## X. THE CLAIMS AGAINST MR. FERRER ARE NOT SANCTIONABLE

The Motion argues Mr. Ferrer can never be individually liable because he acted as a Banco Popular officer. Mot. at 15–16. That is not RICO law. A corporate employee is a "person" distinct from the corporation, *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001), and a person who takes part in operating or managing an enterprise's affairs through a pattern of racketeering is liable—a rule that reaches "not just . . . upper management but also . . . lower rung participants." *Reves v. Ernst & Young*, 507 U.S. 170, 184–85 (1993); 18 U.S.C. § 1962(c). Corporate office is not immunity.

Nor is Mr. Ferrer peripheral. Banco Popular concedes that Plaintiffs' counsel delivered evidence of fraud to Mr. Ferrer, and lending continued. Mot. at 15. The Complaint alleges that on November 11, 2021 he received verbal and written reports that loan draws were being misused and construction certifications were false; that the next day the Bank funded another draw of $677,094.76; and that on December 6, 2021 counsel wrote him again detailing drawdown-certificate fraud. Compl. ¶¶ 405–460 & Exs. 9–10, 19. Whether he is individually liable is a merits question for discovery and trial, not a Rule 11 ground for sanctions.

The limitations argument is likewise a merits defense, not a Rule 11 ground. The claim against Mr. Ferrer is not limited to the November 2021 fraud notice: the Complaint alleges continuing injury and continuing conduct within the limitations period—continued disbursements, the July 26, 2022 Third Amendment, and the 2024–2025 loan-enforcement and asset-transfer sequence culminating in the January 31, 2025 Asset Acquisition Agreement. Civil RICO limitations runs from discovery of the injury, not of the pattern. *Rotella v. Wood*, 528 U.S. 549, 554–55 (2000). Accrual and separate-injury questions belong to Rule 12(b)(6), Rule 9(b), and summary judgment—not sanctions.

## XI. THE ALLEGATIONS CONCERNING THE PMA FIRM ARE FACTUAL ENTERPRISE ALLEGATIONS, NOT SANCTIONABLE INSULTS

Plaintiffs did not sue PMA for being counsel in this case; they pleaded PMA's alleged pre-suit and transactional role and a documented revolving-door relationship: two PMA founding partners—Ignacio Álvarez and Javier Ferrer—became successive Chief Legal Officers and then Presidents and Chief Executive Officers of Popular, as Popular's own public disclosures state. See Popular, Inc., Leadership Team. Those are public-record relationship facts, not insults. RICO does not require that every enterprise participant be named as a defendant; a complaint may describe the conduct of non-defendant participants, insiders, and counsel where it explains the enterprise. *Reves*, 507 U.S. at 184–85. Whether the inference holds is for Rule 12 and discovery, not for sanctions.

## XII. THE RELIEF BANCO POPULAR SEEKS IS IMPROPER

The relief confirms the Motion's purpose. Banco Popular asks the Court to dismiss the Complaint and shift fees as a Rule 11 sanction. Mot. at 18. But Rule 11 authorizes fees only as a deterrence-limited sanction: any sanction "must be limited to what suffices to deter repetition of the conduct," and a fee award may reach only fees "directly resulting from the violation." Fed. R. Civ. P. 11(c)(4), (c)(2). Dismissal of an entire action as a sanction is among the most drastic remedies available and is no substitute for adjudication under Rule 12. Banco Popular never explains why dismissing a 269-page civil RICO complaint is the least severe sanction sufficient to deter anything.

## XIII. CONCLUSION

This Court should deny the Motion. It sinks its own safe harbor; it identifies no specific sanctionable contention; nothing was frivolous on the day the Complaint was filed; the prior

dismissals were standing rulings that never reached the later conduct pleaded here; Mr. Ferrer was never a party to the earlier cases; the RICO, officer-liability, and law-firm points are Rule 12 questions; and the repetition the Motion relies on is coordination, not corroboration. Any one ground is sufficient.

WHEREFORE, Plaintiffs respectfully request that the Court (a) DENY the Motion (ECF No. 108) in its entirety, including as procedurally barred under Rule 11(c)(2), because the motion filed is not the motion served and (b) grant such other and further relief as is just.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 23rd  day of July 2026.

Counsel for Plaintiffs Gregory S. Boyd and Jonathan Lassers
/s/ Jane A. Becker Whitaker
**JANE A. BECKER WHITAKER**
Law Offices of Jane Becker Whitaker
1st Cir. Bar No. 35763 / USDC-PR No. 205110 / RUA 9352
VIG Tower, 1225 Ave. Ponce de León, Suite 1102, San Juan, PR 00907
Tel. (787) 585-3824 · jbw@beckervissepo.com

/s/ Luis E. Miñana
**LUIS E. MIÑANA**
Espada, Miñana & Pedrosa Law Offices, P.S.C.
1st Cir. Bar No. 118149 / USDC-PR No. 225608 / RUA 16,297
122 Calle Ing. Manuel Domenech, Altos, Urb. Baldrich, San Juan, PR 00918
Tel. (787) 758-1999 · minanalaw@yahoo.com

<b>CERTIFICATE OF SERVICE</b>

I HEREBY CERTIFY that on this date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

/s/ Jane A. Becker Whitaker
**JANE A. BECKER WHITAKER**