**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **GREGORY BOYD et al.,** | CIVIL NO. 26-1066-MAJ-MBA |
| Plaintiffs, | |
| v. | |
| **BANCO POPULAR DE PUERTO RICO et al.,** | |
| Defendants. | |

**BANCO POPULAR DE PUERTO RICO'S AND JAVIER FERRER'S
REPLY IN SUPPORT OF THEIR MOTION FOR SANCTIONS UNDER
FED. R. CIV. P. 11[1]**

**TO THE HONORABLE COURT:**

**COME NOW** Banco Popular de Puerto Rico and Mr. Javier Ferrer (together, the "BPPR Defendants"), through the undersigned counsel, and without submitting to the Court's jurisdiction or waiving any argument or defense, respectfully state and pray as follows:

## I.     INTRODUCTION

The BPPR Defendants' Motion for Sanctions Under Fed. R. Civ. P. 11 (Docket No. 108) (the "Motion for Sanctions") demonstrated that this action—the fourth iteration of the same claims by the same parties—was filed without a good-faith basis in law or fact and for an improper purpose. Plaintiffs' belated Opposition Instanter to the Motion for Sanctions (Docket No. 120) (the "Opposition" or "Opp.")[2] does not disturb that showing. It raises procedural objections to the safe-harbor process that are belied by the record, repackages already-rejected legal theories, and

---

[1] Appearing Defendants previously requested that the Court grant them leave to file this reply. See Docket No. 124. This filing is subject to the Court granting the requested leave.

[2] As noted at Docket No. 124, the Opp. was filed after the deadline and without any attempt by Plaintiffs to file a timely request for extension. Hence, it should be stricken from the record.

purports to invoke Rule 12 as a shield against sanctions. None of these arguments withstands scrutiny. As set forth below, the Opposition confirms that this Complaint was objectively unreasonable when filed and that sanctions are warranted.

## II.    DISCUSSION

### A.    Rule 11's safe harbor was satisfied.

Plaintiffs argue that the filed Motion for Sanctions "differs" from the April 16, 2026 draft served during the safe-harbor period and that this alone defeats compliance with Rule 11(c)(2). Opp. at 2-3. This argument is unavailing. The purpose of Rule 11(c)(2)'s safe-harbor provision is to give the accused party notice of the specific conduct alleged to be sanctionable and a meaningful opportunity to withdraw or correct it. See Nyer v. Winterthur Int'l, 290 F.3d 456, 460 (1st Cir. 2002). The rule does not prohibit a movant from updating record citations, legal research, or procedural developments for accuracy before filing. Plaintiffs cite no authority for the proposition that any difference between the served and filed versions voids the safe harbor.

Plaintiffs' own chart confirms that the differences are limited to (1) a footnote update noting that a Commonwealth of Puerto Rico appellate court affirmed a partial summary judgment that was still pending as of the safe-harbor letter, and (2) a docket-number correction for a ruling already correctly identified by case name and content.[3] Neither constitutes a new theory of sanctionable conduct, and neither altered the substance of what Plaintiffs were told to withdraw: the 269-page Complaint that the BPPR Defendants' April 16, 2026 letter already identified as barred by preclusion, duplicative, and premised on legal theories twice rejected, which is the same description used in the filed Motion for Sanctions. A served draft motion satisfies Rule 11(c)(2)

---

[3] Plaintiffs also contend, incorrectly, that a citation to Álvarez-Maurás v. Banco Popular de Puerto Rico, 919 F.3d 617 (1st Cir. 2019), was added to "bolster the limitations defense." Opp. at 3. This case was cited in the draft Rule 11 motion at Dkt. 108-15 at 29 and 32.

even where the filed version is later adapted to address intervening developments, so long as the gist of the motion and the arguments raised remain largely unchanged. Stefanoni v. L.F.I., Inc., No. 24-CV-12758-PGL, 2025 WL 2500034, at *15 (D. Mass. Mar. 10, 2025). The court in Stefanoni found such an expansion immaterial, reasoning that a fully developed draft motion provided ample notice of the motion's basis and arguments. Id. That is precisely the case here. Plaintiffs cannot demonstrate any prejudice from the additions because none of the edits introduced a previously unknown sanctionable act they needed to address.

The only authority Plaintiffs cite, Triantos v. Guaetta & Benson, LLC, 91 F.4th 556 (1st Cir. 2024), is inapposite. Triantos involved a movant who sent an informal letter rather than the actual draft motion, which is a fundamentally different deficiency from correcting a docket citation and adding a subsequent-event clarification to an already served, fully developed draft. Notably, none of the edits here altered the substance of the Motion, nor does the Motion "rest" on them in any respect, contrary to Plaintiffs' baseless contention.[4]

Plaintiffs separately contend that the Motion fails to describe "the specific sanctionable conduct" and instead improperly incorporates prior briefing by reference. Opp. at 3. This misreads both the Motion and the particularity requirement. Where, as here, the sanctionable conduct is the filing of an entire Complaint for an improper purpose, one that rests on legal theories (including that Plaintiffs can act on behalf of BGF and GFC) that two separate courts have already expressly rejected, identifying the Complaint as a whole, supported by a section-by-section explanation of why its filing and allegations are frivolous, satisfies the notice function of the rule. Plaintiffs plainly had actual notice: they filed a fourteen-page opposition addressing those very grounds.

---

[4] Nor is there anything improper about the BPPR Defendants' subsequent motion to restrict Exhibit 4, which was a routine confidentiality request wholly unrelated to the concealment theory that Plaintiffs advance without any evidentiary support and purely for inflammatory purposes.

Moreover, incorporation by reference of prior briefing that already identified with precision the specific deficiencies in the Complaint provides more than adequate notice of the conduct at issue. The BPPR Defendants were not required to annotate each of over one thousand paragraphs when the theory of the pleading as a whole, and the specific legal defects driving that theory, have been laid out with citations to the record and to controlling authority, and when the Complaint as a whole is the product of a pattern of baseless filings.

**B.** **The convergence of arguments across co-defendants is simply indicative that the frivolousness of Plaintiffs' complaint was evident to more than one party.**

Two independent federal judges, in two separate actions, have each independently rejected the very same standing and governance-control theories that Plaintiffs reassert here. That is one of the key factors outlined in the BPPR Defendants' Motion for Sanctions.

Although not a basis for the Popular Defendants' Motion for Sanctions, it is true that other defendants have sought sanctions and/or outlined the fact that Plaintiffs' claims are barred by preclusion and/or other applicable law. That multiple co-defendants have separately reached the same legal conclusion is hardly surprising; it is the natural consequence of legal deficiencies so manifest that every party and court to examine them has identified them.

Plaintiffs' characterization of this convergence as "coordination, not corroboration" is just another failed attempt at distraction from their frivolous conduct. Opp. at 3-4. The BPPR Defendants' arguments stand on their own. Nor does the validity of a Rule 11 motion depend on who advances it or how many parties do so; it depends on whether the Complaint was objectively reasonable when filed. Plaintiffs' attempt to recast the fact that several parties have noticed the obvious unreasonableness of their action as evidence of scheming should be rejected.

**C.      Preclusion confirms that this action is frivolous and was filed for an improper purpose.**

Plaintiffs' central merits defense is that the dismissals in the Original RICO Case and the Federal BHCA Case[5] were "standing" dismissals that must be treated as non-merits and without prejudice. Opp. at 7-10. This argument ignores a dispositive distinction. A dismissal for lack of Article III standing is jurisdictional and therefore without prejudice. But a dismissal for lack of statutory standing under a particular statute, such as 18 U.S.C. § 1964(c), which is precisely what the Original RICO Case decided, "address[es] the merits of the plaintiff's claims," Foisie v. Worcester Polytechnic Institute, 967 F.3d 27, 44 (1st Cir. 2020), and is "part and parcel of the merits of a particular claim," Vander Luitgaren v. Sun Life Assur. Co. of Canada, 765 F.3d 59, 63 (1st Cir. 2014). The Original RICO Case's own docket confirms this: the Court's Opinion and Order (Docket No. 108-5) analyzed injury and proximate cause under § 1964(c), and the resulting judgment dismissed all federal claims with prejudice—the treatment that attaches to a merits determination, not a jurisdictional one. Plaintiffs' Opposition does not address this statutory-versus-constitutional standing distinction at all.

Plaintiffs' claim that the March 18, 2026 Original RICO Case order and the December 22, 2025 BHCA Case order "did not decide this case on the merits" also ignores that both courts squarely decided, after full briefing, that Plaintiffs' counsel lack authority to act on behalf of GFC and BGF, a governance question analytically distinct from Article III standing, and found that no amendment to the Operating Agreement authorizing such a takeover has ever occurred. Plaintiffs' newly minted "Irrevocable Proxy" does not change that analysis. As the BPPR Defendants explained in the Show Cause Response, the proxy rests on the identical majority-voting-bloc premise (Boyd, Lassers, and López-Vidal) already rejected by two judges. The instrument

---

[5] Capitalized terms have the meaning assigned to them in the BPPR Defendants' Motion for Sanctions.

changed, but the underlying legal defect did not. See Docket No. 62 at 17-18. Moreover, both the "Irrevocable Proxy" and the June 13, 2025 Majority Member Resolution were available to Plaintiffs during the prior proceedings and could have been raised before the dismissals were entered. The failure to timely present those instruments does not create a new, unresolved legal question; it reflects a litigation choice Plaintiffs must live with. Filing a new federal RICO action to collaterally attack a prior dismissal order, while simultaneously pursuing an appeal of that very order through proper channels, is itself an indication of bad faith and is precisely the kind of duplicative, harassing litigation that Rule 11 is designed to deter.

Plaintiffs also argue that the July 2025 voluntary dismissal of BGF's and GFC's BHCA claims cannot supply preclusion because it was filed by allegedly conflicted counsel. But the preclusion here is not based solely on that voluntary dismissal, an alternate ground exists based on the District Court's Opinion and Order in the BHCA Case. Moreover, the voluntary dismissal was approved by the BHCA Case court and operates, under settled First Circuit law, as a final judgment satisfying the res judicata criterion. See United States v. Cunan, 156 F.3d 110, 114 (1st Cir. 1998). Plaintiffs' collateral attack on that dismissal, which is itself the subject of a pending, unresolved appeal, is not a basis to ignore its preclusive effect now.

Notably, Plaintiffs' Opposition does not dispute that Mr. Ferrer was named or referenced in the operative complaints in both prior actions This independently defeats their attempt to treat his inclusion here as somehow escaping preclusion.

**D.      Plaintiffs' timing argument does not excuse a frivolous filing.**

Plaintiffs stress that the Complaint was filed on February 7, 2026, before the March 18, 2026 Original RICO Case opinion and the June 17, 2026 Commonwealth of Puerto Rico appellate ruling that the BPPR Defendants later noted by footnote. Opp. at 6-7. The argument misses the

6

point entirely. Rule 11 asks what a reasonable attorney knew or should have known at the time of filing. By February 7, 2026, the record already made the Complaint's deficiencies plain: the BHCA Case had been dismissed for lack of standing on December 22, 2025; Plaintiffs' counsel's lack of authority to act on behalf of BGF and GFC had been twice adjudicated against them; and the Original RICO Case's motions to dismiss were fully briefed, with dismissal imminent, indeed, ordered before the BPPR Defendants were even served in this action. See Docket No. 108 at 6-10. Plaintiffs' counsel were active litigators in those very proceedings. They knew, or at a minimum should have known, that re-pleading claims premised on legal theories already rejected on a fully developed record, without any legally sufficient basis for distinguishing those rulings, could not satisfy Rule 11(b)'s objective reasonableness standard. The March 18 opinion did not create these defects, it merely confirmed what was already apparent from the related cases' dockets. Plaintiffs' attempt to use the calendar as a shield cannot obscure the fact that every material legal obstacle to this Complaint existed before it was filed.

**E.      Plaintiffs' claims are not insulated from Rule 11 scrutiny merely because they also implicate Rule 12.**

Plaintiffs insist that the characterization of their claims as a contract and governance dispute dressed in RICO language, and the claims against Mr. Ferrer individually, are "Rule 12 questions" immune from Rule 11 scrutiny. Opp. at 11-12. That premise is incorrect. Rule 12 and Rule 11 serve different functions, and a theory can be both legally deficient under Rule 12 and objectively unreasonable to assert under Rule 11(b)(2). That is precisely the case here. Plaintiffs simultaneously plead the same conduct as breaches of the Credit Agreement and its amendments and as RICO predicate acts. That internal inconsistency is not merely a pleading defect to be tested on a motion to dismiss; it signals the absence of any good-faith, non-frivolous basis to invoke civil RICO in the first instance. Controlling First Circuit authority already forecloses treating ordinary

commercial disputes as RICO enterprises. See Efron v. Embassy Suites (P.R.), Inc., 223 F.3d 12, 20-21 (1st Cir. 2000). Plaintiffs plead no basis to distinguish Efron beyond disagreeing with it, which is no basis at all.

The claims against Mr. Ferrer fare no better. Plaintiffs invoke Reves v. Ernst & Young, 507 U.S. 170, 184-85 (1993), for the proposition that "lower rung participants" can be liable under RICO's operation-or-management test and that corporate officers can be individually liable. Opp. at 12. While that can be true as an abstract statement of RICO law, it does not answer the Rule 11 question: whether, on the facts actually pleaded, there was a non-frivolous basis to allege that Mr. Ferrer's receipt of fraud complaints and purported subsequent authorization of continued lending in his institutional capacity constitutes "participation in the operation or management" of a racketeering enterprise, rather than ordinary loan administration. Plaintiffs' Opposition identifies no allegation that Mr. Ferrer personally directed the alleged scheme. Every act attributed to him was performed within the institutional authority that BPPR vested in him, making the claims against him, at their core, claims against BPPR—and rendering his individual inclusion gratuitous. Nor do Plaintiffs meaningfully rebut the statute-of-limitations bar. Mr. Ferrer's alleged November 2021 conduct was known to Plaintiffs and was referenced in the operative pleadings of the original 2022 RICO complaint. Under civil RICO's four-year limitations period and the discovery rule, those claims are time-barred—a deficiency that was apparent before this Complaint was filed and that further confirms the absence of a non-frivolous basis for naming Mr. Ferrer as a defendant.

**F.      The allegations involving the BPPR Defendants' counsel's law firm lack any factual or legal basis.**

Plaintiffs defend their inclusion of PMA in the alleged "PMA-BPPR racketeering enterprise" as a permissible factual allegation of an associational enterprise. Opp. at 13. But labeling a represented party's own counsel as an architect of a racketeering enterprise, on the sole

8

basis of a "revolving door" observation about two individuals' successive corporate roles, is not the kind of particularized factual and legal basis that Rule 11(b) demands. RICO's broad associational-enterprise concept does not identify a single well-pleaded fact showing that the attorneys personally participated in operating or managing it. Plaintiffs' Opposition identifies no such facts. It merely repeats the inflammatory label that the Motion challenged, without adding a single allegation of conduct by any PMA attorney that could satisfy RICO's operation-or-management test. That is not advocacy; it is precisely the kind of baseless, harassing allegation that Rule 11 exists to sanction.

**G.      Plaintiffs' resource-expenditure argument is a non sequitur.**

Plaintiffs contend that the BPPR Defendants' litigation expenditures, including the retention of Sullivan & Cromwell LLP in the related anti-tying case,[6] themselves refute the "frivolous" label, on the theory that a party does not pour resources into defeating claims it believes are baseless. Opp. at 7. This argument is based on sheer speculation, and ultimately borders on the absurd.

The Rule 11 inquiry is objective: it asks whether a reasonable attorney could have believed the claims were warranted by existing law or a non-frivolous argument for its extension, not whether the opposing party chose to mount a vigorous defense. The resources a defendant devotes are irrelevant to whether the plaintiff's claims satisfy Rule 11's objective standard, and Plaintiffs' attempt to convert their adversary's diligence into a merits argument should be rejected.

---

[6] Plaintiffs also speculate, without any reasonable basis, that BPPR also "arranged for" counsel to appear on behalf of Biomass and GFC Holdings. While BPPR rejects the meritless contention, it is ultimately irrelevant. Plaintiffs again seek to confuse the issues by conflating their disqualification request with the Motion for Sanctions. As noted above, however, the Motion for Sanctions does not require inquiry into any of the defendants' conduct or legal representation, but rather whether *plaintiffs* filed an objectively reasonable claim against the moving defendants.

9

### III.    CONCLUSION

Plaintiffs' Opposition does not meet the Motion's central showing: that this is the fourth iteration of the same claims, filed with knowledge that two federal courts had already rejected the standing and governance-control theories on which it depends. Its procedural safe-harbor argument rests on immaterial edits that Plaintiffs cannot show caused any prejudice; its merits arguments recast already adjudicated statutory standing determinations as unreviewable jurisdictional dismissals; and its remaining defenses do not engage the specific deficiencies identified as to Ferrer, PMA, and the breach of contract clothed in RICO language theory. The BPPR Defendants respectfully request that the Court grant the Motion for Sanctions.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 6th day of August 2026.

**IT IS HEREBY CERTIFIED** that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

> **PIETRANTONI MÉNDEZ & ÁLVAREZ LLC**
> Popular Center, 19th Floor
> 208 Ponce de León Ave.
> San Juan, Puerto Rico, 00918
> Tel: (787) 274-1212
> Fax: (787) 274-1470
>
> s/ MARÍA DOLORES TRELLES HERNÁNDEZ
> María Dolores Trelles Hernández
> USDC-PR Bar No. 225106
> mtrelles@pmalaw.com
>
> s/ MARÍA ELENA MARTÍNEZ CASADO
> María Elena Martínez Casado
> USDC-PR Bar No. 305309
> mmartinez@pmalaw.com

10