**SCHEDULE A TO THE VERIFIED FIRST AMENDED AND SUPPLEMENTAL COMPLAINT**

*Boyd v. Banco Popular de Puerto Rico, No. 3:26-cv-01066-MAJ-MBA (D.P.R.) — Financing controls, instruments, transactions and inspection record (incorporated by reference under Fed. R. Civ. P. 10(c))*

Plaintiffs cite the documents by title and date; the federal filings by Docket number; and Commonwealth filings by their SUMAC docket-entry number ("Docket Entry"). Each Part is referred to in the Complaint by its Part number.

**Part 1 — Contractual and governance controls (C01–C23)**

| Control / responsible actor | Contractual requirement and source |
|---|---|
| C01 — Eligible advance and approved budget BGF submits; BPPR/Required Lenders and Engineer approve. | Certifications, invoices and purchase orders require Agent, Lender and Independent Engineer approval; each amended Project Budget requires advance Required Lender and Engineer approval. Uses cannot exceed approved lines except permitted reallocations. Credit Agreement § 2.2(a)(iii), PDF p. 33. (Credit Agreement (Sept. 15, 2020).) |
| C02 — Value supported by advance BGF certifies; Engineer reviews; BPPR administers. | Advance ceiling includes work in place, indirect costs, stored materials and other approved costs paid or payable, less prior advances, QLICI and equity used for those items; Engineer first approves Draw Request Documents. Credit § 2.2(a)(iv), PDF p. 33. (Credit Agreement (Sept. 15, 2020).) |

| Control / responsible actor | Contractual requirement and source |
|---|---|
| C03 — Facility in balance<br>BGF funds shortfall; BPPR determines and gives notice. | Remaining funds must suffice for completion; Borrower supplies cash within ten days of Agent notice and uses it before further advances. Credit § 2.2(b), PDF pp. 33–34; § 6.3.6(c), p. 98. (Credit Agreement (Sept. 15, 2020).) |
| C04 — Written changes<br>BGF/DPI request; Required Lenders and Engineer approve. | Prior written Required Lender and Engineer approval; narrow reallocation exception of $50,000 per line and $100,000 aggregate requires notice, revised budget and additional conditions. AIA G701 or equivalent for covered construction changes. Credit § 2.13, PDF pp. 43–44; § 5.2(aa), p. 82. (Credit Agreement (Sept. 15, 2020).) |
| C05 — Each direct-loan advance<br>BGF supplies; Engineer reports; BPPR/Lenders apply conditions. | Draw documents five business days before borrowing; Engineer report before Notice of Borrowing addresses budget adequacy, feasible schedule and incurred/paid costs; approved true and complete budget/schedule. Credit § 3.2(a)–(c),(e)–(g), PDF pp. 51–52. (Credit Agreement (Sept. 15, 2020).) |

| **Control / responsible actor** | **Contractual requirement and source** |
|---|---|
| C06 — QLICI construction-progress cap<br>BGF requisitions; QLICI Lender and BPPR as Disbursing Agent determine. | Requested plus earlier disbursements and other Project funds spent cannot exceed construction actually completed, including stored materials/equipment, under the Project Budget. QLICI Disbursement Agreement § 3.3(b), PDF pp. 8–9. (QLICI Disbursing Agreement (Sept. 15, 2020).) |
| C07 — QLICI inspection package<br>BGF supplies; Inspector reports; QLICI Lender/BPPR review. | Requisition includes budget/change spreadsheet, sworn work statement, contractor AIA G702/G703, lien waivers, stored-equipment support and inspector Progress Report. Section 3.4(a)(viii) permits the QLICI Lender and Disbursing Agent to waive a progress report for a requisition. QLICI Disbursement § 3.4(a), PDF pp. 11–13. (QLICI Disbursing Agreement (Sept. 15, 2020).) |
| C08 — QLICI payment and restricted use<br>BGF and its authorized payment officers. | Requisition reaffirms representations; amounts then due must be paid promptly and within ten calendar days after receipt; proceeds used for requested permitted purposes. Section 3.3(i) disclaims an obligation to monitor actual application; Plaintiffs charge the knowing approval and implementation described in Counts I–III. QLICI Disbursement § |

| **Control / responsible actor** | **Contractual requirement and source** |
|---|---|
| | 3.3(h)–(i), PDF pp. 10–11. (QLICI Disbursing Agreement (Sept. 15, 2020).) |
| C09 — QLICI changes and retainage BGF/DPI; QLICI Lender and Disbursing Agent. | New budgets need advance lender/agent/engineer approval; additional costs generally borrower-funded. Change-order exception is under $50,000 individually/$100,000 aggregate. Retainage requires substantial completion and other conditions. Section 3.3(f) permits the specified early releases after default in the stated discretion. QLICI Disbursement § 3.4(c)–(e), PDF p. 13. (QLICI Disbursing Agreement (Sept. 15, 2020).) |
| C10 — Construction bond at closing BGF supplies evidence; Agent receives; lenders apply or validly waive condition. | At effectiveness/initial borrowing, Agent receives satisfactory evidence of required paid premiums and performance/payment bonds covering 100% of defined Direct Costs with Borrower/Agent as dual obligees. Article III waiver requires signed writing under § 10.1(a), including all Lenders. The executed Project Budget lists $18,679,651 in Direct Costs; no bond covering those Direct Costs with BGF and the Bank as dual obligees exists; the only bond in the record, MAPFRE bond No. 1301208000513 for $5,000,000, is the contractors' bond for their own $5 million construction contract, naming ITS/ASC Joint Venture as principal and BGF as its only obligee, and it satisfies no |

| **Control / responsible actor** | **Contractual requirement and source** |
|---|---|
| | part of the requirement. Credit §§ 3.1(h), 10.1(a), original executed PDF pp. 47, 111; Closing Date definition, original executed PDF p. 8. (Credit Agreement (Sept. 15, 2020).) |
| C11 — Construction conversion BGF/Engineer/contractors; BPPR/Lenders. | Borrower/Engineer COD and substantial-completion evidence, contractor certificates and other conversion conditions. Credit § 3.3, PDF pp. 53–54; Sixth § 2(e), PDF p. 3. (Credit Agreement (Sept. 15, 2020).) |
| C12 — Annual audited BGF financials BGF as QLICI Borrower; deliver to QLICI Lender. | Borrower must provide annual audited financial statements within 120 days after fiscal year end; quarterly/yearly unaudited statements within 45 days. QLICI Loan and Security Agreement § 6.3(a)–(b), PDF p. 33. (QLICI Loan and Security Agreement (Sept. 15, 2020).) |
| C13 — Credit-agreement financial reporting BGF/GFC as specified; BPPR receives. | Following Conversion Date: BGF annual audit within 120 days; GFC/corporate guarantor annual unaudited statements on written lender request; other listed reports. Credit § 5.1(b)(i)(A)–(F), PDF pp. 65–67. (Credit Agreement (Sept. 15, 2020).) |

| **Control / responsible actor** | **Contractual requirement and source** |
|---|---|
| C14 — Books, examination and notices<br>BGF maintains/notifies; BPPR may examine. | Separate GAAP books; access for reasonable-notice lender examination; notices of defaults, material litigation and requested information on specified deadlines. Credit § 5.1(b)(ii),(vi),(xv), pp. 67–69; § 5.1(d)–(f), p. 70. (Credit Agreement (Sept. 15, 2020).) |
| C15 — Disbursement and equity accounts<br>BGF deposits; BPPR controls disbursement process. | QLICI and equity proceeds deposited in designated accounts; approved budget uses and certifications; excess project costs borrower-funded. Credit §§ 6.3.5–6.3.6, PDF pp. 97–98. (Credit Agreement (Sept. 15, 2020).) |
| C16 — Tax-credit account<br>BGF requests/certifies; BPPR/Required Lenders consent. | Agent has sole dominion; borrower cannot withdraw. Written requests and prior Required Lender consent; officer certificate on no default and actual eligible costs; use restrictions evolve. Credit § 6.3.7, PDF pp. 98–99; Third § 2(i); Fourth § 2(j); Sixth § 2(g). (Credit Agreement (Sept. 15, 2020).) |

| **Control / responsible actor** | **Contractual requirement and source** |
|---|---|
| C17 — Financial and affiliate restrictions<br>BGF and payment decisionmakers. | Reasonable officer/director pay; restrictions on subordinated debt and distributions/affiliate management fees; approved budgets and corporate separateness. Credit § 5.2(k)–(m), PDF p. 79; § 5.2(w)–(x), pp. 81–82. (Credit Agreement (Sept. 15, 2020).) |
| C18 — GFC information and records<br>GFC Board/officers. | Consolidated annual/quarterly/monthly financial statements to Series A; next-year operating budget 30 days before year end; adequate records and annual accounts. GFC Sept. 14, 2020 OA § 4.2(k), PDF pp. 18–19; § 6.2(g), p. 21; Oct. 20, 2021 restatement in May 22, 2023 package, pp. 27, 30. (GFC Operating Agreement (Oct. 20, 2021), as amended.) |
| C19 — GFC budgets, $150,000 thresholds and conflicts<br>GFC Board and Series A Managers. | Both Series A Managers must affirmatively approve annual budget, specified unbudgeted debt over $150,000, executive compensation changes and covered insider/family transactions. The May 22, 2023 amendment changes both Series A Managers to a majority of them. Sept. 2020 OA § 6.3, PDF pp. 22–23; Oct. 2021 restatement, May 2023 package pp. 31–32. (GFC Operating Agreement (Oct. 20, 2021), as amended.) |

| **Control / responsible actor** | **Contractual requirement and source** |
|---|---|
| C20 — Manager compensation<br>GFC Board; individual recipients. | Managers paid only as Board approves, commensurate with time; no pay merely for Member status; expense reimbursements require stated approval. GFC OA § 6.6, Sept. 2020 PDF p. 24; Oct. 2021 restatement p. 33; May 2023 amendment § 11, p. 5. (GFC Operating Agreement (Oct. 20, 2021), as amended.) |
| C21 — Construction price, term and extra work<br>BGF and DPI/ITS/Accurate within their roles. | $5 million compensation; stated June 30, 2020–June 30, 2021 term; extra work/support and written modifications governed by Arts. VI and XVI. Construction Contract (June 18, 2020) and JV Agreement (May 15, 2020), arts. III, IV, VI, XVI; AIA007 Nov 1, 2021. |
| C22 — Amendment authority and notice<br>BGF/GFC supply authority; Agent transmits specified notice. | Certified governing-body resolutions, organizational records, counsel opinion, allonges and NMTC notice 15 business days before execution.<br>First–Fifth § 4; Sixth § 5; Seventh § 7, PDF pp. 4–5. |

| **Control / responsible actor** | **Contractual requirement and source** |
|---|---|
| C23 — Scope of Agent duties<br>BPPR in its distinct lender/Agent roles. | Article VIII benefits lenders and disclaims specified inquiry/inspection duties; agreement limits liability and disclaims a fiduciary relationship. Credit §§ 8.1–8.2, PDF pp. 106–107; §§ 10.4(c), 10.11. (Credit Agreement (Sept. 15, 2020).) |

**Part 2 — Credit Agreement and amendments (A0–A7)**

| **Instrument** | **Requirements and compliance record** |
|---|---|
| A0<br>2020-09-15 | Nonrevolving/converted ceiling $11,869,250; original nonrevolving termination earlier of Sept 15, 2021, COD or termination; conditional three-month extension. Separate $7.2m QLICI. Closing and each-advance controls C01–C17; original tax-credit account restrictions; Boyd original guarantor. Drawdown 1 is closing. Credit § 1.1, PDF pp. 21–22; §§ 2.1–2.2, 3.1–3.2, 6.3.7. Executed instrument. Original termination is not March 31, 2021. (Credit Agreement (Sept. 15, 2020).) |
| A1<br>2021-05-06 | New $812,500 revolving facility solely for MAPFRE tax-credit-bond standby LC; revolving termination Dec 31, 2021; revised Project Budget. § 4 resolutions, opinion, allonge/note, taxes and NMTC notice. § 1(b) claim release; §§ 7–8 ratification/nonovation. First |

| Instrument | Requirements and compliance record |
|---|---|
| | Amendment §§ 1–4, 7–8, PDF pp. 1–8; signatures p. 11; budget p. 24. Boyd signs p. 11, distinguishing this amendment from later unsigned amendments. The LC is for the tax-credit bond. This amendment did not extend the nonrevolving construction deadline. (First Amendment to Credit Agreement (May 6, 2021).) |
| A2<br>2022-03-02 | Nonrevolving termination April 30, 2022, with conditional three-month extension; revolving termination Dec 31, 2022. $8,418,386.76 direct principal/$812,500 revolving stated. § 4 authority/opinion/NMTC notice; § 5(e) qualified litigation representation and § 5(f) no default; §§ 7–8 ratification/nonovation. Second §§ 1–5, 7–8, PDF pp. 1–5; signatures pp. 7–9. Boyd is not included among the named Personal Guarantors or on the signature page. His original guaranty is addressed separately in Count X. (Second Amendment to Credit Agreement (Mar. 2, 2022).) |
| A2L<br>2022-06-01 | Extends nonrevolving termination to June 30, 2022; acknowledges $10,084,962.11 principal and $56,447.78 interest; revolving balance stated zero. Ratifies remaining loan and guarantee terms; no extinctive novation; expressly reserves defaults and remedies; incorporates waiver, governing-law and jury-waiver provisions. Banco Popular–BGF extension letter agreement (June 1, 2022), source pp. 1–6. |

| Instrument | Requirements and compliance record |
|---|---|
| | Humberto signs for BPPR; López Vidal for BGF/GFC; López couples sign personal ratifications. No Boyd signature. Not a blanket waiver of arrears or tax-account restrictions. |
| A3<br>2022-07-26 | Nonrevolving termination Oct 31, 2022; $1.5m additional equity due Sept 15; additional advances over $11,145,474.13 conditional on equity receipt/use evidence. Both tax tranches to controlled account, eligible Project Costs/working capital by consent. § 2(g) adds Credit § 3.6; § 2(h) adds escrow deadline; § 2(i) replaces tax-account rule; revised budget; § 4 authority/NMTC notice; § 5 qualified litigation/no-default representations. Third §§ 1–5, PDF pp. 1–7; § 8 nonovation p. 8. No $1m commitment increase here. Boyd July 25 objects; bank-directed Nov 16 letter alleges unmet equity. The Fourth Amendment later recites $11,237,946.53 in principal, above the former gate, and deletes that gate prospectively. (Third Amendment to Credit Agreement (July 26, 2022).) |
| A4<br>2022-11-08 | Construction commitment increases to $12,869,250; converted ceiling remains $11,869,250. Nonrevolving/project termination Dec 31, 2022. $1m prepayment by termination from equity/tax proceeds; excess to escrow/accounts. Deletes Credit § 3.6 gate; changes equity deadline to Dec 31; new $1m for payments Agent/consultant deem critical; § 4 |

| Instrument | Requirements and compliance record |
|---|---|
| | resolutions/opinion/NMTC notice. Fourth § 2(a)–(k), PDF pp. 2–5; § 4 p. 6; DLA opinion Nov 8 pp. 1–4, 10. Executed date Nov 8, not Nov 1. DLA opines authority in reliance on the supplied certifications; Plaintiffs challenge the underlying approval in the narrative. (Fourth Amendment to Credit Agreement (Nov. 8, 2022).) |
| A5<br>2023-01-05 | Nonrevolving/project termination March 31, 2023; excess-equity escrow deadline March 31; revised schedule/amortization. Principal stated $12,284,862.34. $1m prepayment rule continues with revised termination; § 4 authority/opinion/NMTC notice; § 5 representations; claim waiver/nonovation continue. Fifth §§ 1–5, PDF pp. 2–5. Does not reduce construction ceiling by $1m or expressly extend revolving facility. Sixth confirms revolving termination Dec 31, 2022. (Fifth Amendment to Credit Agreement (Jan. 5, 2023).) |
| A6<br>2023-04-27 | Nonrevolving/project termination June 30, 2023; $3m new equity through specified notes/units; all actions by May 21; $1,130,240.71 critical-use carveout, remaining equity escrowed for Exhibit C uses. March 20 $1m tax proceeds reserved for interest and prepayment; full $1m prepayment by termination; conversion also requires § 5 performance; ECL default cure/waiver confirmation by June 30; executed investment/OA documents within one business day. Sixth §§ |

| Instrument | Requirements and compliance record |
|---|---|
| | 1–6, PDF pp. 2–9; ExhibitsB/C pp. 17–23. Mediation expressly referenced. § 6(e)/(f) still has qualified litigation/no-default language. Draft/redline is not operative amendment. (Sixth Amendment to Credit Agreement (Apr. 27, 2023).) |
| A7<br>2023-09-27 | Forbearance/project/nonrevolving deadline Oct 31, 2023, subject to earlier default. Principal $12,869,250. Named borrower representative Rodrigo Zavala, singly. Acknowledges Aug 18 defaults; interest continues; audit access; diligent completion; future proceeds of VRM $1.5m note into BGF equity escrow; raise/deposit minimum $2.8m by Oct 31; ECL weekly reports within one business day. § 7 authority/NMTC notice; §§ 1(b), 13 releases. Seventh §§ 1–8, 13–14, PDF pp. 1–8; default notice pp. 23–26. Filed copy 24-1569 Docket 20-10 adds cover: PDF locator +1. Section 2(a) expressly acknowledges the Notified Defaults; § 8(e) names the two pending cases. Section 8(f) separately repeats general representations and does not itself contain a notified-default exception. Corporate guarantor signs; no personal-guarantor party. $2.8m operative figure differs from VRM/Semillero complaint ¶ 104's $2.6m allegation. (Seventh Amendment and Forbearance Agreement (Sept. 27, 2023).) Section 7(a)(ii) requires certified resolutions of both Companies approving the amendment and transactions. Plaintiffs allege no valid authorization through the |

| **Instrument** | **Requirements and compliance record** |
| --- | --- |
| | disputed September governance chain; the separate signed restatement, written-consent provision and ratification defense are addressed in Count IX. |

Part 3 — Challenged transactions: required use, payment, departure, net loss **(L01–L09)**

| **Transaction and responsible actors** | **Required use → payment → departure → net loss** |
| --- | --- |
| L01 — Closing premium; Sept. 16, 2020 | CONTROL/USE: paid full-cost bond and approved closing uses; premium allocated to the JV under JV ¶ 8. PAYMENT: $70,500 to Popular Insurance plus $60 fee from BGF; López Vidal authorized, Rodríguez/BPPR arranged. DEPARTURE: contractor expense charged to BGF after closing without the required paid-premium evidence. LOSS: $70,560 shifted expense and attributable financing cost, subject to lawful allocation, reimbursement and actual protection received. Construction Contract (June 18, 2020) and JV Agreement (May 15, 2020); Credit Agreement (Sept. 15, 2020), § 3.1(h); Rodríguez Barnes closing e-mail (Sept. 14, 2020); Popular Insurance $70,560 bond-premium transfer record (Sept. 16, 2020); Heyman closing e-mail chain (Sept. 14, 2020); Fernández Agramonte and Boyd closing e-mails (Sept. 14, 2020); Heyman release e-mail (Sept. 15, |

| Transaction and responsible actors | Required use → payment → departure → net loss |
| --- | --- |
| | 2020), with the executed Flow of Funds; Rodríguez Barnes additional-obligee letter to MAPFRE (Sept. 15, 2020). |
| L02 — Pre-inspection releases; 2020–21 | CONTROL/USE: each advance's eligible costs and required inspection/waiver. PAYMENT: five bank credits totaling $3,827,638.97 in the following seventeen-entry schedule. ACTOR: BPPR as releasing lender/agent; requesting officers as to their certifications. DEPARTURE: the identified required inspections did not precede release. LOSS: ineligible or unearned downstream uses and attributable financing/completion loss. Credit Agreement (Sept. 15, 2020), §§ 2.2, 3.2; esi Inspection Certificate 011 (Nov. 12, 2021); esi Inspection Certificate 007 (Apr. 23, 2021); esi Inspection Certificate 009 (June 8, 2021); BGF operating-account statements and check images, Nov.–Dec. 2021; and the statements cited at Part 4, F01–F09. |
| L03 — TPI; Apr. 25, 2022 | CONTROL/USE: eligible Draw 14 costs; TPI Annex C final 10% due after startup, training, commissioning and performance testing. PAYMENT: $108,000 wire to TPI through Italy plus $60 fee. ACTORS: Economou's submission and Medina/BPPR's review and release. DEPARTURE: release before those milestones. LOSS: |

| **Transaction and responsible actors** | **Required use → payment → departure → net loss** |
|---|---|
| | unearned final payment, lost completion leverage and resulting completion/financing loss, less equipment, services and recoveries. Certificate 14 e-mail chain, Economou and Medina Castillo (Mar. 29–31, 2022); No. 22-1190, Docket 50-4; Banco Popular debit advices (Apr. 25, 2022); Drawdown Certificate 14 and Notice of Borrowing (Mar. 28, 2022); TPI Equipment Purchase Agreement (Jan. 20, 2021), Annex C. |
| L04 — Galileo; Apr. 25, 2022 | CONTROL/USE: Galileo's own acceptance provisions, including deemed acceptance. PAYMENT: $1,029,400 through New York plus $60 fee; scheduled final installment $1,129,400. ACTORS: Economou and Medina/BPPR. DEPARTURE: Plaintiffs allege the applicable final-payment conditions had not been satisfied. LOSS: unearned or unauthorized release and attributable completion loss, net of actual equipment/work and contractual acceptance. Certificate 14 e-mail chain, Economou and Medina Castillo (Mar. 29–31, 2022); No. 22-1190, Docket 50-4; Banco Popular debit advices (Apr. 25, 2022); Galileo Equipment Sale and Purchase Agreement (Oct. 9, 2020). |

| **Transaction and responsible actors** | **Required use → payment → departure → net loss** |
|---|---|
| L05 — Restricted funds/ITS; June 22–23, 2022 | CONTROL/USE: then-operative tax-account restrictions and consent/default gates. PAYMENT: $610,152.15 transferred to checking; $150,000 check No. 2531 to ITS next day, signed by both Lópezes. ACTORS: BPPR controlled release; López signers directed payment. DEPARTURE: unauthorized restricted application and contractor payment without the required approval. LOSS: net improper downstream payment and carrying cost, crediting earned work and lawful use. BGF operating-account statement, June 2022; SJ2024CV04616, Docket Entry 13; Credit Agreement (Sept. 15, 2020), § 6.3.7; First Amendment to Credit Agreement (May 6, 2021). |
| L06 — Construction additions after June 2021 | CONTROL/USE: $5 million written contract, lender/engineer budget approvals, written extra-work changes. PAYMENT/REQUEST: later contractor schedules, including Certificate 17 additions of $300,782, $342,813 and $245,500 ($889,095 total). ACTORS: JV, López signers, Economou and BPPR within their described roles. DEPARTURE: no approved written construction change orders; cost overruns alleged by VRM/Semillero exceed $2 million. LOSS: amounts actually paid for unearned or unauthorized extra work and resulting completion loss, after value received. Construction Contract (June 18, 2020) and JV Agreement (May 15, 2020); SJ2024CV07694 |

| Transaction and responsible actors | Required use → payment → departure → net loss |
| --- | --- |
| | Compl., ¶¶ 94–96; Drawdown Certificate 17 with Notice of Borrowing (July 20, 2022); Certificate 17 source worksheet ("Revised by BPPR"); BGF Master Budget and Certificate 21 critical-payment schedules (July–Aug. 2023); Request for Advance, Certificate 22 (Aug. 15, 2023). |
| L07 — 2023 tax proceeds | CONTROL/USE: March 9 consent and effective amended account/prepayment requirements. PAYMENT: $500,000 release and the other identified account applications. ACTORS: BPPR and requesting Company representatives. DEPARTURE: failure to apply restricted money as required while obtaining later acknowledgments/releases. LOSS: foregone required principal reduction and resulting carrying cost, reduced for actual debt applications and permitted project benefit. BGF operating-account transactions, April 2023; Seventh Amendment and Forbearance Agreement (Sept. 27, 2023); Sixth Amendment to Credit Agreement (Apr. 27, 2023); GFC Board resolution authorizing the tranche-two tax-credit sale (2023); Banco Popular consent letter on the tranche-two sale (Mar. 9, 2023); SURI notice approving the tax-credit sale (Mar. 14, 2023). |

| **Transaction and responsible actors** | **Required use → payment → departure → net loss** |
|---|---|
| L08 — Asset transfer; Jan. 31–Feb. 7, 2025 | CONTROL/USE: Credit Agreement §§ 5.2(g)(ii), 2.9(a), (f) and 7.2 (the proceeds of any disposition of the Project to the Advances); GFC Operating Agreement §§ 4.2(j), 6.4 and 9.1 and Asset Acquisition Agreement § 5.1(f) (member and Series A approvals); 19 L.P.R.A. §§ 2380–2381 (acceptance of collateral in partial satisfaction). TRANSFER: the plant, the contracts and the El Coquí gas rights to Humacao RNG for a $13,000,000 reduction of the loan the buyer had bought from the Bank, $4,465,966 of cash paid to the noteholders and preferred holders (none to the Companies), assumed liabilities and a conditional $7,052,292 balance. ACTORS: Humacao RNG and Renewable Series II, through Penzini, as buyer and payor; Borschow and Villarini as the signing managers; the Bank as seller of the loan and beneficiary of § 3.6(c). QUALIFYING ACTS: Predicate Acts 9, 10 and 11 (¶¶ 960–963). DEPARTURE: final terms the members never approved; consideration not applied to BGF's debt as § 5.2(g)(ii) required; no § 2381(b) proposal to the guarantor; the Bank released without any identified payment. LOSS: the difference between the value of the business transferred — $83,305,285 on Boyd's valuation, $75,688,223 on the Initial-Term floor — and the $17,465,966 of stated consideration (¶¶ 702–711), before the deductions pleaded in ¶¶ 694– |

| **Transaction and responsible actors** | **Required use → payment → departure → net loss** |
|---|---|
| | 711 (the $7 to $10 million of completion capital the acquirers themselves alleged; working capital; delay and execution risk; debt and other senior claims) and after credit for all consideration, assumed obligations and the § 2.10 terms as actually performed (¶¶ 998–1000). Asset Acquisition Agreement (Jan. 31, 2025), §§ 2.1, 2.7–2.10, 3.6(c), 5.1(f), Schedule 2.9; Penzini status letter to the GFC members (Nov. 15, 2024); Borschow communication to the GFC members (Mar. 31, 2025); Boyd valuation (Sept. 22, 2026). |
| L09 — Ponce and Salinas developments; 2023–2024 | CONTROL/USE: NDA (Jan. 18, 2023), § 2.A (no use outside the Business Purpose) and the First Amendment (Feb. 9, 2023) (no circumvention as to the Humacao and Ponce facilities); El Coquí agreement § 11.20 — BGF's first-offer and matching rights for new landfill-gas projects on EC Waste property through December 28, 2023, and the good-faith negotiation right thereafter. TAKING: the Companies' Ponce development work, plant and contract data and § 11.20 position, obtained through the January 26, February 9 and 20 and March 15, 2023 communications (Predicate Acts 5–7, ¶¶ 956–958) and received and used through Ponce RNG (organized June 24, 2024) and IRE (Predicate Act 8, ¶ 959). ACTORS: Rojo, Penzini and Diego Rodríguez; VRM Penzini Capital and Star Power; Ponce RNG and IRE |

| **Transaction and responsible actors** | **Required use → payment → departure → net loss** |
| --- | --- |
| | (Kalt; Penzini). DEPARTURE: use outside the Business Purpose and circumvention of the facilities the amendment named; no compensation to the Companies. LOSS: the developed value of Ponce and Salinas to BGF — $92,000,000 on Addendum A to Boyd's valuation — or the three-site platform value ($187,000,000 on the instructed volumes; $270,000,000 on IRE's published book) with the Humacao value claimed once (¶¶ 853–855), before the credits stated there and subject to the conditional § 11.20 process, the capacity to obtain and finance a project, the defendants' independent contributions and any value paid (¶ 1121); alternatively a reasonable royalty under Count XI. Boyd valuation, Addendum A (Sept. 22, 2026); NDA (Jan. 18, 2023); First Amendment to Confidentiality and Non-Disclosure Agreement (Feb. 9, 2023); El Coquí Landfill Gas Sale and Purchase Agreement (Dec. 28, 2018), with First Amendment (July 19, 2019), § 11.20; P.R. Department of State records, Ponce RNG, LLC and Island Renewable Energies LLC; IRE project page (captured Sept. 22, 2026). |

**Part 4 — Bank credits and the inspection record (F01–F17)**

| **Advance / amount / date** | **Report chronology, release role and source** |
|---|---|
| F01 — Draw 2<br>2020-10-05<br>$1,163,067.88 | No qualifying postclosing inspection/report for this request in the complete production; funding preceded the first reported postclosing visit. Bank-labelled loan credit; BPPR release. 2020 1030 BGF Statement with Checks.pdf, p. 1 (BGF operating-account statement and check images, October 2020.) |
| F02 — Draw 3<br>2020-10-27<br>$159,160.00 | No qualifying postclosing inspection/report for this request in the complete production; funding preceded the first reported postclosing visit. Bank-labelled loan credit; BPPR release. 2020 1030 BGF Statement with Checks.pdf, p. 1 (BGF operating-account statement and check images, October 2020.) |
| F03 — Draw 5<br>2020-12-18<br>$1,077,688.00 | No qualifying postclosing inspection/report for this request in the complete production; funding preceded the first reported postclosing visit. Bank-labelled loan credit; BPPR release. 2020 1231 BGF Statement with Checks.pdf, p. 1 (BGF operating-account statement and check images, December 2020.) |

| **Advance / amount / date** | **Report chronology, release role and source** |
|---|---|
| F04 — Draw 6<br>2021-03-03<br>$804,139.36 | No qualifying postclosing inspection/report for this request in the complete production; funding preceded the first reported postclosing visit. Bank-labelled loan credit; BPPR release. 2021 0331 BGF Statement with Checks.pdf, p. 1 (BGF operating-account statement and check images, March 2021; esi Inspection Certificate 007 (Apr. 23, 2021).) |
| F05 — Draw 7<br>2021-05-04<br>$472,469.61 | ESI007: visit April 19; report April 23, 2021, before funding. Bank-labelled loan credit; BPPR release. 2021 0528 BGF Statement with Checks.pdf, p. 1 (BGF operating-account statement and check images, May 2021; esi Inspection Certificate 009 (June 8, 2021); esi Inspection Certificate 007 (Apr. 23, 2021).) |
| F06 — Draw 8<br>2021-05-24<br>$577,711.73 | No separate Certificate 8 report. ESI007 is earlier; its stated April scope is preserved. This row is excluded from the narrow timing-violation numerator. Bank-labelled loan credit; BPPR release. 2021 0528 BGF Statement with Checks.pdf, p. 1 (BGF operating-account statement and check images, May 2021; esi Inspection Certificate 009 (June 8, 2021); esi Inspection Certificate 007 (Apr. 23, 2021).) |

| **Advance / amount / date** | **Report chronology, release role and source** |
|---|---|
| F07 — Draw 9<br>2021-06-14<br>$1,154,255.89 | ESI009: visit June 7, report signed June 8, 2021, before funding. Bank-labelled loan credit; BPPR release. 2021 0630 BGF Statement with Checks.pdf, p. 1 (esi Inspection Certificate 009 (June 8, 2021); BGF operating-account statement and check images, June 2021.) |
| F08 — Draw 10<br>2021-07-28<br>$330,343.40 | No separate Certificate 10 report. Earlier ESI009 concerns its June request; excluded from the narrow timing numerator. Bank-labelled loan credit; BPPR release. 2021 0730 BGF Statement with Checks.pdf, p. 1 (BGF operating-account statement and check images, July 2021; esi Inspection Certificate 009 (June 8, 2021).) |
| F09 — Draw 10<br>2021-08-03<br>$480,625.00 | No separate Certificate 10 report. Earlier ESI009 concerns its June request; excluded from the narrow timing numerator. Bank-labelled loan credit; BPPR release. 2021 0831 BGF Statement with Checks.pdf, p. 1 (BGF operating-account statement and check images, August 2021; esi Inspection Certificate 009 (June 8, 2021).) |

| **Advance / amount / date** | **Report chronology, release role and source** |
|---|---|
| F10 — Draw 11<br>2021-11-05<br>$623,583.73 | ESI011 visit November 9; signed November 11 with November 12 cover. This November 5 release preceded the visit and report. Bank-labelled loan credit; BPPR release. 2021 1130 BGF Statement with Checks.pdf, p. 2 (BGF operating-account statements and check images, Nov.–Dec. 2021.) |
| F11 — Draw 11<br>2021-11-12<br>$677,094.76 | ESI011 was signed November 11, before this November 12 credit; its cover bears November 12. This row is not counted as release before the report. Bank-labelled loan credit; BPPR release. 2021 1130 BGF Statement with Checks.pdf, p. 2 (BGF operating-account statements and check images, Nov.–Dec. 2021.) |
| F12 — Draw 12/13<br>2022-03-09<br>$637,858.62 | March 7, 2022 visit; ESI012/013 signed March 9 relate to the March requests. Bank reported $637,858.62 validated March 9; later releases followed item validation. Bank-labelled loan credit; BPPR release. 2022 0331 BGF Statement.pdf, p. 1 (BGF operating-account statement, March 2022; esi Inspection Certificate 012 and Drawdown Certificate 13 (Mar. 2022).) |

| **Advance / amount / date** | **Report chronology, release role and source** |
|---|---|
| F13 — Draw 12/13<br>2022-03-09<br>$432,363.29 | March 7, 2022 visit; ESI012/013 signed March 9 relate to the March requests. Bank reported $637,858.62 validated March 9; later releases followed item validation. Bank-labelled loan credit; BPPR release. 2022 0331 BGF Statement.pdf, p. 1 (BGF operating-account statement, March 2022; esi Inspection Certificate 012 and Drawdown Certificate 13 (Mar. 2022).) |
| F14 — Draw 12/13<br>2022-03-11<br>$185,692.81 | March 7, 2022 visit; ESI012/013 signed March 9 relate to the March requests. Bank reported $637,858.62 validated March 9; later releases followed item validation. Bank-labelled loan credit; BPPR release. 2022 0331 BGF Statement.pdf, p. 1 (BGF operating-account statement, March 2022; esi Inspection Certificate 012 and Drawdown Certificate 13 (Mar. 2022).) |
| F15 — Draw 12/13<br>2022-03-15<br>$22,500.00 | March 7, 2022 visit; ESI012/013 signed March 9 relate to the March requests. Bank reported $637,858.62 validated March 9; later releases followed item validation. Bank-labelled loan credit; BPPR release. 2022 0331 BGF Statement.pdf, p. 1 (BGF operating-account statement, March 2022; esi Inspection Certificate 012 and Drawdown Certificate 13 (Mar. 2022).) |

| Advance / amount / date | Report chronology, release role and source |
|---|---|
| F16 — Draw 14<br>2022-03-31<br>$388,160.63 | No separate Certificate 14 report; ESI012/013 have earlier March scope. Medina's March 29–31 review addresses the missing AIA; excluded from the narrow timing numerator. Bank-labelled loan credit; BPPR release. 2022 0331 BGF Statement.pdf, p. 1 (BGF operating-account statement, March 2022; esi Inspection Certificate 012 and Drawdown Certificate 13 (Mar. 2022).) |
| F17 — Draw 19<br>2022-11-16<br>$980,943.46 | No separate Certificate 19 report in complete production; earlier March reports do not address the November request. Excluded from the narrow timing numerator. Bank-labelled loan credit; BPPR release. 2022 1130 BGF Statement with Checks.pdf, p. 1 (Notice of Borrowing and Drawdown Certificate #19 (Nov. 9, 2022); BGF operating-account statement, November 2022.) |

**Part 5 — Notices, demands, responses and subsequent conduct**

| **Notice and actors** | **Request or response and following conduct** |
|---|---|
| Nov. 11–12, 2021 — BPPR | Carballido notified Ferrer of payment irregularities on November 11. BPPR credited $677,094.76 on November 12; the earlier November 5 credit of $623,583.73 preceded the November 9 inspection. The warning supplies Bank knowledge for the later release, not retroactive notice for November 5. Carballido Clerch e-mail to Ferrer (Nov. 11, 2021); BGF bank statement showing the November 5 and 12, 2021 loan draws; esi Inspection Certificate 011 (Nov. 12, 2021); BGF operating-account statements and check images, Nov.–Dec. 2021. |
| Dec. 2–20, 2021 — BPPR and authorized response counsel | Marsh's December 2 demand identified premium and payment issues. PMA's December 20 response represented that review had disclosed no underwriting, approval or disbursement irregularities. The response followed the Bank's own closing records and the specific warnings. Predicate Act 2 (¶ 953) pleads the response as a lulling wire furthering the continued disbursements. Marsh letter to Ferrer and Coleman Tió (Dec. 2, 2021); Rodríguez Barnes closing e-mail (Sept. 14, 2020); Trelles-Hernández letter to Marsh (Dec. 20, 2021). |

| **Notice and actors** | **Request or response and following conduct** |
|---|---|
| Feb. 9–27, 2022 — BPPR; Plaintiffs' counsel | The Bank declined to provide internal findings; Marsh renewed the request and objections. Plaintiffs' continued objection is preserved. BPPR thereafter approved the March request leading to the April 25 vendor wires. Marsh letters to Muñiz Cotté (Feb. 9, 2022) and to Trelles-Hernández (Feb. 27, 2022); PMA letter to Marsh (Feb. 9, 2022); Certificate 14 e-mail chain, Economou and Medina Castillo (Mar. 29–31, 2022); Banco Popular debit advices (Apr. 25, 2022). |
| Apr. 25–June 5, 2022 — BPPR; GFC Board | The original complaint was filed April 25 and BPPR was served April 29. Becker's June 5 letter requested an independent inspection, cessation of related-party disbursements and restoration of supplier payments. The Board did not obtain those remedies. Later restricted-account and contractor transactions followed. No. 22-1190, Docket 1; Becker Whitaker letter to the GFC Board (June 5, 2022); BGF operating-account statement, June 2022; Drawdown Certificate 17 with Notice of Borrowing (July 20, 2022); Certificate 17 source worksheet ("Revised by BPPR"). |

| Notice and actors | Request or response and following conduct |
| --- | --- |
| July–Nov. 2022 — BPPR; managers | Boyd objected July 25 to the Third Amendment and November 16 to the Fourth, including unfulfilled equity and reporting conditions. The Fourth increased the construction commitment and deleted the earlier equity gate after its due date. These documents establish notice and the actual changing controls. Boyd letter to González Caraballo (Nov. 16, 2022); Boyd e-mails and letter to López Vidal and the GFC members (July 25, 2022); Third Amendment to Credit Agreement (July 26, 2022); Fourth Amendment to Credit Agreement (Nov. 8, 2022). |

| Notice and actors | Request or response and following conduct |
| --- | --- |
| Feb.–July 2025 — Borschow and identified managers | The February 6 sale objection and June 13/July 3 demands preceded the June 19 and July 21 refusals. Those refusals involved the disputed sale, Company counsel and pursuit of Company claims. The 2026 decisions continued the challenged interested claim control. Boyd and Lassers cease-and-desist notice (Feb. 6, 2025); GFC Majority Members' Written Consent (June 13, 2025); Picó letter to Becker Whitaker (June 19, 2025); GFC Majority Members' Written Consent (July 3, 2025); GFC Board response to the members' consents (July 21, 2025); BPPR Informative Motion to Correct Inaccuracies in Appellants' Docketing Statement and Case Caption, No. 26-1357 (1st Cir. May 7, 2026), Doc. 00118443427; Sentencia, TA2025AP00276 cons. TA2025AP00277 (June 16, 2026); TA2025AP00277, Docket Entry 19 (June 9, 2026). |

**Part 6 — Deadlines expired before each later amendment**

| **Instrument and execution date** | **Prior deadline, replacement and significance** |
| --- | --- |
| Original and First Amendment | Original Non-Revolving Termination Date: September 15, 2021, subject to the stated conditional three-month option and other earlier triggers. First Amendment: May 6, 2021; no extension of that nonrevolving date. Credit Agreement (Sept. 15, 2020), definitions; First Amendment §§ 2–3. (First Amendment to Credit Agreement (May 6, 2021).) |
| Second — March 2, 2022 | Replacement nonrevolving date: April 30, 2022. Executed 168 days after September 15, 2021, and 77 days after December 15 even if the original three-month option had applied. The Second contains its own conditional extension language. Second Amendment to Credit Agreement (Mar. 2, 2022). |
| Letter — June 1, 2022 | Replacement: June 30, 2022; executed 32 days after the stated April 30 date. The existence and conditions of the Second Amendment's optional extension remain part of the governing text. Banco Popular–BGF extension letter agreement (June 1, 2022). |
| Third — July 26, 2022 | Prior June 30; replacement October 31, 2022. Executed 26 days after the prior date. Third Amendment to Credit Agreement (July 26, 2022). |

| **Instrument and execution date** | **Prior deadline, replacement and significance** |
| --- | --- |
| Fourth — November 8, 2022 | Prior October 31; replacement December 31, 2022 for Project Termination and nonrevolving maturity. Executed eight days after the prior date. Fourth Amendment to Credit Agreement (Nov. 8, 2022). |
| Fifth — January 5, 2023 | Prior December 31; replacement March 31, 2023. Executed five days after the prior date. Fifth Amendment to Credit Agreement (Jan. 5, 2023). |
| Sixth — April 27, 2023 | Prior March 31; replacement June 30, 2023. Executed 27 days after the prior date. Sixth Amendment to Credit Agreement (Apr. 27, 2023). |
| Seventh — September 27, 2023 | Prior June 30; replacement October 31, 2023. Executed 89 days after the prior date. BPPR's own August 18 notice confirms the June 30 maturity and failure to satisfy conversion conditions under §§ 3.3–3.4. Seventh Amendment and Forbearance Agreement (Sept. 27, 2023), Schedule I. |

**Part 7 — Later certifications, transactions and claim-control decisions**

| **Date and responsible actors** | **Communication, property and claim connection** |
|---|---|
| June 22–23, 2022 — BPPR; López signers | BPPR-controlled tax-account transfer: $610,152.15 to BGF checking; next-day ITS check No. 2531: $150,000, signed by both Lópezes. The challenged use concerns the restricted funds and absence of the required authorization while defaults existed. Company loss is the unauthorized downstream use and added financing cost, with benefits credited. Counts III–IV and VII as applicable. BGF operating-account statement, June 2022; SJ2024CV04616, Docket Entry 13. |
| July 20, 2022 — requesting officers; BPPR | Certificate 17 sought $843,257.10, represented eligible costs and adequate remaining funding, and presented contractor-cost increases totaling $889,095 in its worksheet. The continuing $5 million contract and absence of written changes supply the alleged approval departure. Counts III–IV; recurring certification method supporting the pattern allegations. Drawdown Certificate 17 with Notice of Borrowing (July 20, 2022); Certificate 17 source worksheet ("Revised by BPPR"). |

| **Date and responsible actors** | **Communication, property and claim connection** |
|---|---|
| Jan. 26, 2023 — Rojo for VRM Penzini Capital/Star Power, to Boyd and Lassers; Penzini and Diego Rodríguez on the call | At the end of the Regeneration Partners presentation in VRM's San Juan conference room (Lassers, Penzini and Rodríguez by Zoom), Rojo: "We want to be your partners — we will only work with you two to acquire this project," and "You have our commitment that we will not go around you." Two days earlier VRM had finalized its letter of intent to the GFC Board (first right of refusal to a majority; exclusivity). Designated as Predicate Act 5 (¶ 956). VRM Penzini Capital letter of intent to the GFC Board (Jan. 24, 2023), No. 22-1190, Docket 300-1; Boyd Decl.; Lassers Decl. |

| Date and responsible actors | Communication, property and claim connection |
| --- | --- |
| Feb. 9, 2023 — Rojo, Penzini and Diego Rodríguez for Star Power Systems, LLC; Boyd; Lassers; Regeneration Partners, LLC | The First Amendment to Confidentiality and Non-Disclosure Agreement, negotiated by e-mail Feb. 5–8 and signed by e-mail Feb. 9 (11:24 a.m., 12:35 p.m., 12:37 p.m., 2:43 p.m.): Regeneration Partners, LLC added as a Disclosing Party; scope confined to Humacao and Ponce; VRM not to use the financial structuring, banking, equity-investor, off-take, insurance, human-resources and management strategies disclosed to it to circumvent the Business Purpose; the Disclosing Party relying on VRM's assent. On the 2:00 p.m. meeting and Zoom call Rojo: "now we have a plan to get control of BGF." Eight days later VRM's Feb. 17 proposal asked the Board for leave to deal with EC Waste and the Bank directly. Designated as Predicate Act 6 (¶ 957). First Amendment (Feb. 9, 2023); e-mail chains "Meeting Request" (Feb. 5–6, 2023) and "Agenda for Status Update" (Feb. 8–9, 2023); VRM Emergency Capital Contribution Proposal (Feb. 17, 2023). |

| Date and responsible actors | Communication, property and claim connection |
| --- | --- |
| Mar. 15, 2023 — Penzini, Rojo and Diego Rodríguez for VRM Penzini Capital/Star Power; Lassers by Zoom from Uruguay; Boyd and Rojo at VRM's office | Meeting "At VRM Office," 11:00 a.m.–1:00 p.m. AST: Lassers sent the agenda, the due-diligence request list and the acquisition cost model and presented the projections — the pro forma, the environmental attributes and tax credits, and the § 11.20 gas rights for Ponce and Salinas; Penzini questioned the inputs in detail. Designated as Predicate Act 7 (¶ 958). Calendar entry "At VRM Office" (Mar. 15, 2023); "Meeting Agenda 15th March 2023 VRM Regeneration Partners"; Due Diligence List VRM (Feb. 23, 2023); Boyd Decl.; Lassers Decl. |
| March–April 2023 — BPPR; Company representatives | The March 9 tax-credit consent, sale proceeds, April account releases and Sixth Amendment define the restricted uses then allowed. The $500,000 release is challenged for lost required application and resulting carrying cost after actual credits and benefits. Counts III and IX. GFC Board resolution authorizing the tranche-two tax-credit sale (2023); Banco Popular consent letter on the tranche-two sale (Mar. 9, 2023); SURI notice approving the tax-credit sale (Mar. 14, 2023); BGF operating-account transactions, April 2023; Sixth Amendment to Credit Agreement (Apr. 27, 2023). |

| Date and responsible actors | Communication, property and claim connection |
| --- | --- |
| April 12, 2023 — GFC (López Vidal); VRM Penzini Fund I, LLC Renewable Series II (Rojo) | Convertible Note Purchase Agreement: GFC covenants to appoint López Vidal (President & CEO), Zavala (VP & COO) and Economou (CFO) to manage its day-to-day operations and to sign Zavala's COO Employment Agreement (§ 5.7); any off-schedule use of the proceeds requires VRM's prior written approval (§ 1.2); VRM may deal directly with BPPR, EC Waste and all counterparties (§ 5.3); the plant may not be placed in service, and sales may not begin, without VRM's satisfaction or agreement (§§ 5.4, 5.5(a)); no sale of substantially all assets, change in Board size or debt above $2,000,000 outside bank financing without VRM's written consent (§ 5.8). VRM declared the Companies in default of these covenants on August 11, 2023 when López Vidal suspended Zavala. Pleaded as the contract leg of the Control facts (¶¶ 510–513, 665–685); Count X, ¶ 1107 (alternative); Count IV, ¶ 1084 (§ 5.2(f) item). Convertible Note Purchase Agreement, GFC–VRM Penzini Fund I, LLC Renewable Series II (Apr. 12, 2023), §§ 1.2, 5.3–5.8. |
| September 27, 2023 — BPPR through Medina; | BPPR accepted Zavala's representation of Company authority and signatures on §§ 1(b), 13(a)–(b) after the governance dispute and its August default notice. Plaintiffs allege knowing procurement of unauthorized waivers targeting Company claims, offsets and recovery |

| **Date and responsible actors** | **Communication, property and claim connection** |
|---|---|
| Zavala for BGF and GFC | rights, while preserving Bank debt and indemnity. Part 10 specifies the concessions. RICO scheme participation and Count IX; net impaired-claim value, actual consideration and overlapping damages are accounted for. Seventh Amendment and Forbearance Agreement (Sept. 27, 2023); GFC/BGF Board minutes and notes; Picó e-mail to the GFC Board (Sept. 11, 2023); voided DocuSign sole-member written consent (Sept. 11, 2023). |
| Oct. 6–13, 2023 — BPPR; López Vidal; Economou; manager recipients | Certificate 24 sought $380,144.22 from escrow/operating funds after the Seventh Amendment; BGF's October 6 request asked for release on October 9, and the Bank credited the funds to BGF's account on October 10, 2023. Economou's October 13 email reported Bank authorization on October 10 and resisted disclosure of contractor information to Boyd/Lassers. It denied the reported overpayment and acknowledged authorized access for incoming managers. Counts III–IV and notice/knowledge; the email supplies no admission that every cost was unearned. Request for Advance, Certificate 24 (Oct. 6, 2023); BGF operating-account statement (Oct. 10, 2023); Economou–Picó e-mail chain of Oct. 12–13, 2023. |

| Date and responsible actors | Communication, property and claim connection |
| --- | --- |
| Dec. 4, 2023 — Zavala to the GFC Board (López Vidal, Borschow, Villarini, Penzini, Rojo, Rivera, Fernández; cc Picó) | Letter headed "Resignation from the Position of CEO at GFC": Zavala resigns "from my role as Chief Executive Officer of GFC, effective December 18, 2023," describes three months addressing "construction finalization, financial restructuring, members relationships and governance issues," cites "a lack of cohesive direction and decisive action from the board," and offers to assist "in the search for a new CEO." No Board resolution had approved him as CEO (Aug. 2–7, 2023 minutes). Pleaded at ¶¶ 561–567 and 665–685 (the title claimed; the Board's non-approval; the Control facts); Count IX, ¶ 1102 (authority). Zavala letter to the GFC Board (Dec. 4, 2023). |
| Apr. 15, June 24 and July 3, 2024 — Ponce RNG, LLC and Island Renewable Energies, LLC (Kalt; Penzini); VRM Penzini Capital and Star Power | IRE incorporated in Delaware (Apr. 15, 2024) and registered in Puerto Rico (July 3, 2024); Ponce RNG organized (June 24, 2024) for the Ponce landfill, with Penzini as its treasurer and resident agent and Kalt as its president; the EC Waste agreements for Ponce and Salinas followed (the Companies are not parties; dates from discovery). IRE's project page (captured Sept. 22, 2026) presents Humacao, Ponce and Salinas as a three-landfill platform under thirty-year terms with EC Waste and VRM Penzini as partners. Designated as Predicate Act 8 (¶ |

| Date and responsible actors | Communication, property and claim connection |
|---|---|
| | 959). P.R. Department of State records, Island Renewable Energies LLC and Ponce RNG, LLC; IRE project page (Sept. 22, 2026). |
| Nov. 15, 2024 — VRM Penzini (Penzini) to GFC's members | Status letter reducing the members' recovery from $7.1 million to $4.1 million and allocating the whole $1 million reduction to the common holders; stated that "VRM now holds comprehensive rights under the Credit Agreement, granting us the authority to pursue and collect all amounts currently owed to BPPR as the sole secured lender" and reserved the right to act "as secured creditor" against non-adhering members, when the Bank's enclosed November 14 letter set only indicative terms and Humacao RNG's own statement of facts dates the assignment January 31, 2025. Relied on for knowledge and participation (Counts VI and VIII) and for Count IV; candidate predicate — interstate route to be verified; not designated. ¶¶ 609–614, 665–685, 713–714, 1091. Penzini status letter to the GFC members (Nov. 15, 2024); Banco Popular–VRM Penzini Fund I (Renewable Series II) letter agreement (Nov. 14, 2024); SJ2024CV04616, Docket Entries 207 and 312. Designated as Predicate Act 9 (¶ 960); the Bank's November 14, 2024 letter agreement, signed by Penzini the day Humacao RNG was organized, was attached. |

| **Date and responsible actors** | **Communication, property and claim connection** |
|---|---|
| Jan.–July 2025 — Borschow; identified buyer and manager entities | The asset agreement, counsel engagement and demand refusals transferred assets and placed retained claims under interested control. Company losses concern undervalue, retained property and incremental impairment of enforceable claims, after consideration and debt credits. Counts IV–VIII. The securities transactions are excluded from the RICO predicate theory. Asset Acquisition Agreement (Jan. 31, 2025); GFC Board resolution dated "March 21, 2025," with the April 1, 2025 transmittal; Picó letter to Becker Whitaker (June 19, 2025); GFC Majority Members' Written Consent (July 3, 2025). |
| Feb. 7, 2025 — Humacao RNG, LLC through Penzini, as buyer; VRM Penzini Fund I, LLC Renewable Series II as payor of record under Schedule 2.9 | The closing payments on the terms the November 15, 2024 letter had set: $4,465,966 of cash, including the $321,403 holdback, to the noteholders and preferred holders listed in Schedule 2.9 — $428,417 and $332,804 to Renewable Series II itself, $528,526 to PRFG, $208,576 to CDVCA in New York — and nothing to the common holders; the closing confirmed by Borschow's March 31, 2025 notice; the payment records a discovery item. Designated as Predicate Act 11 (¶¶ 962–963). Asset Acquisition Agreement (Jan. 31, 2025), §§ 2.7–2.10 and Schedule 2.9; Borschow notice to the members (Mar. 31, 2025). |

| Date and responsible actors | Communication, property and claim connection |
|---|---|
| Mar. 31, 2025 — Borschow, as "Authorized Signatory," to GFC's members (Lassers in Uruguay; CDVCA in New York) | E-mail at 1:31 p.m. with the "Notice of Closing of Asset Acquisition Agreement and Update on Board of Managers Designations": the agreement "closed" on February 7, 2025; a new four-person Board; "certain funds have been deposited into an escrow account for the benefit of the Companies" — false, because under §§ 2.9 and 6.8 the $321,403 holdback was part of the members' own consideration, retained to fund the Approving Members' indemnity of the buyer and returned to those members pro rata; no line of Schedule 2.9 runs to either Company. Designated as Predicate Act 10 (¶ 961). Borschow communication to the GFC members (Mar. 31, 2025); Asset Acquisition Agreement (Jan. 31, 2025), §§ 2.9, 6.8. |
| Apr.–June 2026 — Borschow/Company counsel; BPPR | Company withdrawal and participation decisions followed the retained counsel's engagement; BPPR expressly endorsed counsel on May 7 and joined the relevant position. The alleged breach is the managers' interested disposition of Company rights, supported by the Bank's own endorsement. Count V and ancillary declarations; independently incurred Company loss is required. Docket 49; Asset Acquisition Agreement (Jan. 31, 2025); BGF operating-account statement, June |

| Date and responsible actors | Communication, property and claim connection |
| --- | --- |
| | 2022; Sentencia, TA2025AP00276 cons. TA2025AP00277 (June 16, 2026); TA2025AP00277, Docket Entry 19 (June 9, 2026). |
| Sept. 18, 2026 — Humacao RNG through its signing counsel | Docket Entry 312 demanded the old Company balance despite the intervening debt-credit provisions of the Asset Acquisition Agreement and quoted expanded guaranty wording. Boyd challenges Humacao's own current enforcement demand under Count X. No payment of that demand or alteration of the signed instrument is alleged. Asset Acquisition Agreement (Jan. 31, 2025); Docket Entry 312. |

**Part 8 — Certificate-level reconciliations (R01–R05)**

| Certificate / event | Reconciliation, what is and is not alleged, and sources |
| --- | --- |
| R01 — Certificate 11 classification package; Dec. 2, 2021 | Counsel's December 2, 2021 letter identifies a documentary package delivered to the Bank on November 15 concerning $174,500 of leasehold-expense provisions and $59,023 attributed to Accurate under professional and legal fees. Accurate's actual October 4 invoice describes the latter amount as generator and control hardware outside the original ITS/ASC scope. Plaintiffs challenge the classification and authorization of that equipment expense. They do not treat an |

| **Certificate / event** | **Reconciliation, what is and is not alleged, and sources** |
|---|---|
| | uninvoiced leasehold provision as necessarily fictitious. (Marsh letter to Ferrer and Coleman Tió (Dec. 2, 2021), p. 1.) |
| R02 — AIA application 007 (Nov. 1, 2021) and ESI011 progress measures | The contractor's November 1, 2021 AIA application 007 continued to report a $5 million original and current contract amount and zero change orders. It reported $4,276,644.14 completed and stored, $35,232.36 retainage, and a $677,094.76 current payment request. The application therefore maintained the unchanged contract baseline after its stated term had ended. It does not say the full $5 million had been paid. (Certificate 11 construction support, AIA application 007.) AIA007's completed-and-stored figure, $4,276,644.14, is 85.53% of its $5 million contract. ESI011's attached Gantt instead reports 52% overall progress and 39% construction progress. Those measures concern different scopes and include different categories. They are not subtracted to manufacture an overadvance. Plaintiffs seek a component-by-component comparison of the certified work, stored equipment, other eligible costs, prior advances and approved budget, under the particular direct-loan or QLICI limitation. (AIA007 p. 1; ESI011 p. 7; Credit § 2.2(a)(iv); QLICI Disbursement § 3.3(b); QLICI Disbursing Agreement (Sept. 15, 2020).) |

| **Certificate / event** | **Reconciliation, what is and is not alleged, and sources** |
|---|---|
| R03 — Certificate 13 review, validation and holdback; Mar. 9–11, 2022 | The Bank's review included requests for supporting documents. On March 9, 2022, analyst Andrés Fernández Osuna told Economou that $637,858.62 of Certificate No. 13 had been validated and sent, and requested invoices or other support before the balance could be disbursed. He identified equipment, an unallocated amount, and payroll items. Economou answered item by item the next day and agreed that the unallocated amount could be held until a purchase was identified. That exchange records review and a reported partial advance. (Certificate 13 e-mail chain, Fernández Osuna and Economou (Mar. 9–11, 2022), March 9, 6:19 p.m., and March 10, 4:59 p.m. messages.) The bank's native Certificate 13 review records validation and a holdback. It marks $964,751.43 disbursed and $22,500 of employment costs still to validate against the $987,251.43 total. The review is evidence of the Bank's active role and the specific approvals. (Biomass certificate 13 disbursement.xlsx; Certificate 13 e-mail chain, Fernández Osuna and Economou (Mar. 9–11, 2022).) Economou's March 11, 7:36 a.m. follow-up attached the Analytic Science invoice and asked for a breakdown of the $637,858.62 net Direct Loan disbursement; Fernández Osuna's March 10, 6:33 p.m. message had acknowledged the item-by-item responses for review. |

| Certificate / event | Reconciliation, what is and is not alleged, and sources |
|---|---|
| | (Certificate 13 e-mail chain, Fernández Osuna and Economou (Mar. 9–11, 2022).) |
| R04 — Certificate 14 chain and requested/approved allocation; Mar. 29–31, 2022 | The contemporaneous Certificate No. 14 chain identifies the submission and the Bank participants. On March 29, 2022, at 11:00 a.m., Economou emailed the request and listed its supporting documents to Laura Medina, copying Humberto González, Andrés Fernández Osuna, and López Vidal. On March 30, Medina asked about the missing AIA certificate. Economou answered that the request included equipment purchased directly by BGF, including Galileo and TPI, but no costs under the general-contractor contract. At 4:02 p.m., Medina stated that the invoices had been reviewed and validated and that final approval of the NMTC portion remained pending. On March 31, at 3:06 p.m., she stated that the Bank would proceed with the aggregate advance and asked for revised funding classifications. This chain corroborates Economou's later account of submission on March 29 and approval on March 31. It also supplies the explanation the Bank received for the absent AIA certificate. (Certificate 14 e-mail chain, Economou and Medina Castillo (Mar. 29–31, 2022), March 29–31 messages; No. 22-1190, Docket 50-4, ¶ 21.) Economou's March 29 request totaled \$1,484,006.16: \$661,764.85 labeled ACT 73 Equity, \$435,215.68 from QLICI loans, and \$387,025.63 from the Direct |

| Certificate / event | Reconciliation, what is and is not alleged, and sources |
|---|---|
| | Loan. The produced schedule identifies $1,029,400 for Galileo and $108,000 for TPI. Medina's March 31 response kept the aggregate amount but stated that only $434,080.68 was available in the NMTC account and requested revised classifications. The May 23 master workbook's historical Certificate No. 14 schedule records $434,080.68 from QLICI and $388,160.63 from the Direct Loan, with equity unchanged. The $1,135 shift between those two sources is consistent with the Bank's contemporaneous request for a revision. It is not, by itself, evidence that the draw was fabricated or increased. The correspondence records the requested and approved allocation; the actual account entries establish disbursement. (BGF Master Budget workbook, Certificate 14 request schedule (Mar. 29, 2022); Certificate 14 e-mail chain, Economou and Medina Castillo (Mar. 29–31, 2022), March 29, 11:00 a.m., and March 31, 3:06 p.m. messages; BGF Master Budget workbook, Certificate #15 Budget Recap (May 23, 2022), "Certificate #14," E9, E15, D39, D42–D43, D46; "Budget Recap," S7, S11–S13.) |
| R05 — Green CO2 Dominicana ownership | The July 9, 2021 Dominican statutes allocate 99 of 100 Green CO2 Dominicana SRL quotas to Puerto Rico Green CO2 LLC and one to López Vidal, who signed in both capacities. The September insurance-broker KYC repeats that structure. Those records sharpen the question |

| Certificate / event | Reconciliation, what is and is not alleged, and sources |
|---|---|
| records; July–Sept. 2021 | raised by López Vidal's written response of July 8, 2022 to the members' information request, representing that the venture was wholly owned by GFC, but do not resolve the Puerto Rico LLC's upstream ownership, beneficial arrangements or intervening transfers. Plaintiffs seek protection of the Companies' actual rights; they do not equate the SRL quota schedule with proof that GFC owned no upstream interest. |

**Part 9 — Effect of the prior judgments: retained claims, earlier decisions and present basis**

| Count | Earlier decision and the basis on which the count is presented |
|---|---|

| | |
|---|---|
| I–II — Civil RICO, 18 U.S.C. § 1962(c), (d) (Count I: BPPR; Economou; Rojo, Penzini and Diego Rodríguez; VRM Penzini Capital; Star Power; VRM Penzini Fund I and its Renewable Series II; Humacao RNG; Ponce RNG; Island Renewable Energies. Count II: the same, and Rodríguez Barnes, Álvarez, Ferrer, Borschow, Semillero Partners, Villarini, PRFG and CDVCA) | No. 22-1190, Dockets 874/876 dismissed the federal claims with prejudice for want of direct statutory injury and for particularity and derivative defects; the April 25, 2022 vendor payments are an overlapping transaction. Plaintiffs preserve the corporate theory and the added particulars for the pending appeal (No. 26-1424) and ask that Counts I–II be STAYED to the extent of that overlap (Motion, Part IV). The predicate acts of September 2020, December 2021 and April 2022, and the course of dealing through October 2023, are pleaded for the Companies, not for the individuals. Acosta Martín (sued there as Roberto A. Acosta), Accurate Solutions Corp. and Accurate Solutions & Designs, Inc. were also defendants in No. 22-1190; the claims against them there were the individual plaintiffs' and were dismissed on the same grounds; the Companies' Count II claim against them is pleaded here on the same footing as the claims against BPPR and Economou. Predicate Acts 5 through 11 (¶¶ 956–963) — the 2023 disclosures, the Ponce and Salinas developments, the November 15, 2024 letter, the March 31, 2025 notice and the February 7, 2025 payments — and the second-phase members of the enterprise were not before the court in No. 22-1190: ten of the Count I–II defendants were never parties there (¶¶ 39–43), VRM Penzini Capital and Renewable Series II appeared only as interested parties, and the March 18, 2026 opinion does not mention them. |

| Count | Earlier decision and the basis on which the count is presented |
|---|---|
| III — Breach of the financing and disbursement agreements (BPPR) | Docket 876 dismissed the Commonwealth claims WITHOUT prejudice. The February 14, 2026 motion at Docket 859 in No. 22-1190 sought judgment on the SAC's contract count and was mooted, not decided (Docket 875). Express duties owed to BGF under the Credit Agreement and the QLICI Disbursing Agreement, and the net corporate loss, have never been adjudicated. |
| IV–V — Operating Agreement and fiduciary duties; interested claim-control decisions (Borschow, Semillero Partners, Villarini, PRFG, CDVCA, Economou; Rojo and Penzini for their 2023 Board service) | Dockets 847/855 denied leave to add the 2025 sale and counsel-engagement history for delay and prejudice; Docket 874 decided derivative defects. Those events are pleaded here as context and as Commonwealth claims left undecided; the April–June 2026 decisions concerning the Companies' participation and remedies are pleaded under Rule 15(d) as new acts with their own duty and incremental injury. |

| Count | Earlier decision and the basis on which the count is presented |
|---|---|
| VI–VII — Invalidity of the asset transfers; restitution (Humacao RNG, Ponce RNG, Renewable Series II, Star Power; and, for restitution, PRFG, CDVCA, VRM Penzini Fund I in the alternative to Renewable Series II, BPPR, Semillero Partners, VRM Penzini Capital, Island Renewable Energies and Rodríguez Barnes) | The January 2025 transfer was part of the rejected amendment. Plaintiffs seek the Commonwealth remedies (31 L.P.R.A. §§ 6266(a), 6311–6318, 6331) that no court has decided on the merits, while preserving the issue effect of the authority rulings of August 12, 2025 (No. 22-1190, Docket 800), December 22, 2025 (No. 24-1569, Docket 131) and May 26, 2026 (SJ2024CV04616, Docket Entry 304). New evidence of the same sale is not treated as a new transaction. |

| Count | Earlier decision and the basis on which the count is presented |
|---|---|
| VIII — Declaratory relief (BPPR; the Manager Defendants; the Transferee Defendants) | No. 24-1569, Dockets 131/140 decided authority, standing and derivative defects and granted the Companies' dismissal notice; no BHCA count is asserted here. The declarations sought are ancillary to the retained substantive claims and the later independent acts, not review of those rulings. The fourth declaration — BGF as obligee of MAPFRE bond No. 1301208000513 and the § 2.2(d) retention — concerns a right no court has adjudicated. |
| IX — Seventh Amendment: authority, effectiveness and alternative consent relief (BPPR; Humacao RNG as assignee) | A Commonwealth claim. SJ2024CV04616, Docket Entry 248 (July 20, 2025) denied joinder of López Vidal's derivative pleading, expressly reserved its merits, and stated that the internal governance dispute did not alter the Companies' admitted debt. Count IX challenges the September 27, 2023 authorization and release provisions without reopening the December 27, 2024 partial judgment (Docket Entry 192). |
| X — Boyd's individual guaranty claim (BPPR; Humacao RNG) | The partial judgment of December 27, 2024 imposed Company debt and reserved the personal-guaranty disputes. Boyd's answer of July 12, 2024 (Docket Entry 13) alleged his own induced consent within four years of the closing; Docket Entry 242 (July 14, 2025) denied dismissal of the guaranty counterclaims and ordered their separation; the amended counterclaim so ordered was not filed, and the third-party |

| Count | Earlier decision and the basis on which the count is presented |
|---|---|
| | complaint was struck on May 26, 2026 (Docket Entry 304). Count X pleads that history plainly, the caducity question with candor, and — independently — the assignee's present scope and credit demand, which no court has decided. If that portion belongs in the Commonwealth action, Plaintiffs ask for dismissal of it without prejudice or a stay, not for federal review of the Commonwealth orders. Count X also pleads, in the alternative, the § 2308(d) limit on an Affiliate assignee's right to enforce the loan and the accessory guaranty; Docket Entry 304, Part I (May 26, 2026) denied, without stating reasons, Boyd's Rule 10.2 motion asserting that the assignment was void, and Boyd seeks no review of that order (¶ 1107). |
| XI — Misappropriation of Company trade secrets (VRM Penzini Capital, Star Power, Ponce RNG, Island Renewable Energies; Rojo, Penzini and Diego Rodríguez individually) | The January 2023 disclosures and the Ponce diversion appeared in the earlier factual allegations; the statutory theory is new but the transaction is not, and Plaintiffs invoke relation back rather than a new discovery date. The claim is subject to the actual judgments, the demand and adequacy determinations, and the three-year discovery rule of 18 U.S.C. § 1836(d). IRE's 2024 organization and its 2025–2026 marketing of the three-site platform are pleaded as later acts to be assessed separately. |

| Count | Earlier decision and the basis on which the count is presented |
|---|---|
| Non-defendant participants (Accurate Solutions Corp.; Acosta Martín; Distributed Power Innovators, JV; the López-family parties) | Their acts are pleaded as participants' acts in the chronology (¶¶ 169–176, 183, 966–971) and are not the subject of any count; the Companies have not released ASC or Acosta Martín, and the claims against the joint-venture participants are among those retained by § 2.2(d) of the Asset Acquisition Agreement (¶¶ 720–721). |

**Part 10 — The Seventh Amendment (Sept. 27, 2023): provisions, protection sought and the Company claims reached**

| **Matter addressed** | **Protection sought and related allegation** |
|---|---|
| Missed deadlines and unfulfilled conversion conditions | The attached August 18 notice states that the loan matured June 30, 2023 without repayment or conversion, after six extensions over more than 21 months, and identifies continuing noncompliance with Credit §§ 3.3–3.4. Section 2(a) adopts those Notified Defaults. Sections 1(b) and 13(a) seek surrender of the Companies' related claims and defenses. Plaintiffs allege BPPR's own continued financing and control failures contributed to the losses for which it demanded protection. Seventh Amendment and Forbearance Agreement (Sept. 27, 2023), pp. 2, 7–8, 23–25. |

| **Matter addressed** | **Protection sought and related allegation** |
|---|---|
| El Coquí contract defaults and missing bond documentation | The notice identifies two El Coquí default notices, failure to perform and pay under the May 2023 settlement, and missing evidence that its required performance bond had been submitted. These failures endangered the project's gas supply. The §§ 1(b), 13(a) releases reach related claims against BPPR for the pre-amendment course of dealing. This ECL bond requirement is distinct from the original MAPFRE construction bond. Seventh Amendment and Forbearance Agreement (Sept. 27, 2023), pp. 23–25. |
| Missing budget, reserves and completion funding | The notice lists an overdue updated annual budget, missing reserve-funding evidence and an unfunded capital call; its estimate of the in-balance deficit increased from $1 million to $2,377,751. It announces a Bank audit of the accounts. Sections 1(b), 13(a) would reach claims that BPPR knowingly permitted disbursements without the required funding controls. Seventh Amendment and Forbearance Agreement (Sept. 27, 2023), pp. 23–25. |
| The contractor-bond charge in the adopted budget | Section 3(c) replaces the Project Budget. Its attached schedule includes $70,560 for "MAPFRE Performance Bond." Plaintiffs allege that this is the $70,500 contractor premium and $60 bank fee charged to BGF at closing, despite the paid-bond prerequisite and approved-use limitations. Sections 1(b), 13(a) seek to reach the resulting loan-related |

| **Matter addressed** | **Protection sought and related allegation** |
|---|---|
| | claim. The budget entry records the expense; the original closing and payment evidence supplies the alleged deception. Seventh Amendment and Forbearance Agreement (Sept. 27, 2023), pp. 3, 16; Rodríguez Barnes closing e-mail (Sept. 14, 2020); Popular Insurance $70,560 bond-premium transfer record (Sept. 16, 2020); Credit Agreement (Sept. 15, 2020), § 3.1(h). |
| Earlier drawdowns, contractor payments and restricted-account uses | Section 13(a)(ii) reaches claims connected directly or indirectly with the loan documents or any aspect of the parties' related course of dealing. Plaintiffs allege that its scope encompasses the pleaded pre-September 27 inspection, audit, change-order, contractor-payment and tax-credit-account departures. The financial-control and transaction schedules identify the particular conduct and losses. Seventh Amendment and Forbearance Agreement (Sept. 27, 2023), pp. 7–8; Credit Agreement (Sept. 15, 2020). |
| Debt, offsets and affirmative Company claims | Section 1(a) confirms $12,869,250 principal and $81,326.51 interest. Section 1(b) makes both BGF and GFC disclaim and forever release all related defenses, offsets, claims and counterclaims, whether direct or indirect, matured or unmatured, liquidated or unliquidated. That undertaking purported to disable claims reducing or defeating the Bank's collection demand. Boyd did not sign this amendment |

| **Matter addressed** | **Protection sought and related allegation** |
|---|---|
| | personally. Seventh Amendment and Forbearance Agreement (Sept. 27, 2023), pp. 1–2, 10. |
| Challenges to the loan, liens and amendment itself | Section 13(a)(i) makes BGF disclaim grounds to challenge—and promise not to challenge—the effectiveness, genuineness, validity, collectability or enforceability of the loan documents, debt, liens, security interests or amendment terms based on acts or omissions of BPPR as Administrative Agent or any lender. This is a separate nonchallenge covenant, in addition to the release of damages claims. Seventh Amendment and Forbearance Agreement (Sept. 27, 2023), pp. 7–8. |
| The pending RICO case and litigation indemnity | Section 8(e) names No. 22-1190 and No. SJ2023CV08898. Section 13(b) expressly reaffirms BGF's Credit § 10.4 indemnity in connection with those cases. BPPR thus sought both a release and continued contractual protection for related litigation expenses. The incorporated § 10.4(c) excludes indemnity to the extent expenses result from the protected party's gross negligence or willful misconduct; § 13(b) does not expressly remove that exclusion. Seventh Amendment and Forbearance Agreement (Sept. 27, 2023), pp. 6, 8; Credit Agreement (Sept. 15, 2020), pp. 114–115. |

| **Matter addressed** | **Protection sought and related allegation** |
|---|---|
| All remedies, unknown claims and the historical cutoff | BGF's § 13(a)(ii) release includes claims, cross-claims, counterclaims, setoff, recoupment, defenses, causes of action, demands, suits, costs, expenses and damages, at law or equity. It covers known or unknown claims, including later-arising claims based wholly or partly on facts existing or occurring on or before September 27, 2023 and connected with the specified lending relationship. Seventh Amendment and Forbearance Agreement (Sept. 27, 2023), p. 8. |
| Protected parties, hold harmless and survival | Section 13(a)(ii) benefits the Administrative Agent and each lender, their subsidiaries and affiliates, and their successors, assigns, officers, directors, employees, agents, attorneys and other representatives. BGF also agrees to hold them harmless against the defined claims. Section 13 survives termination of the Credit Agreement and full payment. Thus repayment would not itself restore surrendered Company claims. Seventh Amendment and Forbearance Agreement (Sept. 27, 2023), p. 8. |
| Ratification of debt, liens, corporate guaranty and pledge | Sections 9(c), 10 and 11 preserve and ratify existing loan documents and liens, GFC's corporate guaranty and membership-interest pledge, and disclaim extinctive novation of BGF's obligations. These acknowledgments reinforce enforcement of the Bank's debt and |

| **Matter addressed** | **Protection sought and related allegation** |
|---|---|
| | collateral rights while the Companies relinquish claims. Seventh Amendment and Forbearance Agreement (Sept. 27, 2023), pp. 6–7. |
| Bank remedies despite delay and forbearance | Sections 2(d), 9(d) reserve lender rights and deny that the amendment establishes acquiescence in defaults, a course of dealing, a duty to extend further credit, or defenses and counterclaims to collection. The attached notice likewise disclaims waiver from delay and discussions. The Bank's temporary forbearance therefore did not purport to release its own collection rights. Seventh Amendment and Forbearance Agreement (Sept. 27, 2023), pp. 2, 6–7, 26. |
| Project cash and collateral objections | Section 12 treats project rents, income, revenues, accounts, receipts and profits as bankruptcy cash collateral; restricts use without consent or court order; and makes BGF and GFC waive contrary assertions to the fullest lawful extent. It also purports to recognize perfection and enforcement of the relevant lien. Seventh Amendment and Forbearance Agreement (Sept. 27, 2023), p. 7. |
| Expenses of obtaining and enforcing the protections | Sections 7(c), 14 require accrued fees and expenses and payment of preparation, administration and enforcement costs, including specified counsel fees. BPPR later requested $222,238.88 in federal-case legal expenses; the Companies disputed that item and the December 27 |

| Matter addressed | Protection sought and related allegation |
|---|---|
| | partial judgment did not award it. Section 14 also requires disclosure of values in new collateral appraisals. Seventh Amendment and Forbearance Agreement (Sept. 27, 2023), pp. 5, 8; SJ2024CV04616, Docket Entry 162; SJ2024CV04616, Docket Entry 192 (Dec. 27, 2024); Guaranty Agreement (Sept. 15, 2020), Docket 50-5; SJ2024CV04616, Docket Entry 50 (Aug. 12, 2024). |
| Electronic-signature and jury-trial objections | Section 15 recognizes emailed counterparts and electronic signatures and bars an objection based solely on electronic execution. Section 18 incorporates the original governing-law, venue and jury-waiver provisions. Neither supplies missing Company authority merely because a signature exists. These are additional procedural waivers, distinct from the substantive claims released above. Seventh Amendment and Forbearance Agreement (Sept. 27, 2023), pp. 8–9. |

**Part 11 — Valuation components and their treatment in the Company claim**

| **Valuation component** | **Supported treatment in the Company claim** |
|---|---|
| El Coquí operating assets | The valuation of September 22, 2026 and its Addendum A were prepared by Gregory Boyd, who verifies them with the Complaint; they state Plaintiffs' current estimate on stated assumptions, and final values will be proved through expert testimony (¶¶ 692–711, 850–855). Value RLNG and CO2 together; deduct the 14.5% product royalty, contract minimum where applicable, operating expenses, sustaining and completion capital, working capital and cash taxes. Existing equipment is part of that going-concern value, not a second additive asset value. |
| Remaining term and prices | Use the relevant loss date and actual contract term. The initial El Coquí term ends in December 2043; renewal scenarios and higher merchant prices are separately identified. Limited-volume customer contracts do not establish a full-output, 31-year take-or-pay sale. |
| Environmental and tax attributes | Include only Company-owned, eligible, realizable net benefits. Do not add customer-transferred attributes, speculative RINs, or unqualified CO2 utilization credits to the product price. |

| Valuation component | Supported treatment in the Company claim |
|---|---|
| Ponce and Salinas | Value the Ponce and Salinas opportunity as the developed value of the two sites to BGF on the Humacao commercial structure (Boyd valuation, Addendum A (Sept. 22, 2026)): IRE's published volumes, the $21.50 residual methane price, the 14.5% royalty to EC Waste, operating costs, $30 million of greenfield capital and a three-year delay to commercial operation, discounted at 10% — $92,000,000 — the three-site platform value ($187,000,000 or $270,000,000) applies only if the Humacao diversion is also proved and is not added to the two-site figure. No $CO_2$ output for either site is inferred from Humacao's capacity. |
| Asset Acquisition Agreement economic credit | Credit the $13 million debt reduction, the $4,465,966 cash component to the extent performed for the Companies' benefit, nonduplicative assumed obligations, and the economic value of conditional cancellation. The $321,403 holdback is already in the cash component. |
| Company recovery and member return | Deduct valid net debt and other senior claims once when moving from enterprise value to equity. Apply Company expenses, reserves and preferred rights before calculating Boyd's and Lassers' residual distributions. |

**Part 12 — Defendant schedule: retained counts and the conduct attributed to each defendant**

| **Defendant** | **Conduct, count and injury** |
| --- | --- |
| BPPR | I–II: Predicate Acts 1–4 (¶¶ 952–955); member of the enterprise throughout (¶¶ 910–923) — in the second phase its loan sale at an undisclosed price, the release it wrote into the sale, the $13,000,000 credit taken against the loan the buyer held, and the collection left to the buyer (¶¶ 913–923, 1055–1070); III: express financing duties; VII–IX: actual benefits and disputed releases; X: own inducement of Boyd. Injuries: net Company payments/financing loss and Boyd's separate consent/scope controversy. September 27, 2023: Medina's execution accepting the challenged § 8(a) authority representation to procure §§ 1(b), 13(a)–(b) waivers and indemnity, with Company recovery rights as the alleged target; see Schedule A, Part 10, and Count IX. |
| Economou | I–II: Predicate Acts 3 and 4 (¶¶ 954–955) — the Certificate 14 eligibility submission and its implementation; IV: financial-office duties and the identified reports. Injury: BGF payments and resulting completion loss. |

| Defendant | Conduct, count and injury |
|---|---|
| Borschow | IV–V, VIII: his sale/counsel consents and refusals while adverse claims and interests existed; approval of a sale that breached the Companies' covenants in Credit Agreement §§ 5.2(e)–(g) (¶ 1084); the unpursued bond remedy (¶¶ 571–580, 1031–1038). Injury: Company rights and property impaired by his decisions. II: agreement pleaded from his own acts (¶ 1075) — the September 11, 2023 consent; the January 31, 2025 written consent; the March 31, 2025 notice to the members, designated as Predicate Act 10 (¶ 961); the engagement of counsel within days of that notice. |
| Semillero Partners | IV–V, VII–VIII: Borschow's alleged agency acts for Partners' management interests; restitution only for Partners' own receipt. II: agreement pleaded from the February 17, 2023 proposal's "Leading Fund" and advisory-fee terms and from Borschow's acts as its principal (¶ 1075). |

| **Defendant** | **Conduct, count and injury** |
|---|---|
| Villarini | IV, VIII: identified manager conduct during service; resignation February 14, 2025 limits later attribution. Injury: Company rights affected by his own decisions. II: agreement pleaded from his own acts as PRFG's and CDVCA's designee (¶ 1076) — the September 11, 2023 consent; the January 31, 2025 consent; receipt of the November 15, 2024 letter and silence about its changed terms; the February 14, 2025 resignation. |
| Humacao RNG | VI–VIII: buyer, asset recipient and claimed release beneficiary. IX: declaration concerning the Seventh Amendment rights it asserts by assignment. X: its own later collection demand and lawful scope/credits; the § 2386(a) burden and limit on the deficiency; and, in the alternative, whether it may enforce the guaranty at all if it was an Affiliate of the Borrower when it acquired the loan (19 L.P.R.A. § 2308(d); ¶¶ 665–685, 1107). VI: its parent's November 15, 2024 announcement and the acceptance of the collateral without a § 2381(b) proposal (¶¶ 609–614, 656–664, 1091). I–II: member of the enterprise from 2023 (¶ 910); Predicate Act 11, the February 7, 2025 closing payments, as buyer through Penzini (¶¶ 962–963); answerable with the group for Predicate Acts 5–11 (¶ 1074). |

| **Defendant** | **Conduct, count and injury** |
|---|---|
| Ponce RNG | VI–VIII: identified receipt and control of Ponce gas rights. Restoration or net value of Company-owned rights. XI: knowing receipt and use of the alleged Company Ponce development information, with attributable loss or enrichment. I–II: member of the enterprise (¶ 910); Predicate Act 8 — receiving, holding and using the Ponce information and opportunity, 18 U.S.C. § 1832(a)(3) (¶ 959). |
| Renewable Series II | VI–VIII: buyer parent and identified acquisition/control acts, including the November 15, 2024 letter and the Control facts pleaded in ¶¶ 665–685 — among them its own April 12, 2023 Convertible Note Purchase Agreement, which named the Companies' three managing officers and reserved to it the approval of every off-schedule use of funds (§§ 1.2, 5.7); Company-property and restitution remedies for its own conduct/receipt. I–II: member of the enterprise (¶ 910); Predicate Act 9 (the November 15, 2024 letter, ¶ 960) and Predicate Act 11 (payor of record under Schedule 2.9, ¶¶ 962–963). |

| **Defendant** | **Conduct, count and injury** |
|---|---|
| Star Power Systems | VI–VIII: identified confidentiality/acquisition and gas-rights conduct; Company-owned property and benefits only, excluding EFB's independent loss. XI: receipt and alleged misuse through the identified 2023 disclosures and competing development sequence. I–II: member of the enterprise (¶ 910); Predicate Acts 5–8 through Rojo, Penzini and Diego Rodríguez (¶¶ 956–959). |
| VRM Penzini Capital; Island Renewable Energies | VII: each identified recipient's own allegedly unjust benefit from the pleaded transaction. XI additionally names Capital and IRE for their separately alleged receipt and use of Company trade secrets. I–II: both members of the enterprise (¶ 910); Capital — Predicate Acts 5–8 through the three men (¶¶ 956–959); IRE — Predicate Act 8, receiving, holding and using the compilation in its three-landfill platform (¶ 959). |
| Rodríguez Barnes | II: agreement to the financing scheme — the September 14, 2020 closing instruction (Predicate Act 1) and approval, as loan officer, of every release from the closing through September 2021, including the four releases with no inspection; VII: the 2019 personal loan repayment, net of lawful debt and charges. His closing acts are also attributed to BPPR for Predicate Act 1 and Boyd's consent claim (X). |

| Defendant | Conduct, count and injury |
|---|---|
| Álvarez | II: signed, as President and Chief Executive Officer of Popular, Inc. and the Bank, and a lawyer, the July 18, 2022 RLNG Purchase, Sale and Delivery Agreement — $14 per MMBtu, the environmental credits "retained by Buyer" without charge, an offset right against BGF's arrears — the day before PMA circulated the Third Amendment, with the first RICO action pending against the Bank (served April 29, 2022), BGF in payment default since April 1, 2022 (the Third Amendment of July 26, 2022 recites $101,940.13 past due) and the plant certified 39% built; the Bank's benefit from the scheme; joined with knowledge of what had gone before and with intent to pursue its object; the Bank continued to fund, amend and release during his tenure (July 2017–June 2025), pleaded as the conspiracy's conduct during his participation. Injury: the Companies' injury from the Predicate Acts 1–4, for which he is answerable with his co-conspirators. BGF–Banco Popular RLNG Off-Take Agreement (July 18, 2022); Third Amendment to Credit Agreement (July 26, 2022); esi Inspection Certificate 011 (Nov. 12, 2021). |

| **Defendant** | **Conduct, count and injury** |
|---|---|
| Ferrer | II: addressee, as General Counsel, of the November 11, 2021 e-mail and the December 2, 2021 letter — the November 7 independent inspection, the misrepresentations in the drawdown certificates, the missing audits, the loan officer's personal loans and the release of the pending drawdown before the scheduled inspection; the $677,094.76 released the next day; the December 20 assurance sent by the firm he co-founded (Predicate Act 2); Draw 14 and Predicate Acts 3 and 4 on the same method. Injury: the Companies' net payment and financing losses from the releases after November 11, 2021. |
| PRFG; CDVCA | IV: manager decisions taken through Villarini, the designee who held PRFG's seat (its resignation letter: PRFG "will not be appointing a replacement manager"), including the January 31, 2025 sale consent; VII: receipt of $528,526 (PRFG) and $208,576 (CDVCA) under Schedule 2.9 of the Asset Acquisition Agreement; VIII: declarations concerning the sale. Asset Acquisition Agreement (Jan. 31, 2025); GFC Board Written Consent approving the Asset Acquisition Agreement (Jan. 31, 2025); PRFG resignation letter from the GFC Board (Feb. 14, 2025). II: agreement through Villarini (¶ 1076); CDVCA, in New York, received the November 15, 2024 and March 31, 2025 e-mails and the February 7, 2025 payment across state lines. |

| **Defendant** | **Conduct, count and injury** |
| --- | --- |
| VRM Penzini Fund I, LLC | VII, in the alternative to Renewable Series II: the limited liability company named on the Schedule 2.9 payee line "VRM Penzini Fund I L.L.C. – Renewable Series II" ($428,417 note payment; $332,804 preferred payment) — one receipt, pleaded against the series and, alternatively, the company. Asset Acquisition Agreement (Jan. 31, 2025). I–II: with its Renewable Series II (¶ 910). |
| Rojo; Penzini | IV: service on GFC's Board in 2023, including the September 11, 2023 board consent that produced the BGF restatement; XI: personal signatories of the January 18, 2023 confidentiality agreement and recipients of the disclosures through which the Companies' information was obtained and used; Penzini additionally signed the November 14, 2024 Bank letter agreement and the Asset Acquisition Agreement for Humacao RNG. NDA (Jan. 18, 2023); Schedule A, Part 13; Banco Popular–VRM Penzini Fund I (Renewable Series II) letter agreement (Nov. 14, 2024); Asset Acquisition Agreement (Jan. 31, 2025). I–II: members of the enterprise (¶ 910); Rojo — Predicate Acts 5 and 6 (¶¶ 956–957); Penzini — Predicate Acts 6, 7, 9 and 11 (¶¶ 957–958, 960, 962–963); each answerable with the others for Acts 5–11 (¶ 1074). |

| **Defendant** | **Conduct, count and injury** |
|---|---|
| Diego Rodríguez | XI: personal signatory of the January 18, 2023 confidentiality agreement and recipient of the 2023 disclosures; liable for his own acquisition, disclosure and use. NDA (Jan. 18, 2023); Schedule A, Part 13. I–II: member of the enterprise (¶ 910); Predicate Acts 6 and 7 (¶¶ 957–958); answerable with the others for Acts 5–11 (¶ 1074). |

**Part 13 — The** 2023–2025 **communications through which** the VRM-Penzini group **obtained the** information and took the property, and which of them are designated as predicate acts

| **Date and medium** | **Disclosure or statement** |
|---|---|
| January 18, 2023 — e-mail (9:18 a.m. and 10:42 a.m.) | Confidentiality and Non-Disclosure Agreement, signed by Rojo, Rodríguez and Penzini for VRM Penzini Capital d/b/a Star Power Systems and returned by VRM's counsel by e-mail; forwarded to Boyd and Lassers. §§ 2.A (no use outside the Business Purpose) and 8 (no soliciting of introduced clients and investors). Designated: no — relied on. |
| January 19, 2023 — e-mail (5:04 p.m.), Dropbox | Lassers sends the due-diligence Dropbox link and password from Uruguay to Penzini, Rodríguez and Rojo. Rojo, January 20: "Yes, we got it." Designated: no — relied on. |
| January 22, 2023 — video conference (10:30 a.m., Rojo's account) | Sunday call. The EC Waste second default notice and the proposed amended complaint added to the Dropbox the same day. Designated: no — relied on. |
| January 24, 2023 — letter (finalized 6:28 p.m.) | VRM's letter of intent to the GFC Board: $3.2 million of preferred units; first right of refusal to a majority; exclusivity to April 30, 2023. Not shown to Boyd and Lassers. Designated: no — falsity of Act 5. |

| | |
|---|---|
| January 26, 2023 — meeting in VRM's San Juan conference room with video conference | Regeneration Partners presentation (Boyd in person; Lassers, Penzini and Rodríguez by Zoom). Rojo: "We want to be your partners — we will only work with you two to acquire this project," and "You have our commitment that we will not go around you." Designated: Act 5. |
| February 5–6, 2023 — e-mail | Negotiation of the non-circumvention covenant. Rojo: VRM will not be "tied up" as to other opportunities "in other places." Boyd: the complete strategies are not yet disclosed; "[o]nly Humacao and Ponce have EPA complaint [sic] landfill gas systems." Designated: no — relied on. |
| February 8–9, 2023 — e-mail; video conference (2:00 p.m.) | Rojo fixes the scope (6:20 p.m.); redline (7:17 p.m.); clean version (9:25 a.m.); the First Amendment to the NDA signed by e-mail (11:24 a.m., 12:35 p.m., 12:37 p.m., 2:43 p.m.) — effective February 9, 2023; Humacao and Ponce; Regeneration Partners, LLC added. Status meeting and Zoom call at 2:00 p.m.; Rojo: "now we have a plan to get control of BGF." Designated: Act 6. |
| February 17, 2023 — proposal to the Board | VRM's Emergency Capital Contribution Proposal: direct dealings with EC Waste and the Bank; Zavala as VP and COO; VRM to be paid Semillero's advisory fees; first right of refusal to 25%. Designated: no — falsity of Act 6. |

| | |
|---|---|
| February 20, 2023 — video conference (5:00 p.m.) | Status call three days after the proposal, on counsel's Zoom account; the banking and financial strategies disclosed under the First Amendment continue. Designated: no — relied on. |
| March 15, 2023 — meeting at VRM's office (11:00 a.m.–1:00 p.m. AST) with video conference | Calendar entry "At VRM Office"; agenda "Meeting Agenda 15th March 2023 VRM Regeneration Partners"; Lassers sends the agenda, the due-diligence list and the acquisition cost model and presents the projections by Zoom from Uruguay; Boyd and Rojo in the room; Penzini and Diego Rodríguez from Miami; Penzini questions the inputs; the § 11.20 gas rights for Ponce and Salinas set out in the pro forma. Designated: Act 7. |
| March 27, 2023 — meeting ("Plan B") | Boyd presents the control strategy if the settlement fails. Mediation Agreement of March 27, 2023. Designated: no — evidence only. |
| April 15 / June 24 / July 3, 2024 — registry | IRE incorporated (Delaware); Ponce RNG organized; IRE registered in Puerto Rico. EC Waste agreements for Ponce and Salinas follow (the Companies are not parties; the agreements and their dates are a discovery item). Designated: Act 8. |
| September 10, 17 and 20, 2024 — letter; e-mails; vote | VRM's letter of intent; López Vidal's transmittal of the three letters; the exclusivity vote; Rojo's cap-table e-mail. Designated: no — relied on. |

| | |
|---|---|
| November 14–15, 2024 — letter agreement; e-mail to the members | Humacao RNG organized (10:56 a.m.); the Bank's letter agreement signed by Penzini; Penzini's letter to the members: recovery cut to $4.1 million, all of the cut on the common holders; "VRM now holds comprehensive rights … as the sole secured lender." Designated: Act 9. |
| January 31 and February 7, 2025 — consent; agreement; wires | The written consent; the Asset Acquisition Agreement; the closing and the Schedule 2.9 payments, confirmed by Borschow's March 31, 2025 notice; payment records from discovery. Designated: Act 11. |
| March 31, 2025 — e-mail to the members (1:31 p.m.) | Borschow announces the closing and the new Board and says funds were deposited in escrow "for the benefit of the Companies." Designated: Act 10. |

**Part 14 — Releases by instrument and claimant: releasor, beneficiary, covered claims, consideration, authority, governing law, ground pleaded and count**

| **Instrument and claimant** | **Releasor, beneficiary, covered claims, consideration, authority, governing law, ground pleaded and count** |
|---|---|
| Credit/QLICI — BGF | Not a release. BGF's express disbursement and account rights under Credit Agreement §§ 2.2, 2.9(d), 2.13 and 6.3.7 and the QLICI Disbursing Agreement §§ 3.1, 3.3–3.4: damages and an accounting for the net loss; alternative resolution only for an essential reciprocal undertaking, with mutual restitution and credit for funds and value received. Credit Agreement § 10.4(c) and guaranty § 10(b) are applied with their final-nonappealable-judgment terms. Count III. |
| Closing condition — BGF | Not a release. The paid full-cost bond condition of § 3.1(h); challenge to the Agreement's effectiveness and to the initial advance absent the written waiver § 10.1(a) required. Received funds and any ratification remain part of the relief. Count III; Boyd's separate consent claim, Count X. |

| **Instrument and claimant** | **Releasor, beneficiary, covered claims, consideration, authority, governing law, ground pleaded and count** |
|---|---|
| First Amendment to Credit Agreement (May 6, 2021), § 1(b) — BGF, GFC and the Personal Guarantors, including Boyd | RELEASOR: the Borrower and the Guarantors — López Vidal for BGF and GFC; Boyd as a named Personal Guarantor. BENEFICIARY: the Bank. COVERED: defenses, offsets, claims and counterclaims related to the outstanding indebtedness "as of the date hereof," with ratification of the Loan Documents and of the Personal Guaranties (§§ 6(c), 7). CONSIDERATION: the $812,500 revolving facility for the standby letter of credit securing the Act 73 tax-credit bond (§ 2); no extension of the construction deadline. AUTHORITY: approved by the Board on April 15, 2021; Boyd signed at PMA's offices on May 6, 2021. LAW: the former Civil Code (obligations of September 2020). GROUND: Boyd — the release and ratification were procured by the same concealment that induced the guaranty, and a release given without knowledge of the cause of nullity, while that cause continued, is not a confirmation (former § 3522; ¶¶ 1111–1112; Count X). The Companies — null as to liability for the Bank's deliberate nonperformance (former § 3019), and challenged as procured by the Bank's concealment of its own closing and release records (¶¶ 1080, 1082; Count III). The facility and the letter of credit are credited. |

| | |
|---|---|
| Second through Sixth Amendments (Mar. 2, 2022; June 1, 2022 letter; July 26, 2022; Nov. 8, 2022; Jan. 5, 2023; Apr. 27, 2023), §§ 1(b)–(c) — BGF and GFC | RELEASOR: the Borrower and the Guarantors as each instrument defines them; Boyd was omitted from the Personal Guarantors from the Second Amendment on, signed none of them and objected in writing to the Third, Fourth and Fifth (¶¶ 321–323, 474). BENEFICIARY: the Bank. COVERED: acknowledgments of the debt and of the absence of defenses, offsets and claims "as of the date hereof," and, in the Sixth, § 1(c), a release of loan-related claims; each reaches the claims then existing against the Bank. CONSIDERATION: extensions of a commitment period that had already expired when each was signed (Part 6) and, in the Fourth, $1,000,000 of added commitment. AUTHORITY: approved by the Companies' governing bodies over Boyd's votes (¶¶ 519–524); want of authority is not the ground pleaded for these six instruments. LAW: the former Civil Code for the September 2020 obligations; the 2020 Code's § 9316 for instruments that postdate November 28, 2020. GROUND: null as to liability for the Bank's deliberate nonperformance (former § 3019; § 9316); challenged as procured by the Bank's concealment of its own release records — the releases made before the required inspections and the unmet § 3.1(h) condition, which the Bank denied in writing on December 20, 2021 (¶¶ 321–323, 1080, 1082; Count III). Credit for the forbearance actually received. |

| **Instrument and claimant** | **Releasor, beneficiary, covered claims, consideration, authority, governing law, ground pleaded and count** |
|---|---|
| Seventh Amendment and Forbearance Agreement (Sept. 27, 2023), §§ 1(b), 13(a)–(b) — BGF and GFC | RELEASOR: BGF and GFC, each by Zavala as "Authorized Representative"; no board of either Company approved the instrument (¶¶ 519–524, 554–560). BENEFICIARY: the Bank, its subsidiaries, affiliates, officers, employees, agents and attorneys (§§ 1(b), 13(a)); § 13(b) reaffirms BGF's indemnity for the Bank's defense of No. 22-1190. COVERED: all loan-related claims through September 27, 2023 (Part 10). CONSIDERATION: at most thirty-four days of conditional forbearance, to October 31, 2023, on a $2.8 million capital-raise condition (¶¶ 550–552). AUTHORITY: none validly conferred; the certified resolutions § 7(a)(ii) required were never delivered, and no later minute, consent or ratification supplied them (¶¶ 554–567). LAW: the 2020 Code — 31 L.P.R.A. §§ 6263, 6266(a) (inoponibilidad), 6268 (no ratification), 6311–6318. GROUND: want of representative authority (principal); alternatively, concealment of the restricted-account departures when the releases were obtained (¶ 1103). Count IX. No automatic discharge of the adjudicated Company debt; credit for any actual forbearance benefit. |

| **Instrument and claimant** | **Releasor, beneficiary, covered claims, consideration, authority, governing law, ground pleaded and count** |
|---|---|
| Asset Acquisition Agreement (Jan. 31, 2025), § 3.6(c) — BGF and GFC as Sellers | RELEASOR: GFC and BGF as Sellers, by Borschow as Authorized Signatory under the January 31, 2025 Board consent. BENEFICIARY: BPPR and its attorneys; the Bank signed nothing (§ 3.6(c); ¶ 1099). COVERED: the defined claims against the Bank, including those pleaded in Counts I–III and IX; § 3.6(c) also confirms and ratifies the Seventh Amendment release (¶¶ 568–570). CONSIDERATION: none separately identified for the release; the transaction's consideration ran to the buyer's own loan and to the noteholders and preferred holders (¶¶ 648–652, 702–711). AUTHORITY: a Board consent that approved an agreement materially different from the letter of intent the members had voted on; no § 5.1(f) approval evidence; interested signers (¶¶ 624–637, 713–714, 1084). LAW: 31 L.P.R.A. §§ 6266(a), 6311–6318, 6331; Credit Agreement §§ 5.2(e)–(g); GFC Operating Agreement §§ 4.2(j), 6.4, 9.1. GROUND: excess of authority and interested approval — inopposability and invalidity with reciprocal restoration (Counts IV–VI, VIII). The express Bank release is challenged, not ignored. |

| **Instrument and claimant** | **Releasor, beneficiary, covered claims, consideration, authority, governing law, ground pleaded and count** |
|---|---|
| September 2020 guaranty — Boyd | OBLIGOR: Boyd. BENEFICIARY: the Lenders and the Bank as Administrative Agent, and their successors, transferees and assigns (§§ 1, 6). COVERED: BGF's obligations under the Credit Agreement, as extended and restructured (§ 3(e)–(g)). CONSIDERATION: the financing. LAW: the former Civil Code; former § 3512 (four years from consummation for dolo). GROUND: dolo in the inducement — the unpaid premium and the deficient coverage concealed at closing (¶¶ 1108–1109); alternatively the actual scope of the undertaking, the credits the law requires (¶¶ 815–823, 1106), the § 2381(b) proposal never sent and the § 2386(a) burden and limit, and, in the alternative, the Eligible Assignee bar (¶ 1107). Count X. The 2024 answer and counterclaim preserve the timely claim (¶ 1115); the 2026 filing and later discovery do not by themselves restart the period. |

**Part 15 — What is new since Docket 1**

This Part is a concordance between the Complaint filed February 7, 2026 (Docket 1) and this Complaint, prepared from a paragraph-level comparison of the two pleadings. Table A lists the matter that has no counterpart in Docket 1. Table B lists the propositions pleaded in both and restated here as the Companies' claims. Table C lists the propositions this Complaint revises or

expands. Table D lists each count of Docket 1 and its treatment here. The Part states locators only; nothing in Docket 1 is adopted by reference.

**Table A — New matter**

| Subject | This Complaint | Treatment |
|---|---|---|
| Introduction and the answer to the Court's duplication concern | ¶¶ 1–81 | New |
| The 2026 acts and judicial developments (Preliminary Statement) | ¶¶ 119–131 | New |
| Supersession of Docket 1; nothing adopted by reference (Rule 15) | ¶ 182 | New |
| Accurate Solutions Corp. and Acosta Martín described as participants, not defendants; their certifications as the construction-side counterpart of the scheme | ¶¶ 169–175; ¶¶ 966–971 | New |
| Island Renewable Energies, LLC as a defendant | ¶¶ 161–162; Count XI, ¶¶ 1117–1122 | New |

| Subject | This Complaint | Treatment |
|---|---|---|
| The Bank’s endorsement of Abesada; the joint requests; the September 2026 demand | ¶¶ 772–829 | New |
| The Ponce and Salinas valuation (Addendum A) | ¶¶ 850–855 | New |
| Continuous ownership; demand, refusal and futility; adequacy; verification | ¶¶ 1014–1047; Verifications | New |
| Count V (claim-control decisions), Count IX (Seventh Amendment) and Count X (Boyd’s guaranty) as separate counts | Count V, ¶¶ 1087–1089; Count IX, ¶¶ 1101–1104; Count X, ¶¶ 1105–1116 | New |
| The MAPFRE bond: BGF as obligee, the performance conditions, the work stoppage and the absence of a Notice of Intention; the claims retained by § 2.2(d) of the Asset Acquisition Agreement; counsel’s representation of the surety | ¶¶ 182, 571–580, 720–721, 784–785, 1031–1038; Count VIII, ¶ 1099; Prayer D(iv), B | New |

| Subject | This Complaint | Treatment |
|---|---|---|
| The 2024 investor alternatives: the Bank’s June 19, 2024 consent-judgment condition; the three September 2024 letters of intent and the September 20 vote; the Companies’ comparison of the Cambrian/Cabrer and VRM proposals; VRM’s November 15, 2024 statements | ¶¶ 598–614; Count IV, ¶ 1084 | New |
| The loan documents’ sale rule and the Chapter 9 rules on acceptance of collateral; the Eligible Assignee term and the Control facts, including the April 12, 2023 Convertible Note Purchase Agreement’s management, use-of-proceeds, access and consent covenants, the Board’s non-approval of Zavala as CEO and his December 4, 2023 resignation “from the Position of CEO at GFC”; the § 2386 burden and the alternative § 2308(d) declaration | ¶¶ 510–518, 561–567, 656–685, 713–714; Count VI, ¶ 1091; Count X, ¶¶ 1106–1107, 1116; Prayer F(iv)–(v) | New |

| Subject | This Complaint | Treatment |
|---|---|---|
| Preservation of the identified disputed assets and gas rights pending judgment: Rule 65 as intermediate relief of the same character as the restitution sought; in the alternative, Rule 64 with Rules 56.1, 56.4 and 56.5 of the Puerto Rico Rules of Civil Procedure (annotated prohibition on transfer of registrable rights; order not to transfer, encumber or remove the identified assets), after notice and a hearing, limited to those assets, without restricting ordinary-course operation, with security as the Court fixes; restitution in value only where return in kind has become impossible | Count VI, ¶¶ 1092, 1094; Prayer C | New |
| The one enterprise restated: Banco Popular throughout; Economou; the VRM-Penzini group from 2023 in the Lópezes' place; the Bank's own return from the plant as its purpose | ¶¶ 910–951 | New |

| Subject | This Complaint | Treatment |
|---|---|---|
| Predicate Acts 5 through 11: the January 26, 2023 promises; the February 9, 2023 First Amendment and call; the March 15, 2023 meeting; Ponce RNG and IRE; the November 15, 2024 letter; the March 31, 2025 notice; the February 7, 2025 payments | ¶¶ 956–963; ¶¶ 977–997; Count I, ¶¶ 1054–1063; Count II, ¶¶ 1064–1076 | New |
| The First Amendment to the Confidentiality and Non-Disclosure Agreement of February 9, 2023 (Regeneration Partners, LLC as Disclosing Party; Humacao and Ponce; the non-use covenant) | ¶¶ 492–495, 840–843 | New |
| The VRM-Penzini defendants in Counts I–II; Borschow, Semillero Partners, Villarini, PRFG and CDVCA in Count II | Count I, ¶¶ 1054–1063; Count II, ¶¶ 1064–1070, 1074–1076 | New |

| Subject | This Complaint | Treatment |
|---|---|---|
| The securities-fraud restriction applied to each designated act; domestic injury; the added defendant's own timeliness; the releases analyzed instrument by instrument (Schedule A, Parts 3 and 14) | ¶¶ 907–909, 942–951, 973–975, 985–997, 1055–1063, 1082 | New |

**Table B — Propositions pleaded in both complaints**

| Ref. | Docket 1 | This Complaint | Treatment |
|---|---|---|---|
| M001 | ¶ 224; ¶ 230 | ¶¶ 227–230 | Restated |
| M002 | ¶ 120; ¶ 121 | ¶¶ 145–146 | Restated |
| M003 | ¶ 157; ¶ 186; ¶ 262 | ¶ 147 | Restated |
| M004 | ¶ 137; ¶ 138 | ¶¶ 163–167 | Restated |
| M005 | ¶ 140; ¶ 944 | ¶¶ 153–160 | Restated |
| M006 | ¶ 230 | ¶¶ 231–233 | Restated |
| M007 | ¶ 956 | ¶¶ 208–209 | Restated |

| Ref. | Docket 1 | This Complaint | Treatment |
|---|---|---|---|
| M008 | ¶ 55; ¶ 56; ¶ 959; ¶ 960 | ¶¶ 220–223 | Restated |
| M009 | ¶ 257 | ¶ 236 | Restated |
| M010 | ¶ 340; ¶ 341; ¶ 574 | ¶¶ 240–244 | Restated |
| M011 | ¶ 386; ¶ 615 | ¶¶ 276–281 | Restated |
| M012 | ¶ 149; ¶ 433; ¶ 434 | ¶¶ 305–307 | Restated |
| M013 | ¶ 522 | ¶¶ 324–327 | Restated |
| M014 | ¶ 448; ¶ 753 | ¶ 186 | Restated |
| M015 | ¶ 506 | ¶¶ 396–397 | Restated |
| M016 | ¶ 764; ¶ 874; ¶ 876 | ¶¶ 431–435 | Restated |
| M017 | ¶ 640; ¶ 650 | ¶ 458 | Restated |
| M018 | ¶ 802 | ¶ 465 | Restated |
| M019 | ¶ 242; ¶ 833 | ¶ 473 | Restated |
| M020 | ¶ 16; ¶ 907; ¶ 1051 | ¶¶ 492–495, 840–843 | Restated |

| Ref. | Docket 1 | This Complaint | Treatment |
|---|---|---|---|
| M021 | ¶ 919 | ¶¶ 527–532 | Restated |
| M022 | ¶ 948 | ¶¶ 561–570, 645–647, 718–722 | Restated |
| M023 | ¶ 943 | ¶ 712 | Restated |
| M024 | ¶ 946 | ¶ 717 | Restated |
| M025 | ¶ 484; ¶ 485 | ¶¶ 163–167, 1097 | Restated |
| M026 | ¶ 1062 | ¶¶ 1098–1100 | Restated |
| M027 | ¶ 1087; ¶ 1089 | ¶¶ 1095–1096 | Restated |
| M028 | ¶ 1002 (occ. 2) | Prayer for Relief ¶¶ H–I; Jury Demand | Restated |
| M029 | ¶ 329; ¶ 334 | ¶¶ 90–95, 237–239 | Restated |

**Table C — Propositions revised or expanded in this Complaint**

| Ref. | Docket 1 | This Complaint | Treatment |
|---|---|---|---|
| I001 | ¶ 93; ¶ 115; ¶ 116; ¶ 120; ¶ 121; ¶ 1017; ¶ 1018 | ¶¶ 2, 142–146, 203 | Revised |

| Ref. | Docket 1 | This Complaint | Treatment |
|---|---|---|---|
| I002 | ¶ 93; ¶ 95; ¶ 96; ¶ 98; ¶ 99; ¶ 100; ¶ 1091; ¶ 1092; ¶ 1093 | ¶¶ 1014–1019, 1021–1047 | Revised |
| I003 | ¶ 122; ¶ 123; ¶ 124; ¶ 127; ¶ 129; ¶ 131; ¶ 132; ¶ 133 | ¶¶ 183–185 | Revised |
| I004 | ¶ 139; ¶ 140; ¶ 165; ¶ 166; ¶ 167; ¶ 200; ¶ 201 | ¶¶ 153–160, 217–219 | Revised |
| I005 | ¶ 154; ¶ 155; ¶ 156; ¶ 168; ¶ 169; ¶ 170; ¶ 171; ¶ 172; ¶ 193; ¶ 204 | ¶¶ 161–162 | Revised |
| I006 | ¶ 142; ¶ 143; ¶ 145; ¶ 665 | ¶¶ 148–151 | Revised |
| I007 | ¶ 147; ¶ 148; ¶ 149; ¶ 150; ¶ 151 | ¶¶ 152, 305–307, 896–898 | Revised |
| I008 | ¶ 137; ¶ 138; ¶ 182; ¶ 484; ¶ 485 | ¶¶ 163–168 | Revised |
| I009 | ¶ 4; ¶ 254; ¶ 257 | ¶ 236 | Revised |
| I010 | ¶ 265; ¶ 292; ¶ 309; ¶ 339; ¶ 431 | ¶¶ 82–84, 376–379, 1079 | Revised |
| I011 | ¶ 321; ¶ 322; ¶ 582; ¶ 583; ¶ 584; ¶ 585; ¶ 614 | ¶¶ 245–250 | Revised |

| Ref. | Docket 1 | This Complaint | Treatment |
|---|---|---|---|
| I012 | ¶ 332; ¶ 333; ¶ 334; ¶ 335; ¶ 343; ¶ 347; ¶ 348 | ¶¶ 251–256, 1108–1112 | Revised |
| I013 | ¶ 353 | ¶¶ 253–256, 268–270 | Revised |
| I014 | ¶ 37; ¶ 336; ¶ 337; ¶ 352 | ¶¶ 90–95, 257, 262–264, 271–272 | Revised |
| I015 | ¶ 351 | ¶¶ 90–95, 176, 257, 966–971, 1096 | Revised |
| I016 | ¶ 36; ¶ 339; ¶ 871; ¶ 883 | ¶¶ 90–95, 258–261, 265–267, 1080 | Revised |
| I017 | ¶ 339; ¶ 352 | ¶¶ 271–272, 1080 | Revised |
| I018 | ¶ 309; ¶ 310; ¶ 311; ¶ 615; ¶ 986 | ¶¶ 169–173, 282–287, 316–320 | Revised |
| I019 | ¶ 355; ¶ 356 | ¶¶ 293–294, 747–749 | Revised |
| I020 | ¶ 493; ¶ 616 | ¶¶ 302–304, 872–879, 894–895 | Revised |
| I021 | ¶ 149; ¶ 433; ¶ 434; ¶ 746 | ¶¶ 305–315 | Revised |
| I022 | ¶ 509; ¶ 655; ¶ 748 | ¶¶ 321–323 | Revised |

| Ref. | Docket 1 | This Complaint | Treatment |
|---|---|---|---|
| I023 | ¶ 577; ¶ 578; ¶ 875 | ¶¶ 321–323 | Revised |
| I024 | ¶ 272; ¶ 432; ¶ 465; ¶ 466; ¶ 653; ¶ 1094 | ¶¶ 328–330, 890–893 | Revised |
| I025 | ¶ 505; ¶ 507; ¶ 758 | ¶¶ 168, 345–366, 376–379 | Revised |
| I026 | ¶ 273; ¶ 759; ¶ 758; ¶ 801 | ¶¶ 370–371, 398–405 | Revised |
| I027 | ¶ 292; ¶ 431; ¶ 505; ¶ 506; ¶ 507; ¶ 761 | ¶¶ 360–366, 376–379 | Revised |
| I028 | ¶ 291; ¶ 755; ¶ 762 | ¶¶ 380–384 | Revised |
| I029 | ¶ 506; ¶ 754; ¶ 894 | ¶¶ 109–110, 385–386 | Revised |
| I030 | ¶ 506; ¶ 754; ¶ 899 | ¶¶ 391–397, 461 | Revised |
| I031 | ¶ 758; ¶ 898; ¶ 899 | ¶¶ 109–110, 398–400 | Revised |
| I032 | ¶ 671; ¶ 672; ¶ 673; ¶ 687; ¶ 709; ¶ 715 | ¶¶ 406–416, 594 | Revised |
| I033 | ¶ 511; ¶ 764; ¶ 874; ¶ 876 | ¶¶ 422–438 | Revised |

| Ref. | Docket 1 | This Complaint | Treatment |
|---|---|---|---|
| I034 | ¶ 7; ¶ 9; ¶ 10; ¶ 659; ¶ 661; ¶ 662; ¶ 765 | ¶¶ 85–86, 273–275, 439–452, 466 | Revised |
| I035 | ¶ 238; ¶ 516; ¶ 767; ¶ 787; ¶ 799; ¶ 877; ¶ 878 | ¶¶ 453–456, 476–478 | Revised |
| I036 | ¶ 765; ¶ 766; ¶ 877; ¶ 986 | ¶¶ 453–457, 966–971 | Revised |
| I037 | ¶ 778; ¶ 812; ¶ 813; ¶ 814; ¶ 815; ¶ 816; ¶ 825; ¶ 877; ¶ 878; ¶ 879; ¶ 881 | ¶¶ 462–464, 489–491 | Revised |
| I038 | ¶ 787; ¶ 789; ¶ 792 | ¶¶ 474, 896–898 | Revised |
| I039 | ¶ 238; ¶ 241; ¶ 873; ¶ 874; ¶ 875; ¶ 877; ¶ 878; ¶ 879; ¶ 881; ¶ 882 | ¶¶ 467–472, 475, 880–889 | Revised |
| I040 | ¶ 759; ¶ 801; ¶ 880 | ¶¶ 479–488 | Revised |
| I041 | ¶ 17; ¶ 20; ¶ 190; ¶ 907; ¶ 908; ¶ 951; ¶ 1051; ¶ 1052 | ¶¶ 500–501, 838–846 | Revised |
| I042 | ¶ 919; ¶ 952; ¶ 953; ¶ 980; ¶ 1057; ¶ 1058; ¶ 1059 | ¶¶ 527–534 | Revised |
| I043 | ¶ 882 | ¶¶ 550–560, 1101–1103 | Revised |

| Ref. | Docket 1 | This Complaint | Treatment |
|---|---|---|---|
| I044 | ¶ 38; ¶ 44; ¶ 869; ¶ 870 | ¶¶ 571–580, 591–592 | Revised |
| I045 | ¶ 32; ¶ 34; ¶ 35; ¶ 40; ¶ 44 | ¶¶ 589–592 | Revised |
| I046 | ¶ 32; ¶ 994 (occ. 1); ¶ 995 (occ. 1); ¶ 1098; ¶ 1099 | ¶¶ 98–104, 106–108, 730–731, 740–743, 761–765 | Revised |
| I047 | ¶ 942; ¶ 954; ¶ 955; ¶ 957; ¶ 962 | ¶¶ 222–225, 624–637, 713–714 | Revised |
| I048 | ¶ 57; ¶ 943; ¶ 952 | ¶¶ 220–221, 645–655, 712 | Revised |
| I049 | ¶ 942; ¶ 1061 | ¶¶ 641–644, 713–714 | Revised |
| I050 | ¶ 944; ¶ 945; ¶ 946; ¶ 950 | ¶¶ 648–655, 701–711, 717, 985–1000 | Revised |
| I051 | ¶ 1; ¶ 203; ¶ 1007; ¶ 1008; ¶ 1009; ¶ 1010; ¶ 1017; ¶ 1018; ¶ 1001 (occ. 2) | ¶¶ 692–711, 1002–1013 | Revised |
| I052 | ¶ 948; ¶ 971 | ¶¶ 645–647, 718–722, 1082, 1099–1100 | Revised |
| I053 | ¶ 43; ¶ 154; ¶ 910; ¶ 982 | ¶¶ 830–834 | Revised |
| I054 | ¶ 229 | ¶¶ 835–837 | Revised |

| Ref. | Docket 1 | This Complaint | Treatment |
|---|---|---|---|
| I055 | ¶ 17; ¶ 20; ¶ 172; ¶ 204; ¶ 726; ¶ 727; ¶ 749; ¶ 1052; ¶ 1001 (occ. 2) | ¶¶ 838–839, 844–849, 853–855, 1118–1122 | Revised |
| I056 | ¶ 150; ¶ 151; ¶ 746; ¶ 986 | ¶¶ 863–879, 894–895 | Revised |
| I057 | ¶ 173; ¶ 174; ¶ 175; ¶ 176; ¶ 180; ¶ 186; ¶ 205; ¶ 206; ¶ 210; ¶ 211; ¶ 212; ¶ 213; ¶ 214; ¶ 983; ¶ 984; ¶ 985; ¶ 986; ¶ 990 (occ. 1); ¶ 992 (occ. 1); ¶ 993 (occ. 1); ¶ 989 (occ. 2); ¶ 990 (occ. 2); ¶ 991 (occ. 2); ¶ 992 (occ. 2); ¶ 993 (occ. 2); ¶ 994 (occ. 2) | ¶¶ 910–951, 977–984, 1055–1073 | Revised |
| I058 | ¶ 1003; ¶ 1004; ¶ 1005; ¶ 1006 | ¶¶ 169–175, 1064–1077 | Revised |
| I059 | ¶ 1007; ¶ 1008; ¶ 1009; ¶ 1010; ¶ 1015; ¶ 1017; ¶ 1018; ¶ 1019 | ¶¶ 985–1000, 1002–1013, 1077 | Revised |
| I060 | ¶ 265; ¶ 292; ¶ 339; ¶ 431; ¶ 1047; ¶ 1048 | ¶¶ 1078–1082 | Revised |
| I061 | ¶ 93; ¶ 97; ¶ 99; ¶ 1044; ¶ 1045; ¶ 1046 | ¶¶ 1083–1086 | Revised |

| Ref. | Docket 1 | This Complaint | Treatment |
|---|---|---|---|
| I062 | ¶ 32; ¶ 994 (occ. 1); ¶ 995 (occ. 1); ¶ 1098 | ¶¶ 1087–1089 | Revised |
| I063 | ¶ 64; ¶ 65; ¶ 66; ¶ 970; ¶ 1061; ¶ 1063 | ¶¶ 1090–1094 | Revised |
| I064 | ¶ 1087; ¶ 1088; ¶ 1089; ¶ 484; ¶ 485 | ¶¶ 1095–1097 | Revised |
| I065 | ¶ 66; ¶ 948; ¶ 1061; ¶ 1062; ¶ 1063; ¶ 1069 | ¶¶ 1098–1100 | Revised |
| I066 | ¶ 75; ¶ 335; ¶ 806; ¶ 817; ¶ 1001 (occ. 2) | ¶¶ 1105–1116 | Revised |
| I067 | ¶ 17; ¶ 20; ¶ 43; ¶ 907; ¶ 908; ¶ 1051; ¶ 1052; ¶ 1053; ¶ 1054 | ¶¶ 1117–1122 | Revised |
| I068 | ¶ 42; ¶ 526; ¶ 527; ¶ 528; ¶ 708 | ¶¶ 208–209, 1083–1086 | Revised |
| I069 | ¶ 687; ¶ 688; ¶ 690; ¶ 691; ¶ 697; ¶ 709 | ¶¶ 80–81, 406–412, 594 | Revised |
| I070 | ¶ 522; ¶ 986 | ¶¶ 581–582, 593, 863, 977–983 | Revised |
| I071 | ¶ 141; ¶ 163; ¶ 199; ¶ 280; ¶ 324; ¶ 325; ¶ 603; ¶ 615 | ¶¶ 169–175, 966–971, 1096 | Revised |

| Ref. | Docket 1 | This Complaint | Treatment |
|---|---|---|---|
| I072 | ¶ 141; ¶ 181; ¶ 558; ¶ 839 | ¶¶ 174–175, 966–971 | Revised |

**Table D — The counts of Docket 1 and their treatment**

| Ref. | Docket 1 count | Docket 1 location | This Complaint | Treatment |
|---|---|---|---|---|
| C01 | Count 1 — § 1962(c) | ¶¶ 989–994, second occurrences; PDF 246–247 | Count I, ¶¶ 1054–1063 | Retained and extended: Predicate Acts 1–4 are pleaded in full in ¶¶ 952–955, Predicate Acts 5–11 in ¶¶ 956–963, and the scheme in ¶¶ 942–951; the VRM-Penzini defendants are added to Count I |

| Ref. | Docket 1 count | Docket 1 location | This Complaint | Treatment |
|---|---|---|---|---|
| C02 | Count 2 — § 1962(a) | ¶ 995 (second), ¶ 996, ¶¶ 997–998 (second); PDF 247 | No separate count | Not retained |
| C03 | Count 3 — § 1962(b) | ¶ 999 (second), ¶¶ 1000–1002 (first); PDF 247–248 | No separate count | Not retained |

| Ref. | Docket 1 count | Docket 1 location | This Complaint | Treatment |
|---|---|---|---|---|
| C04 | Count 4 — § 1962(d) | ¶¶ 1003–1006; PDF 248 | Count II, ¶¶ 1064–1077 | Retained; revised defendant scope (BPPR, Economou, Rodríguez Barnes, Álvarez, Ferrer); extended to the VRM-Penzini group, Borschow, Semillero Partners, Villarini, PRFG and CDVCA (¶¶ 1074–1076) |

| Ref. | Docket 1 count | Docket 1 location | This Complaint | Treatment |
|---|---|---|---|---|
| C05 | Count V as printed: “Breach of fiduciary duty”; following text concerns MIPA inducement | ¶¶ 1020–1032; PDF 252–253 | Count IV, ¶¶ 1083–1086 | MIPA claim omitted |
| C06 | Intervening unheaded incorporation / Boyd v. Economou | ¶¶ 1033–1034; PDF 253 | No independent counterpart | No substantive count mapped |
| C07 | Count VII as printed: “Fraudulent Inducement – MIPA”; following text concerns MIPA promises | ¶¶ 1035–1042; PDF 253–254 | No MIPA/employment count | Not retained |

| Ref. | Docket 1 count | Docket 1 location | This Complaint | Treatment |
|---|---|---|---|---|
| C08 | Count VI as printed: “Breach of Contract”; following text pleads manager fiduciary duties | ¶¶ 1043–1046; PDF 254–255 | Count IV, ¶¶ 1083–1086 | Substantive overlap; revised |
| C09 | Count VIII — Breach of Credit Agreement | ¶¶ 1047–1048; PDF 255 | Count III, ¶¶ 1078–1082; Count IX, ¶¶ 1101–1104 | Retained/reorganized |
| C10 | Count IX — Breach of NDA | ¶¶ 1049–1054; PDF 255–257 | Count XI, ¶¶ 1117–1122 | Changed cause of action |
| C11 | Count X — Breach of Revenue Sharing Agreement | ¶¶ 1055–1059; PDF 257 | ¶¶ 527–532 | Not retained as a claim |
| C12 | Count XI — AAA void ab initio | ¶ 1000 (second), ¶¶ 1060–1063; PDF 257–258 | Count VI, ¶¶ 1090–1094; Count VIII, ¶¶ 1098–1100 | Retained/reorganized |

| Ref. | Docket 1 count | Docket 1 location | This Complaint | Treatment |
|---|---|---|---|---|
| C13 | Count XII — Plaintiffs' majority control | ¶¶ 1064–1067; PDF 258–259 | ¶¶ 1014–1047 | Theory replaced/narrowed |
| C14 | Count XIII — Releases void | ¶¶ 1068–1069; PDF 259 | Count III, ¶¶ 1078–1082; Count VIII, ¶¶ 1098–1100; Count IX, ¶¶ 1101–1104 | Retained/reorganized |
| C15 | Anti-tying relief in text after Count XIII (no clean distinct heading) | ¶¶ 1070–1071; second ¶ 1002; PDF 259, 267 | ¶¶ 96–97 | Not retained |
| C16 | Count XVI — Perjury | ¶¶ 1072–1075; PDF 259–260 | ¶¶ 398–400 | Standalone count omitted |
| C17 | Count XVII — Obstruction of justice | ¶¶ 1076–1078; PDF 260 | No separate count | Not retained |
| C18 | Count XVIII — Fraud on the court | ¶¶ 1079–1081; PDF 260 | No separate count | Not retained |

| Ref. | Docket 1 count | Docket 1 location | This Complaint | Treatment |
|---|---|---|---|---|
| C19 | Count XIX — Fraudulent conveyance | ¶¶ 1082–1084; PDF 260 | ¶¶ 385–405 | Standalone count omitted |
| C20 | Count XX — Unjust enrichment | ¶¶ 1085–1089; PDF 260–261 | Count VII, ¶¶ 1095–1097 | Retained but narrowed |
| C21 | Earlier counsel-control factual allegations; no separate count | ¶ 32 (PDF 23); ¶¶ 994–995 (first, PDF 234); ¶¶ 1098–1099 (PDF 262) | Count V, ¶¶ 1087–1089 | Newly separated count |
| C22 | Earlier Seventh Amendment transaction; no separate count | ¶ 882; PDF 207 | Count IX, ¶¶ 1101–1104 | Newly articulated count |
| C23 | Boyd guaranty allegations and prayer; no separate guaranty count | ¶¶ 75, 806, 817; second ¶ 1001, Prayer E.20–21 | Count X, ¶¶ 1105–1116 | Newly separated/revised count |

| Ref. | Docket 1 count | Docket 1 location | This Complaint | Treatment |
|---|---|---|---|---|
| C24 | Derivative section and corporate damages | ¶¶ 93–100, 1017–1018, 1090–1100 | ¶¶ 1014–1047 | Retained with substantial clarification |